UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

|                                          |   |                              |
|------------------------------------------|---|------------------------------|
| YANA HAMILTON,                           | : |                              |
| on behalf of her minor child, J.H.       | : |                              |
|                                          | : |                              |
| Plaintiff,                               | : |                              |
|                                          | : |                              |
| v.                                       | : | Civil Action No. 07-0550 (EGS) |
|                                          | : |                              |
| DISTRICT OF COLUMBIA,                    | : |                              |
|                                          | : |                              |
| Defendant.                               | : |                              |

———————————————————————

## FILING OF ADMINISTRATIVE RECORD

Attached is an index of the administrative record and the record documents themselves in this proceeding.  Consistent with LCvR 5.4(f), Defendant has redacted personal information about the minor J.H.[1]

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

---

[1] Defendant has redacted the minor's name, date of birth, and Social Security Number.

*/s/ **Amy Caspari***
Amy Caspari [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7794
June 8, 2007                          amy.caspari@dc.gov

Yana Hamilton
v. District of Columbia
Civil Action No. 07-0550 (EGS)

## INDEX OF RECORD

**Description**                                                    **Page**

Certification of Record                                        -    1

Hearing Officer's Determination (HOD) dated 12/20/06          -    2

Hearing Officer's Determination (HOD) issued 10/31/06        -    6

    Due Process Hearing Attendance Sheet dated 10/12/06    -    11

    Due Process Hearing Attendance Sheet dated 10/19/06    -    12

Impartial Due Process Hearing Interim Order dated 10/17/06  -    13

Petitioner's Motion for Reconsideration dated 11/15/06       -    15

DCPS' Response to Petitioner's Motion for Recon., 11/21/06   -    21

    HOD dated 10/31/06                                     -    25

    Petitioner's Motion for Reconsideration dated 11/15/06 -    32

Petitioner's Reply Regarding Reconsideration dated 11/22/06 -    39

DCPS' Objection to Petitioner's Reply dated 11/27/06         -    44

Petitioner's Objection to Respondent's Objection, 11/27/06   -    48

Order on Notice of Insufficiency dated 10/7/06               -    52

DCPS Disclosure Statement dated 10/6/06 w/att.               -    53

    Petitioner's Motion for Expedited Hearing, 9/14/06     -    55

    DCPS Notice of Insufficiency, 9/28/06                  -    59

Petitioner's Resp. to Notice of Insufficiency,9/28/06     -     62

Due Process Complaint Notice dated 8/23/06     -     65

Scheduling Memorandum dated 8/23/06     -     70

Petitioner's Motion for Expedited Hearing, 9/14/06     -     74

    (includes cover sheet w/handwritten DOB information)

Expedited Scheduling Memorandum, 9/14/06     -     78

Expedited Hearing Notice dated 9/18/06     -     82

DCPS Response to Due Process Complaint Notice, 9/28/06     -     83

DCPS Notice of Insufficiency, 9/28/06     -     85

Petitioner's Response to Notice of Insufficiency, 9/28/06     -     89

Hearing Notice dated 10/12/06     -     92

DCPS Disclosure Statement dated 10/16/06     -     93

DCPS Amended Disclosure Statement dated 10/16/06 w/att.     -     95

    DCPS 01- MDT Meeting Notes dated 8/9/06     -     97

    DCPS 02- IEP dated 8/9/06     -     104

    DCPS 03- Meeting Invitations dated 7/3/06 & 7/10/06     -     118

    DCPS 04- Resolution Meeting Notes dated 9/5/06     -     121

Student's disclosure Letter dated 10/6/06 w/attachments     -     128

    Notice Compelling DCPS witnesses dated 10/6/06     -     130

    Hearing Officer's Determination (HOD) dated 7/7/06     -     132

    Due Process Complaint Notice dated 8/23/06     -     139

    DCPS Scheduling Memorandum dated 8/24/06     -     143

    Petitioner's Motion to Determine Stay-Put Placement     -     145

    Petitioner's Motion for Expedited Hearing dated 9/14/07-     153

Expedited Hearing Notice dated 9/18/06                          -     158

IEP dated 8/9/06                                                -     159

MDT Meeting Notes dated 8/9/06                                  -     173

Functional Behavioral Assessment dated 9/30/05                 -     180

Clinical Evaluation dated 11/7/05                              -     188

Neuropsychological Evaluation dated 1/25/06                    -     200

Speech and Language Report dated 5/17 06                       -     210

Occupational Therapy Assessment dated 5/16/06                 -     213

Letter from D. Ross to P. Peagler dated 4/6/06                -     216

Letter from K. Plowden to D. Tyrka dated 4/27/06             -     218

Student Transfer Form dated 7/28/06                           -     219

Letter from K. Coyle to D. Ross dated 8/25/06                -     220

Resolution Meeting Confirmation dated 8/28/06                -     222

Letter from D. Tyrka to D. Smith for a ruling, 9/22/06  -     223

Transcript of Hearing held 10/19/06                           -     227

# CERTIFICATION OF RECORD

INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### *STUDENT HEARING OFFICE*
### SPECIAL EDUCATION

In the Matter RE:          H████, J█████ vs. DCPS

Case Information:      Hearing Dates: **10/12/2006 & 10/19/2006**
Held at: **District of Columbia Public Schools Headquarters**
**825 N. Capitol Street, N.E.**
**Washington, D.C. 20002**
Student Identification Number:  **9055583**
Student's Date of Birth:  **████/1995**
Attending School: **Birney Elementary School**
Managing School:
Hearing Request Date(s): **08/23/2006 & 09/14/2006 Motion to Expedite**
**08/23/2006**

## <u>CERTIFICATION OF RECORD</u>

I, **Shawnta Maddox, Legal Assistant of the Student Hearing Office,**

DO HEREBY CERTIFY that the attached Record of Proceeding is the entire record in

the above entitled matter as of this date, consisting  of all letters, pleadings, orders,

exhibits and depositions.

I FURTHER CERTIFY that the materials forwarded herewith are the true copy

of the original documents submitted in this matter.

EXECUTED this Friday, April 27, 2007.

**LEGAL ASSISTANT**
**STUDENT HEARING OFFICE**

1

# District of Columbia Public Schools
## State Enforcement & Investigation Division
### _confidential_

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE   8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

| | |
|---|---|
| In the Matter of )<br><br>J▮▮▮▮ H▮▮▮▮, student )<br>Date of Birth: ▮▮▮ 1995 )<br>　　　　　　Petitioner, )<br>　　　　　　　　　　　　 )<br>　　versus )<br>　　　　　　　　　　　　 )<br>The District of Columbia Public Schools, )<br>Home School: Birney Elementary School, )<br>Attending: Birney Elementary School, )<br>　　　　　　Respondent. )<br>_____ ) | **IMPARTIAL<br>DUE PROCESS HEARING**<br><br>**DISPOSITION of MOTION<br>for RECONSIDERATION** |

Parent:

Yana Hamilton
1347 Stevens Road, SE
Washington, D.C. 20009

Counsel for the Parent/Student:

Douglas Tyrka, Esq.
**Tyrka & Associates, LLP**
1726 Connecticut Avenue,　NW  Suite 400
Washington, D.C. 20009

District of Columbia Public Schools:

Saurabh Gupta, Esq., Attorney-Advisor
**Office of the General Counsel, DCPS**
825 North Capitol Street, NE  9th Floor
Washington, D.C. 20002

1 of 4 pages

## JURISDICTION

The proceeding was authorized by Public Law 108-466, The Individuals with Disabilities Education Improvement Act of 2004 and Title V of the District of Columbia Municipal Regulations.

## STATEMENT of the CASE

On September 18, 2006, the Counsel for the Parent filed the herein Complaint on behalf of the parent and student complaining the District of Columbia Public Schools (DCPS) denied a Free Appropriate Public Education (FAPE) to the student.

A hearing convened October 12, 2006 and was continued to October 19, 2006. A DECISION & ORDER dismissing the Complaint with prejudice was issued October 31, 2006.

On November 15, 2006 the parent filed a Motion for Reconsideration pointing out that the hearing officer had not determined whether compensatory education for the student was considered at the August 9, 2006 MDT/IEP/Placement meeting as was ordered in the Hearing Officer's Determination/Decision (HOD) issued in this Matter July 10, 2006 and whether, if such a failure existed, it constitute a violation of the HOD and a Denial of FAPE.

On November 21, 2006, DCPS filed a Response pointing out that parent's Motion was outside the 10-day limitation for motions for reconsideration as setout in the DCPS Student Hearing Office's Standard Operating Procedure Manuel (SOPM).

The parent responded to the DCPS Response on November 22, 2006 addressing the 10-day limitation only.

DCPS responded to the parent's Response on November 24, 2006 and the final response came from the parent on November 27, 2006.

Time limitations for motions for reconsideration setout in the SOPM notwithstanding, the parent was entitled to a determination on her Issue of compensatory education but the October 31, 2006 DECISION & ORDER did not address the Issue.

The herein August 23, 2006 Complaint setout one violation: "Failure to comply with a July Hearing Officer's Determination ("HOD")." At Facts 3.a.v. of the Complaint, the Parent alleged that, "DCPS . . . failed to discuss or determine J██████ eligibility for compensatory education." One of the proposed resolutions was to convene ". . . an MDT meeting to develop a appropriate compensatory education plan . . .."

During the instant hearing, the parent had the burden of proof on whether compensatory education for the student was discussed and determined at the August 9, 2006 MDT/IEP/ Placement meeting in conformity with paragraph 2 of the ORDER in the July 10, 2006 HOD. When ordered forward at the hearing, the parent rested on the documents and called one witness on educational benefit, the Director of Students Services at Rock Creek Academy. The one

member of the August 9, 2006 MDT/IEP/Placement meeting that testified at the hearing, the DCPS Placement Specialist/Monitor, gave no evidence concerning whether compensatory education for the student was discussed at the August 9, 2006 meeting. No questions were put to Placement Specialist concerning the discussion of compensatory education at the August 9, 2006 MDT/IEP/ Placement meeting.

The August 9, 2006 MDT meeting notes did not mention any discussion of compensatory education. The Advocate who attended the August 9, 2006 MDT meeting but who did not testify at the hearing did not mention in her notes that compensatory education was discussed. Neither did she mention that she had attempted to bring up the subject nor that there was a refusal at the MDT meeting to discuss compensatory education.

At the hearing it was not established that compensatory education was not discussed at the August 9, 2006 MDT/IEP/Placement meeting as was ordered in the July 10, 2006 HOD. Had the subject been raised at the MDT meeting and its discussion refused, another situation would have been presented.

The primary purpose of the July 7, 2006 HOD was to place the student in a therapeutic 100% Out of General Education placement and that was accomplished at the August 9, 2006 MDT/IEP/Placement meeting.

As the parent had the burden on the burden of proof on the Issue and no evidence, neither testimonial nor documentary, was adduced at the hearing to the effect that it was not discussed at the August 9, 2006 meeting, the Issue must be decided against the parent. Still and to date, whether or not the student was considered for compensatory education remained an issue that had to be fully addressed.

In consideration of the foregoing, the hearing officer made the following

## ORDER

1. The parties will agree whether an MDT meeting to discuss and determined compensatory education for the student is necessary, and if so, DCPS will convene an MDT meeting within 35 days hereof during which the form, amount and delivery of compensatory education, if any, will be discussed and determined. Here, references are made to Paragraph 3 of the ORDER in the HOD issued in the matter July, 13, 225 and to Paragraph 2 of the ORDER in the HOD issued in this matter July 10, 2006. For disputes under this paragraph, either party may request a hearing.

2. For the said MDT meeting scheduling is to be through and notices are to be sent to Counsel for the Parent except that, for every day of unavailability of parent/educational advocate/Counsel for the Parent, the deadline herein will be extended one day. For disputes

under this paragraph, documentation of the parties will be relied upon to determine the good faith of each party.

4. Herein, there was no prevailing party.

**This is THE FINAL ADMINISTRATIVE DECISION. Appeal can be made to a court of competent jurisdiction within ninety (90) days of the issue date of this decision.**

_____ Date: 12-20-06
H. St. Clair, Esq., Hearing Officer

Issued: _____
Student Hearing Office, DCPS

4 of 4 pages

5

# District of Columbia Public Schools

## *State Enforcement & Investigation Division*

### *confidential*

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE   8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

|  |  |  |
|---|---|---|
| **In the Matter of** | ) | |
| | ) | **IMPARTIAL** |
| J█████ H.█████, student | ) | **DUE PROCESS HEARING** |
| Date of Birth: █████, 1995 | ) | |
| Petitioner, | ) | **DECISION & ORDER** |
| | ) | |
| versus | ) | Request Date:    September 18, 2006 |
| | ) | Hearing Dates:   October 12, 2006 |
| | ) | October 19, 2006 |
| **The District of Columbia Public Schools,** | ) | |
| Home School: Birney Elementary School, | ) | |
| Attending: Birney Elementary School, | ) | Held at:  825 North Capitol Street, NE |
| | ) | Eighth Floor, Hearing Room 2 |
| Respondent. | ) | Washington, D.C. 20002 |

| | |
|---|---|
| **Parent:** | Yana Hamilton |
| | 1347 Stevens Road, SE |
| | Washington, D.C. 20009 |
| | |
| **Counsel for the Parent/Student:** | Douglas Tyrka, Esq. |
| | **Tyrka & Associates, LLP** |
| | 1726 Connecticut Avenue,   NW  Suite 400 |
| | Washington, D.C. 20009 |
| | |
| **District of Columbia Public Schools:** | Saurabh Gupta, Esq., Attorney-Advisor |
| | **Office of the General Counsel, DCPS** |
| | 825 North Capitol Street, NE  9th Floor |
| | Washington, D.C. 20002 |

An <u>INDEX of NAMES</u> is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant witnesses. The index will be detached before release of this <u>DECISION & ORDER</u> as a public record.

i

6

**<u>INDEX of NAMES</u> for** J████ H██████

**Hearing Date:** October 19, 2006

Appearing on behalf of DCPS:

1. Gregory S. Matthews, Principal, Taft Center **
2. Evan Murray, DCPS Placement Specialist/Monitor **
3. Deborah Lyons, Special Education Coordinator, Birney Ele. School **

Appearing on behalf of the parent/student:

1. Keren Plowden, Executive Director of Student Services, Rock Creek Acad. **

\* Gave testimony.

\*\* Gave testimony via telephone.

ii

## STATEMENT of the CASE

On September 18, 2006, the Counsel for the Parent filed the herein Complaint on behalf of the parent and student complaining the District of Columbia Public Schools (DCPS) denied a Free Appropriate Public Education (FAPE) to the student.  Specifically, Counsel for the Parent complained of violation of the Hearing Officer's Determination/Decision (HOD) issued in this matter July 10, 2006.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 9:00 A.M., Thursday, October 12, 2006 at DCPS Headquarters, 825 North Capitol Street, NE, 8th Floor, Hearing Room 2, Washington, D.C. 20002.  The hearing convened as scheduled but at the motion of the Attorney-Advisor and over the objection of the Counsel for the Parent was continued to 1:00 P.M., Thursday, October 19, 2006.

The continuation was called to order at 1:00 P.M., Thursday, October 19, 2006 in Hearing Room 2.

Parent's Motion for Default against DCPS for not filing a response was DENIED.

## JURISDICTION

The hearing convened under Public Law 108-466, The Individuals with Disabilities Education Improvement Act of 2004 and Title V of the District of Columbia Municipal Regulations.

## ISSUE:  Did DCPS violate the HOD issued in this matter July 7, 2006?

## SUMMARY of the EVIDENCE and FINDINGS of FACT

By facsimiles dated October 6 and 16, 2006, DCPS disclosed 12 witnesses and 4 documents.

By facsimile dated October 6, 2006, the parent disclosed 6 witnesses and 21 documents.

The documents were placed into the record and are referenced/footnoted herein where relevant.

Counsel for the Parent referenced paragraph 1 of the July 7, 2006 HOD, Parent Document No 3, and represented that DCPS had not placed the student in therapeutic placement within 5 schooldays as was ordered; that the August 9, 2006 MDT, Parent Documents Nos 9 & 10, did not have a team member to discuss the appropriateness of any placement for the student. Counsel for the Parent stated that he received two Prior Notices on the same day but could not remember the day, one to the Taft Center and one to Birney Ele. School.  (Neither notice was disclosed.)

The Attorney-Advisor represented that a Notice of Placement was issued placing the student at the Taft Center but that the Placement Specialist/Monitor could not find the notice.

1 of 3 pages

The Parent was ordered forward.

The Parent rested on the documents for the Denial of FAPE and called a witness for educational benefit.

The Executive Director for Student Services, Rock Creek Academy (RCA), testified via telephone; the testimony is not recounted here.

DCPS moved forward with the evidence.

The Principal of the Taft Center testified via telephone to the program, curriculum, classes, class sizes, teaching staff – 16 teachers, related services provider staff and student body – 72 – at the center; that the student-teacher ratio was 5 to 1, 10 students to a teacher and teacher assistant. The Principal testified that he had the student's August 9, 2006 IEP and had concluded that the center could implement the IEP; that a school nurse qualified to administer medication was on staff and that all IEP related services could be provided by on staff personnel. The Principal testified that he received the IEP on October 16, 2006 and that a meeting with the parent was required before the acceptance process could be completed.

The DCPS Placement Specialist/Monitor testified via telephone that he attended the August 9, 2006 MDT/IEP/Placement meeting for the student where the Taft Center was discussed; that the student's advocate considered the Taft Center inappropriate. The Specialist testified that he issued a Notice of Placement for the student to the Taft Center and sent it to Counsel for the Parent; that a packet was sent to the center but he could not find a copy of the notice nor remember the dates. On cross-examination the Specialist testified that he did not know that a therapeutic placement was required until he arrived at the August 9, 2006 meeting, and that during the meeting, he called the Principal at the Taft Center and was informed that the student's needs could be met at the center; that he also contacted the Moten Center.

The Special Education Coordinator (SEC), Birney Ele. School, testified via telephone that she was familiar with the student; that he attended Birney ES prior to enrolling at Kipp D.C. and that the parent enrolled the student at Birney ES in September 2006 as a general education student.

In consideration of the testimony, documents and arguments herein, the hearing officer found the following facts:

1. The parent participated in the August 9, 2006 MDT/IEP/Placement meeting and was informed that the Taft Center was being considered as a placement. The parent was requested to visit the Taft Center before a Notice of Placement was to be issued. See August 9, 2006 MDT notes, Parent Document No 10.

2. The parent did not visit the Taft Center as requested.

3. DCPS issued a Notice of Placement for the student to the Taft Center; the parent knew the student had been placed at the Taft Center.

4. The Taft Center could implement the August 9, 2006 IEP and provide educational benefit to the student.

2 of 3 pages

## DISCUSSION and CONCLUSIONS OF LAW

**DCPS is required to make FAPE available to all children with disabilities within the jurisdiction of the District of Columbia.**

34 CFR 300.300 requires DCPS to fully evaluate every child suspected of having a disability within the jurisdiction of the District of Columbia, ages 3 through 21, determine eligibility for special education services and, if eligible, provide same through an appropriate IEP and Placement.

Herein, the parent did not meet her burden. To be sure, there were procedural errors on the part of DCPS as it placed the student at the Taft Center. Still, the parent was present with an advocate at the August 9, 2006 MDT/IEP/Placement meeting and participated in the discussion about the Taft Center; the advocate objected to the placement at the center. DCPS sent a copy of the Notice of Placement to Counsel for the Parent. Secondly, there was no detriment to educational benefit, at least attributable to DCPS. See *Hymes vs. the District of Columbia* 42 IDELR 266 (D.D.C. 2005)

In consideration of the foregoing, the hearing officer made the following

## ORDER

WITH PREJUDICE, the herein
Complaint is DISMISSED.

**This is THE FINAL ADMINISTRATIVE DECISION. Appeal can be made to a court of competent jurisdiction within ninety (90) days of the issue date of this decision.**

_____   Date: _10-31-06_____
H. St. Clair, Esq., Hearing Officer

Issued: _____
        Student Hearing Office, DCPS

3 of 3 pages

HRZ
9

## ATTENDANCE SHEET

| | | |
|---|---|---|
| **STUDENT'S NAME:** | ~~John Hamilton~~ | |
| **HEARING DATE:** | October 12, 2006 | |
| **PRINTED NAME** | **ON BEHALF OF DCPS OR STUDENT** | **TITLE** |
| Saurabh Gupta | DCPS | Atty-Advisor |
| YANA HAMILTON | Student | Mother |
| Doug Tyrka | student | Counsel for Parent |

Impartial Hearing Officer

11

## ATTENDANCE SHEET

| STUDENT'S NAME: | ~~[redacted]~~ | |
| HEARING DATE: | October 19, 2006 | |

| PRINTED NAME | ON BEHALF OF DCPS OR STUDENT | TITLE |
| --- | --- | --- |
| S. Gupta | DCPS | Atty-Advisor |
| Douglas Tyrka | student | Counsel for Parent |
| Loren Plowden | RCA - Executive Director of Student Services | |
| Gregory Matthews, | Principal | Taft Center |
| Evan Murray | DCPS | Placement Specialist/ C/anite |
| Deborah Lyons | Birney ES | SEC |

Impartial Hearing Officer

12

# District of Columbia Public Schools

## State Enforcement & Investigation Division
### *confidential*

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE  8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

| | |
|---|---|
| In the Matter of        ) | **IMPARTIAL** |
| ) | **DUE  PROCESS HEARING** |
| J██████  H███████, student ) | |
| Date of Birth: ██████, 1995 ) | **INTERIM  ORDER** |
| Petitioner,    ) | |
| ) | Request Date:   September 18, 2006 |
| versus    ) | Hearing Date:   October 12, 2006 |
| ) | |
| **The District of Columbia Public Schools,** ) | Held at:  825 North Capitol Street, NE |
| Home School: Birney Elementary School, ) | Eighth Floor, Hearing Room 2 |
| Attending: Birney Elementary School, ) | Washington, D.C. 20002 |
| ) | |
| Respondent.   ) | |

**Parent:**

Yana Hamilton
1347 Stevens Road, SE
Washington, D.C. 20009

**Counsel for the Parent/Student:**

Douglas Tyrka, Esq.
**Tyrka & Associates, LLP**
1726 Connecticut Avenue,   NW  Suite 400
Washington, D.C. 20009

**District of Columbia Public Schools:**

Saurabh Gupta, Esq., Attorney-Advisor
**Office of the General Counsel, DCPS**
825 North Capitol Street, NE  9th Floor
Washington, D.C. 20002

1 of 2 pages

13

## JURISDICTION

The hearing convened under Public Law 108-466, The Individuals with Disabilities Education Improvement Act of 2004 and Title V of the District of Columbia Municipal Regulations.

## STATEMENT of the CASE

On September 18, 2006, the Counsel for the Parent filed the herein Complaint on behalf of the student complaining the District of Columbia Public Schools (DCPS) denied a Free Appropriate Public Education (FAPE) to the student.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 9:00 A.M., Thursday, October 12, 2006 at DCPS Headquarters, 825 North Capitol Street, NE, 8th Floor, Hearing Room 2, Washington, D.C. 20002. The hearing convened as scheduled.

The Attorney-Advisor claimed lack of notice; that a copy of the Complaint was never delivered to him. The Attorney-Advisor stated that DCPS was not prepared.

Counsel for the Parent objected to any continuance.

The hearing officer noted in the record that an IEP for the student was completed on August 9, 2006 and determined that the merits of this matter should be heard fully.

In consideration of the foregoing the hearing officer made the following

## INTERIM ORDER

This matter is continued for hearing to
1:00 P.M., Thursday, October 19, 2006.

Disclosure is permitted until 4:00 P.M.,
Monday, October 16, 2006.

**This is an INTERIM ADMINISTRATIVE ORDER.**

_____    Date: _____
H. St. Clair, Esq., Hearing Officer

Issued: _____
Student Hearing Office, DCPS

2 of 2 pages

14

**Before the**
**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**OFFICE OF MANAGEMENT SERVICES**

---

| | | |
|---|---|---|
| In re J████ H██████, | ) | Herbert St. Clair, Esquire |
| Special Education Student, | ) | Impartial Hearing Officer |
| | ) | |

---

## PETITIONER'S MOTION FOR RECONSIDERATION

The Petitioner respectfully requests that the Hearing Officer reconsider the HOD of October 31, 2006 and order DCPS to meet to determine appropriate compensatory education to J████ to compensate him for its failure to provide an appropriate placement since the start of the 2006-2007 school year and for previous violations.[1]

The Complaint in this case alleged, *inter alia*, that DCPS: 1) had "failed to discuss or determine J██████ eligibility for compensatory education" in violation of a July 10, 2006 order; and 2) had failed to propose an appropriate school placement for J████. The Hearing Officer issued an HOD dismissing all claims on October 31, 2006. JH 4.

In the HOD, the Hearing Officer found that DCPS' proposed placement of the Taft Center ("Taft") was appropriate, and that "there was no detriment to educational benefit, at least attributable to DCPS." HOD at 3.

The HOD does not at all address the Petitioner's claim that DCPS had failed to determine J████ eligibility for compensatory education per the prior order.

Because DCPS unquestionably failed to discuss and determine J██████ eligibility for compensatory education per the July 10, 2006 HOD, and because DCPS' representations of Taft prior to the hearing led the Petitioner to decline to enroll J████ there, the Hearing Officer should order DCPS to convene an MDT meeting to determine

---

[1] The Petitioner disagrees with other aspects of the HOD, but does not raise those issues in this Motion. The Petitioner does not waive her right to raise those issues in another forum.

1

compensatory education per the July 10, 2006 order, and to determine compensatory education for J██████ lack of education and services from the beginning of this school year until the date of the HOD.

**I.    DCPS Unquestionably Failed to Discuss and Determine Compensatory Education, in Violation of the July 10, 2006 Order**

A July 10, 2006 HOD ordered DCPS, *inter alia*, to convene an MDT/IEP/Placement meeting within thirty days, at which "the form, amount and delivery of compensatory education will be discussed and determined." JH 3 at 4. That clause specifically referred to an earlier HOD from July 13, 2005 ordering DCPS to determine compensatory education, which DCPS had violated. *See id.* Moreover, the July 13, 2006 HOD found that DCPS had not been providing J████ with an appropriate placement. *See id.* at 3.

As discussed at the hearing, DCPS convened an MDT meeting following the July 13, 2006 HOD, on August 9, 2006. *See* JH 10. However, it is undisputed that DCPS failed to discuss and to determine compensatory education as ordered in the July 13, 2006 HOD. In seven pages of notes from that meeting, there is no reference to any discussion of compensatory education. *See* JH 10.

Moreover -- and perhaps most importantly -- DCPS has never disputed the Petitioner's contention in her Complaint that DCPS "failed to discuss or determine J██████ eligibility for compensatory education." JH 4.

Because DCPS unquestionably failed to discuss and determine compensatory education, in violation of the July 13, 2006 HOD, the Hearing Officer should order DCPS immediately to convene an MDT meeting to discuss and determine compensatory education for J████ in accordance with the terms of the July 13, 2006 HOD.

2

II.  **DCPS Representations Prior to the Hearing Led the Petitioner to Believe that the Proposed Placement was Inappropriate**

The Hearing Officer has found that Taft is appropriate for J██████, the Petitioner does not contest that ruling in this Motion. However, whatever Taft's actual status is or was, the undisputed facts show that DCPS' representations led the Petitioner to reject that placement and to seek immediate relief.

The following facts are undisputed:

1) At the August 9, 2006 MDT meeting, DCPS represented that Taft classes had a 9/1 student/teacher ratio, in contrast to the 4/1 ratio recommended by J███████ special education teacher. JH 10.

2) At the MDT meeting DCPS represented that Taft had no nurse or psychiatric consult available, though the MDT licensed clinical social worker specifically recommended a psychiatrist and full-time nurse on staff. JH 10.

3) At the time of the MDT meeting, Taft had not accepted J█████ for admission, formed any opinion regarding the appropriateness of Taft for J█████, or even reviewed J███████ file. JH 10; testimony of Taft principal.

4) Following the MDT meeting, DCPS issued two contradictory documents to the Petitioner, one indicating that J█████ would attend Taft and the other indicating that he would attend Birney Elementary School (which had already been found to be inappropriate for J██████); neither of those documents contained any explanation of the placement as required by the IDEA. Representation of Petitioner's counsel at hearing, uncontested by DCPS counsel.

In sum, as of late August, DCPS had given the Petitioner every reason to believe that their proposed placement was inappropriate according to J██████ needs as

3

**17**

determined by the MDT, and further to believe that Taft had not accepted J████ for admission regardless. The multiple prior notices did nothing to dispel those beliefs.

In the HOD, the Hearing Officer suggests that the Petitioner is responsible for J████'s missed instruction and services because she failed to visit Taft. Because DCPS' own very specific representations of Taft clearly indicated that it could not meet the requirements outlined by the MDT, the Petitioner should not be faulted for rejecting Taft prior to a visit. Regardless, according the Taft principal's testimony, such a visit would have been fruitless, because Taft did not receive J████ file until October, and still did not have a class identified for him as of the day of the hearing.

Instead of accepting a plainly inappropriate placement, the Petitioner acted expeditiously to obtain an appropriate placement and to minimize educational detriment during the pendency of proceedings. She filed her Complaint on August 23, 2006. JH 4. Immediately afterwards, she asserted her "stay-put" rights, first with the then-current school and then with the Student Hearing Office ("SHO"). JH 19, 6. When those efforts were ignored by both the school and the SHO (an arm of DCPS), the Petitioner hounded the SHO until she obtained an expedited hearing. JH 7, 21.

Even if Taft Center is now an appropriate placement for J████, and even if he is now placed there, DCPS did not make those determinations until October 16, 2006 at the earliest. Prior to that date, Taft had not accepted J████, and all representations by DCPS led the Petitioner to believe that Taft was not an appropriate placement. The Hearing Officer should hold DCPS accountable for those representations and order DCPS to provide J████ with compensatory education to compensate him for instruction and services missed this school year.

4                                                                                          18

## Conclusion

The Petitioner has proven that DCPS did not provide J████ with an appropriate placement before October 16, 2006 and that DCPS·violated the July 10, 2006 HOD by failing to discuss compensatory education at the August 9, 2006 meeting. The Hearing Officer should amend the HOD, find that DCPS denied J████ a FAPE by failing to timely determine an appropriate placement for the 2006-2007 school year and by failing to determine compensatory education at the August 9, 2006 meeting, and order DCPS to hold an MDT meeting to determine compensatory education per the July 10, 2006 HOD and for the violations since then.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLP
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2006 I sent a copy of the foregoing by facsimile to Saurabh Gupta, Attorney-Advisor, at (202) 442-5098.

Sincerely,

Douglas Tyrka

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

J████, H██████, DOB:████/1995

      Petitioner,

v.

District of Columbia Public Schools

      Respondent

---

## DCPS RESPONSE TO PETITIONER'S MOTION FOR RECONSIDERATION OF THE HEARING OFFICER'S DECISION

      DCPS respectfully objects to the Petitioner's Motion for Reconsideration of the Hearing Officer's Decision ("Motion") because it is untimely. The Student Hearing Office's Standard Operating Procedures clearly states, "Any motion for reconsideration must be filed within *ten (10) days* of the date of the Order issued." *[Emphasis added] See SHO SOP §1005 (June 2006)*.

      Here, a motion for reconsideration was due on November 10, 2006. The HOD by Mr. St. Clair was issued on October 31, 2006. *See DCPS-01 HOD.* Petitioner's motion was received by DCPS on November 16, 2006. The attached certificate of service states it was served on November 15, 2006 but the fax time stamp affixed to the motion clearly states November 16, 2006. *See DCPS-02 Petitioner's Motion.* Moreover, since November 10, 2006 was a federal holiday, Veteran's Day, Petitioners motion was actually due one day prior on November 9, 2006. However, this point is moot since Petitioner was six (6) days late with his motion. DCPS has submitted the following exhibits in support of our opposition to this motion for the Hearing Officer to review:

          DCPS-01        **HOD (10/31/06)**

          DCPS-02        **Petitioner's Motion for Reconsideration (11/16/06)**

DCPS requests Mr. St. Clair, Impartial Hearing Officer, to dismiss the Motion because it was untimely and to establish the status of the October 31, 2006 Order to be Final.

Date Submitted:

11/21/06

Respectfully Submitted,

Saurabh Gupta
Attorney Advisor

## CERTIFICATE OF SERVICE

I, Saurabh Gupta, Esq. hereby certify that a copy of the Defendant's response was served to Douglas Tyrka, Esq., on November 21, 2006 via facsimile at 202-265-4264.

Saurabh Gupta, Esq.
Attorney Advisor
D.C. Public Schools
Office of the General Counsel
District of Columbia Public Schools

22



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

| | | | |
|---|---|---|---|
| **To:** | Tyrka | **From:** | Saurabh Gupta, Esq. |
| **Fax:** | 202-265-4264 | **Date:** | 11/21/2006 |
| **Phone:** | | **Pages:** | ___ (Including cover page) |
| **Re:** | J██ H█████ | **CC:** | |

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

•**Comments:**

DCPS Motion in Opposition to Petitioner's Motion for Reconsideration.

23

# hp LaserJet 9050mfp series



| Fax Call Report | 1 |
|---|---|

DCPS Office of General Counsel
2024425098
21-Nov-2006 01:01 PM

| Job | Date/Time | Type | Identification | Duration | Pages | Result |
|---|---|---|---|---|---|---|
| 1724 | 21-Nov-2006 12:56 PM | Send | 92654264 | 4:46 | 17 | Success |



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

| To: | Tyrka | From: | Saurabh Gupta, Esq. |
|---|---|---|---|
| Fax: | 202-265-4264 | Date: | 11/21/2006 |
| Phone: | | Pages: | (Including cover page) |
| Re: | J█ H███████ | CC: | |

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

•Comments:

DCPS   Motion in Opposition to Petitioner's Motion for Reconsideration.

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
### <u>*confidential*</u>

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE  8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

DC PUBLIC SCHOOL SYSTEM
2006 OCT 31  AM 10: 46

| | |
|---|---|
| In the Matter of ) | |
| ) | **IMPARTIAL** |
| J_____ H_____, student ) | **DUE PROCESS HEARING** |
| Date of Birth: _____, 1995 ) | |
|     Petitioner, ) | **DECISION & ORDER** |
| ) | |
|   versus ) | Request Date: September 18, 2006 |
| ) | Hearing Dates: October 12, 2006 |
| **The District of Columbia Public Schools,** ) |      October 19, 2006 |
| Home School: Birney Elementary School, ) | |
| Attending: Birney Elementary School, ) | Held at: 825 North Capitol Street, NE |
| ) |     Eighth Floor, Hearing Room 2 |
|    Respondent. ) |     Washington, D.C. 20002 |
| ) | |

**Parent:**
Yana Hamilton
1347 Stevens Road, SE
Washington, D.C. 20009

**Counsel for the Parent/Student:**
Douglas Tyrka, Esq.
**Tyrka & Associates, LLP**
1726 Connecticut Avenue,  NW Suite 400
Washington, D.C. 20009

**District of Columbia Public Schools:**
Saurabh Gupta, Esq., Attorney-Advisor
**Office of the General Counsel, DCPS**
825 North Capitol Street, NE  9th Floor
Washington, D.C. 20002

An <u>INDEX of NAMES</u> is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant witnesses. The index will be detached before release of this <u>DECISION & ORDER</u> as a public record.

i

**INDEX  of  NAMES**  for  J█████ H█████

**Hearing Date:**   October 19, 2006

Appearing on behalf of DCPS:

1. Gregory S. Matthews, Principal, Taft Center  **
2. Evan Murray, DCPS Placement Specialist/Monitor  **
3. Deborah Lyons, Special Education Coordinator, Birney Ele. School  **

Appearing on behalf of the parent/student:

1. Keren Plowden, Executive Director of Student Services, Rock Creek Acad.  **

 * Gave testimony.
** Gave testimony via telephone.

ii

## STATEMENT of the CASE

On September 18, 2006, the Counsel for the Parent filed the herein Complaint on behalf of the parent and student complaining the District of Columbia Public Schools (DCPS) denied a Free Appropriate Public Education (FAPE) to the student. Specifically, Counsel for the Parent complained of violation of the Hearing Officer's Determination/Decision (HOD) issued in this matter July 10, 2006.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 9:00 A.M., Thursday, October 12, 2006 at DCPS Headquarters, 825 North Capitol Street, NE, 8th Floor, Hearing Room 2, Washington, D.C. 20002. The hearing convened as scheduled but at the motion of the Attorney-Advisor and over the objection of the Counsel for the Parent was continued to 1:00 P.M., Thursday, October 19, 2006.

The continuation was called to order at 1:00 P.M., Thursday, October 19, 2006 in Hearing Room 2.

Parent's Motion for Default against DCPS for not filing a response was DENIED.

## JURISDICTION

The hearing convened under Public Law 108-466, The Individuals with Disabilities Education Improvement Act of 2004 and Title V of the District of Columbia Municipal Regulations.

## ISSUE:  Did DCPS violate the HOD issued in this matter July 7, 2006?

## SUMMARY of the EVIDENCE  and  FINDINGS of FACT

By facsimiles dated October 6 and 16, 2006, DCPS disclosed 12 witnesses and 4 documents.

By facsimile dated October 6, 2006, the parent disclosed 6 witnesses and 21 documents.

The documents were placed into the record and are referenced/footnoted herein where relevant.

Counsel for the Parent referenced paragraph 1 of the July 7, 2006 HOD, Parent Document No 3, and represented that DCPS had not placed the student in therapeutic placement within 5 schooldays as was ordered; that the August 9, 2006 MDT, Parent Documents Nos 9 & 10, did not have a team member to discuss the appropriateness of any placement for the student. Counsel for the Parent stated that he received two Prior Notices on the same day but could not remember the day, one to the Taft Center and one to Birney Ele. School. (Neither notice was disclosed.)

The Attorney-Advisor represented that a Notice of Placement was issued placing the student at the Taft Center but that the Placement Specialist/Monitor could not find the notice.

The Parent was ordered forward.

The Parent rested on the documents for the Denial of FAPE and called a witness for educational benefit.

The Executive Director for Student Services, Rock Creek Academy (RCA), testified via telephone; the testimony is not recounted here.

DCPS moved forward with the evidence.

The Principal of the Taft Center testified via telephone to the program, curriculum, classes, class sizes, teaching staff – 16 teachers, related services provider staff and student body – 72 – at the center; that the student-teacher ratio was 5 to 1, 10 students to a teacher and teacher assistant. The Principal testified that he had the student's August 9, 2006 IEP and had concluded that the center could implement the IEP; that a school nurse qualified to administer medication was on staff and that all IEP related services could be provided by on staff personnel. The Principal testified that he received the IEP on October 16, 2006 and that a meeting with the parent was required before the acceptance process could be completed.

The DCPS Placement Specialist/Monitor testified via telephone that he attended the August 9, 2006 MDT/IEP/Placement meeting for the student where the Taft Center was discussed; that the student's advocate considered the Taft Center inappropriate. The Specialist testified that he issued a Notice of Placement for the student to the Taft Center and sent it to Counsel for the Parent; that a packet was sent to the center but he could not find a copy of the notice nor remember the dates. On cross-examination the Specialist testified that he did not know that a therapeutic placement was required until he arrived at the August 9, 2006 meeting, and that during the meeting, he called the Principal at the Taft Center and was informed that the student's needs could be met at the center; that he also contacted the Moten Center.

The Special Education Coordinator (SEC), Birney Ele. School, testified via telephone that she was familiar with the student; that he attended Birney ES prior to enrolling at Kipp D.C. and that the parent enrolled the student at Birney ES in September 2006 as a general education student.

In consideration of the testimony, documents and arguments herein, the hearing officer found the following facts:

1.  The parent participated in the August 9, 2006 MDT/IEP/Placement meeting and was informed that the Taft Center was being considered as a placement. The parent was requested to visit the Taft Center before a Notice of Placement was to be issued. See August 9, 2006 MDT notes, Parent Document No 10.

2.  The parent did not visit the Taft Center as requested.

3.  DCPS issued a Notice of Placement for the student to the Taft Center; the parent knew the student had been placed at the Taft Center.

4.  The Taft Center could implement the August 9, 2006 IEP and provide educational benefit to the student.

## DISCUSSION and CONCLUSIONS OF LAW

### DCPS is required to make FAPE available to all children with disabilities within the jurisdiction of the District of Columbia.

34 CFR 300.300 requires DCPS to fully evaluate every child suspected of having a disability within the jurisdiction of the District of Columbia, ages 3 through 21, determine eligibility for special education services and, if eligible, provide same through an appropriate IEP and Placement.

Herein, the parent did not meet her burden. To be sure, there were procedural errors on the part of DCPS as it placed the student at the Taft Center. Still, the parent was present with an advocate at the August 9, 2006 MDT/IEP/Placement meeting and participated in the discussion about the Taft Center; the advocate objected to the placement at the center. DCPS sent a copy of the Notice of Placement to Counsel for the Parent. Secondly, there was no detriment to educational benefit, at least attributable to DCPS. See *Hymes vs. the District of Columbia* 42 IDELR 266 (D.D.C. 2005)

In consideration of the foregoing, the hearing officer made the following

## ORDER

WITH PREJUDICE, the herein
Complaint is DISMISSED.

This is **THE FINAL ADMINISTRATIVE DECISION.** Appeal can be made to a court of competent jurisdiction within ninety (90) days of the issue date of this decision.

_____    Date: _October 31, 2006_
H. St. Clair, Esq., Hearing Officer

Issued: ___10|31|06____
Student Hearing Office, DCPS

3 of 3 pages

**District of Columbia Public Schools**
***State Enforcement Investigative Division***
**STUDENT HEARING OFFICE**
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
FAX: (202) 442-5556



***FACSIMILE SHEET***

Date:  October 31, 2006

TO:  Douglas Tyrka

FROM:  STUDENT HEARING OFFICE

RE:  H⬛⬛⬛, J⬛⬛⬛

TOTAL NUMBER OF PAGES, INCLUDING COVER: 6


COMMENTS:

***CONFIDENTIALITY NTOICE***:  The information accompanying this facsimile is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the content of this telecopied information is strictly prohibited.

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘
                              TIME  : 10/31/2006 14:10
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : BROE6J471573
```

```
┌──────────────────────────────────────────────────────────────┐
│  DATE,TIME           10/31  14:08                              │
│  FAX NO./NAME        92022654264                               │
│  DURATION            00:01:36                                  │
│  PAGE(S)             06                                        │
│  RESULT              OK                                        │
│  MODE                STANDARD                                  │
│                      ECM                                       │
└──────────────────────────────────────────────────────────────┘
```

# District of Columbia Public Schools
## *State Enforcement Investigative Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
FAX: (202) 442-5556



### *FACSIMILE SHEET*

Date:  October 31, 2006

TO:  Douglas Tyrka

FROM:  STUDENT HEARING OFFICE

RE:  H██████, J██████

TOTAL NUMBER OF PAGES, INCLUDING COVER: 6

COMMENTS:

# TYRKA & ASSOCIATES, LLC

1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

Recipient:      Saurabh Gupta

Fax number:     (202) 442-5098

From:           Douglas Tyrka

Regarding:      J█████ H██████

Number of pages: 7      (including cover sheet)

Notes:

**DCPS - 02**

**Before the**
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## OFFICE OF MANAGEMENT SERVICES

| | | |
|---|---|---|
| **In re J█████ H███████,** | ) | Herbert St. Clair, Esquire |
| Special Education Student, | ) | Impartial Hearing Officer |
| | ) | |

### PETITIONER'S MOTION FOR RECONSIDERATION

The Petitioner respectfully requests that the Hearing Officer reconsider the HOD of October 31, 2006 and order DCPS to meet to determine appropriate compensatory education to J█████ to compensate him for its failure to provide an appropriate placement since the start of the 2006-2007 school year and for previous violations.[1]

The Complaint in this case alleged, *inter alia*, that DCPS: 1) had "failed to discuss or determine J███████ eligibility for compensatory education" in violation of a July 10, 2006 order; and 2) had failed to propose an appropriate school placement for J█████. The Hearing Officer issued an HOD dismissing all claims on October 31, 2006. JH 4.

In the HOD, the Hearing Officer found that DCPS' proposed placement of the Taft Center ("Taft") was appropriate, and that "there was no detriment to educational benefit, at least attributable to DCPS." HOD at 3.

The HOD does not at all address the Petitioner's claim that DCPS had failed to determine J███████ eligibility for compensatory education per the prior order.

Because DCPS unquestionably failed to discuss and determine J███████ eligibility for compensatory education per the July 10, 2006 HOD, and because DCPS' representations of Taft prior to the hearing led the Petitioner to decline to enroll J█████ there, the Hearing Officer should order DCPS to convene an MDT meeting to determine

---

[1] The Petitioner disagrees with other aspects of the HOD, but does not raise those issues in this Motion. The Petitioner does not waive her right to raise those issues in another forum.

compensatory education per the July 10, 2006 order, and to determine compensatory education for J█████ lack of education and services from the beginning of this school year until the date of the HOD.

### I. DCPS Unquestionably Failed to Discuss and Determine Compensatory Education, in Violation of the July 10, 2006 Order

A July 10, 2006 HOD ordered DCPS, *inter alia*, to convene an MDT/IEP/Placement meeting within thirty days, at which "the form, amount and delivery of compensatory education will be discussed and determined." JH 3 at 4. That clause specifically referred to an earlier HOD from July 13, 2005 ordering DCPS to determine compensatory education, which DCPS had violated. *See id.* Moreover, the July 13, 2006 HOD found that DCPS had not been providing J█████ with an appropriate placement. *See id.* at 3.

As discussed at the hearing, DCPS convened an MDT meeting following the July 13, 2006 HOD, on August 9, 2006. *See* JH 10. However, it is undisputed that DCPS failed to discuss and to determine compensatory education as ordered in the July 13, 2006 HOD. In seven pages of notes from that meeting, there is no reference to any discussion of compensatory education. *See* JH 10.

Moreover – and perhaps most importantly – DCPS has never disputed the Petitioner's contention in her Complaint that DCPS "failed to discuss or determine J█████ eligibility for compensatory education." JH 4.

Because DCPS unquestionably failed to discuss and determine compensatory education, in violation of the July 13, 2006 HOD, the Hearing Officer should order DCPS immediately to convene an MDT meeting to discuss and determine compensatory education for J█████ in accordance with the terms of the July 13, 2006 HOD.

**34**

**II.    DCPS Representations Prior to the Hearing Led the Petitioner to Believe that the Proposed Placement was Inappropriate**

The Hearing Officer has found that Taft is appropriate for J⬛⬛⬛; the Petitioner does not contest that ruling in this Motion. However, whatever Taft's actual status is or was, the undisputed facts show that DCPS' representations led the Petitioner to reject that placement and to seek immediate relief.

The following facts are undisputed:

1) At the August 9, 2006 MDT meeting, DCPS represented that Taft classes had a 9/1 student/teacher ratio, in contrast to the 4/1 ratio recommended by J⬛⬛⬛ special education teacher. JH 10.

2) At the MDT meeting DCPS represented that Taft had no nurse or psychiatric consult available, though the MDT licensed clinical social worker specifically recommended a psychiatrist and full-time nurse on staff. JH 10.

3) At the time of the MDT meeting, Taft had not accepted J⬛⬛⬛ for admission, formed any opinion regarding the appropriateness of Taft for J⬛⬛⬛, or even reviewed J⬛⬛⬛ file. JH 10; testimony of Taft principal.

4) Following the MDT meeting, DCPS issued two contradictory documents to the Petitioner, one indicating that J⬛⬛⬛ would attend Taft and the other indicating that he would attend Birney Elementary School (which had already been found to be inappropriate for J⬛⬛⬛); neither of those documents contained any explanation of the placement as required by the IDEA. Representation of Petitioner's counsel at hearing, uncontested by DCPS counsel.

In sum, as of late August, DCPS had given the Petitioner every reason to believe that their proposed placement was inappropriate according to J⬛⬛⬛ needs as

3

determined by the MDT, and further to believe that Taft had not accepted J██████ for admission regardless. The multiple prior notices did nothing to dispel those beliefs.

In the HOD, the Hearing Officer suggests that the Petitioner is responsible for J██████ missed instruction and services because she failed to visit Taft. Because DCPS' own very specific representations of Taft clearly indicated that it could not meet the requirements outlined by the MDT, the Petitioner should not be faulted for rejecting Taft prior to a visit. Regardless, according the Taft principal's testimony, such a visit would have been fruitless, because Taft did not receive J██████ file until October, and still did not have a class identified for him as of the day of the hearing.

Instead of accepting a plainly inappropriate placement, the Petitioner acted expeditiously to obtain an appropriate placement and to minimize educational detriment during the pendency of proceedings. She filed her Complaint on August 23, 2006. JH 4. Immediately afterwards, she asserted her "stay-put" rights, first with the then-current school and then with the Student Hearing Office ("SHO"). JH 19, 6. When those efforts were ignored by both the school and the SHO (an arm of DCPS), the Petitioner hounded the SHO until she obtained an expedited hearing. JH 7, 21.

Even if Taft Center is now an appropriate placement for J██████, and even if he is now placed there, DCPS did not make those determinations until October 16, 2006 at the earliest. Prior to that date, Taft had not accepted J██████ and all representations by DCPS led the Petitioner to believe that Taft was not an appropriate placement. The Hearing Officer should hold DCPS accountable for those representations and order DCPS to provide J██████ with compensatory education to compensate him for instruction and services missed this school year.

## Conclusion

The Petitioner has proven that DCPS did not provide J████ with an appropriate placement before October 16, 2006 and that DCPS violated the July 10, 2006 HOD by failing to discuss compensatory education at the August 9, 2006 meeting. The Hearing Officer should amend the HOD, find that DCPS denied J████ a FAPE by failing to timely determine an appropriate placement for the 2006-2007 school year and by failing to determine compensatory education at the August 9, 2006 meeting, and order DCPS to hold an MDT meeting to determine compensatory education per the July 10, 2006 HOD and for the violations since then.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLP
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2006 I sent a copy of the foregoing by

facsimile to Saurabh Gupta, Attorney-Advisor, at (202) 442-5098.

Sincerely,

Douglas Tyrka

**Before the**
**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**OFFICE OF MANAGEMENT SERVICES**

|  |  |  |
|---|---|---|
| In re J███ H██████, | ) | Herbert St. Clair, Esquire |
| Special Education Student, | ) | Impartial Hearing Officer |
|  | ) |  |

## PETITIONER'S REPLY REGARDING RECONSIDERATION

The Motion was not untimely. The SOPs allow "ten (10) days" for a motion for reconsideration. The SOPs are unclear as to whether "days" refers to calendar or business days. There is no general definition of "day" in the SOPs; many other sections of the SOPs specify calendar or business days. *See, e.g.,* § 304 A.3.a. ("no more than ten (10) calendar days"); § 304 A.3.b. ("no later than 5 business days"); § 304 D.1.b. ("within 3 business days").

Where the IDEA is silent regarding a procedural rule, the most closely analogous state rule must be applied. *See, e.g., Spiegler v. Dist. of Columbia,* 866 F.2d 461 (D.C. Cir. 1989)(applying local limitations period for appeals of administrative decision to federal actions brought following adverse administrative decisions under predecessor to IDEA).

The most closely analogous state rule is Super. Ct. Civ. R. 6(a), which provides:

When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. As used in this Rule and in Rule 77(c), "legal holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States, or by the District of Columbia.

The Federal Rules have a nearly identical provision:

When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. As

39

used in this rule and in Rule 77(c), "legal holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President of the Congress of the United States, or by the state in which the district court is held.

Fed. R. Civ. P. 6(a). The HOD was issued on October 31, 2006. Excluding the weekends and Veteran's Day, the Motion was therefore due on November 15, 2006.

Timeliness is determined as of filing, not as of service. The Respondent correctly notes that it did not receive the Motion until just after midnight, November 16, 2006.[1] The Certificate of Service is therefore incorrect (by a few minutes), for which Petitioner's counsel apologizes. However, that does not impact the timing of the filing.

Petitioner's counsel attempted to fax the Motion to the SHO for several minutes before faxing it to the Respondent, before midnight the night of November 15, 2006. Unfortunately, for an unknown reason, the SHO fax did not respond.

Rather than burden the Hearing Officer with a lengthy memorandum on those facts, on November 16, 2006, Petitioner's counsel personally delivered the Motion both to the Hearing Officer and to Chief Hearing Officer Smith, notified them of facts outlined in the preceding paragraph, and asked whether a motion for leave to late file was necessary.[2] The Hearing Officer deferred to Mr. Smith; Mr. Smith indicated that no motion for leave was necessary, and that he would accept the Motion as filed.

Because motions timelines are not jurisdictional, any adjudicant may of course accept an untimely motion. Thus, even had the Motion been untimely, Mr. Smith's acceptance of it would have negated any objection.

---

[1] In fact, contrary to the fax line, the fax was delivered at approximately 12:02 a.m. on November 16, not 12:07 a.m. The clock on the fax machine used is approximately 5 minutes fast.
[2] Petitioner's counsel made his report to Mr. Smith in the presence of the SHO staff, to allow for verification of the fact that the fax machine was not responding.

11/22/2006  13:13    2022654264                TYRKA & ASSOCIATES                        PAGE  04/05

Obviously, if the Hearing Officer prefers that the Petitioner file a motion for leave to late file, or a motion to treat the Motion as timely filed, the Petitioner is ready to do so.

Given that DCPS' opposes the Motion only on the basis of timeliness, if the Hearing Officer resolves that issue in the Petitioner's favor, he should treat the Motion as conceded and grant the relief requested.

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLP
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20009
(ph) (202) 265-4260
(f) (202) 265-4264

41

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 22, 2006 I sent a copy of the foregoing by

facsimile to Saurabh Gupta, Attorney-Advisor, at (202) 442-5098.

Sincerely,

Douglas Tyrka

42

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**     Attorney Advisor Saurabh Gupta ~ OGC
                   Hearing Officer Herbert St. Clair ~ SHO

**Fax Number:**

**From:**          Douglas Tyrka

**Regarding:**     J█████ H████

**# of pages:**    5

**Notes:**         Petitioner's Reply Regarding Reconsideration

---

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

43

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

J█████ H█████, DOB: █████1995

    Petitioner,

v.

District of Columbia Public Schools

    Respondent

---

## DCPS' OBJECTION TO PETITIONER'S REPLY REGARDING RECONSIDERATION

      DCPS respectfully objects to the Petitioner's Reply Regarding Reconsideration of the Hearing Officer's Decision ("Reply"). DCPS asserts Petitioner does not have a right to respond to DCPS' response. Moreover, Petitioners do not have a right to reply to their own motion. This is not an exercise in motion writing. Petitioners are the moving party and DCPS is the responding party. When the responding party files their response to a motion the moving party then does not inherit the title of responding party. Post-hearing motions are not intended to be a back and forth process. Each party files one set of papers with the hearing officer. Contrary to Petitioners belief and utilization of the post hearing motion process, the titles "moving" and "responding" party remain constant through-out the process (in the absence of cross claims). Petitioners are attempting to litigate outside of the intended forum and thus circumvent this process. Petitioners should have included the contents of their reply in their initial motion for reconsideration. Petitioners had two full weeks from the issuance of the HOD to anticipate, analyze, and develop all issues and arguments in their initial post hearing motion. DCPS should not be harmed because of Petitioners' glaringly obvious omission in the initial motion. DCPS requests Petitioners reply and any inevitable subsequent responses on this matter be stricken and not used by the hearing officer.

DCPS requests Mr. St. Clair, Impartial Hearing Officer, to strike Petitioner's Reply Regarding Reconsideration because as the moving party Petitioners have no right to reply to their own motion or to the Responding Party's, DCPS, response.

Date Submitted:

11/24/06

Respectfully Submitted,

Saurabh Gupta
Attorney Advisor

## CERTIFICATE OF SERVICE

I, Saurabh Gupta, Esq. hereby certify that a copy of the Defendant's response was served to Douglas Tyrka, Esq., on November 24, 2006 via facsimile at 202-265-4264.

Saurabh Gupta, Esq.
Attorney Advisor
D.C. Public Schools
Office of the General Counsel
District of Columbia Public Schools

45



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

**To:**    Doug Tyrka                    **From:**  Saurabh Gupta, Esq.

**Fax:**   202-265-4264                  **Date:**   November 24, 2006

**Phone:**                               **Pages:** ____ (Including cover page)

**Re:**    J. H█████                     **CC:** Student Hearing Office (Hand Delivery)

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

•**Comments:**

DCPS  Response to Petitioner's Reply

46



# hp LaserJet 9050mfp series

## Fax Call Report                                                    1

DCPS Office of General Counsel
2024425098
24-Nov-2006 03:46 PM

| Job | Date/Time | Type | Identification | Duration | Pages | Result |
|-----|-----------|------|----------------|----------|-------|--------|
| 1840 | 24-Nov-2006 03:45 PM | Send | 92654264 | 1:19 | 3 | Success |



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

| To: | Doug Tyrka | From: | Saurabh Gupta, Esq. |
|-----|-----------|-------|---------------------|
| Fax: | 202-265-4264 | Date: | November 24, 2006 |
| Phone: | | Pages: | (including cover page) |
| Re: | J. H██████ | CC: | Student Hearing office (Hand Delivery) |

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

·Comments:

DCPS  Response to Petitioner's Reply

47

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Hearing Officer St. Clair - SHO |
| | Saurabh Gupta - OGC |
| *Fax Number:* | 202-442-5556 |
| | 202-442-5098 |
| *From:* | Camille McKenzie |
| *Regarding:* | J████ H███████ |
| *# of pages:* | 4 |
| *Notes:* | Petitioner's Opposition to Respondent's Objection to Petitioner's Reply Regarding Reconsideration |

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

Before the
**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**OFFICE OF MANAGEMENT SERVICES**

|  |  |  |
|---|---|---|
| In re J████ H███████, | ) | Herbert St. Clair, Esquire |
| Special Education Student, | ) | Impartial Hearing Officer |
|  | ) |  |

## PETITIONER'S OPPOSITION TO RESPONDENT'S OBJECTION TO PETITIONER'S REPLY REGARDING RECONSIDERATION

Rather than burden the Hearing Officer with further argument, the Petitioner will be direct and blunt: Respondent's counsel is clearly completely ignorant of basic motions practice. The standard in motions practice, parallel to that of openings, closings, and witness examination, is for the initiating party to "go" first and last. *See, e.g.*, LCvR 7(d) (the U.S. District Court Rules for the District of Columbia, also known as "the local rules")("Within five days after service of the memorandum in opposition, the moving party may serve and file a reply memorandum.").[1]

This age-old practice aside, given that the Respondent's only objection to the Motion was that it was untimely, and the Reply addressed only that argument, it is very strange to say, as Respondent does, that the absence of an account of how and when the completed Motion was filed was a "glaringly obvious omission" from the Motion itself. Absent precognition, it is unclear why the Petitioner "should have included the contents of their reply in their initial motion for reconsideration."

As a technical matter, the Respondent's arguments do raise an issue. Given that the Respondent's only objection to the Petitioner's Motion was that it was untimely, rather than file an opposition, the Respondent should have moved to strike the Motion as

---

[1] If there is any remaining question, the Petitioner can submit countless scheduling orders and docket reports exhibiting the same pattern of motion-opposition-reply.

49

untimely. The Petitioner's Reply would then have been an opposition to the motion to

strike, and the Respondent would not have had its current complaint.


Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLP
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 27, 2006 I sent a copy of the foregoing by facsimile to Saurabh Gupta, Attorney-Advisor, at (202) 442-5098.

Sincerely,

Douglas Tyrka

51

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

In the Matter of:                    )        BEFORE A SPECIAL EDUCATION
                                     )
J█████ H█████                        )        INDEPENDENT HEARING OFFICER
_____        )
              Petitioner             )
              Vs.                    )
                                     )
DCPS_____)        STATE EDUCATION AGENCY
              Respondent

ON THIS DAY came on to be heard Respondent's Notice of Insufficiency of Due Process Complaint filed on September 28, 2006 in the above styled cause.

## ORDER

After reviewing the evidence, the Motion is:

___X___ DENIED.

_____ GRANTED:

_____ OTHER:

Respondent's Motion refers to a Complaint filed by Petitioner on September 14, 2006. Petitioner responded by stating that no such complaint was filed on September 14, 2006.

SIGNED this date _____10 – 7 – 06_____.

_____
Impartial Special Education Hearing Officer

Issue Date:_____

Original to SHO – Student's File
Copy To:        Parent' - C/O:        Douglas Tyrka, Esq.
                DCPS - C/O:           Saurabh Gupta, Esq.
                Charter School - C/O: _____

DC PUBLIC SCHOOL SYSTEM
2006 OCT -7 PM 4: 44

52

*SHO*



DISTRICT OF COLUMBIA
PUBLIC SCHOOLS

**Office of the Superintendent**
Office of the General Counsel
825 North Capitol Street, N.E., 9ᵗʰ Floor
Washington, D.C. 20002-4232
202-442-5000       Fax: 202-442-5098
www.k12.dc.us

October 6, 2006

Douglas Tyrka, Esq.
1726 Connecticut Ave, NW
Suite 400
Washington, D.C. 20009

## DISCLOSURE STATEMENT

## VIA FACSIMILE 202-265-4264

| | |
|---|---|
| **Subject:** | **Due Process Hearing for J██████ H████** |
| **DOB:** | **??????** |
| **Attending & Home School:** | **Kipp** |

Dear Mr. Tyrka:

At the upcoming due process hearing or any subsequent hearing in the above-referenced matter, *allegedly* scheduled for Thursday, October 12, 2006 at 9:00 a.m. , or any subsequent hearing and pursuant to the Individuals with Disabilities Education Improvement Act (IDEIA) of 2004 and 34 C.F.R 300.509(a)(3) & (b) (or any subsequent regulations or amendments) in addition to any documents and witnesses disclosed by the parent and any documents previously disclosed by either DCPS or the parent for an earlier hearing for this student:

### Witnesses

Mary Lee Phelps, Interim Associate Superintendent for Special Education Reform, DCPS and/or designee(s);
Carol Helton, Supervisor, School Support, DCPS and/or designee(s);
Principal, Kipp and/or designee(s);
Special Education Coordinator, Kipp and/or designee(s);
Special Education Coordinator, Kipp and/or designee(s);
DCPS Placement Specialist, and or designee(s);
J██████ current and/or former Regular and/or Special Education Teacher(s), and/or designee(s);
Registrar(s) and/or Attendance Counselor(s), Kipp, and/or designee(s);

### Documents

| | |
|---|---|
| DCPS-01 | Petitioner's Motion for Expedited Hearing  (9/14/06) |
| DCPS-02 | DCPS Notice of Insufficiency of Due Process Complaint (9/28/06) |
| DCPS-03 | Petitioner's Answer to Notice of Insufficiency (9/28/06) |

53

Page Two
October 6, 2006
RE:   Due Process Hearing for J██████ H██████

DCPS reserves the right to object to expert testimony by any witness whose curriculum vitae has not been disclosed to the Office of the General Counsel for DCPS at least five (5) business days prior to the hearing.

DCPS also reserves the right to examine any witnesses called or identified as a potential witness by the representative of the student as though the witness was called by DCPS.

DCPS furthermore reserves the right to rely upon and /or use any documents/witnesses presented and/or disclosed by the parent that DCPS deems relevant in this case. Also, DCPS reserves the right to call rebuttal witnesses in its case.

If you wish to discuss any aspect of this case further, or have questions, please contact me at (202) 442-5178.

Sincerely,

Saurabh Gupta
Attorney Advisor

cc: Student Hearing Office

54

Before the
DISTRICT OF COLUMBIA PUBLIC SCHOOLS
OFFICE OF MANAGEMENT SERVICES

In re J██████ H████████,          )
    Special Education Student          )
                             )

## PETITIONER'S MOTION FOR AN EXPEDITED HEARING

For the reasons stated herein, the Petitioner respectfully requests that this due process complaint notice be immediately scheduled for an expedited hearing pursuant to Section 1007 of the Student Hearing Office Standard Operating Procedures ("SOPs").

J██████ is an eleven-year-old special needs student. During the 2005-2006 SY J██████ was placed at Kipp DC: Aim Academy ("Kipp") a public charter school in the District of Columbia.

On August 23, 2006, the Petitioner filed a due process complaint seeking Joshua's immediate placement at Rock Creek Academy, a private special education school located in the District of Columbia. Subsequent to the filing of this complaint, Kipp informed the Petitioner that J██████ would not be allowed to attend its school for the 2006-2007 SY.

On August 29, 2006, the Petitioner filed a motion requesting that the Hearing Officer determine J██████ current placement for purposes of the IDEA's stay-put provision. See 20 U.S.C. § 1415(j). It has now been several weeks since this motion was filed, the Respondent has never filed a response, and a ruling has not been issued.

J██████ is not attending school, and he has not received any special education since the start of the 2006-2007 SY. For these reasons, the Petitioner respectfully requests that her prior motion for an interim placement be granted, or that this matter be immediately scheduled for an expedited due process hearing.

55

DCPS – 01

Respectfully Submitted by,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20008
(ph) (202) 265-4260
(f) (202) 265-4264

2

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**     SHO & OGC

**Fax Number:**

**From:**     Keith Coyle

**Regarding:**     J███ H██████

**# of pages:**     4

**Notes:**

**CONFIDENTIALITY NOTICE**

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error and any review, dissemination, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

57

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

### Certificate of Service

Counsel for the Petitioner hereby certifies that a copy of this MOTION has been

filed with the Student Hearing Office and sent via facsimile to Counsel for the

Respondent.

Respectfully Submitted by,

Douglas Tyrka
Tyrka & Nober, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20008
(ph) (202) 265-4260
(f) (202) 265-4264

DATE FILED:  September 14, 2006

3

58

State Education Agency for the District of Columbia
State Enforcement and Investigation Division (SEID)
Special Education Programs

J██████ H██████, DOB:  ???

      Petitioner,

v.

District of Columbia Public Schools

      Respondent

---

## DCPS NOTICE OF INSUFFICIENCY OF DUE PROCESS COMPLAINT NOTICE

      The District of Columbia Public School (hereinafter "DCPS"), by and through the undersigned Attorney Advisor, hereby provides notice to the assigned Hearing Officer and Counsel for Parent, through this Notice of Insufficiency, pursuant to the Individuals with Disability Improvement Act (hereinafter "IDEA"), Sec. 615(c)(2)(A), that the Due Process Complaint Notice (hereinafter "the Complaint"), filed on **September 14, 2006** fails to meet the requirements of IDEA Sec/. 615(b)(7)(A)(ii).  Specifically, DCPS asserts the following:

      1. The complaint filed under IDEA Sec. 615(b) fails to identify the student's date of birth.  The claim is silent on this fact.

      2. The complaint filed under IDEA Sec. 615(b) fails to identify the parent.  The claim is silent on this fact.  No guardian is provided either

      3. The complaint filed under IDEA Sec. 615(b) fails to identify parent's and/or guardian's address. The claim is silent on this fact.

      4. The complaint filed under IDEA Sec. 615(b) fails to state the proper date for a motion for insufficiency.  The complaint was filed on September 14, 2006.  The motion for insufficiency is not due for fifteen (15) days after the receipt of the complaint.  The file states September 24, 2006 as the due date. DCPS asserts an expedited date for filing

59

an insufficiency motion unfairly hinders DCPS' ability to defend this complaint. This even more true in a situation where important information is missing from the complaint, which is needed just to identify the student and parent.

DCPS submits that the absence of the above referenced information has resulted in insufficient notice to the agency. As such, pursuant to IDEA Sec. 615(b)(7)(B), the Petitioner may not have a due process hearing until he/she files a notice that meets the requirements of IDEA Sec. 615(b)(7)(A)(ii).

Submitted by:

Saurabh Gupta
Attorney Advisor
Office of the General Counsel
District of Columbia Public Schools
Telephone: (202) 442-5178
Fax: (202) 442-5097/8

## CERTIFICATE OF SERVICE

I, Saurabh Gupta, Esq. hereby certify that a copy of the Defendant's response was served to Douglas Tyrka, Esq., on September 28, 2006 via facsimile at 202-265-4264.

Saurabh Gupta, Esq.
D.C. Public Schools
Office of the General Counsel
District of Columbia Public Schools

60

## MESSAGE CONFIRMATION

09/28/2006   15:17
ID=OFFICE OF THE GENERAL COUNSEL

| DATE | S.R-TIME | DISTANT STATION ID | MODE | PAGES | RESULT | S.C. |
|------|----------|--------------------|------|-------|--------|------|
| 09/28 | 01'08" | 2022654264 | TX | 005 | OK | 0000 |

09/28/2006    15:16    OFFICE OF THE GENERAL COUNSEL → 92654264    NO.285    P001



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

| To: Douglas Tyrka | From: Saurabh Gupta |
|---|---|
| Fax: 265-4264 | Date: 9/28/06 |
| Phone: | Pages: 5 (including cover page) |
| Re: J████ H████████ | CC: |

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

•Comments:

1. DCPS response to complaint date 9/14/06

2. DCPS motion for insufficiency to above dated complaint

61

09/28/2006   16:16      2022654264                    TYRKA & ASSOCIATES                      01/03

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW  ♦  Suite 400  ♦  Washington DC 20009  ♦  Phone: (202)265-4260  ♦  Fax: (202)265-4264

*Recipient:*       SHO & Saurabh Gupta (OGC)

*Fax Number:*

*From:*            Douglas Tyrka

*Regarding:*       J████ H██████ (9/14/06)

*# of pages:*      3

*Notes:*           Petitioner's Response to Notice of Insufficiency

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

**Before the**
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## OFFICE OF MANAGEMENT SERVICES

|                                            |     |
| ------------------------------------------ | --- |
| **In re J▮▮▮ H▮▮▮▮**                        | )   |
|     Special Education Student, | )   |
|                                            | )   |

## PETITIONER'S RESPONSE TO NOTICE OF INSUFFICIENCY

No complaint was filed on behalf of this student on September 14, 2006.

Respectfully Submitted by,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20008
(ph) (202) 265-4260
(f) (202) 265-4264

63

# TYRKA & ASSOCIATES, LLC

1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

### Certificate of Service

Counsel for the Petitioner hereby certifies that a copy of this RESPONSE has

been filed with the Student Hearing Office and sent via facsimile to Counsel for the

Respondent, Saurabh Gupta.

Respectfully Submitted by,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20008
(ph) (202) 265-4260
(f) (202) 265-4264

**DATE FILED:**    **September 28, 2006**

2

64

# DUE PROCESS COMPLAINT NOTICE
## In re Joshua Hamilton
## August 23, 2006

Petitioner:        Yana Hamilton
Student:           J████ H██████
DOB:               ███/94
Current School:    Kipp DC:  Aim Academy ("Kipp DC")
Residence:         1347 Stevens Road, SE
                   Washington, DC 20009

**Petitioner's Contact Information for Special Education Purposes:**
                   Tyrka & Houck, LLP
                   1726 Connecticut Ave, N.W. Suite 400
                   Washington, D.C.  20009
                   Tel:  202-265-4260
                   Fax: 202-265-4264

## Violations:

1.  Failure to comply with a July 10, 2006 Hearing Officer's Determination ("HOD").

## Facts:

1.  A July 10, 2006 HOD ordered DCPS to, *inter alia*, convene an MDT meeting within thirty (30) days to:
    a)  review J██████ current evaluations,
    b)  revise his IEP accordingly,
    c)  discuss and determine an appropriate full-time therapeutic placement, and
    d)  discuss and determine the form, amount and delivery of compensatory education as prescribed in a previous HOD, dated July 13, 2005.
2.  An MDT meeting was convened by DCPS at Kipp DC on August 9, 2006.
3.  At the August 9, 2006 MDT meeting:
    a)  DCPS:
        i)  arrived unprepared to discuss J██████ need for a full-time therapeutic placement;
        ii) placed a phone call to one of its placement specialist during the meeting to discuss J██████ need for a full-time therapeutic placement;
        iii) proposed Taft Center as an appropriate full-time therapeutic placement after making a phone call to one of its placement specialists;
        iv) acknowledged that the Taft Center:
            (1) had not yet received or reviewed J██████ educational file;
            (2) had not yet accepted J██████ for admission;
            (3) offered a classroom setting with a student-to-teacher ratio of 9 to 1;
            (4) did not have nurse or psychiatrist available on staff;
        v)  failed to discuss or determine J██████ eligibility for compensatory education.

     b) J█████ special education teacher at Kipp DC reported that he requires a classroom setting with a small student-to-teacher ratio of approximately 4 to 1;

     c) Kipp DC's licensed clinical social worker reported that J█████ requires a placement with a full-time nurse and psychiatrist on staff.

     d) the Petitioner's advocate:

        i) renewed the Petitioner's proposed placement of Rock Creek Academy ("RCA") for J█████;

        ii) reported that:

           (1) J█████ has been interviewed by and accepted for admission into RCA;

           (2) the Petitioner had visited RCA and conducted a tour of the school;

        iii) discussed the appropriateness of RCA as a proposed placement for J█████, including its:

           (1) classroom setting offering a student-to-teacher ratio of approximately 4/5 to 1;

           (2) availability of an on staff nurse and psychiatrist;

           (3) crisis intervention and behavior management program.

4. DCPS has never issued a valid prior notice of placement for J█████ at the Taft Center.

5. DCPS' proposed placement for J█████ at the Taft Center is not appropriate.

6. J█████ will receive educational benefit at RCA.

7. The Petitioner's proposed placement for J█████ at RCA is appropriate.

## Proposed resolution:

1. DCPS to immediately fund and place J█████ at RCA with transportation.

2. DCPS to immediately convene an MDT to develop an appropriate compensatory education plan for its failure to comply with the July 10, 2006 and July 13, 2005 HODs.

3. DCPS to reconvene the MDT within thirty (30) days of J█████ enrollment at RCA to:

     a) review all current evaluations of J█████,

     b) revise his IEP accordingly, and

     c) develop an appropriate compensatory education plan to compensate J█████ for its failure to provide an appropriate placement from the time of the filing of this complaint until the date of his enrollment at RCA.

4. DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

## Resolution Meeting:

1. The Petitioner contends that the entire IEP Team and a representative of the LEA with authority to:

     a. immediately fund and place J█████ at RCA with transportation,

     b. immediately convene an MDT to develop an appropriate compensatory education plan for its failure to comply with the July 10, 2006 and July 13, 2005 HODs, and

     c. reconvene the MDT within thirty (30) days of J█████ enrollment at RCA

are necessary attendees at any resolution meeting.

2. If these individuals are not going to be in attendance, Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.

3. The Petitioner contends that any meeting not attended by the identified individuals is not a valid resolution session, but rather an informal settlement discussion.

4. The Petitioner will be accompanied by his or her attorney at any resolution session convened subsequent to the filing of this complaint and will record any resolution session by analog or digital means.

5. Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.

Respectfully Submitted,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20008
(ph) (202) 265-4260
(f) (202) 265-4264

67

# TYRKA & HOUCK, LLP
### 1726 Connecticut Ave., NW, Suite 400
### Washington, DC 20009
### (202) 265-4260 (ph)
### (202) 265-4264 (fax)

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Houck or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Houck expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Houck. Thank you.

Recipient:        SHO

Fax number:

From:             Douglas Tyrka

Regarding:        J█████ H█████

Number of pages:  4 (including cover sheet)

Notes:        Due Process Complaint

68

# TYRKA & HOUCK, LLP
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Houck or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Houck expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Houck. Thank you.

Recipient:      SHO

Fax number:

From:           Douglas Tyrka

Regarding:      J███ H██████

Number of pages:  4 (including cover sheet)

Notes:          Due Process Complaint

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUCLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

 **Fax**

# Time Sensitive Materials Attached

**Prompt Attention: Attorney: Douglas Tyrka, Esq.**
**Parent: Yana Hamilton**

Telephone Number: **(202) 265-4260**                    Pages: **3**
Fax Number: **(202) 265-4264**                    Date: **August 23, 2006**

---

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: J██████ H████████
School:  **Attending Kipp DC**

The Complaint Intake Unit is responsible for providing parties with
information notice that a Due Process Complaint has been filed with the
Student Hearing Office.  If you have questions about the attached Notice,
please contact the Complaint Intake Unit at (202) 724-6556.  Otherwise, if
you have questions about the content of the compliant you should contact
your legal counsel for further advice.

**Thank You**
**Pamela Brown**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally
privileged.  The information is intended only for use of the individual or entity named Above, if you are not the
intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in
reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please
immediately notify us by telephone For return of the original document to us.

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 08/24/2006 09:13
                                    NAME  : STATE ENFORCEMENT
                                    FAX   : 2024425253
                                    TEL   :
                                    SER.# : 000D6J436181
```

```
   DATE,TIME              08/24  09:12
   FAX NO./NAME           92654264
   DURATION               00:00:56
   PAGE(S)                03
   RESULT                 OK
   MODE                   STANDARD
                          ECM
```

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney: Douglas Tyrka, Esq.
Parent: Yana Hamilton**

Telephone Number: **(202) 265-4260**
Fax Number: **(202) 265-4264**

Pages: **3**
Date: **August 23, 2006**

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: **J██████ H███████**
School:  **Attending Kipp DC**

The Complaint Intake Unit is responsible for providing parties with
information notice that a Due Process Complaint has been filed with the
Student Hearing Office.  If you have questions about the attached Notice,
please contact the Complaint Intake Unit at (202) 724-6556.  Otherwise, if
you have questions about the content of the compliant you should contact
your legal counsel for further advice.

**Thank You
Pamela Brown**

71

# STATE EDUCATION AGENCY
# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| H████████, J.    Petitioner | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| | ) | |
| DCPS | ) | |
| Attending Kipp DC | ) | DISTRICT OF COLUMBIA |
| | | |
| Respondent | ) | PUBLIC SCHOOLS |

# SCHEDULING MEMORANDUM

1.    A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings.**

2.    The complaint notice was filed on **August 23, 2006**

3.    The deadline for the resolution meeting is **September 7, 2006** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A.    ***Prior Written Notice Not Issued by the Local Educational Agency***.  If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

1.    An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
2.    A description of other options that the IEP Team considered and the reasons why those options were rejected;
3.    A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

Rev'd. 7/6/05

72

A description of the document is relevant to the agency's proposal or refusal.

B.    Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **September 2, 2006**.

C.    *__Deficiency Notice__*.  A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.    The deadline for filing a deficiency notice is **September 7, 2006**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

*Recipient:*    SHO & OGC

*Fax Number:*

*From:*    Keith Coyle

*Regarding:*    J█████ H███████

*# of pages:*    4

*Notes:*

D.O.B █████/██ wrong ████/1995

ID # 905583

schedule by 10/16/06

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

74

**Before the**
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## OFFICE OF MANAGEMENT SERVICES

In re J██████ H████████,                  )
          Special Education Student,      )
                                          )
                                          )

## PETITIONER'S MOTION FOR AN EXPEDITED HEARING

For the reasons stated herein, the Petitioner respectfully requests that this due process complaint notice be immediately scheduled for an expedited hearing pursuant to Section 1007 of the Student Hearing Office Standard Operating Procedures ("SOPs").

J████ is an eleven-year-old special needs student. During the 2005-2006 SY, J████ was placed at Kipp DC: Aim Academy ("Kipp"), a public charter school in the District of Columbia.

On August 23, 2006, the Petitioner filed a due process complaint seeking J████ immediate placement at Rock Creek Academy, a private special education school located in the District of Columbia. Subsequent to the filing of this complaint, Kipp informed the Petitioner that J████ would not be allowed to attend its school for the 2006-2007 SY.

On August 29, 2006, the Petitioner filed a motion requesting that the Hearing Officer determine J████ current placement for purposes of the IDEA's stay-put provision. See 20 U.S.C. § 1415(j). It has now been several weeks since this motion was filed, the Respondent has never filed a response, and a ruling has not been issued.

J████ is not attending school, and he has not received any special education since the start of the 2006-2007 SY. For these reasons, the Petitioner respectfully requests that her prior motion for an interim placement be granted, or that this matter be immediately scheduled for an expedited due process hearing.

75

Respectfully Submitted by,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20008
(ph) (202) 265-4260
(f) (202) 265-4264

2

# TYRKA &
## ASSOCIATES, LLC

1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

### Certificate of Service

Counsel for the Petitioner hereby certifies that a copy of this MOTION has been filed with the Student Hearing Office and sent via facsimile to Counsel for the Respondent.

Respectfully Submitted by,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20008
(ph) (202) 265-4260
(f) (202) 265-4264

**DATE FILED:** September 14, 2006

3

# STATE EDUCATION AGENCY
# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| H████████, J.          Petitioner | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| | ) | ) |
| **DCPS** | | |
| **Attending Kipp DC-Aim Academy** | ) | DISTRICT OF COLUMBIA |
| | | |
| Respondent | ) | PUBLIC SCHOOLS |

## EXPEDITED SCHEDULING MEMORANDUM

1.  A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **<u>The Student Hearing Office does not schedule or participate in resolution meetings</u>**.

2.  The complaint notice was filed on **September 14, 2006**

3.  The deadline for the resolution meeting is **September 24, 2006** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

**RESPONSE TO THE COMPLAINT**

A.  ***Prior Written Notice Not Issued by the Local Educational Agency***.  If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

   1.  An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
   2.  A description of other options that the IEP Team considered and the reasons why those options were rejected;
   3.  A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

Rev'd. 7/6/05

78

A description of the factors that is relevant to the agency's proposal or refusal

B. Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **September 24, 2006**.

C. *Deficiency Notice*. A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, within 15 days of receiving the notice of the complaint, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D. The deadline for filing a deficiency notice is **September 24, 2006**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence. A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice. The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law. The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUCLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney:Douglas Tyrka, Esq.**
**Parent:**

Telephone Number: **(202) 265-4260**
Fax Number: **(202) 265-4264**

Pages: **3**
Date: **September 14, 2006**

---

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: J█████ H███████
School: **Attending Kipp DC - Aim Academy**

The Complaint Intake Unit is responsible for providing parties with information notice that a Due Process Complaint has been filed with the Student Hearing Office. If you have questions about the attached Notice, please contact the Complaint Intake Unit at (202) 724-6556. Otherwise, if you have questions about the content of the compliant you should contact your legal counsel for further advice.

**Thank You**
**Marica Brown**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged. The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited. If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

```
              TRANSMISSION VERIFICATION REPORT

                                    TIME : 09/19/2006 08:55
                                    NAME : STATE ENFORCEMENT
                                    FAX  : 2024425253
                                    TEL  :
                                    SER.# : 000D6J436181


         DATE,TIME              09/19  08:54
         FAX NO./NAME           92654264
         DURATION               00:00:58
         PAGE(S)                03
         RESULT                 OK
         MODE                   STANDARD
                                ECM
```

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUCLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

# Time Sensitive Materials Attached

**Prompt Attention: Attorney:Douglas Tyrka, Esq.**
**Parent:**

Telephone Number: **(202) 265-4260**          Pages: **3**
Fax Number: **(202) 265-4264**               Date: **September 14, 2006**

---

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: J█████ H████████
School:  **Attending Kipp DC - Aim Academy**

The Complaint Intake Unit is responsible for providing parties with
information notice that a Due Process Complaint has been filed with the
Student Hearing Office.  If you have questions about the attached Notice,
please contact the Complaint Intake Unit at (202) 724-6556.  Otherwise, if
you have questions about the content of the compliant you should contact
your legal counsel for further advice.

**Thank You**

81

TRANSMISSION VERIFICATION REPORT

```
                              TIME  : 09/18/2006 17:02
                              NAME  : STUDENT HEARINGS OFF
                              FAX   : 2024425556
                              TEL   : 2024425432
                              SER.# : BROH3J608601
```

```
DATE,TIME              09/18  17:01
FAX NO./NAME           92654264
DURATION               00:00:28
PAGE(S)                01
RESULT                 OK
MODE                   STANDARD
                       ECM
```

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



X EXPEDITED HEARING

HEARING NOTICE

MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:    Parent (or Representative): _D. TYRKA_    Fax No.: _265-4264_

LEA Legal Counsel: _OGC_

RE: _H██████, J█████_ _____ and (LEA) DOB: _____
            Student's Name

FROM:  __SHARON NEWSOME__
            Special Education Student Hearing Office Coordinator

DATE SENT: ___9/18/06___

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_9/18/06_. Please be advised that the hearing has been scheduled for:

DATE: ___10/12/06___    EXPEDITED HEARING

TIME: ___9:00 AM___

82

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

J██████ H████████, DOB: ??

     Petitioner,

v.

**District of Columbia Public Schools**

     **Respondent**



## DCPS RESPONSE TO DUE PROCESS COMPLAINT NOTICE

     The District of Columbia Public School (hereinafter "DCPS"), by and through the undersigned Attorney Advisor, hereby provides its Response to the Due Process Complaint Notice ("Complaint") filed on or about September 14, 2006 on behalf of J██████ H████████;  pursuant to the Individual's with Disabilities Education Improvement Act 2004 (hereinafter "IDEA"), Sec. 615(c)(2)(B).

## I. DCPS is Unable to answer this complaint as filed.

DCPS is unable to ascertain key facts and provision in this expedited complaint for a due process hearing.  The student's date of birth, home address, and parental/guardianship information are all missing.  This information is required and thus this complaint fails to meet the requirements of IDEA Sec/. 615(b)(7)(A)(ii).  DCPS will file a motion for insufficiency.

83

Furthermore, DCPS will attempt to schedule a resolution meeting pursuant to the IDEA 2004, Sec. 615(f)(1)(B) to address the specific issues in the due process complaint notice.

Submitted by:

_____
Saurabh Gupta
Attorney Advisor
Office of the General Counsel
District of Columbia Public Schools
Telephone:  (202) 442-5178
Fax:  (202) 442-5097/8

## CERTIFICATE OF SERVICE

I, Saurabh Gupta, Esq. hereby certify that a copy of the Defendant's response was served to Douglas Tyrka, Esq., on September 28, 2006 via facsimile at 202-265-4264.

_____
Saurabh Gupta, Esq.
D.C. Public Schools
Office of the General Counsel
District of Columbia Public Schools

84

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**



J████ H████████, DOB:  ???

     **Petitioner,**

**v.**

**District of Columbia Public Schools**

     **Respondent**

---

## DCPS NOTICE OF INSUFFICIENCY OF DUE PROCESS COMPLAINT NOTICE

The District of Columbia Public School (hereinafter "DCPS"), by and through the undersigned Attorney Advisor, hereby provides notice to the assigned Hearing Officer and Counsel for Parent, through this Notice of Insufficiency, pursuant to the Individuals with Disability Improvement Act (hereinafter "IDEA"), Sec. 615(c)(2)(A), that the Due Process Complaint Notice (hereinafter "the Complaint"), filed on **September 14, 2006** fails to meet the requirements of IDEA Sec/. 615(b)(7)(A)(ii).  Specifically, DCPS asserts the following:

    1.  The complaint filed under IDEA Sec. 615(b) fails to identify the student's date of birth.  The claim is silent on this fact.

    2.  The complaint filed under IDEA Sec. 615(b) fails to identify the parent.  The claim is silent on this fact.  No guardian is provided either

    3.  The complaint filed under IDEA Sec. 615(b) fails to identify parent's and/or guardian's address. The claim is silent on this fact.

    4. The complaint filed under IDEA Sec. 615(b) fails to state the proper date for a motion for insufficiency.  The complaint was filed on September 14, 2006.  The motion for insufficiency is not due for fifteen (15) days after the receipt of the complaint.  The file states September 24, 2006 as the due date.  DCPS asserts an expedited date for filing

85

an insufficiency motion unfairly hinders DCPS' ability to defend this complaint. This even more true in a situation where important information is missing from the complaint, which is needed just to identify the student and parent.

DCPS submits that the absence of the above referenced information has resulted in insufficient notice to the agency. As such, pursuant to IDEA Sec. 615(b)(7)(B), the Petitioner may not have a due process hearing until he/she files a notice that meets the requirements of IDEA Sec. 615(b)(7)(A)(ii).

Submitted by

_____

Saurabh Gupta
Attorney Advisor
Office of the General Counsel
District of Columbia Public Schools
Telephone: (202) 442-5178
Fax: (202) 442-5097/8

## CERTIFICATE OF SERVICE

I, Saurabh Gupta, Esq. hereby certify that a copy of the Defendant's response was served to Douglas Tyrka, Esq., on September 28, 2006 via facsimile at 202-265-4264.

_____

Saurabh Gupta, Esq.
D.C. Public Schools
Office of the General Counsel
District of Columbia Public Schools

86

```
                          MESSAGE  CONFIRMATION
◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇

                                   09/28/2006   15:17
                                   ID=OFFICE OF THE GENERAL COUNSEL


  DATE          S.R-TIME   DISTANT STATION ID      MODE      PAGES  RESULT            S.C.
  09/28         01'08"     2022654264              TX        005    OK                0000

◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇

  09/28/2006    15:16    OFFICE OF THE GENERAL COUNSEL → 92654264          NO.285   0001
```



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

| | | | |
|---|---|---|---|
| **To:** | Douglas Tyrka | **From:** | Saurabh Gupta |
| **Fax:** | 265-4264 | **Date:** | 9/28/06 |
| **Phone:** | | **Pages:** | 5 (including cover page) |
| **Re:** | J█████ H███████ | **CC:** | |

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

•**Comments:**

1. DCPS response to complaint date 9/14/06

2. DCPS motion for insufficiency to above dated complaint

87

## MESSAGE CONFIRMATION

〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰

```
                              09/28/2006  15:17
                              ID=OFFICE OF THE GENERAL COUNSEL


DATE        S.R-TIME  DISTANT STATION ID      MODE       PAGES  RESULT              S.C.
09/28       01'08"    2022654264              TX         005    OK                  0000
```

〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰〰

09/28/2006   15:16    OFFICE OF THE GENERAL COUNSEL → 92654264                NO.285   P001



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

**To:**  Douglas Tyrka          **From:** Saurabh Gupta

**Fax:**  265-4264             **Date:** 9/28/06

**Phone:**                     **Pages:** _5_ (including cover page)

**Re:**  J▇▇ H▇▇              **CC:**

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

•**Comments:**

1. DCPS response to complaint date 9/14/06

2. DCPS motion for insufficiency to above dated complaint

88

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| **Recipient:** | SHO & Saurabh Gupta (OGC) |
| **Fax Number:** | |
| **From:** | Douglas Tyrka |
| **Regarding:** | J▬▬ H▬▬ (9/14/06) |
| **# of pages:** | 3 |
| **Notes:** | Petitioner's Response to Notice of Insufficiency |

## CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Associates or their client(s) that is intended solely for the recipient named above. If you are not the intended recipient named above or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Associates expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Associates. Thank you.

89

Before the
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## OFFICE OF MANAGEMENT SERVICES

In re J███ H█████,                    )
        Special Education Student,    )
                                      )
                                      )

## PETITIONER'S RESPONSE TO NOTICE OF INSUFFICIENCY

No complaint was filed on behalf of this student on September 14, 2006.

Respectfully Submitted by,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20008
(ph) (202) 265-4260
(f) (202) 265-4264

90

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

### Certificate of Service

Counsel for the Petitioner hereby certifies that a copy of this RESPONSE has

been filed with the Student Hearing Office and sent via facsimile to Counsel for the

Respondent, Saurabh Gupta.

Respectfully Submitted by,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20008
(ph) (202) 265-4260
(f) (202) 265-4264

**DATE FILED:**    September 28, 2006

2

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 10/13/2006 09:11
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : BROE6J471573
```

```
DATE,TIME              10/13  09:10
FAX NO./NAME           92654264
DURATION               00:00:26
PAGE(S)                01
RESULT                 OK
MODE                   STANDARD
                       ECM
```

# District of Columbia Public Schools
## State Enforcement & Investigation Division
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



X REVISED COPY

OFFICE OF THE
GENERAL COUNSEL
2006 OCT 13  AM 11:30

### HEARING NOTICE

MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:    Parent (or Representative): _D. TVRKA_          Fax No.: _265-4264_

       LEA Legal Counsel: _S. GUPTA_

RE:    H██████, J█████  _____ and (LEA)  DOB: _____
              Student's Name

FROM:  __SHARON NEWSOME__
       Special Education Student Hearing Office Coordinator

DATE SENT: ___10/12/06___

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

       DATE: ___10/19/06___                    Con't f

       TIME: ___1:00 PM___                     10/12/06

92

DISTRICT OF COLUMBIA
PUBLIC SCHOOLS



**Office of the Superintendent**
Office of the General Counsel
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002-4232
202-442-5000        Fax: 202-442-5098
www.k12.dc.us

October 16, 2006

Douglas Tyrka, Esq.
1726 Connecticut Ave, NW
Suite 400
Washington, D.C. 20009

## DISCLOSURE STATEMENT

## VIA FACSIMILE 202-265-4264

| | |
|---|---|
| **Subject:** | **Due Process Hearing for J████ H██████** |
| **DOB:** | ████95 |
| **Attending & Home School:** | **Birney Elementary School (ES)** |

Dear Mr. Tyrka:

At the upcoming due process hearing or any subsequent hearing in the above-referenced matter, scheduled for Thursday, October 19, 2006 at 1:00 p.m. , or any subsequent hearing and pursuant to the Individuals with Disabilities Education Improvement Act (IDEIA) of 2004 and 34 C.F.R 300.509(a)(3) & (b) (or any subsequent regulations or amendments) in addition to any documents and witnesses disclosed by the parent and any documents previously disclosed by either DCPS or the parent for an earlier hearing for this student:

### Witnesses·

Mary Lee Phelps, Interim Associate Superintendent for Special Education Reform, DCPS and/or designee(s);
Carol Helton, Supervisor, School Support, DCPS and/or designee(s);
Dana Ross, Director of Special Education Kipp DC, and/or designee(s);
Nancy Opolack, Oversight and Compliance Kipp DC, and/or designee(s);
Sam Reheard, Special Education Coordinator Kipp DC, and/or designee(s);
Kristy Oaks, Special Education Coordinator Kipp DC, and/or designee(s);
Evan Murray, DCPS Placement Specialist Public Charter Schools, and or designee(s);
Debra Lyons, Special Education Coordinator, Birney Elementary School DCPS, and/or designee(s);
LaBonet Workman, Special Education Coordinator, Taft Center DCPS, and/or designee(s);
J██████ current and/or former Regular and/or Special Education Teacher(s), and/or designee(s);
Registrar(s) and/or Attendance Counselor(s), Kipp DC & Birney ES, and/or designee(s);

---

· *Witness(es) may testify via telephone.*

93

Page Two
October 16, 2006
RE:   Due Process Hearing for J▬▬ H▬▬

10. Dr. Deborah Mosley, Special Education Coordinator, Moten Center DCPS, and/or designee(s);
11. J▬▬ current and/or former Regular and/or Special Education Teacher(s), and/or designee(s);
12. Registrar(s) and/or Attendance Counselor(s), Kipp DC & Birney ES, and/or designee(s);

## Documents

| | |
|---|---|
| DCPS-01 | MDT Meeting Notes  (8/9/06) |
| DCPS-02 | IEP (8/9/06) |
| DCPS-03 | Meeting Invitations (7/3/06 & 7/10/06) |
| DCPS-04 | Resolution Meeting Notes (9/5/06) |

DCPS reserves the right to object to expert testimony by any witness whose curriculum vitae has not been disclosed to the Office of the General Counsel for DCPS at least five (5) business days prior to the hearing.

DCPS also reserves the right to examine any witnesses called or identified as a potential witness by the representative of the student as though the witness was called by DCPS.

DCPS furthermore reserves the right to rely upon and /or use any documents/witnesses presented and/or disclosed by the parent that DCPS deems relevant in this case.  Also, DCPS reserves the right to call rebuttal witnesses in its case.

If you wish to discuss any aspect of this case further, or have questions, please contact me at (202) 442-5178.

Sincerely,

Saurabh Gupta
Attorney Advisor

cc: Student Hearing Office

94

DISTRICT OF COLUMBIA
PUBLIC SCHOOLS

**Office of the Superintendent**
Office of the General Counsel
825 North Capitol Street, N.E., 9ᵗʰ Floor
Washington, D.C. 20002-4232
202-442-5000    Fax: 202-442-5098
www.k12.dc.us

October 16, 2006

Douglas Tyrka, Esq.
1726 Connecticut Ave, NW
Suite 400
Washington, D.C. 20009

**DISCLOSURE STATEMENT**

**VIA FACSIMILE 202-265-4264**

| | |
|---|---|
| **Subject:** | **Due Process Hearing for J███ H██████** |
| **DOB:** | ███/95 |
| **Attending & Home School:** | **Birney Elementary School (ES)** |

Dear Mr. Tyrka:

At the upcoming due process hearing or any subsequent hearing in the above-referenced matter, scheduled for Thursday, October 19, 2006 at 1:00 p.m. , or any subsequent hearing and pursuant to the Individuals with Disabilities Education Improvement Act (IDEIA) of 2004 and 34 C.F.R 300.509(a)(3) & (b) (or any subsequent regulations or amendments) in addition to any documents and witnesses disclosed by the parent and any documents previously disclosed by either DCPS or the parent for an earlier hearing for this student:

**Witnesses**

1. Mary Lee Phelps, Interim Associate Superintendent for Special Education Reform, DCPS and/or designee(s);
2. Carol Helton, Supervisor, School Support, DCPS and/or designee(s);
3. Dana Ross, Director of Special Education Kipp DC, and/or designee(s);
4. Nancy Opolack, Oversight and Compliance Kipp DC, and/or designee(s);
5. Sam Reheard, Special Education Coordinator Kipp DC, and/or designee(s);
6. Kristy Oaks, Special Education Coordinator Kipp DC, and/or designee(s);
7. Evan Murray, DCPS Placement Specialist Public Charter Schools, and or designee(s);
8. Debra Lyons, Special Education Coordinator, Birney Elementary School DCPS, and/or designee(s);
9. LaBonet Workman, Special Education Coordinator, Taft Center DCPS, and/or designee(s);

---

*Witness(es) may testify via telephone.*

Page Two
October 16, 2006
RE:   Due Process Hearing for J████ H████████

### Documents

| | | |
|---|---|---|
| DCPS-01 | MDT Meeting Notes  (8/9/06) | |
| DCPS-02 | IEP (8/9/06) | |
| DCPS-03 | Meeting Invitations (7/3/06 & 7/10/06) | |
| DCPS-04 | Resolution Meeting Notes (9/5/06) | |

DCPS reserves the right to object to expert testimony by any witness whose curriculum vitae has not been disclosed to the Office of the General Counsel for DCPS at least five (5) business days prior to the hearing.

DCPS also reserves the right to examine any witnesses called or identified as a potential witness by the representative of the student as though the witness was called by DCPS.

DCPS furthermore reserves the right to rely upon and /or use any documents/witnesses presented and/or disclosed by the parent that DCPS deems relevant in this case.  Also, DCPS reserves the right to call rebuttal witnesses in its case.

If you wish to discuss any aspect of this case further, or have questions, please contact me at (202) 442-5178.

Sincerely,

Saurabh Gupta
Attorney Advisor

cc: Student Hearing Office

96

# KIPP DC:

District of Columbia Public Schools, Washington, DC

## MDT Meeting Notes: Eligibility

Student: J█████ H███████     Grade: 5→6     Date: 8/9/06



| Participant | Participant Signature | Discipline |
|---|---|---|

The team introduced themselves.

Special education staff verified that the parent/guardian had received a copy of the procedural safeguards and verified that a receipt signed by the student's parent/guardian within the past year is included in the file.

Special education staff stated the purpose of an eligibility meeting:
    To review the reports on recent evaluations (Speech language, OT),
    To discuss the student's progress at school,
    To determine whether the student is eligible for Speech and language and/or Occupational therapy evaluations, and
    To address any recommendations in the evaluation reports.

    In addition, the team will develop an
    Individualized Education Plan (IEP) to appropriately address the student's needs.

Special education staff explained that to qualify for special education services, the student must demonstrate a disability, (such as a learning disability, an emotional disturbance, mental retardation, or a medical condition). In addition, the disability must impact the child's academic performance to the point that the student cannot handle grade-level work or is not passing classes.

**KIPP DC:KEY Academy**
Knowledge Empowers You.

770 M Street, SE, Second Floor
Washington, DC 20003
www.keyacademy.org

(202) 543-6595 ext. 105
(202) 543-6594 (fax)
www.kippdc.org

**JH10**

97

# KIPP DC:

### District of Columbia Public Schools, Washington, DC

## Meeting Notes: MDT

Student: J████ H██████          Grade: 5          Date: 8/9/06

Ms. Ross explained that at the 12/8/06 meeting the team determined that J████ was eligible for special education services with emotional disturbance. At that time the clinician, Ms. Mckinny was unable to determine if his behavior problems stemmed from Anxiety or ADHD. The team then requested a neuropsychological because based on discrepancies from the previous psycho-educational evaluation (T. Erby, 2/2004 using outdated cognitive measure-WISC-3) along with the need to further clarify J████ cognitive deficits in the areas of working memory, auditory memory, visual memory, along with executive functioning (planning and organizing), inattention and verbal comprehension, a comprehensive neuropsychological assessment was requested. At the 3/28/06 meeting the team determined that J████ also was eligible for special education services as OHI due to his ADHD. At that time the MDT team also requested a SPL and an OT evaluation to determine if J████ had any deficits in those areas. The MDT team also determined that KIPP DC: AIM Academy was not an appropriate placement for him, but was unable to reach a conclusion about his current IEP. J████ continued to attend AIM Academy instead of being placed at another school. At that time, the MDT determined that he needed a full time therapeutic setting, not a resource room.

The Due Process complaint was received by KIPP DC: AIM Academy on 7/26/06.

Dr. De Jesus, Clinical Psychologist:
Dr. De Jesus reviewed the neuropsychological evaluation. Verbal Memory: 89. Most of his scores are in the average range, but the sequential recall is in the low average. On the subtests, he had a wide range of scores. Most are in the average range. Paired Recall is in the above average. Digits Forward, Memory for Stories, Visual Sequential Memory all in the below average range.

Speech/Language Pathologist, DCPS:
J████ was given three tests in his evaluation. The evaluator stated that J████ language skills might be stronger than the evaluation reveals, considering that he was unfocused during the test. J████ vocabulary scores of 97 (Peabody Picture Vocabulary Form IIIB) and 86 (Expressive One word Picture Vocabulary Test) show an improvement from the last evaluation in 2004, . His scores for following directions were significantly low, but this score may be affected by his attention issues. Recalling Sentences subtest: 6. His other subtests on the CELF were in the average range. J████ Core Language Score: 79, Receptive Language: 81 (following directions score brought this down), Expressive Language: 85, Language Memory: 74. These scores do reflect an improvement from 2004. The pathologist recommends consultation with the classroom teacher to address his needs because of his inattentiveness. She recommended some strategies to be used in the classroom – having J████ repeat directions back to the teacher, fewer problems on tests, limited stimuli in the classroom. The advocate expressed that she felt J████ needed direct services. The speech pathologist explained that she believes his language skills do not need direct remediation in pull out services, considering that he shows mastery of language dynamics. Ms. Ross expressed her concern that on the Stanford 10, J████ score on the Vocabulary and the Reading Comprehension were not commensurate. Vocabulary was on the second grade level, while reading comprehension scored on the 7-7 level. (Total reading: 5.2) She suggested adding vocabulary goals to address this discrepancy.

Regular education teacher, Caroline John:
Ms. John explained that the AIM Academy team has tried shorter tests, shorter activities, chunking, positive incentives (on the minute), and he continues to have struggles with following directions and being successful in class. She is concerned because he is repeating the 5th grade with the same expectations and procedures and, even though he had a full year of practice with these procedures, he is still the last student to perform standard, rote procedures.

98

# KIPP DC:

District of Columbia Public Schools, Washington, DC

## Meeting Notes: MDT

Student:                          Grade:                    Date:

Ms. Millis recommended in class support from a speech/language pathologist. Ms. Pittman, clinical social worker, has provided in class support and she is not concerned with J█████ being singled out. The team decided that in class support would be provided for a 6 month period, subject to review at the end of the 6 month period. The services will consist of a weekly block of 30 minutes in class but with the flexibility to pull him out. The majority of the therapeutic intervention should be done in class. The speech pathologist reviewed the IEP goals

Dr DeJesus followed up on a recommendation in the neuropsych for J█████ to be evaluated by a psychiatrist or a pediatrician in regards to his inattention. Ms Hamilton had taken J█████ to a pediatrician before the neuropsych evaluation had been completed to get a referral to a psychiatrist. Ms Hamilton said that she took J█████ to the psychiatrist twice but she did not feel that there was a clear understanding of the purpose of the appointments. She said the doctor suggested medicine but she never gave Ms. Hamilton a report.  Ms. Millis stated that she would follow up on the documentation of these visits. If the documentation is inadequate, the advocate and the parent are requesting that DCPS perform a psychiatric evaluation to address J█████ inattentiveness.

Ms Abercrombie, Occupational Therapist:
Ms Abercrombie reviewed the report from May 2006. See report. The report recommends 45-60 minutes of individual and small group instruction. Ms Abercrombie recommends 60 minutes weekly, that can be done partially in the classroom if the therapist sees fit. The team agrees to these services on his IEP. Ms Abercrombie reviewed the IEP goals. Ms Millis asked if any evaluations had been performed regarding J█████ sensory integration. After listening to the teachers' input, Ms Abercrombie added a goal regarding his sensory integration.

Ms Suben, Ms John, regular education teachers:
Ms. Suben presented the math goals, and Ms John presented the reading and writing goals.

Michelle Pittman, Clinical Social Worker:
Ms. Pittman presented the counseling goals and recommended that J█████ counseling hours be increased to 2 hours weekly. These hours would not consist of consult services, but rather in class support and individual or small group therapy, as determined by the therapist. Ms Pittman also explained the potential effects of medication for ADHD and the process to take in order to find medication for a student. Ms. Millis said that medication could be helpful in addressing needs.

The team reviewed the hours on the IEP. 2.5 hours of related services. At the last IEP the team agreed that J█████ needs a full time therapeutic setting. J█████ IEP will reflect 28.5 hours of specialized instruction, for a total of 32 hours on his IEP. The team agreed upon these hours.

The team moved on to the placement meeting.

District of Columbia Public Schools, Washington, DC
## MDT Meeting Notes: Eligibility/IEP/Placement

Student: J_____ H_____          Grade: 5→6          Date: 8/9/06

| Participant | Participant Signature | Discipline |
|---|---|---|
| Nancy Opalack | Nancy Opalack | Consultant |
| Kristy Ochs | Kristy Ochs | Special ed. teacher |
| YANA HAMILTON | Yana Hamilton | Parent |
| Sharon Mills | Sharon Mills DR | SPED Advocate |
| Dana A. Ross | DR | Director of Sped, Design |
| Michelle Pittman, licsw | Michelle Pittman, licsw | social worker |
| Mary Ellen G. de Jesus PhD | Mary PhD | psychologist |
| Evan Murray | | DCPS Placement Specialist |
| Donna | | Speech Pathologist |
| Devara Abercrombie | Devara Abercrombie | Occupational Therapist |
| Lisa Suben | Lisa Suben | mathematics teacher |
| Caroline John | Caroline | reading/writing teacher |

100

# KIPP DC:

District of Columbia Public Schools, Washington, DC

### Meeting Notes: MDT

Student: ▮▮▮▮▮ H▮▮▮▮ll          Grade: 5 (going into 6th)   Date: 8/9/06

Placement portion of meeting —

Dec evals — OT/Spl were discussed. IEP was completed — 32 hours of services.

Rock Creek Academy has accepted J▮▮▮▮ — advocate can provide acceptance letter — or confirmation of acceptance. Rock Creek is a full time therapeutic setting. Rock Creek has identified a teacher, and J▮▮▮▮ will be placed in a 4-5/1 setting. Parent & advocate have visited the school in April — parent likes the placement & thinks it is appropriate.

DCPS is referring J▮▮▮▮ to the Taft Center. Taft Center serves Multiply-Disabled — 8:00 - 2:30 - time of day. 95 total students — 9/1 — 15 certified teachers. Behavior management program. Therapeutic services are outsourced. Serves students from 4th to 8th grade. Taft has not received ▮▮▮▮▮ info at this point, nor has Taft accepted ▮▮▮▮▮ at this point. File will be delivered today. Parent has the option to visit the program. DCPS will issue a NOP within five days of this meeting date. No nurse or psychiatric consult available.

101

# KIPP DC:

District of Columbia Public Schools, Washington, DC

## Meeting Notes: MDT

Student: [redacted]                Grade: 5 - rising        Date: 8/9/06
6th grader

Rock Creek Academy representative —
A variety of disability categories — 260 students
50 students in his program ([redacted]) — certifieds —
15 teachers

Reading specialist
nurse
clinical counseling
psychiatric consult
crisis intervention
behavior specialist — on a level and pt
system — parent is involved

Advocate will visit program — DCPS requested neither Us IT
Taft before NOP is issued.

Special Education teacher at kipp — in regards
to ratio — needs a very small setting — worked in 4/1 with
difficulty.

DCPS believes medication therapy may help [redacted]
handle a slightly larger student/teacher
ratio.

KIPP Lic. Clinical S.W. states placement should
include psychiatrist on staff & full time
nurse available.

J_____ _____ MDT 8/9/06
DCBS has assessed at 10:30 PS. 100 meeting Cognitive Scores than current neuropsychological were remanded to establish low average/average cognitive abilities. OT plan will be direct service 1 x 30 min. The majority of therapy will be provided in the classroom setting. J_____ _____ but got no report documentation and was unable to understand the outcome. Advocate will attempt to obtain information but if unable to obtain needed documents or if they are inadequate Parent/Advocate are requesting that DCBS do the Psychiatric that the neuropsychological recommended. OT recommended 1 x 45-60 min/wk. There may be a sensory integration issue that needs to be addressed once the therapist begins services.

DCBS was not prepared with placement options due to the DCBS rep. leaving the MDT at the Placement portion of the MDT. He made a call to DCBS at the meeting and came up with the placement. He left Center. He has not been provided his file no one has provided this information. Parent/Advocate are requesting DCBS start reading where J_____ _____ was already been accepted and details of programming have already been discussed at length at the DPH.

103

District of Columbia Public Schools, ashington, DC

# INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS IEP
Page 1 of 4

## I. IDENTIFICATION INFORMATION

Student Name: Last: H███████    First: J██████    MI:

Student ID: 905583    SSN:  Age: 10  Grades: 6

Gender: M    DOB: ███/94    Ethnic Group: African American/Black

Street Address: 1347 Stevens Rd SE

City: Washington, State: DC    ZIP: 20020

Attending School: TBD by DCPS
Home School: Birney Elementary School
☐ Elementary    ☒ Middle/JHS    ☐ SHS    ☐ CWS

Parent: Yana Hamilton    ☒ Parent    ☐ Guardian    ☐ Surrogate

Street Address (if different from student):
City:    State:    ZIP:

Telephone: H:    W:    ext.

## II. CURRENT INFORMATION

Date of IEP Meeting: 8/9/06
Date of Last IEP Meeting: 12/8/05
Date of Most Recent Eligibility Decision: 3/28/06

Purpose of this conference:
☐ Initial IEP    ☒ Review of IEP
☐ Requested Eval    ☐ 3 Yr ReEval

Level of Standardized Assessment:
III

Agenda to be attached as needed:
☒ Behavior    ☐ Transportation
☐ ESY    ☐ Transition

## III. LANGUAGE

| | Language | Language used in evaluation | Language used in conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | English | English |
| Parent | English | English | English | English |
| Home | English | English | English | English |

Completed by Office of Bilingual Education
English and Math Proficiency Assessment

Oral:
Reading/Written:
Instrument:
Date:

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| Services | Setting GenEd | Setting SpEd | Total | Frequency hr | Frequency wk/mo | Provider (by discipline) | Beginning Date | Duration # | Duration wk/mo |
|---|---|---|---|---|---|---|---|---|---|
| Specialized instruction | | 28.5 | 27.5 | hr | wk | SpEd and GenEd teachers | 8/9/06 | 10 | mo |
| counseling | | 20 | 1.5 | hr | wk | Social worker | 8/9/06 | 10 | mo |
| ~~Counseling consult~~ | | | 0.0 | hr | wk | | | 10 | mo |
| Speech | | .5 | 0.5 | hr | wk | Speech Language Pathologist | 8/9/06 | 10 | mo |
| Ocupational therapy | | 1 | 0.0 | hr | wk | ocupational therapy | 8/9/06 | 10 | mo |
| | | | 0.0 | hr | wk | | | 10 | mo |
| Total | 0.0 | 32 | 32 | hrs/wk | | | | | |

## V. DISABILITY    Emotionally Disturbed/OHI

☐ Check if setting is general education

Time in specialized instruction and related services
☐ 0-20%    ☐ 21-60%    ☒ 61-100%

Time NOT spent in a general education setting: 0%

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

| | | |
|---|---|---|
| Lisa Suben | Kristy Ochs | |
| Caroline John | Devora Abercrombie | |
| Michelle Pittman, LICSW | Mary Ellen Goto Iric PhD | |
| Darcy Opilade | Donna Norma MScCSP | |
| Sharon Mills | | |

☐ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature  Yana Hamilton    Date 8/9/06

104

| Student: Joshua Ha... | Managing School: Birney ES | DCPS – IEP |
|---|---|---|
| DCPS ID: 9055583    DOB: ...95 | Attending School: | Page 2 of 4 |

## VII. PRESENT EDUCATIONAL PERFORMANCE LEVELS IN AREAS AFFECTED BY THE DISABILITY

☐ Additional Comments                                                    Scores when available

**Academic Areas:** (Evaluator) Dr. Mckinney

Math strengths: simple Calculations

Impact of Disability on educational performance in general education curriculum: Poor motivation, behavior problems and impulse control prevent him from completing assignments. Poor comprehension of word problems affect his ability to perform on grade level.

Reading strengths: Phonemic awareness, letter word identification

Impact of Disability on educational performance in general education curriculum: Poor motivation, behavior problems and impulse control prevent him from completing assignments. Passage comprehension affects his ability to read on grade level.

Math Cal: 97  4.8
Broad Math: 88    3.5
See goal page: 1
Date: 12/7/05
Broad Rdg: 85  2.9
Basic Rdg: 97  4.8
Written Ex: 88    3.2
See goal page: 2, 3
Date: 12/7/05

**Communication (Speech & Language):** (Evaluator) Lesa Gibson MSCC&SLP    Scores when available
Strengths:    Reviewer: Donna Norman MScc SLP
The student has the ability to formulate different kinds
of sentence, word association skills.

Impact of Disability on educational performance in general education curriculum:
The student has the inability to follow directions
and understand concepts.

Exp Lang: 85
Rec Lang: 81
Artic: none
Voice: none
Fluency: none
Exp Voc: 86
Rec Voc: 97
See goal page:
Date:

**Motor Health:** (Evaluator) Ms. Devara Abercrombie OTR/L    Scores when available
Strengths: Gross motor-walking, crawling, standing running and sitting average
on manual coordination
Impact of Disability on educational performance in general education curriculum:
J... demonstrated below average in hand manipulation skills
spatial organization, bilateral motor coordination, visual perception
and visual motor integration skills

F.R.JVPI - Standard Score 73 poor
MV.PT - Raw score 27 6yrs 9mon
PCT (Fine Motor Standard Score 34 below
See goal page: coordination Standard
Date: 5/16/06    Score 41 Avera...

**Social Emotional Behavioral Areas:** (Evaluator) Dr. Mckinny / Michelle Pittman, LICSW    Scores when available
Strengths: Joshua can approach his peers in a socially appropriate manner.
Easy to engage and establishes rapport quickly, enjoys
positive feedback & encouragement
Impact of Disability on educational performance in general education curriculum:    Joshua's
anxiety and ADHD issues impact his ability to focus and academically perform
Difficulty associating skills learned in group & trans.    See goal page:
them into the classroom, Poor Attention span, easily    Date:
frustrated, difficulty ignoring negative behavior distracts
**Cognitive/Adaptive Behavior:** (Evaluator) others from learning & school    Scores when available
Strengths:    anxiety.

Impact of Disability on educational performance in general education curriculum:

See goal page:
Date:

**Prevocational Skills:** (Evaluator)    Scores when available
Strengths:

Impact of Disability on educational performance in general education curriculum:

See goal page:
Date:

105

| Student Name | J~~_____~~ H~~_____~~ | | DCPS - IEP |
|---|---|---|---|
| Student ID Number | 9055583  DOB ~~___~~/96 | | Page 3 of 4 |
| Managing School | | | |
| Attending School | Kipp DC AIM | | |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐    Goal Number: ☐

Area addressed by goal: *Visual Motor Skills*

**ANNUAL GOAL: (including mastery criteria.)**

J~~_____~~ will improve visual perception and/or visual perceptual motor skills for greater success in academics and written work with 80% accuracy.

Provider(s): *Occupational Therapy / Teacher*

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| ① J~~____~~ will be able to copy 5 spelling words from the board with proper sizing and line orientation 4/5 times | | Quarterly |
| ② J~~____~~ will complete a 24 piece puzzle independently. | | Quarterly |
| ③ J~~____~~ will locate 10 hidden objects in background with 80% accuracy 4/5 times. | | Quarterly |
| ④ J~~____~~ will copy/imitate age appropriate geometric shapes with 80% accuracy. | | Quarterly |
| ⑤ J~~____~~ will benefit be able to complete a 10-15 word sentence with proper sizing, alienation, and capital/lower differentation 80% of the time. | | Quarterly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☑ Documented Observation  ☐ Report  ☑ Other  *progress notes*

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

106

| Student: J███ H██████ | Managing School: ~~KIPP DC: AIM Academy~~ Stney | DCPS - IEP |
|---|---|---|
| DCPS ID: 9055583     DOB: ███1995 | Attending School: KIPP DC: AIM Academy | Page 3 of 4 |

## VIII. SPECIALIZED SERVICES

Goal Number:

Additional Comments ☐

Area addressed by goal: Counseling

Annual Goal: (including mastery criteria)
J████ will show one year's growth in the area of indentifying and acting constructively on issues relating to achieving academic success by focusing on the following:

Provider(s): Clinical Social Worker

Consider audience, behavior, condition, degree and evaluation.

| Short-term Objectives (include mastery criteria or benchmarks) | Date mastered | Evaluation schedule |
|---|---|---|
| 1. J████ will participate in weekly individual and group counseling sessions.<br>  a. Establish trust and rapport with clinical social worker.<br>  b. Express his feelings through mutual storytelling, artwork, and therapeutic games.<br>  c. Verbalize feelings of school anxiety, conflicts with peers, and academic performance. | | quarterly |
| 2. J████ will remain on task when working independently or in a small group w/o being distracted or distracting others.<br>  a. J████ will show ability to follow class schedule and rountine, focus to task, and refrain from distracting others 2 out of 5 days a week.<br>  b. "       "       "       " 3 out of 5 days a week.<br>  c. "       "       "       " 4 out of 5 days a week. | | quarterly |
| 3. J████ will demonstrate friendly peer relationships.<br>  a. J████ will give compliments, use polite words, caring gestures, and work with others towards a common goal 2 out of 5 times a week. *at 30 min. a week.*<br>  b. "     "     "     " 3 out of 5 times a week. *at 60 min. a week.*<br>  c. "     "     "     " 4 out of 5 times a week. *at 2 hours a week.* | | quarterly |
| 4. J████ will learn acceptable alternatives for coping with situations that make him feel anxious.<br>  a. Stop, relax, and think. Utilize therapeutic toys and games, i.e. stress balls, mood cubes, and journaling 2 out of 5 days a week.<br>  b. "       "       "       " 3 out of 5 days a week.<br>  c. "       "       "       " 4 out of 5 days a week. | | quarterly |
| 5. J████ will improve his social and communication skills as well as manage his emotions more effectively.<br>  a. Verbalize feelings of school avoidance, problems with homework, organization, *triggers* and peer relationships 2 out of 5 days a week.<br>  b. "       "       " 3 out of 5 days a week.<br>  c. "       "       " 4 out of 5 days a week. | | quarterly |
| | | quarterly |

107

Student Name _____    Managing School _~~~ ~~~ Academy    DCPS - IEP
Student ID Number  9035583    DOB _____/95    Attending School _Kipp Aim Academy    Page 3 of 4

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | | Goal Number: ☐ |
|---|---|---|---|

Area addressed by goal: __Communication -__

**ANNUAL GOAL: (Including mastery criteria.)**

J_____ will improve his receptive language (following directions/concepts) and his memory skills @ 80% for 6 months.

Provider(s): Speech Pathologist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| When presented with ~~curriculum~~ based activities, J_____ will demonstrate his ability to understand concepts (before, after, then) in written/ verbal format @ 80% | | monthly |
| J_____ will follow 2-3 step directives with / without repetition in curriculum based activities @ 80% | | monthly |
| J_____ will participate in various memory curriculum based activities @ 80% in written/verbal format | | monthly |
| Within the classroom, the therapist will provide strategies to reduce inattentive behaviors for trial / adaptation by _____ when attending to a task. | | weekly |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools      07-02-2001      Division of Special Education      Appendix - A      IEP Page 3 of 4

108

**VIII. SPECIALIZED SERVICES**    Goal Number:

Additional Comments ☐

Area addressed by goal: Academic: Writing

Annual Goal: (including mastery criteria)

Je████ will increase his written language skills by 6 months growth by demonstrating command of standard English, organizational and drafting strategies as outlined in the writing process.

Provider(s): General education and special education teachers

Consider audience, behavior, condition, degree and evaluation.

| Short-term Objectives (include mastery criteria or benchmarks) | Date mastered | Evaluation schedule |
|---|---|---|
| Use graphic organizers to plan writing during prewriting stages on three out of four times with 80% accuracy. | | quarterly |
| Use punctuation correctly at the end of a sentence on three out of four times with 80% accuracy. | | quarterly |
| Use capitalization at the beginning of a sentence and for proper nouns on three out of four times with 80% accuracy. | | quarterly |
| Write sentences of varying lengths to communicate ideas or answer questions on three out of four times with 80% accuracy. | | quarterly |
| Write one paragraph with a topic sentence, three details and a closing sentence on three out of four times with 80% accuracy. | | quarterly |
| | | quarterly |
| | | quarterly |

Evaluation Procedure(s)

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other:

**109**

VIII. SPECIALIZED SERVICES

Goal Number:

Additional Comments ☐

Area addressed by goal: Academic: reading

Annual Goal: (including mastery criteria)

Increase reading fluency and comprehension by using phonics strategies, word parts, and context clues by mastering the following short term goals

Provider(s):  special education teachers

Consider audience, behavior, condition, degree and evaluation.

| Short-term Objectives (include mastery criteria or benchmarks) | Date mastered | Evaluation schedule |
|---|---|---|
| Recognize and state main ideas presented in texts with three supporting details on 3 out of 4 trials with 80% accuracy. | | quarterly |
| Make predictions with evidence on 3 out 4 trials with 80% accuracy. | | quarterly |
| Use word attack skills and context clues to decode unfamiliar words on 3 out 4 trials with 80% accuracy. | | quarterly |
| Decode two syllable words using chunking and touch and say method on three out of four trials with 80% accuracy. | | quarterly |
| Identify story elements in a story on three out of four trials with 80% accuracy. | | quarterly |
| Sequence the beginning, middle and end in a story on three out of four trials with 80% accuracy. | | quarterly |
| Identify problem and solution in text on three out of four trials with 80% accuracy. | | quarterly |

Evaluation Procedure(s)

☒ Portfolio   ☐ Log   ☐ Chart   ☒ Test   ☐ Documented Observation   ☐ Report   ☐ Other:

110

DCPS - IEP
Page 3 of 4

## VIII. SPECIALIZED SERVICES

Goal Number:

Additional Comments ☐

Area addressed by goal: Reading Con't

Annual Goal: (including mastery criteria)

READING CONTINUE

Provider(s): Special education teacher

Consider audience, behavior, condition, degree and evaluation.

| Short-term Objectives (include mastery criteria or benchmarks) | Date mastered | Evaluation schedule |
|---|---|---|
| Use graphic organizers, to compare and contrast themes, characters and ideas in a story in 3 out of 4 trials. | | quarterly |
| Identify synonyms and antonyms on three out of four trials with 80% accuracy. | | quarterly |
| Make connections to texts on three out of four trials with 80% accuracy. | | quarterly |
| After reading a passage on the 4.0 grade level, J████ will answer who, what, where, when and how questions about the text in 3 out of 4 trials with 80% accuracy. | | quarterly |
| | | quarterly |
| | | quarterly |
| | | quarterly |

### Evaluation Procedure(s)

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other:

111

## VIII. SPECIALIZED SERVICES

Goal Number:

Additional Comments ☐

Area addressed by goal: Academic: Mathematics

Annual Goal: (including mastery criteria)

J█████ will demonstrate six months growth in number sense and problem solving by mastering the following short term goals.

Provider(s): special education teachers

Consider audience, behavior, condition, degree and evaluation.

| Short-term Objectives (include mastery criteria or benchmarks) | Date mastered | Evaluation schedule |
|---|---|---|
| Solve one step word problems using addition, subtraction, division or multiplication on 3 out of four trials with 80% accuracy. | | quarterly |
| Compare and order numbers through the hundred trillions places in standard, expanded and exponential form on three out of four trials with 80% accuracy. | | quarterly |
| Solve addition and subtraction problems with multi-digit whole numbers with out regrouping on three out of four times with 80% accuracy. | | quarterly |
| Given a computation problem with multiple steps, he will identify each step to solve the larger equation on three out of four trials with 80% accuracy. | | quarterly |
| Use place value to read and write numbers to the hundred thousand place on three out of four times with 80% accuracy. | | quarterly |
| Understand, select, and use units of appropriate size and type to measure angles, perimeter, surface area, weight, mass, and volume on three out four trials with 80% accuracy. | | quarterly |
| Identify and match simple fractions to pictures on three out of four times with 80% accuracy. | | quarterly |

Evaluation Procedure(s)

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other:

112

# ANNUAL GOALS AND BENCHMARKS

Student: ~~Jordan H~~                                    DATE: May 16, 2006

| Goal # OT 1 | Area of Need: Visual Motor | Baseline: Poor Visual Motor skills affecting his classroom participation |
|---|---|---|

| Measurable Annual Goal*:<br>Student will be able to complete a 10-15 word sentence with proper sizing, alienation and Capitals/Lower differentiation. 80% of time. | Goal: Annual Review<br>Progress Code_<br>(see below)<br>If goal not met, enter<br>Reason Code below |
|---|---|

☐ Enables Student to be involved /progress in general curriculum  *and/or*    ☒ Addresses other educational needs resulting from the disability
☐ Linguistically Appropriate                                                      Person(s) responsible  Classroom Staff, Family, OT

| Benchmark 1: By Progress Report 1, student will achieve: Student will be able to complete a 5-8 word sentence with proper sizing, alienation and Capitals/Lower differentiation. 50% of time. | Progress Report 1(Jan 05): Is progress sufficient to<br>Meet annual goal? ☐ Yes ☐No<br>If no, enter Reason Code (see below) _____ |
|---|---|
| Benchmark 2: By Progress Report 2, student will achieve: Student will be able to complete an 8-11 word sentence with proper sizing, alienation and Capitals/Lower differentiation. 65% of time. | Progress Report 2(April 05): Is progress sufficient to<br>Meet annual goal? ☐ Yes ☐No<br>If no, enter Reason Code (see below) _____ |
| Benchmark 3: By Progress Report 3, student will achieve: Student will be able to complete a 10-15 word sentence with proper sizing, alienation and Capitals/Lower differentiation. 80% of time. | Progress Report 3(July 05): Is progress sufficient to<br>Meet annual goal? ☐ Yes ☐No<br>If no, enter Reason Code (see below) _____ |

| Goal # OT 2 | Area of Need: Visual Motor | Baseline: Poor Visual Motor Skills negatively impact classroom work. |
|---|---|---|

| Measurable Annual Goal*:  Student will copy/imitate complex geometric designs with 90% of accuracy. | Goal: Annual Review<br>Progress Code_<br>(see below)<br>If goal not met, enter<br>Reason Code below |
|---|---|

☐ Enables Student to be involved /progress in general curriculum  *and/or*    ☐ Addresses other educational needs resulting from the disability
☐ Linguistically Appropriate                                                      Person(s) responsible  Classroom Staff, Family, OT

| Benchmark 1: By Progress Report 1, student will achieve: Student will copy/imitate complex Geometric designs with 50% of accuracy. | Progress Report 1(      ): Is progress sufficient to<br>Meet annual goal? ☐ Yes ☐No<br>If no, enter Reason Code (see below) _____ |
|---|---|
| Benchmark 2: By Progress Report 2, student will achieve: Student will copy/imitate complex Geometric designs with 70% of accuracy. | Progress Report 2(      ): Is progress sufficient to<br>Meet annual goal? ☐ Yes ☐No<br>If no, enter Reason Code (see below) _____ |
| Benchmark 3: By Progress Report 3, student will achieve: Student will copy/imitate complex Geometric designs with 90% of accuracy. | Progress Report 3(      ): Is progress sufficient to<br>Meet annual goal? ☐ Yes ☐No<br>If no, enter Reason Code (see below) _____ |

*All Goals must have a minimum of 2 benchmarks

Progress Codes:
1. No Progress
2. Partial Progress (1%-49% of goal met)
3. Substantial Progress (50%-99% of goal met)
4. Met Goal

Reason Code for Insufficient Progress
A.  More time needed (continuing goal)
B. Excessive Absences or tardies
C. Insufficient opportunity for practice
D. Need to review or revise goal
E. Need to revise instruction
F. Other: _____

| Student: J_____ H_____ | | Managing School: Birney ES | DCPS - IEP |
|---|---|---|---|
| DCPS ID: 9055583 | DOB: ____1995 | Attending School: TBD by DCPS | Page 4 of 4 |

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION, SERVICE ALTERNATIVES    Additional Comments ☐

Can curricular modification, accommodation, and/or supplemental aids and services be used for a LRE setting in regular education?    ☐ Yes  ☒ No

Explanation for removal out of regular education classroom.
The student's academic needs require small structured classroom with specialized instruction in a special education setting. Due to behavior and emotional difficulties he requires a small structured classroom environment to reduce distracting stimuli and a behavior intervention plan with constant positive reinforcement to encourage desired behavior.

## X. SUPPLEMENTARY AIDS AND SERVICES

| Classroom Needs (Do not name products or companies) | Setting | | | Frequency | | Provider (by discipline) | Beginning Date |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | hr/min | d/w/m | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:    ☐ None needed

Timing/Scheduling: extra time, breaks, flexible scheduling
Setting: tested individually
Presentation: repeated directions, answer clarifying questions, read test aloud;
Response: Write in test booklet; student indicates answers to multiple choice questions; dictate responses to constructed responses
Equipment:

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I     Tested with non-disabled peers under standard conditions without accommodations.
☐ Level II    (Describe accommodations for Level II) Tested under standard conditions with special accommodations.
☐ Level III   (Describe non-uniform conditions for Level III) Tested under standard conditions with permissible accommodations.
☒ Level IV    (Describe the alternative assessment: DC cas with above accommodations
☐ Level V     Portfolio:

## XII. AREAS REQUIRING SPECIALIZED INSTRUCTION AND RELATED SERVICES:                MODIFICATIONS:

☒ Reading              ☐ Physical/Sensory        ☐ Transition          ☒ Language Arts/English
☒ Mathematics          ☒ Social Emotional        ☐ Vocational          ☒ Social Sciences
☒ Written Expression   ☐ Physical Development    ☐ Independent Living  ☒ Biological & Physical Sciences
☐ Other:                                         ☐ Speech/Language     ☐ Fine Arts
☐ None  Apply annual goals, objectives and/or modifications to address barriers in each area checked above

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| Describe considerations | Accept/reject reasons | Potential harmful effects |
|---|---|---|
| General education | rejected | possible school failure |
| Combination: gen.ed./sp.ed. | rejected | possible school failure |
| out of general education | accepted | time away from peers |
| | | |

Modifications/Accommodations to address the harmful effects:
Flexible scheduling and inclusive delivery of some services to reduce time away from peers

Location for Services: TBD by DCPS

114

# KIPP DC:

District of Columbia Public Schools, Washington, DC

## IEP ADDENDUM FOR ESY SERVICES

DCPS IEP Attachment D
ESY Services, Page 1 of 2

| | | |
|---|---|---|
| Student Name: J███ H███ | Date of Birth: ███95 | |
| Gender: ☒ Male ☐ Female | Grade: 6 | |
| School: TBD | Date IEP Written: | |

### CHECKLIST

| | Yes | No |
|---|---|---|
| 1. IEP is reasonable and appropriate for student. | ☒ | ☐ |
| 2. All or most of the IEP goals and objectives are being achieved. | ☒ | ☐ |
| 3. Severity of the student's disability requires individual programming in the area of: | | |
| • Self-sufficiency and independence from caretaker, or | ☐ | ☒ |
| • Other: | ☐ | ☒ |
| 4. Student record shows serious regression following interruptions in the school program. | ☐ | ☒ |
| 5. Student record shows inability to recoup skills in a reasonable time following regression. | ☐ | ☒ |
| 6. Student has critical need for continuity of in programming to facilitate achieving educational benefit from his or her education program | ☐ | ☒ |
| 7. Transportation services needed. | ☐ | ☒ |

### DETERMINATION

| | | |
|---|---|---|
| After review the IEP Team **RECOMMENDS** the provision of an extended school year program for the above student. | ☐ | ☒ |

Reason: The team determined that the student does not qualify for ESY services because there is no evidence of significant regression over breaks or notable inability to recoup skills after a reasonable time.

District of Columbia Public Schools, Division of Special Education        IEP Attachment D, IEP Addendum for ESY Services

---

# KIPP DC:

District of Columbia Public Schools, Washington, DC

## EVALUATION TO JUSTIFY TRANSPORTATION

DCPS IEP Appendix-A
Transportation

| | | |
|---|---|---|
| Student Name: J███ H███ | DCPS ID: 9055583 | DOB: ███/95 |
| Attending School: TBD by DCPS | Neighborhood School: Birney ES | |

Attach a copy to the Transportation Data Form and maintain as part of the IEP.
Justification for transportation as stipulated in 300.24(15). Check all that apply.

1) Medical reports document a severe health condition that prevents the student from walking to school.*
2) Medical reports document a physical disability that prevents the student from walking to or getting to school independently.*
3) A documented severe cognitive disability prevents the student from walking to or getting to school independently.*
4) A visual and/or hearing disability interferes with the student's ability to arrive to school independently.**
5) A severe communication disability prevents the student from communicating for his or her safety.**
6) A behavior/emotional disability is so severe or erratic that there is a concern for the safety of the student and/or others.**
7) The student is eligible for the pre-school special education program and cannot participate without special transportation.
8) The student is/will attend a distant school because the IEP cannot be implemented at the zoned school.**
9) The student is medically fragile.**
10) The student requires assistance to get on and off the bus.**
11) The student is unable to function independently due to the severity of the disability.**
12) The student requires a non-routine transportation schedule, (eg, contract services, abbreviated school day).***
13) Medical reports document that the student has a physical disability and/or severe health condition that prevents him or her from walking to school.**
14) A documented severe cognitive disability prevents the student from walking to school.**
15) Other.*

*Specify. **Document source. ***Explain.

The team determined that the student does not qualify for transportation services as none of the above criteria apply.

District of Columbia Public Schools, Division of Special Education        IEP Appendix-A

115

# KIPP DC:

District of Columbia Public Schools, Washington, DC

## INTERVENTION BEHAVIOR PLAN

DCPS IEP Attachment A
Intervention Behavior Plan

Date Developed:

Student Name: J█████ H█████

DCPS ID: 9055583    DOB: █████/95    Grade: 6

Address: 1347 Stevens Road SE 20020

Telephone: Home: 202-582-6332   Work: 202-720-0806  Other:    -    -

School: KIPP DC: KEY Academy    Homeroom:

Counselor:
HR Teacher:

### TARGET BEHAVIOR(S):
Additional Comments ☐

J█████ engages in the following targeted behaviors:
1. Short attention span; problems with focusing and receiving constructive criticism
2. Impulse control; anxiety, self control and adjustment
3. Poor motivation; low self esteem; lapse of memory/drifting off;
4. Coping skills; frustration tolerance

### POSITIVE INTERVENTION STRATEGIES: Student Objective
Frequent reminders and prompts to forcast his time
Chunk assignments into smaller parts
Opportunities for short breaks to leave his seat to assist in classroom helping activities (eg Passing out papers, door holder, taking notes to the office)
Token economy where he can earn prizes for good behavior; Associate positive consequences for good behavior
Explicit concrete directions; eye to eye contact; stress balls; regulate himself to calm down

### Implementation Description
Student will receive positive oral praise when demonstrating appropriate behavior;
Constant positive intervention w/rewards
Student will receive extra "points" on tracking form
Student will receive special jobs from teacher
Student will receive special prizes for meeting goals on tracking form
Student will be redirected in a non confrontational way; friendly maner

### POSITIVE INTERVENTION STRATEGIES: Teacher Strategies
Structure student's environment to promote appropriate behavior and reduce opportunities to be disruptive/
Small student to teacher ratio
Student will learn to accept redirection from staff
Maintain tracking chart and give reinforcements for acceptable behavior
Model socially acceptable behavior for student
Student will maintain a chart representing amount of time exhibiting positive behavior

### MONITORING SYSTEM: Responsible Teacher: Sped teacher
Describe system:
Maintain a behavior chart within the classroom
Token economy including behavior
Maintain communication between parent and school
Social worker and psychologist will keep progress notes with respect to weekly sessions w/students

### Data Collection Timeline:
Every week. Data to be collected and maintained as assigned.

FOLLOW-UP MEETING:  ☐ TBD  or  ☐ Date:        Time:    :        Location:

District of Columbia Public Schools, Division of Special Education

IEP Attachment A, Intervention Behavior Plan

116

## DOCUMENTED LEVEL OF SERVICE (PERM)
Complete and attach to MDT/IEP meeting notes

School: TBD by DCPS     Principal:     Special Education Coordinator:
Date: 3/3/06     Case Manager:
Student: Joshua Hamilton     DOB: ██/95   Age: 10     Technical Support Supervisor:
Parent: Yana Hamilton     Telephone: (H) 582-6332     Grade: 5   ID:    SSN:
Address: 1347 Stevens Rd SE

Referral Source: ☒ 120 day    ☐ Reeval    ☐ HOD    ☐ SA    ☐ MA
   ☐ Non-public   ☐ Residential   ☐ Citywide   ☐ Courts   ☐ Local School   ☐ Other:
Previous least restrictive environment (LRE setting): out of general education

### JUSTIFICATION FOR SETTING CONSIDERATION
Submit TAT/MDT documentation

#### Supportive Data/Documentation

Accommodations/Modifications

Small structured classroom environment to reduce distracting stimuli; divide assignments into chunks; stand near student when giving oral directions; cue student to stay on task; low teacher to student ratio; intensive reading remediation program; behavior management plan; shorten assignments; modified assignments; small group instruction; preferential seating; breaks; daily check ins with special education teacher; ignore inappropriate behavior that is not drastically outside of classroom limits; weekly/daily log to parent to report behavior

#### Data Requirements

| | | |
|---|---|---|
| Current IEP | ☒ Yes | ☐ No |
| Signatures of required participants (MDT notes) | ☒ Yes | |
| Intervention Behavior Plan | ☒ Yes | |
| Copies of current class work, homework assignments | ☒ Yes | |
| Medical reports | ☐ Yes | ☐ No |
| Clinical reports | ☐ Yes | ☐ No |
| Psychiatric reports | ☒ Yes | ☐ No |
| Medications | ☐ Yes | ☐ No |
| Attendance record | ☒ Yes | |
| Copies of most recent evaluations | ☒ Yes | |

Results of All Interventions (TAT, MDT, etc; attach meeting notes)
Tat 2/9/05
504 plan 2/9/05
MDT notes 12/8/05
Student sped file ongoing

Resources Needed for Program Implementation
None needed

Current Setting Considerations

| Row | Setting in neighborhood school (determined through the IEP team) | Service Provider (based on documented need) | Level of Service (based on documented need) |
|---|---|---|---|
| 1 | ☐ in general education classroom setting | ☐ general education with consultation from special education staff | ☐ between 0% and 20% of service time |
| 2 | ☐ combination gonoral education and resource classroom | ☐ combination of general educators, special educators, and related service providers | ☐ between 21% and 60% of service time |
| 3 | ☒ *out of general education classroom | ☒ special educators and related service providers | ☒ between 61% and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities 300.306) to the maximum extent appropriate to the needs of that child. ((300.553) Nonacademic settings).

Check the level of need as indicated:

Directions:
If two or three boxes are checked in the Row 1, LOW.
If two or three boxes are checked in the Row 2, MODERATE.
If two or three boxes are checked in the Row 3, HIGH.

If one box is checked in each row, check either MODERATE or HIGH, depending on the needs of the student.

LEVEL OF NEED
☐ LOW     ☐ MODERATE     ☒ HIGH

117

# KIPP DC:
# **AIM** Academy

421 Alabama Ave. SE          Tel: 202-373-0505
Washington, DC 20032      Fax: 202-373-0508

July 10, 2006

Dear Ms. Hamilton,

DCPS has given me the attached dates and times to convene for a placement meeting for J███ H████. Although you indicated on July 3, 2006 that you would not like to convene on the Placement until the HOD is issued, I have been informed by DCPS that we should move forward with a meeting for placement at this time. If none of the attached dates are convenient for you, please let me know.

KIPP DC is interested in meeting the needs of J███ H████ as soon as possible. Please call me to confirm a date and time at 202-315-6923.

Sincerely,

Dana Ross
Director of Special Education



**DCPS - 03**

www.aimacademydc.org

118



District of Columbia Public Schools, Special Education
Multidisciplinary Team (MDT)
Meeting Notice

Date: July 3, 2006

## Letter of Invitation     Re: J██████ Ha██████

Dear Ms. Hamilton

A multidisciplinary team (MDT) meeting is scheduled to discuss the status of your child's educational needs. Your participation is essential, and we look forward to your valuable input. The purpose and details of the meeting are printed below. You and the school may have additional individuals attend the meeting who have knowledge or special expertise regarding your child. Other invited participants are listed under MDT members.

| Place/Location: | Please check one date for confirmation: |
|---|---|
| **KIPP DC: AIM Academy**<br>**421 Alabama Avenue, SE**<br>**Washington, DC 20032** | ☐ Tuesday, July, 11  at 10:00  or<br>☐ Friday, July 14   at 1:00  or<br>☐ Tuesday, July 18  at 1:00 |

If the suggested meeting time is inconvenient, please call the counselor and/or special education coordinator for a mutual time to address the concerns. Participation by teleconference may be requested if other arrangements prove to be unsuccessful.

The purpose(s) of the meeting is to:
☐ develop/review IEP (including consideration of extended school year (ESY) services)  ☐ discuss CompEd
☐ review evaluation or reevaluation information  ☒ discuss placement                ☐ consider transition services needs
☐ develop the student evaluation plan (SEP)     ☐ determine manifestation           ☐ discuss quarterly review
☐ discuss documented levels of service          ☐ discuss eligibility               ☐ behavior plan review
☐ review records to support the completion of services as follows:
      ☐ graduated    ☐ completed services   ☐ aged out   ☐ transferred out of District      ☐ dropped out
      ☐ other:

MDT members: ☐ Principal or Designee      ☐ General Education Teacher        ☐ Psychologist
             ☐ Parent                    ☐ Special Education Teacher       ☐ Occupational Therapist
             ☐ LEA Representative         ☐ Speech and Language Therapist   ☐ Other:
             ☐ Student                   ☐ Social Worker                   ☐ Other:

Any questions you may have concerning your child's program will be discussed at the above meeting. A copy of the Procedural Safeguards for parents/guardians is enclosed or will be provided for your information. If the school can be of assistance to you, please contact: **Dana Ross, Director of Sped at 202 - 373 – 0505 ext 12.**

If the purpose of the meeting includes consideration of a transition plan, your child is invited and a representative of the following agency(ies) may be invited, if appropriate:

See attachments, when appropriate, for Evaluation Procedures, Test, Records, or Reports used.

After the third attempt to contact the parent/guardian, the meeting will be held without further notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Please sign below and return this page to the school.

Parent/Guardian/Surrogate Signature: _____     Date: _____

I acknowledge receipt of the Procedural Safeguards for parents/guardians (due process procedures). ☐ Yes   ☐ No

District of Columbia Public School        07-02-2001        Division of Special Education        MDT Letter of Invitation to Parent

      Student File
      Grade Level Team
      SpEd Coord/Director of SpEd
      Sharon Millis
      Evan Murray

119

**KIPP DC:**

District of Columbia Public Schools, Special Education
Multidisciplinary Team (MDT)
Meeting Notice

# SECOND NOTICE

### Letter of Invitation    Re: J█████ H███████

Date: 7/10/06

Dear: Ms. Hamilton

A multidisciplinary team (MDT) meeting is scheduled to discuss the status of your child's educational needs. Your participation is essential, and we look forward to your valuable input. The purpose and details of the meeting are printed below. You and the school may have additional individuals attend the meeting who have knowledge or special expertise regarding your child. Other invited participants are listed under MDT members.

| Place/Location: | Please check one date for confirmation: |
|---|---|
| **KIPP DC: AIM Academy**<br>**421 Alabama Avenue, SE**<br>**Washington, DC 20032** | ☐ **Tuesday, July 18**    at **1:00**  or<br>☐ **Tuesday, July 18**    at **1:30**  or<br>☐ **Tuesday, July 25**    at **1:00** |

If a suggested meeting time is inconvenient, please call the counselor and/or special education coordinator for a mutual time to address the concerns. Participation by teleconference may be requested if other arrangements prove to be unsuccessful.

The purpose(s) of the meeting is to:

☐ develop/review IEP (including consideration of extended school year (ESY) services) ☐ discuss CompEd
☐ review evaluation or reevaluation information ☒ discuss placement          ☐ consider transition services needs
☐ develop the student evaluation plan (SEP)  ☐ determine manifestation      ☐ discuss quarterly review
☐ discuss documented levels of service     ☐ discuss eligibility          ☐ behavior plan review
☐ review records to support the completion of services as follows:
   ☐ graduated  ☐ completed services  ☐ aged out  ☐ transferred out of District  ☐ dropped out
   ☐ other:

MDT members: ☒ Principal or Designee   ☒ General Education Teacher      ☐ Psychologist
             ☒ Parent                 ☒ Special Education Teacher      ☐ Occupational Therapist
             ☒ LEA Representative      ☒ Speech and Language Therapist  ☐ Other:
             ☒ Student                 ☒ Social Worker                 ☐ Other:

Any questions you may have concerning your child's program will be discussed at the above meeting. A copy of the Procedural Safeguards for parents/guardians is enclosed or will be provided for your information. If the school can be of assistance to you, please contact: **Dana Ross at 202 - 315 - 6923 ext 12.**

If the purpose of the meeting includes consideration of a transition plan, your child is invited and a representative of the following agency(ies) may be invited, if appropriate:

See attachments, when appropriate, for Evaluation Procedures, Test, Records, or Reports used.

After the third attempt to contact the parent/guardian, the meeting will be held without further notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Please sign below and return this page to the school.

Parent/Guardian/Surrogate Signature: _____ Date: _____

I acknowledge receipt of the Procedural Safeguards for parents/guardians (due process procedures). ☐ Yes  ☐ No

District of Columbia Public School      07-02-2001      Division of Special Education      MDT Letter of Invitation to Parent

    Student File
    Grade Level Team
    SpEd Coord/Director of SpEd
    Evan Murray
    Sharon Millis

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**



# Due Process Complaint Disposition

- This form should be used by the parties to notify the Student Hearing Office about important information concerning the outcome of the resolution meeting.
- Please return to the Student Hearing Office of the District of Columbia Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002, Fax number 202/442-5556.

## A.    STUDENT AND CASE INFORMATION:

Student Name: J⬛⬛⬛  H⬛⬛⬛    Birth Date: ⬛⬛/94
First    MI    Last

SHO Case Number: [            ]    (if applicable)

## B.    PARENT / GUARDIAN:

Name:    Yana    Hamilton
First    Last

Complete Address:    1347 Stevens Road, SE
WDC 20009

Phone:
Home    Work or alternative phone no.    Fax No. if applicable

## C.    LOCAL EDUCATION AGENCY REPRESENTATIVE:

Full Name: Arthur    Fields    Title: LEA. CRS

Address:    825 North Capitol Street, NE
Washington, DC 20002

Phone:    (202) 442-4800    (202) 442-5517
Office    Fax

SEID DRN Rev'd. 6/14/05

The complaint has been resolved and the parties have reached agreement to the satisfaction of the parent / guardian. The due process complaint notice and the request for a due process hearing should be dismissed and withdrawn. The parties are aware that the agreement may be voided by any party within 3 business days of the date the agreement is signed. The parties have agreed to wait at least 3 business days before filing this form with the Student Hearing Office.

**X**     The resolution session was unsuccessful. The case should proceed to a due process hearing.

_____     The resolution session was unsuccessful. The parties have agreed to try mediation.

_____     The parties mutually agree to waive the resolution session and request mediation and the assignment of a mediator to this case.

_____     The parties mutually agree to waive the resolution session and request that this case proceed to a due process hearing on the merits.

___     The parent has failed to participate in a resolution meeting as required under the law. A due process hearing should not be scheduled until further notice

**J.**    **Signature and Affirmation:**

I affirm that the information provided on this form is true and correct. I also affirm my receipt of the Procedural Safeguards Manual or I have waived my right to receive the Procedural Safeguards Manual.

_____        9/5/06
Signature of Parent/Guardian                Date

_____        9/5/06
Local Educational Agency Representative      Date

**Mail, fax or deliver this form to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC 20002**
**Fax number: 202/442-5556**

2

SEID DRN Rev'd 6/14/05

122

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

___ PUBLIC    ____ DCPS CHARTER    _ LEA CHARTER    _X_ NONPUBLIC    ____ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES

Meeting Confirmation Date: [                ]    Meeting Held: [ 09-05-06 ]

Student: [ J████ H██████ ]    DOB: [ ████/94 ]    School: [ KIPP DC ]

| int Name) | PARTICIPANTS (Sign Name) | POSITION |
|---|---|---|
| Dr. Arthur Fields  Jr. | | LEA/CRC |
| Yana Hamilton | | Parent |
| Sharon Millis | | Advocate |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

[  ] Resolved    [ X ] unresolved

The resolution session began with introductions. The parents complaint is that DCPS has failed to comply with the terms and conditions of the July 10, 2006 Hearing Officers Determination. The parent is requesting compensatory education. The parent is requesting that DCPS place and fund the student at Rock Creek Academy.

DCPS agrees to convene a MDT meeting in which the student's IEP is revised as necessary placement and compensatory education are discussed and a new prior notice and comp ed plan are developed if necessary with in 14 days.

The parent in unwilling to accept DCPS offer and will proceed to due process this case is unresolved.

J██████ H██████    RS  9/5/06

DCBS states they will not fund/place
at DCA. They will hold another MDT
14 days to discuss issues of concern.
Parent does not give up her right to
but will cooperate with DCBS. This
case is unresolved and will go to

124


# hp LaserJet 9050mfp series

## Fax Call Report

1

DCPS Office of General Counsel
2024425098
16-Oct-2006 01:07 PM

| Job | Date/Time | Type | Identification | Duration | Pages | Result |
|-----|-----------|------|----------------|----------|-------|--------|
| 1144 | 16-Oct-2006 12:56 PM | Send | 92654264 | 10:29 | 31 | Success |



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

| | | | |
|---|---|---|---|
| **To:** | Douglas Tyrka | **From:** | Saurabh Gupta, Esq. |
| **Fax:** | 202/265-4264 | **Date:** | 10/16/06 |
| **Phone:** | | **Pages:** | ___ (including cover page) |
| **Re:** | J█████ H█████ | **CC:** | |

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

·**Comments:**

DCPS' disclosures on the above named student's Due Process complaint.

125



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

| **To:** | Douglas Tyrka | **From:** | Saurabh Gupta, Esq. |
|---|---|---|---|
| **Fax:** | 202/265-4264 | **Date:** | 10/16/06 |
| **Phone:** | | **Pages:** | ___ (Including cover page) |
| **Re:** | J████ H████ | **CC:** | |

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

•**Comments:**

DCPS' ˄Amended disclosures on the above named student's Due Process complaint.

Doug – Added 1 more witness
  – Doc still the same
    3:45pm 10/16/06

Saurabh Gupta

126

# hp LaserJet 9050mfp series

**Fax Call Report** 1

DCPS Office of General Counsel
2024425098
16-Oct-2006 03:58 PM

| Job | Date/Time | Type | Identification | Duration | Pages | Result |
|-----|-----------|------|----------------|----------|-------|--------|
| 1157 | 16-Oct-2006 03:57 PM | Send | 92654264 | 1:23 | 3 | Success |



Saurabh Gupta, Esq.
Attorney Advisor
Office of the General Counsel
825 North Capitol Street, NE
Room 9095
Washington, DC 20002
(202) 442-5000 main
(202) 442-5178 direct
(202) 442-5097/8 fax

# Fax

| | | | |
|---|---|---|---|
| **To:** | Douglas Tyrka | **From:** | Saurabh Gupta, Esq. |
| **Fax:** | 202/265-4264 | **Date:** | 10/16/06 |
| **Phone:** | | **Pages:** | _____ (Including cover page) |
| **Re:** | J~~ H~~ | **CC:** | |

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

•**Comments:**
                    *Amended*
DCPS'∧disclosures on the above named student's Due
Process complaint.

Doug – Added 1 more witness
      – Doc still the same
           3:45pm 10/16/06

                    *Saurabh Gupta*

                    Saurabh Gupta

127



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**October 6, 2006**

Saurabh Gupta
Office of the General Counsel
District of Columbia Public Schools
Washington, DC 20002-4232

   **RE: J██ H███████ (D.O.B. ████/05)**

Mr. Gupta:

   An expedited hearing has been scheduled for **9:00 a.m. on October 12, 2006,** to
adjudicate a due process complaint filed on behalf of the above-captioned student, J██
H██████. In addition to any documents and witnesses disclosed by DCPS, the parent reserves
the right to rely on the following witnesses and documents, as well as any other documents
previously disclosed or offered into evidence in any other matter concerning this student.

**Documents:**

1. 10/06/06   Disclosure Letter
2. 10/06/06   Notice Compelling DCPS Witness(es)

**Administrative Record**

3. 07/10/06   Hearing Officer's Determination
4. 08/23/06   Due Process Complaint Notice
5. 08/24/06   DCPS Scheduling Memorandum
6. 08/29/06   Petitioner's Motion to Determine Stay-Put Placement
7. 09/14/06   Petitioner's Motion for Expedited Hearing
8. 09/18/06   Expedited Hearing Notice

**IEPs & Meeting Notes**

9. 08/09/06   IEP
10. 08/09/06   MDT Meeting Notes

**Evaluations**

11. 09/30/05   Independent Functional Behavioral Assessment
12. 11/07/05   Independent Clinical Evaluation
13. 01/25/06   Neuropsychological Evaluation
14. 05/12/06   Speech and Language Evaluation
15. 05/16/06   Occupational Therapy Evaluation

**JH1**
128

**Correspondence**

16. 04/06/06  Letter, KIPP DC to Peggy Peagler, DCPS Placement Specialist
17. 04/27/06  Acceptance Letter, Rock Creek Academy
18. 07/28/06  "Student Transfer Form"
19. 08/25/06  Letter, Tyrka & Houck, LLP to KIPP DC
20. 09/05/06  Resolution Meeting Confirmation
21. 09/22/06  Letter, Tyrka & Houck, LLP to Student Hearing Office

Witnesses:[1]

1. Ms. Yana Hamilton, Parent
2. Ms. Sharon Millis, Special Education Advocate & Expert
3. Mr. Keith Coyle, Associate
4. Ms. Camille McKenzie, Office Assistant
5. Mr. Michael Tchorni, Law Clerk
6. Ms. Keren Plowden, Director of Student Services, Rock Creek Academy

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

---

[1] Some witnesses may be testifying by telephone and/or use a designee.

129



# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

October 6, 2006

Saurabh Gupta
Office of the General Counsel
District of Columbia Public Schools
Washington, DC 20002-4232

RE: J████ H██████ (D.O.B. ████/05)

Mr. Gupta:

Pursuant to 34 C.F.R. § 300.509(a)(2) and D.C. Mun. Regs. tit. 5 § 3031.1(b), Petitioner hereby compels the following necessary and material witnesses:

1. Any DCPS employee and/or agent who has drafted notes of any meeting or telephone conversation, which DCPS intends to submit as evidence at this hearing.
2. Dr. Peggy Peagler, DCPS Placement Specialist
3. Dr. Evan Murray, DCPS Placement Specialist
4. Toni Demasi, Executive Director, Office of Human Resources

Respectfully submitted,

Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave NW, Suite 400
Washington, DC 20009
(ph) (202) 265-4260
(f) (202) 265-4264

3

**JH2**

130

TRANSMISSION VERIFICATION REPORT

```
TIME    : 10/06/2006 11:35
NAME    : TYRKA & ASSOCIATES
FAX     : 2022654264
TEL     : 2022654260
SER.#   : 000A6J693992
```

```
DATE,TIME              10/06  11:07
FAX NO./NAME           OGC1
DURATION               00:27:44
PAGE(S)                99
RESULT                 OK
MODE                   STANDARD
                       ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**       OGC

**Fax Number:**

**From:**            Douglas Tyrka

**Regarding:**       J████ H████████

**# of pages:**      99

**Notes:**           Disclosures

131

# District of Columbia Public Schools

## *State Enforcement and Investigation Division*

### <u>*confidential*</u>

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE 8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

| | | |
|---|---|---|
| **In the Matter of** | ) | **IMPARTIAL** |
| | ) | **DUE PROCESS HEARING** |
| J▓▓▓▓ H▓▓▓▓▓▓, student | ) | |
| Date of Birth: ▓▓▓▓ 1995 | ) | |
| | ) | **<u>DECISION AND ORDER</u>** |
| Petitioner, | ) | |
| | ) | |
| versus | ) | Request Date: April 27, 2005 |
| | ) | Hearing Date: June 27, 2006 |
| **The District of Columbia Public Schools,** | ) | |
| Home School: Birney Elementary School, | ) | Held at: 825 North Capitol Street, NE |
| Attending: Kipp DC: Aim Academy P.C.S., | ) | Eighth Floor, Hearing Room 2 |
| | ) | Washington, D.C. 20002 |
| Respondent. | ) | |

| | |
|---|---|
| **Parent:** | Yana S. Hamilton |
| | 1347 Stevens Road, SE |
| | Washington, D.C. 20009 |
| **Counsel for the Parent/Student:** | Douglas Tyrka, Esq. |
| | **Tyrkas & Houck, LLP** |
| | 1726 Connecticut Avenue, NW Suite 400 |
| | Washington, D.C. 20017 |
| **District of Columbia Public Schools:** | Rhondalyn D. Primes, Esq., Attorney-Advisor |
| | **Office of the General Counsel, DCPS** |
| | 825 North Capitol Street, NE 9th Floor |
| | Washington, D.C. 20002 |

An <u>INDEX of NAMES</u> is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant witnesses. The index will be detached before release of this <u>DECISION & ORDER</u> as a public record.

i

**J**132

## INDEX of NAMES for J█████ H█████

**Hearing Date:** June 27, 2006

Appearing on behalf of DCPS:

1. Peggy Peagler, Ed. D., Placement Specialist/Monitor, DCPS *
2. Dana Ross, Director of Special Education,
         Kipp DC: Aim Academy Public Charter School *

Appearing on behalf of the parent/student:

1. Keren Plowden, Executive Director of Student Services
         Rock Creek Academy **
2. Sharon Millis, Special Education Expert

*  Gave testimony.
**  Gave testimony via telephone.

ii

133

# INTRODUCTION

On April 27, 2006, Counsel for the Parent filed the herein Complaint on behalf of the parent and student complaining Kipp DC: Aim Academy Public Charter School (KDCAA), a DCPS public charter school, and the District of Columbia Public Schools (DCPS) denied a Free Appropriate Public Education (FAPE) to the student. Specifically, Counsel for the Parent complained of failure on the part of DCPS to provide an appropriate educational placement for the student and, for relief, requested placement at the Rock Creek Academy.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 11:00 A.M., Tuesday, June 27, 2006 at DCPS Headquarters, 825 North Capitol Street, NE 8th Floor, Hearing Room 3, Washington, D.C. 20002. The hearing convened as scheduled.

# JURISDICTION

The hearing convened under Public Law 108-446, The Individuals with Disabilities Education Improvement Act of 2004 and Title V of the District of Columbia Municipal Regulations.

# ISSUES:

1. Were the occupational therapy assessment and speech/language evaluation of the student completed timely?

2. Was the December 8, 2005 IEP appropriate?

3. Did DCPS provide an appropriate educational placement for the student after the March 28, 2006 MDT/IEP/Placement meeting?

4. Was compensatory education for the student discussed during the March 28, 2006 MDT/IEP/Placement meeting as was ordered in Paragraph 3 of the ORDER in the Hearing Officer's Determination/ Decision (HOD) issued in this matter July 13, 2005?

5. Was an interim private educational placement for the student appropriate at the time of the hearing?

# SUMMARY of the EVIDENCE and FINDINGS of FACT

By facsimile dated June 20, 2006, DCPS disclosed 5 witnesses and 10 documents. By facsimile dated June 20, 2006, the parent disclosed 6 witnesses and 13 documents. The documents were placed into the record and are referenced/footnoted herein where relevant.

1 of 5 pages

134

Notes of the resolution session were not in the record.

Counsel for the Parent referred to the amended motion for a Default Judgment against DCPS, Parent Document No 13, and requested a determination thereon. The hearing officer took the motion under advisement. Here, the hearing officer noted the initial motion for Default Judgment, Parent Document No 11, the DCPS Response, Parent Document No 12, and the HOD issued in this matter June 8, 2006 denying the initial motion and determined the issues in the amended motion for Default Judgment were disposed in the said HOD. The amended motion for Default Findings was DENIED.

Counsel for the Parent represented that during the March 28, 2006 MDT/IEP/Placement meeting[1], the MDT recommended an occupational therapy assessment and a speech/language evaluation of the student and determined the placement at Kipp DC: Aim Academy Public Charter School (KDCAA) inappropriate for the student; that, to date, DCPS had not completed the said evaluations nor provided an appropriate educational placement for the student.

DCPS was ordered forward.

The DCPS Placement Specialist/Monitor testified that she participated via telephone in the March 28, 2006 MDT/IEP/Placement meeting for the student at KDCAA during which KDCAA complained of their inability to contain the student's misbehavior; that she determined that Birney Elementary School could implement the December 8, 2005 IEP which disability coded the student Emotionally Disturbed with 17 hours of special education services, DCPS Document No 5. The Specialist testified that she recommended Birney ES which had an inclusive instructional model as an appropriate interim educational placement for the student, but that the parent and educational advocate for the student declined the placement at Birney ES and, with the agreement of KDCAA, elected to have the student remain at KDCAA. The Specialist testified that a Notice of Placement was not issued for the student because the MDT had recommended further evaluation – speech/language, occupational therapy and behavior assessment – of the student and to reconvene later to complete an IEP; that the parent had decided to keep the student at KDCAA. The Specialist testified that while the MDT did not set a date to reconvene, she referred the speech/language evaluation and the occupational therapy assessment shortly after the March 28, 2006 MDT/IEP/Placement. On cross-examination, the Specialist testified that she attended the March 28, 2006 MDT meeting to review evaluations but offered Birney ES as an interim placement in response to the MDT's request that another placement be found for the student.

The Director of Special Education for the three Kipp D.C. Public Charter Schools testified that she supervised all of the special education coordinators, including the one at KDCAA, and that she forwarded the request to DCPS for the March 28, 2006 MDT/IEP/Placement meeting for the student with the understanding that placement would be a major topic for discussion; that she taught the student during the 2004-05 School Year and was familiar with him. The Director testified that the student came to KDCAA form Birney ES during July 2005 and that the December 8, 2005 IEP, the initial IEP for the student, was completed at KDCAA with evaluations forwarded from Birney ES. The Director testified that during December 8, 2005 MDT/IEP/Placement meeting, a neuropsychological evaluation of student was requested; that the evaluation was completed and dated January 25, 2006 and recommended

2 of 5 pages

---

[1] No IEP was completed at the March 28, 2005 MDT/IEP/Placement meeting.

adding the OHI-ADHD disability coding to the student's IEP, DCPS Document No 8; that the neuropsychological evaluation along with the academy's experience with the student up to that point convinced her that KDCAA was not an appropriate placement for the student and that promptly she was to prepare and send to the DCPS Specialist a request for a MDT meeting to arrange a new educational placement for the student. The Director testified that during the resulting the March 28, 2006 MDT/IEP/Placement meeting, everyone with the exception of the DCPS Specialist participating via telephone concluded that KDCAA was an inappropriate educational placement for the student and that he required a full-time special education or therapeutic placement; that to her request for an immediate interim placement, the DCPS Specialist proposed Birney ES. The Director testified that the parent and educational advocate rejected Birney ES and that, to be cooperative, she acquiesced to their request to keep the student at KDCAA until the speech/language evaluation and occupational therapy assessment recommended at the March 28, 2006 meeting were completed and the MDT had reconvened and an IEP completed. The Director testified that the student failed most of his classes at the end of the 2005-06 School Year. Finally, the Director testified that the speech/language evaluation had been completed and was in her possession.

DCPS called the special education coordinator at Birney ES.

Counsel for the Parent objected.

**Based on the testimony of the Director and Recommendation 3 of the March 28, 2006 MDT/IEP/Placement meeting notes, DCPS Document No 2, the hearing officer directed a Finding for the Parent on Issues 2 & 3: the December 8, 2005 IEP was inappropriate in that it did not identify the student's OHI-ADHD disability nor contain the needed level of special education services. Moreover, with the said IEP deficiencies, KDCAA and Birney ES were not the Least Restrictive Environment for the student and testimony as to the ability of Birney ES to implement the December 8, 2005 IEP became immaterial.**

The testimony of the Birney ES special education coordinator was not permitted.

DCPS rested.

Counsel for the Parent called the Executive Director of Student Service at the Rock Creek Academy who testified via telephone; the testimony is not recounted here.

Argument.

In consideration of the testimony, documents and arguments herein, the hearing officer made the following CONCLUSIONS.

1. While the March 28, 2006 recommended speech/language evaluation and occupational therapy assessment were not so late as to constitute a Denial of FAPE on April 27, 2006 when the herein Complaint was filed, on June 27, 2006, the date of the herein hearing, the failure to have completed the occupational therapy assessment was late enough to have impeded the student's right to a FAPE.

2. In view of the team membership of the March 28, 2006 MDT/IEP/Placement meeting, the hearing officer was persuaded that the LRE issue was appropriately discussed and determined and that that the student required a full-time and/or therapeutic educational placement.

3 of 5 pages

136

3. During the meeting March 28, 2006 MDT/IEP/Placement meeting, it became clear that the December 8, 2005 IEP was inappropriate; consequently, the idea of implementation of the IEP at Bireny ES was a *non sequitur*. The student required a full-time and/or therapeutic program.

4. Compensatory education for the student was not discussed at the March 28, 2006 MDT/IEP/Placement meeting as ordered in the July 13, 2005 HOD.

5. At the time of the hearing the student was on summer recess and no IEP for the student indicated ESY Services. Prerequisites for an Order for an interim private placement are the establishment of a Denial of FAPE which the parent did herein, and that the established denial exists at the time the ORDER is issued which was not the circumstance herein. A private placement is to remedy an existing Denial of FAPE, not to punish an LEA. On the issue date hereof, the student was not being denied services under *IDEIA 2004*.

In consideration of the foregoing, the hearing officer made the following

## ORDER

1. Within 10 days hereof, DCPS will have completed the occupational therapy evaluation of the student and within 30 days hereof convened an MDT/IEP/Placement meeting during which evaluations will be reviewed, the IEP reviewed and revised as appropriate and a full-time and/or therapeutic placement discussed and determined. If a DCPS placement is recommended, a Notice of Placement will be issued within 5 schooldays of the said meeting; if a non-public placement is recommended, a Notice of Placement will be issued within 30 days of the said meeting.

2. At the said MDT/IEP/Placement meeting, the form, amount and delivery of compensatory education will be discussed and determined. For disputes under this paragraph, either party may request a hearing. Here, reference is made to Paragraph 3 of the ORDER in the HOD issued in this matter July 13, 2005.

3. For the said MDT/IEP/Placement meeting, scheduling is to be through and notices are to be sent to Counsel for the Parent except that, for everyday of unavailability of parent/educational advocate/

4 of 5 pages

137

Counsel for the Parent, the deadline herein will be extended one day. For disputes under this paragraph, with the burden of proof on DCPS, documentation of the parties will be relied upon to determine the good faith of each party.

4. The parent was the prevailing party.

This is **THE FINAL ADMINISTRATIVE DECISION**. Appeal can be made to a court of competent jurisdiction within ninety (90) days of the issue date of this decision.

Date: Juy 7 2006
_____
H. St. Clair, Esq., Hearing Officer

Issued: 7/10/06
_____
Student Hearing Office, DCPS

5 of 5 pages

138

**DUE PROCESS COMPLAINT NOTICE**
In re J██████ H████████
**August 23, 2006**

| | |
|---|---|
| **Petitioner**: | Yana Hamilton |
| **Student**: | J█████ H████████ |
| **DOB**: | ██████/94 |
| **Current School**: | Kipp DC:  Aim Academy ("Kipp DC") |
| **Residence**: | 1347 Stevens Road, SE |
| | Washington, DC 20009 |

**Petitioner's Contact Information for Special Education Purposes**:

Tyrka & Houck, LLP
1726 Connecticut Ave. N.W. Suite 400
Washington, D.C.  20009
Tel:  202-265-4260
Fax:  202-265-4264

**Violations:**

1. Failure to comply with a July 10, 2006 Hearing Officer's Determination ("HOD").

**Facts:**

1. A July 10, 2006 HOD ordered DCPS to, *inter alia*, convene an MDT meeting within thirty (30) days to:
   a) review J██████ current evaluations,
   b) revise his IEP accordingly,
   c) discuss and determine an appropriate full-time therapeutic placement, and
   d) discuss and determine the form, amount and delivery of compensatory education as prescribed in a previous HOD, dated July 13, 2005.
2. An MDT meeting was convened by DCPS at Kipp DC on August 9, 2006.
3. At the August 9, 2006 MDT meeting:
   a) DCPS:
      i) arrived unprepared to discuss J██████ need for a full-time therapeutic placement;
      ii) placed a phone call to one of its placement specialist during the meeting to discuss J██████ need for a full-time therapeutic placement;
      iii) proposed Taft Center as an appropriate full-time therapeutic placement after making a phone call to one of its placement specialists;
      iv) acknowledged that the Taft Center:
         (1) had not yet received or reviewed J██████ educational file;
         (2) had not yet accepted J██████ for admission;
         (3) offered a classroom setting with a student-to-teacher ratio of 9 to 1;
         (4) did not have nurse or psychiatrist available on staff;
      v) failed to discuss or determine J██████ eligibility for compensatory education.

JH4
139

b) J███████ special education teacher at Kipp DC reported that he requires a classroom setting with a small student-to-teacher ratio of approximately 4 to 1;

c) Kipp DC's licensed clinical social worker reported that J█████ requires a placement with a full-time nurse and psychiatrist on staff.

d) the Petitioner's advocate:
   i) renewed the Petitioner's proposed placement of Rock Creek Academy ("RCA") for J███████;
   ii) reported that:
      (1) J██████ has been interviewed by and accepted for admission into RCA;
      (2) the Petitioner had visited RCA and conducted a tour of the school;
   iii) discussed the appropriateness of RCA as a proposed placement for J██████, including its:
      (1) classroom setting offering a student-to-teacher ratio of approximately 4/5 to 1;
      (2) availability of an on staff nurse and psychiatrist;
      (3) crisis intervention and behavior management program.

4. DCPS has never issued a valid prior notice of placement for J██████ at the Taft Center.

5. DCPS' proposed placement for J█████ at the Taft Center is not appropriate.

6. J██████ will receive educational benefit at RCA.

7. The Petitioner's proposed placement for J██████ at RCA is appropriate.

**Proposed resolution:**

1. DCPS to immediately fund and place J██████ at RCA with transportation.

2. DCPS to immediately convene an MDT to develop an appropriate compensatory education plan for its failure to comply with the July 10, 2006 and July 13, 2005 HODs.

3. DCPS to reconvene the MDT within thirty (30) days of J████████ enrollment at RCA to:
   a) review all current evaluations of J████████
   b) revise his IEP accordingly, and
   c) develop an appropriate compensatory education plan to compensate J██████ for its failure to provide an appropriate placement from the time of the filing of this complaint until the date of his enrollment at RCA.

4. DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing this case.

**Resolution Meeting:**

1. The Petitioner contends that the entire IEP Team and a representative of the LEA with authority to:
   a. immediately fund and place J██████ at RCA with transportation,
   b. immediately convene an MDT to develop an appropriate compensatory education plan for its failure to comply with the July 10, 2006 and July 13, 2005 HODs, and
   c. reconvene the MDT within thirty (30) days of J████████ enrollment at RCA
   are necessary attendees at any resolution meeting.

2. If these individuals are not going to be in attendance, Petitioner requests that DCPS provide counsel with a written notice waiving its right to a resolution session 48 hours prior to any scheduled meeting.

3. The Petitioner contends that any meeting not attended by the identified individuals is not a valid resolution session, but rather an informal settlement discussion.

4. The Petitioner will be accompanied by his or her attorney at any resolution session convened subsequent to the filing of this complaint and will record any resolution session by analog or digital means.

5. Any statements by the Petitioner or his or her representative during any resolution meeting or other settlement discussion incident to the filing of this complaint are for the purposes of compromise only.


Respectfully Submitted,


Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20008
(ph) (202) 265-4260
(f) (202) 265-4264

141

```
        TRANSMISSION VERIFICATION REPORT

                                    TIME  : 08/23/2006 12:44
                                    NAME  : TYRKA HOUCK LLP
                                    FAX   : 2022654264
                                    TEL   :
                                    SER.# : 000A6J693992


    DATE,TIME              08/23  12:43
    FAX NO./NAME           SHO
    DURATION               00:01:07
    PAGE(S)                04
    RESULT                 OK
    MODE                   STANDARD
                           ECM
```

## TYRKA & HOUCK, LLP
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Houck or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Houck expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Houck. Thank you.

Recipient:         SHO

Fax number:

From:              Douglas Tyrka

Regarding:         J██████ H█████████

Number of pages:  4 (including cover sheet)

Notes:       Due Process Complaint

142

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| H~~amilton~~, J.   Petitioner | ) | HEARING OFFICER |
| | ) | |
| Vs. | ) | |
| | ) | |
| DCPS | ) | DISTRICT OF COLUMBIA |
| Attending Kipp DC | ) | |
| | ) | |
| Respondent | ) | PUBLIC SCHOOLS |

## SCHEDULING MEMORANDUM

1. A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **<u>The Student Hearing Office does not schedule or participate in resolution meetings</u>**.

2. The complaint notice was filed on **August 23, 2006**

3. The deadline for the resolution meeting is **September 7, 2006** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A. ***Prior Written Notice Not Issued by the Local Educational Agency***. If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

1. An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
2. A description of other options that the IEP Team considered and the reasons why those options were rejected;
3. A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

Rev'd. 7/6/05

**JH5**
143

4.     A description of the factors that is relevant to the agency's proposal or refusal.

B.     Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **September 2, 2006**.

C.     _Deficiency Notice_.  A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.     The deadline for filing a deficiency notice is **September 7, 2006.**

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

Rev'd. 7/6/05

144

**Before the**
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## OFFICE OF MANAGEMENT SERVICES

| | | |
|---|---|---|
| **In re J██████ H███████** | ) | David R. Smith, Esquire |
| Special Education Student. | ) | Impartial Hearing Officer |
| | ) | |

## PETITIONER'S MOTION TO DETERMINE STAY-PUT PLACEMENT PENDING RESOLUTION OF THIS PROCEEDING

Pursuant to Section 401 of the Student Hearing Office's Standard Operating Procedures, the Petitioner respectfully requests that KIPP DC: Aim Academy ("KIPP") be ordered to allow J█████ to attend during the pendency of the Petitioner's active IDEA claim.

### FACTUAL BACKGROUND

J█████ received specialized instruction and related services at KIPP for the entire 2005-2006 school year, including ESY services in the summer of 2006. KIPP developed J██████ first IEP on December 8, 2005. The IEP identifies KIPP as the provider of instruction and services.

On July 28, 2006, KIPP executed a "Student Transfer Form" purporting to "withdraw" J█████ from KIPP. However, despite the fact that the form is clearly intended to be executed by a parent, KIPP completed and signed the form without the Petitioner's approval or awareness.

An MDT meeting was convened at KIPP on August 9, 2006. At the meeting, KIPP provided the Petitioner with a copy of the Transfer Form, and DCPS proposed changing J██████ placement to the Taft Center ("Taft"). The Petitioner rejected the

**JH6**
145

placement to Taft and did not agree to withdraw J████ from KIPP.

On August 23, 2006, the Petitioner filed a due process complaint against DCPS, challenging the placement to Taft and requesting a private placement.

On August 25, 2006, counsel sent a letter to KIPP invoking the Petitioner's "stay-put" protections under the IDEA. See 20 U.S.C. § 1415(j). Later that day, counsel received a phone call from Ms. Johnson, KIPP's principal, who stated that KIPP would not allow J████ to attend classes and would forcibly eject J████ and the Petitioner if they attempted to enter the premises.

### ARGUMENT

Because the Petitioner has begun proceedings regarding the proposed change in J████ placement and the Parties have not agreed to an interim placement, J████ must remain at KIPP, his current educational placement, until the Petitioner's claims are resolved.

The IDEA states, in relevant part:

[D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents agree otherwise, the child shall remain in the then-current educational placement[.]

20 U.S.C. § 1415(j). This Provision "is literally and rigorously enforced, consistent with its purpose 'to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students.'" Hale ex rel. Hale v. Poplar Bluffs R-1 School District, 280 F.3d 831, 833 (8th Cir. 2002), quoting Honig v. Doe, 484 U.S. 305, 323 (1988) (emphasis in original).

By executing a withdrawal form on behalf of J████ and by refusing to allow him

2

146

to attend, KIPP is attempting to act unilaterally in exactly the way prohibited by the IDEA, <u>Honig</u>, and countless other cases.

"[W]here school officials unilaterally attempt to change a child's instruction, the child's 'then current educational placement' will clearly be the previously implemented IEP." <u>Thomas v. Cincinnati Bd. of Ed.</u>, 918 F.2d 618, 625 (6th Cir. 1990), <u>citing</u> <u>Honig v. Doe</u>, 484 U.S. 305 (1988). "Current educational placement" "refers to the operative placement actually functioning at the time the dispute first arises." <u>Thomas</u> at 625-26.

## CONCLUSION

For these reasons, the Hearing Officer should order KIPP to honor the Petitioner's stay-put and allow J████ to attend until the resolution of the Petitioner's IDEA claims.

If the Hearing Officer is inclined to rule otherwise, the Petitioner respectfully requests an emergency hearing on this issue.

Respectfully Submitted,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20008
(ph) (202) 265-4260
(f) (202) 265-4264

3

147

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2006, I sent a copy of the foregoing by

facsimile to Counsel for the Respondent and to the Principal at KIPP DC: Aim Academy.

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20008
(ph) (202) 265-4260
(f) (202) 265-4264

148

**TYRKA & HOUCK, LLP**
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

**August 29, 2006**

Khala Johnson, Principal
KIPP DC/AIM Academy
421 Alabama Avenue, S.E.
Washington, DC 20032

**RE:**    J██████ H█████ (D.O.B. ██/94)

Ms. Johnson:

We represent Yana Hamilton, the parent of J█████ H██████

The enclosed motion has been filed with the Student Hearing Office.  A copy is being
provided for your review.

During our last conversation, you indicated that Kipp is represented by counsel.
However, our office does not have any information verifying the identity or contact
information for your attorney.  Therefore, we respectfully request that a copy of this letter
and the enclosed motion be forwarded to your attorney immediately.

Sincerely,

Keith J. Coyle, Associate
PA Bar No. 201128
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Avenue N.W., Suite 400
Washington, D.C. 20009
p. (202) 265-4260
f. (202) 265-4264

149

```
                  ┌─────────────────────────────────────┐
                  │  TRANSMISSION VERIFICATION REPORT    │
                  └─────────────────────────────────────┘
                                        TIME  : 08/29/2006 15:16
                                        NAME  : TYRKA HOUCK LLP
                                        FAX   : 2022654264
                                        TEL   :
                                        SER.# : 000A6J693992
```

```
  DATE,TIME            08/29  15:14
  FAX NO./NAME         2023730508
  DURATION             00:01:21
  PAGE(S)              06
  RESULT               OK
  MODE                 STANDARD
                       ECM
```

### TYRKA & HOUCK, LLP
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

**CONFIDENTIALITY NOTICE**

This facsimile contains confidential information belonging to Tyrka & Houck or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Houck expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Houck. Thank you.

Recipient:        SHO, OGC & Khala Johnson (Kipp)

Fax number:       202-442-5556, 202-442-5097, 202-373-0508

From:             Douglas Tyrka

Regarding:        J█████ H█████ (D.O.B. ███/94)

Number of pages:  6 (including cover sheet)

Notes:        Stay Put Motion

150

```
                    TRANSMISSION VERIFICATION REPORT

                                          TIME  : 08/29/2006 15:12
                                          NAME  : TYRKA HOUCK LLP
                                          FAX   : 2022654264
                                          TEL   :
                                          SER.# : 000A6J693992


      DATE,TIME                   08/29  15:10
      FAX NO./NAME                OGC1
      DURATION                    00:01:19
      PAGE(S)                     06
      RESULT                      OK
      MODE                        STANDARD
                                  ECM
```

## TYRKA & HOUCK, LLP
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Houck or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Houck expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Houck. Thank you.

Recipient:        SHO, OGC & Khala Johnson (Kipp)

Fax number:       202-442-5556, 202-442-5097, 202-373-0508

From:             Douglas Tyrka

Regarding:        J█████ H██████ (D.O.B. ████/94)

Number of pages:  6 (including cover sheet)

Notes:            Stay Put Motion

151

TRANSMISSION VERIFICATION REPORT

```
                              TIME  : 08/29/2006 15:18
                              NAME  : TYRKA HOUCK LLP
                              FAX   : 2022654264
                              TEL   :
                              SER.# : 000A6J693992
```

```
DATE,TIME                     08/29  15:17
FAX NO./NAME                  SHO
DURATION                      00:01:19
PAGE(S)                       06
RESULT                        OK
MODE                          STANDARD
                              ECM
```

**TYRKA & HOUCK, LLP**
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

**CONFIDENTIALITY NOTICE**

This facsimile contains confidential information belonging to Tyrka & Houck or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Houck expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Houck. Thank you.

Recipient:      SHO, OGC & Khala Johnson (Kipp)

Fax number:     202-442-5556, 202-442-5097, 202-373-0508

From:           Douglas Tyrka

Regarding:      J█████ H██████ (D.O.B. ███/94)

Number of pages: 6 (including cover sheet)

Notes:      Stay Put Motion

152

**Before the**
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## OFFICE OF MANAGEMENT SERVICES

|  |  |
|---|---|
| In re J████ H█████, | ) |
|     Special Education Student, | ) |
|  | ) |

### PETITIONER'S MOTION FOR AN EXPEDITED HEARING

For the reasons stated herein, the Petitioner respectfully requests that this due process complaint notice be immediately scheduled for an expedited hearing pursuant to Section 1007 of the Student Hearing Office Standard Operating Procedures ("SOPs").

J████ is an eleven-year-old special needs student. During the 2005-2006 SY, J████ was placed at Kipp DC: Aim Academy ("Kipp"), a public charter school in the District of Columbia.

On August 23, 2006, the Petitioner filed a due process complaint seeking J██████ immediate placement at Rock Creek Academy, a private special education school located in the District of Columbia. Subsequent to the filing of this complaint, Kipp informed the Petitioner that J████ would not be allowed to attend its school for the 2006-2007 SY.

On August 29, 2006, the Petitioner filed a motion requesting that the Hearing Officer determine J██████ current placement for purposes of the IDEA's stay-put provision. See 20 U.S.C. § 1415(j). It has now been several weeks since this motion was filed, the Respondent has never filed a response, and a ruling has not been issued.

J████ is not attending school, and he has not received any special education since the start of the 2006-2007 SY. For these reasons, the Petitioner respectfully requests that her prior motion for an interim placement be granted, or that this matter be immediately scheduled for an expedited due process hearing.

Respectfully Submitted by,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC  20008
(ph) (202) 265-4260
(f) (202) 265-4264

2

# TYRKA &
## ASSOCIATES, LLC

1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

### Certificate of Service

Counsel for the Petitioner hereby certifies that a copy of this MOTION has been filed with the Student Hearing Office and sent via facsimile to Counsel for the Respondent.

Respectfully Submitted by,

Douglas Tyrka
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20008
(ph) (202) 265-4260
(f) (202) 265-4264

**DATE FILED:**    September 14, 2006

3

```
                    ┌─────────────────────────────────────┐
                    │  TRANSMISSION VERIFICATION REPORT    │
                    └─────────────────────────────────────┘
                                              TIME  : 09/14/2006 16:44
                                              NAME  : TYRKA & ASSOCIATES
                                              FAX   : 2022654264
                                              TEL   : 2022654260
                                              SER.# : 000A6J693992
```

```
DATE,TIME                      09/14  16:43
FAX NO./NAME                   SHO
DURATION                       00:00:49
PAGE(S)                        04
RESULT                         OK
MODE                           STANDARD
                               ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | SHO & OGC |
| *Fax Number:* | |
| *From:* | Keith Coyle |
| *Regarding:* | J▮▮▮▮ H▮▮▮▮▮ |
| *# of pages:* | 4 |
| *Notes:* | |

156

TRANSMISSION VERIFICATION REPORT

```
TIME  : 09/14/2006 16:28
NAME  : TYRKA & ASSOCIATES
FAX   : 2022654264
TEL   : 2022654260
SER.# : 000A6J693992
```

```
DATE,TIME           09/14  16:27
FAX NO./NAME        OGC1
DURATION            00:00:49
PAGE(S)             04
RESULT              OK
MODE                STANDARD
                    ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**      SHO & OGC

**Fax Number:**

**From:**           Keith Coyle

**Regarding:**      J██████ H██████

**# of pages:**     4

**Notes:**

157

# District of Columbia Public Schools
### *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556

*X EXPEDITED HEARING*



### HEARING NOTICE

| MEMORANDUM VIA: [✓] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:  Parent (or Representative): *D. TYRKA*  Fax No.: *265-4264*

LEA Legal Counsel: *OGC*

RE:  ▓▓▓▓▓▓▓ ▓▓▓▓  and (LEA) DOB: _____
        Student's Name

FROM:  **SHARON NEWSOME**
          Special Education Student Hearing Office Coordinator

DATE SENT:  *9/18/06*

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on *9/18/06* . Please be advised that the hearing has been scheduled for:

DATE:  *10/12/06*          *EXPEDITED*
                                    *HEARING*
TIME:  *9:00 AM*

AT:   825 North Capitol Street, NE, Washington, DC
        8th Floor

ASSIGNED HEARING OFFICER: _____

[✓] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request in *writing on the attached form* to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff. Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[ ]  THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates. If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure of evidence and witnesses to the opposing party is required at least *five business days* prior to the hearing with copies to the Special Education Student Hearing Office.

District of Columbia Public Schools, Washington, DC

# INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS IEP
Page 1 of 4

## I. IDENTIFICATION INFORMATION

Student Name: Last: H███████    First : J███████    MI:

Student ID: 905583    SSN:    Age: 10   Grades: 6

Gender: M   DOB: ███/94   Ethnic Group: African American/Black

Street Address: 1347 Stevens Rd SE

City: Washington   State: DC   ZIP: 20020

Attending School: TBD by DCPS

Home School: Birney Elementary School

☐ Elementary   ☒ Middle/JHS   ☐ SHS   ☐ CWS

Parent: Yana Hamilton   ☒ Parent ☐ Guardian ☐ Surrogate

Street Address (if different from student):
City:    State:    ZIP:

Telephone: H:    W:    ext.

## II. CURRENT INFORMATION

Date of IEP Meeting: 8/9/06

Date of Last IEP Meeting: 12/8/05

Date of Most Recent Eligibility Decision: 3/28/06

Purpose of this conference:
☐ Initial IEP   ☒ Review of IEP
☐ Requested Eval   ☐ 3 Yr ReEval

Level of Standardized Assessment: III

Agenda to be attached as needed:
☒ Behavior   ☐ Transportation
☐ ESY   ☐ Transition

Completed by Office of Bilingual Education
English and Math Proficiency Assessment

Oral:

Reading/Written:

Instrument:

Date:

## III. LANGUAGE

| | Language | Language used in evaluation | Language used in conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | English | English |
| Parent | English | English | English | English |
| Home | English | English | English | English |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| Services | Setting GenEd | Setting SpEd | Total | Frequency hr/min | wk/mo | Provider (by discipline) | Beginning Date | Duration # | wk/mo |
|---|---|---|---|---|---|---|---|---|---|
| Specialized instruction | | 28.5 | 27.5 | hr | wk | SpEd and GenEd teachers | 8/9/06 | 10 | mo |
| counseling | | 2.0 | 1.5 | hr | wk | Social worker | 8/9/06 | 10 | mo |
| ~~Counseling consult~~ | | | 0.0 | hr | wk | | | 10 | mo |
| Speech | | .5 | 0.5 | hr | wk | Speech Language Pathologist | 8/9/06 | 10 | mo |
| Ocupational therapy | | 1 | 0.0 | hr | wk | occupational therapy | 8/9/06 | 10 | mo |
| | | | 0:0 | hr | wk | | | 10 | mo |
| Total | 0.0 | 32 | 32 | hrs/wk | | | | | |

## V. DISABILITY

Emotionally Disturbed/OHI

☐ Check if setting is general education

Time in specialized instruction and related services
☐ 0-20%   ☐ 21-60%   ☒ 61-100%

Time NOT spent in a general education setting: 0%

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Lisa Suben — _[signature]_

Caroline John — _[signature]_

Michelle Pittman, licsw — Michelle Pittman, licsw

Darcy Oglade — _[signature]_

Sharon Willis — _[signature]_

Kristy Ochs — _[signature]_

Devora Abercrombie — Devora Alexandromy

Mary Ellen G de Jesus PhD — _[signature]_ PhD

Donna Norma MS ccc/slp — _[signature]_

☐ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature _Yana Hamilton_    Date 8/9/06

JH9
159

| | | DCPS – IEP |
|---|---|---|
| Student: Joshua H_____ | Managing School: Birney ES | Page 2 of 4 |
| DCPS ID: 9055583 | DOB: __/__/95    Attending School: | |

# VII. PRESENT EDUCATIONAL PERFORMANCE LEVELS IN AREAS AFFECTED BY THE DISABILITY

☐ Additional Comments

**Scores when available**

**Academic Areas:** (Evaluator) Dr. Mckinney

Math strengths:  simple Calculations

Math Cal: 97  4.8

Broad Math:  88      3.5

See goal page: 1

Impact of Disability on educational performance in general education curriculum: Poor motivation, behavior problems and impulse control prevent him from completing assignments.  Poor comprehension of word problems affect his ability to perform on grade level.

Date: 12/7/05

Broad Rdg: 85  2.9

Reading strengths:  Phonemic awareness, letter word identification

Basic Rdg: 97  4.8

Written Ex:  88      3.2

Impact of Disability on educational performance in general education curriculum:  Poor motivation, behavior problems and impulse control prevent him from completing assignments. Passage comprehension affects his ability to read on grade level.

See goal page: 2, 3

Date: 12/7/05

**Communication (Speech & Language):** (Evaluator) Lesa Gibson MS CCC SLP

Strengths: Reviewer: Donna Norman MS CCC SLP
The student has the ability to formulate different kinds of sentence, word association skills.

Scores when available
Exp Lang: 85
Rec Lang: 81
Artic: wnl
Voice: wnl
Fluency: wnl
Exp Voc: 86
Rec Voc: 97
See goal page:
Date:

Impact of Disability on educational performance in general education curriculum:

The student has the inability to follow directions and understand concepts.

**Motor Health:** (Evaluator) Ms. Devara Abercrombie OTR/L

Strengths: Gross motor - walking, crawling, standing, running and sitting average on manual coordination

Impact of Disability on educational performance in general education curriculum:
J___ demonstrated below average in hand manipulation skills, spatial organization, bilateral motor coordination, visual perception and visual motor integration skills

Scores when available
FR TVMI - Standard Score 73 poor
MV PT - Raw score 27 6yrs 9 mnth
BOT Fine Motor Standard Score 34 Below
Eye Hand Coordination Standard average
Score 41 average
See goal page:
Date: 5/16/06

**Social Emotional Behavioral Areas:** (Evaluator) Dr. Mckinny / Michelle Pittman, LISCW

Strengths: Joshua can approach his peers in a socially appropriate manner.
Easy to engage and establishes rapport quickly, enjoys positive feedback & encouragement

Scores when available

Impact of Disability on educational performance in general education curriculum:  Joshua's anxiety and ADHD issues impact his ability to focus and academically perform
Difficulty associating skills learned in group & trans. them into the classroom, Poor Attention span, easily frustrated, difficulty ignoring negative behavior distracts others from learning & school anxiety.

See goal page:
Date:

**Cognitive/Adaptive Behavior:** (Evaluator)

Strengths:

Scores when available

Impact of Disability on educational performance in general education curriculum:

See goal page:
Date:

**Prevocational Skills:** (Evaluator)

Strengths:

Scores when available

Impact of Disability on educational performance in general education curriculum:

See goal page:
Date:

160

| Student Name | ████████ | | Managing School | | DCPS - IEP Page 3 of 4 |
| Student ID Number | 905 5583 | DOB ████/96 | Attending School | Kipp DC AIM | |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐    Goal Number: ☐

Area addressed by goal: _Visual Motor Skills_

**ANNUAL GOAL:** (including mastery criteria.)

J████ will improve visual perception and/or visual perceptual motor skills for greater success in academics and written work with 80% accuracy.

Provider(s): _Occupational Therapy / Teacher_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| ① J████ will be able to copy 5 spelling words from the board with proper sizing and line orientation 4/5 times | | Quarterly |
| ② J████ will complete a 24 piece puzzle independently. | | Quarterly |
| ③ J████ will locate 10 hidden objects in background with 80% accuracy 4/5 times. | | Quarterly |
| ④ J████ will copy/imitate age appropriate geometric shapes with 80% accuracy. | | Quarterly |
| ⑤ J████ will benefit be able to complete a 10-15 word sentence with proper sizing, alienation, and capital/lower differentiation 80% of the time. | | Quarterly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☑ Documented Observation  ☐ Report  ☑ Other  _Progress notes_

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4    161

| Student: Jo███ H██████ | | Managing School: ~~KIPP DC: AIM Academy~~ | DCPS - IEP |
|---|---|---|---|
| DCPS ID: 9055583 | DOB: ███1995 | Attending School: KIPP DC: AIM Academy | Page 3 of 4 |

## VIII. SPECIALIZED SERVICES

Goal Number:

Additional Comments ☐

Area addressed by goal: Counseling

> **Annual Goal: (including mastery criteria)**
> J████ will show one year's growth in the area of indentifying and acting constructively on issues relating to achieving academic success by focusing on the following:

Provider(s): Clinical Social Worker

Consider audience, behavior, condition, degree and evaluation.

| Short-term Objectives (include mastery criteria or benchmarks) | Date mastered | Evaluation schedule |
|---|---|---|
| 1. J████ will participate in weekly individual and group counseling sessions.<br>  a. Establish trust and rapport with clinical social worker.<br>  b. Express his feelings through mutual storytelling, artwork, and therapeutic games.<br>  c. Verbalize feelings of school anxiety, conflicts with peers, and academic performance. | | quarterly |
| 2. J████ will remain on task when working independently or in a small group w/o being distracted or distracting others.<br>  a. J████ will show ability to follow class schedule and rountine, focus to task, and refrain from distracting others 2 out of 5 days a week.<br>  b. "    "    "    " 3 out of 5 days a week.<br>  c. "    "    "    " 4 out of 5 days a week. | | quarterly |
| 3. J████ will demonstrate friendly peer relationships.<br>  a. J████ will give compliments, use polite words, caring gestures, and work with others towards a common goal 2 out of 5 times a week. *at 30 min. a week*<br>  b. "    "    "    " 3 out of 5 times a week. *at 60 min. a week*<br>  c. "    "    "    " 4 out of 5 times a week. *at 2 hours a week* | | quarterly |
| 4. J████ will learn acceptable alternatives for coping with situations that make him feel anxious.<br>  a. Stop, relax, and think. Utilize therapeutic toys and games, i.e. stress balls, mood cubes, and journaling 2 out of 5 days a week.<br>  b. "    "    "    " 3 out of 5 days a week.<br>  c. "    "    "    " 4 out of 5 days a week. | | quarterly |
| 5. J████ will improve his social and communication skills as well as manage his emotions more effectively.<br>  a. Verbalize feelings of school avoidance, problems with homework, organization, *triggers* and peer relationships 2 out of 5 days a week.<br>  b. "    "    " 3 out of 5 days a week.<br>  c. "    "    " 4 out of 5 days a week. | | quarterly |
| | | quarterly |

162

| Student Name | J██████ H████████ | Managing School | Kipp Aim Academy | DCPS - IEP |
| Student ID Number | 9055583 | DOB | ██████/95 | Attending School | Kipp Aim Academy | Page 3 of 4 |

| **VIII. SPECIALIZED SERVICES** | Additional Comments: ☐ | | Goal Number: ☐ |

Area addressed by goal: _Communication -_

**ANNUAL GOAL:** (including mastery criteria.)

J██████ will improve his receptive language (following directions/concepts) and his memory skills @ 80% for 6 months.

Provider(s): _Speech Pathologist_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| When presented with curriculum based activities, J██████ will demonstrate his ability to understand concepts (before, after, then, etc.) in written/verbal format @ 80%. | | monthly |
| J██████ will follow 2-3 step directives with/without repetition in curriculum based activities @ 80%. | | monthly |
| J██████ will participate in various memory curriculum based activities @ 80% in written/verbal format | | Monthly |
| Within the classroom, the therapist will provide strategies to reduce inattentive behaviors for trial/adaptation by J██████ when attending to a task. | | weekly |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4    163

**VIII. SPECIALIZED SERVICES**

Goal Number:

Additional Comments ☐

Area addressed by goal: Academic: Writing

Annual Goal: (including mastery criteria)

J████ will increase his written language skills by 6 months growth by demonstrating command of standard English, organizational and drafting strategies as outlined in the writing process.

Provider(s): General education and special education teachers

Consider audience, behavior, condition, degree and evaluation.

| Short-term Objectives (include mastery criteria or benchmarks) | Date mastered | Evaluation schedule |
|---|---|---|
| Use graphic organizers to plan writing during prewriting stages on three out of four times with 80% accuracy. | | quarterly |
| Use punctuation correctly at the end of a sentence on three out of four times with 80% accuracy. | | quarterly |
| Use capitalization at the beginning of a sentence and for proper nouns on three out of four times with 80% accuracy. | | quarterly |
| Write sentences of varying lengths to communicate ideas or answer questions on three out of four times with 80% accuracy. | | quarterly |
| Write one paragraph with a topic sentence, three details and a closing sentence on three out of four times with 80% accuracy. | | quarterly |
| | | quarterly |
| | | quarterly |

Evaluation Procedure(s)

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other:

164

**VIII. SPECIALIZED SERVICES**

Goal Number:

Additional Comments ☐

Area addressed by goal: Academic: reading

Annual Goal: (including mastery criteria)

Increase reading fluency and comprehension by using phonics strategies, word parts, and context clues by mastering the following short term goals

Provider(s):  special education teachers

Consider audience, behavior, condition, degree and evaluation.

| Short-term Objectives (include mastery criteria or benchmarks) | Date mastered | Evaluation schedule |
|---|---|---|
| Recognize and state main ideas presented in texts with three supporting details on 3 out of 4 trials with 80% accuracy. | | quarterly |
| Make predictions with evidence on 3 out 4 trials with 80% accuracy. | | quarterly |
| Use word attack skills and context clues to decode unfamiliar words on 3 out 4 trials with 80% accuracy. | | quarterly |
| Decode two syllable words using chunking and touch and say method on three out of four trials with 80% accuracy. | | quarterly |
| Identify story elements in a story on three out of four trials with 80% accuracy. | | quarterly |
| Sequence the beginning, middle and end in a story on three out of four trials with 80% accuracy. | | quarterly |
| Identify problem and solution in text on three out of four trials with 80% accuracy. | | quarterly |

Evaluation Procedure(s)

☒ Portfolio   ☐ Log   ☐ Chart   ☒ Test   ☐ Documented Observation   ☐ Report   ☐ Other:

165

| Student: J██████ H████████ | Managing School: Birney ES | DCPS - IEP |
| DCPS ID: 9055583 | DOB: ██████ | Attending School: TBD by DCPS | Page 3 of 4 |

## VIII. SPECIALIZED SERVICES

Goal Number:

Additional Comments ☐

Area addressed by goal: Reading Con't

Annual Goal: (including mastery criteria)

READING CONTINUE

Provider(s): Special education teacher

Consider audience, behavior, condition, degree and evaluation.

| Short-term Objectives (include mastery criteria or benchmarks) | Date mastered | Evaluation schedule |
| --- | --- | --- |
| Use graphic organizers, to compare and contrast themes, characters and ideas in a story in 3 out of 4 trials. | | quarterly |
| Identify synonyms and antonyms on three out of four trials with 80% accuracy. | | quarterly |
| Make connections to texts on three out of four trials with 80% accuracy. | | quarterly |
| After reading a passage on the 4.0 grade level, J█████ will answer who, what, where, when and how questions about the text in 3 out of 4 trials with 80% accuracy. | | quarterly |
| | | quarterly |
| | | quarterly |
| | | quarterly |

### Evaluation Procedure(s)

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other:

166

Student: J█████ H█████
DCPS ID: 9055583    DOB: ███/95
Managing School: Birney ES
Attending School: KIPP DC: AIM Academy
DCPS - IEP
Page 3 of 4

Case 1:07-cv-00550-EGS    Document 7-7    Filed 06/08/2007    Page 9 of 41

## VIII. SPECIALIZED SERVICES

Goal Number:

Additional Comments ☐

Area addressed by goal: Academic: Mathematics

Annual Goal: (including mastery criteria)

J█████ will demonstrate six months growth in number sense and problem solving by mastering the following short term goals.

Provider(s): special education teachers

Consider audience, behavior, condition, degree and evaluation.

| Short-term Objectives (include mastery criteria or benchmarks) | Date mastered | Evaluation schedule |
|---|---|---|
| Solve one step word problems using addition, subtraction, division or multiplication on 3 out of four trials with 80% accuracy. | | quarterly |
| Compare and order numbers through the hundred trillions places in standard, expanded and exponential form on three out of four trials with 80% accuracy. | | quarterly |
| Solve addition and subtraction problems with multi-digit whole numbers with out regrouping on three out of four times with 80% accuracy. | | quarterly |
| Given a computation problem with multiple steps, he will identify each step to solve the larger equation on three out of four trials with 80% accuracy. | | quarterly |
| Use place value to read and write numbers to the hundred thousand place on three out of four times with 80% accuracy. | | quarterly |
| Understand, select, and use units of appropriate size and type to measure angles, perimeter, surface area, weight, mass, and volume on three out four trials with 80% accuracy. | | quarterly |
| Identify and match simple fractions to pictures on three out of four times with 80% accuracy. | | quarterly |

Evaluation Procedure(s)

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other:

167

# ANNUAL GOALS AND BENCHMARKS

DATE: <u>May 16, 2006</u>

Student: <u>Joshua Hamilton</u>

| Goal # OT 1 | Area of Need: Visual Motor | Baseline: Poor Visual Motor skills affecting his classroom participation |
|---|---|---|

| | |
|---|---|
| **Measurable Annual Goal\*:** Student will be able to complete a 10-15 word sentence with proper sizing, alienation and Capitals/Lower differentiation. 80% of time. | Goal: Annual Review Progress Code_ *(see below)* If goal not met, enter Reason Code below |
| ☐ Enables Student to be involved /progress in general curriculum *and/or* ☒ Addresses other educational needs resulting from the disability ☐ Linguistically Appropriate | Person(s) responsible Classroom Staff, Family, OT |
| **Benchmark 1: By Progress Report 1, student will achieve:** Student will be able to complete a 5-8 word sentence with proper sizing, alienation and Capitals/Lower differentiation. 50% of time. | Progress Report 1(Jan 05): Is progress sufficient to Meet annual goal? ☐ Yes ☐ No If no, enter Reason Code *(see below)* _____ |
| **Benchmark 2: By Progress Report 2, student will achieve:** Student will be able to complete an 8-11 word sentence with proper sizing, alienation and Capitals/Lower differentiation. 65% of time. | Progress Report 2(April 05): Is progress sufficient to Meet annual goal? ☐ Yes ☐ No If no, enter Reason Code *(see below)* _____ |
| **Benchmark 3: By Progress Report 3, student will achieve:** Student will be able to complete a 10-15 word sentence with proper sizing, alienation and Capitals/Lower differentiation. 80% of time. | Progress Report 3(July 05): Is progress sufficient to Meet annual goal? ☐ Yes ☐ No If no, enter Reason Code *(see below)* _____ |

| Goal # OT 2 | Area of Need: Visual Motor | Baseline: Poor Visual Motor Skills negatively impact classroom work. |
|---|---|---|

| | |
|---|---|
| **Measurable Annual Goal\*:** Student will copy/imitate complex geometric designs with 90% of accuracy. | Goal: Annual Review Progress Code_ *(see below)* If goal not met, enter Reason Code below |
| ☐ Enables Student to be involved /progress in general curriculum *and/or* ☐ Addresses other educational needs resulting from the disability ☐ Linguistically Appropriate | Person(s) responsible Classroom Staff, Family, OT |
| **Benchmark 1: By Progress Report 1, student will achieve:** Student will copy/imitate complex Geometric designs with 50% of accuracy. | Progress Report 1( ): Is progress sufficient to Meet annual goal? ☐ Yes ☐ No If no, enter Reason Code *(see below)* _____ |
| **Benchmark 2: By Progress Report 2, student will achieve:** Student will copy/imitate complex Geometric designs with 70% of accuracy. | Progress Report 2( ): Is progress sufficient to Meet annual goal? ☐ Yes ☐ No If no, enter Reason Code *(see below)* _____ |
| **Benchmark 3: By Progress Report 3, student will achieve:** Student will copy/imitate complex Geometric designs with 90% of accuracy. | Progress Report 3( ): Is progress sufficient to Meet annual goal? ☐ Yes ☐ No If no, enter Reason Code *(see below)* _____ |

\*All Goals must have a minimum of 2 benchmarks

Progress Codes:
1. No Progress
2. Partial Progress (1%-49% of goal met)
3. Substantial Progress (50%-99% of goal met)
4. Met Goal

Reason Code for Insufficient Progress
A.   More time needed (continuing goal)
B. Excessive Absences or tardies
C. Insufficient opportunity for practice
D. Need to review or revise goal
E. Need to revise instruction
F. Other: _____

168

| Student: J██████ H██████ | | Managing School: Birney ES | DCPS - IEP |
|---|---|---|---|
| DCPS ID: 9055583 | DOB: ██/1995 | Attending School: TBD by DCPS | Page 4 of 4 |

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION, SERVICE ALTERNATIVES    Additional Comments ☐

Can curricular modification, accommodation, and/or supplemental aids and services be used for a LRE setting in regular education?    ☐ Yes    ☒ No

Explanation for removal out of regular education classroom.
The student's academic needs require small structured classroom with specialized instruction in a special education setting. Due to behavior and emotional difficulties he requires a small structured classroom environment to reduce distracting stimuli and a behavior intervention plan with constant positive reinforcement to encourage desired behavior.

## X. SUPPLEMENTARY AIDS AND SERVICES

| Classroom Needs (Do not name products or companies) | Setting | | | Frequency | | Provider (by discipline) | Beginning Date |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | hr/min | d/w/m | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:    ☐ None needed

Timing/Scheduling:  extra time, breaks, flexible scheduling
Setting:  tested individually
Presentation:  repeated directions, answer clarifying questions, read test aloud;
Response:  Write in test booklet; student indicates answers to multiple choice questions; dictate responses to constructed responses
Equipment:

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I    Tested with non-disabled peers under standard conditions without accommodations.
☐ Level II    (Describe accommodations for Level II) Tested under standard conditions with special accommodations.
☐ Level III    (Describe non-uniform conditions for Level III) Tested under non-standard conditions with permissible accommodations.
☒ Level IV    (Describe the alternative assessment:  DC cas with above accommodations
☐ Level V    Portfolio:

## XII. AREAS REQUIRING SPECIALIZED INSTRUCTION AND RELATED SERVICES:    MODIFICATIONS:

☒ Reading            ☐ Physical/Sensory        ☐ Transition        ☒ Language Arts/English
☒ Mathematics        ☒ Social Emotional        ☐ Vocational        ☒ Social Sciences
☒ Written Expression  ☐ Physical Development    ☐ Independent Living  ☒ Biological & Physical Sciences
☐ Other:                                       ☐ Speech/Language    ☐ Fine Arts
☐ None  Apply annual goals, objectives and/or modifications to address barriers in each area checked above

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| Describe considerations | Accept/reject reasons | Potential harmful effects |
|---|---|---|
| General education | rejected | |
| Combination: gen.ed./sp.ed. | rejected | possible school failure |
| out of general education | accepted | possible school failure |
| | | time away from peers |
| | | |

| Modifications/Accommodations to address the harmful effects: |
|---|
| Flexible scheduling and inclusive delivery of some services to reduce time away from peers |

Location for Services: TBD by DCPS

169

# KIPP DC:

District of Columbia Public Schools, Washington, DC
## IEP ADDENDUM FOR ESY SERVICES

DCPS IEP Attachment D
ESY Services, Page 1 of 2

| Student Name: J̶̶̶̶ H̶̶̶̶ | Date of Birth: ██/95 |
|---|---|
| Gender: ☒ Male   ☐ Female | Grade: 6 |
| School: TBD | Date IEP Written: |

| CHECKLIST | Yes | No |
|---|---|---|
| 1. IEP is reasonable and appropriate for student. | ☒ | ☐ |
| 2. All or most of the IEP goals and objectives are being achieved. | ☒ | ☐ |
| 3. Severity of the student's disability requires individual programming in the area of: | | |
|    • Self-sufficiency and independence from caretaker, or | ☐ | ☒ |
|    • Other: | ☐ | ☒ |
| 4. Student record shows serious regression following interruptions in the school program. | ☐ | ☒ |
| 5. Student record shows inability to recoup skills in a reasonable time following regression. | ☐ | ☒ |
| 6. Student has critical need for continuity of in programming to facilitate achieving educational benefit from his or her education program | ☐ | ☒ |
| 7. Transportation services needed. | ☐ | ☒ |

### DETERMINATION

| After review the IEP Team RECOMMENDS the provision of an extended school year program for the above student. | ☐ | ☒ |
|---|---|---|

| Reason: The team determined that the student does not qualify for ESY services because there is no evidence of significant regression over breaks or notable inability to recoup skills after a reasonable time. |
|---|

District of Columbia Public Schools, Division of Special Education          IEP Attachment D, IEP Addendum for ESY Services

---

# KIPP DC:

District of Columbia Public Schools, Washington, DC
## EVALUATION TO JUSTIFY TRANSPORTATION

DCPS IEP Appendix-A
Transportation

| Student Name: J̶̶̶̶ H̶̶̶̶ | DCPS ID: 9055583 | DOB: ██/95 |
|---|---|---|
| Attending School: TBD by DCPS | Neighborhood School: Birney ES | |

Attach a copy to the Transportation Data Form and maintain as part of the IEP.
Justification for transportation as stipulated in 300.24(15). Check all that apply.

☐ 1) Medical reports document a severe health condition that prevents the student from walking to school.*
☐ 2) Medical reports document a physical disability that prevents the student from walking to or getting to school independently.*
☐ 3) A documented severe cognitive disability prevents the student from walking to or getting to school independently.*
☐ 4) A visual and/or hearing disability interferes with the student's ability to arrive to school independently.**
☐ 5) A severe communication disability prevents the student from communicating for his or her safety.**
☐ 6) A behavior/emotional disability is so severe or erratic that there is a concern for the safety of the student and/or others.**
☐ 7) The student is eligible for the pre-school special education program and cannot participate without special transportation.
☐ 8) The student is/will attend a distant school because the IEP cannot be implemented at the zoned school.**
☐ 9) The student is medically fragile.**
☐ 10) The student requires assistance to get on and off the bus.**
☐ 11) The student is unable to function independently due to the severity of the disability.**
☐ 12) The student requires a non-routine transportation schedule, (eg, contract services, abbreviated school day).***
☐ 13) Medical reports document that the student has a physical disability and/or severe health condition that prevents him or her from walking to school.**
☐ 14) A documented severe cognitive disability prevents the student from walking to school.**
☐ 15) Other.*

| *Specify. **Document source. ***Explain.

The team determined that the student does not qualify for transportation services as none of the above criteria apply. |
|---|

170

District of Columbia Public Schools, Division of Special Education          IEP Appendix-A

# KIPP DC:

District of Columbia Public Schools, Washington, DC

## INTERVENTION BEHAVIOR PLAN

DCPS IEP Attachment A
Intervention Behavior Plan

Date Developed:

Student Name: J____ H____
Address: 1347 Stevens Road SE 20020          DCPS ID: 9055583    DOB: __/__/95    Grade: 6
Telephone: Home: 202-582-6332  Work: 202-720-0806  Other:    -    -
School: KIPP DC: KEY Academy                                              Counselor:
                                              Homeroom:          HR Teacher:

TARGET BEHAVIOR(S):                                              Additional Comments ☐
J____ engages in the following targeted behaviors:
1. Short attention span; problems with focusing and receiving constructive criticism
2. Impulse control; anxiety, self control and adjustment
3. Poor motivation; low self esteem; laspse of memory/drifting off;
4. Coping skills; frustration tolerance

POSITIVE INTERVENTION STRATEGIES: Student Objective
Frequent reminders and prompts to forcast his time
Chunk assignments into smaller parts
Opportunities for short breaks to leave his seat to assist in classroom helping activities (eg Passing out papers, door holder, taking notes to the office)
Token economy where he can earn prizes for good behavior; Associate positive consequences for good behavior
Explicit concrete directions; eye to eye contact; stress balls; regulate himself to calm down

Implementation Description
Student will receive positive oral praise when demonstrating appropriate behavior;
Constant positive intervention w/rewards
Student will receive extra "points" on tracking form
Student will receive special jobs from teacher
Student will receive special prizes for meeting goals on tracking form
Student will be redirected in a non confrontational way; friendly maner

POSITIVE INTERVENTION STRATEGIES: Teacher Strategies
Structure student's environment to promote appropriate behavior and reduce opportunities to be disruptive/
Small student to teacher ratio
Student will learn to accept redirection from staff
Maintain tracking chart and give reinforcements for acceptable behavior
Model socially acceptable behavior for student
Student will maintain a chart representing amount of time exhibiting positive behavior

MONITORING SYSTEM: Responsible Teacher: Sped teacher

Describe system:
Maintain a behavior chart within the classroom
token economy including behavior
maintain communication between parent and school
Social worker and psychologist will keep progress notes with respect to weekly sessions w/students

Data Collection Timeline:
Every week. Data to be collected and maintained as assigned.

FOLLOW-UP MEETING:    ☐ TBD or  ☐ Date:              Time:   :      Location:

District of Columbia Public Schools, Division of Special Education

IEP Attachment A, Intervention Behavior Plan  **171**

## DOCUMENTED LEVEL OF SERVICE (PERM)
### Complete and attach to MDT/IEP meeting notes

School: TBD by DCPS

Date: 3/3/06

Student: J̶o̶s̶h̶u̶a̶ H̶a̶m̶i̶l̶t̶o̶n̶

Parent: Yana Hamilton

Address: 1347 Stevens Rd SE

Principal:

Case Manager:

Student: DOB: ▉▉95    Age: 10

Telephone: (H) 582-6332

Special Education Coordinator:

Technical Support Supervisor:

Grade: 5    ID:    SSN:

Referral Source:    ☒ 120 day    ☐ Reeval    ☐ HOD    ☐ SA    ☐ MA
☐ Non-public    ☐ Residential    ☐ Citywide    ☐ Courts    ☐ Local School    ☐ Other:

Previous least restrictive environment (LRE setting): out of general education

### JUSTIFICATION FOR SETTING CONSIDERATION
#### Submit TAT/MDT documentation

#### Supportive Data/Documentation

##### Accommodations/Modifications

Small structured classroom environment to reduce distracting stimuli; divide assignments into chunks; stand near student when giving oral directions; cue student to stay on task; low teacher to student ratio; intensive reading remediation program; behavior management plan; shorten assignments; modified assignments; small group instruction; preferential seating; breaks, daily check ins with special education teacher; ignore inappropriate behavior that is not drastically outside of classroom limits; weekly/daily log to parent to report behavior

##### Data Requirements

| | | |
|---|---|---|
| Current IEP | ☒ Yes | ☐ No |
| Signatures of required participants (MDT notes) | ☒ Yes | |
| Intervention Behavior Plan | ☒ Yes | |
| Copies of current class work, homework assignments | ☒ Yes | |
| Medical reports | ☐ Yes | ☐ No |
| Clinical reports | ☒ Yes | ☐ No |
| Psychiatric reports | ☐ Yes | ☐ No |
| Medications | ☐ Yes | ☐ No |
| Attendance record | ☒ Yes | |
| Copies of most recent evaluations | ☒ Yes | |

Results of All Interventions (TAT, MDT, etc; attach meeting notes)

Tat 2/9/05
504 plan 2/9/05
MDT notes 12/8/05
Student sped file ongoing

Resources Needed for Program Implementation
None needed

#### Current Setting Considerations

| Row | Setting in neighborhood school (determined through the IEP team) | Service Provider (based on documented need) | Level of Service (based on documented need) |
|---|---|---|---|
| 1 | ☐ in general education classroom setting | ☐ general educators with consultation from special education staff | ☐ between 0% and 20% of service time |
| 2 | ☐ combination general education and resource classroom | ☐ combination of general educators, special educators, and related service providers | ☐ between 21% and 60% of service time |
| 3 | ☒ *out of general education classroom | ☒ special educators and related service providers | ☒ between 61% and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities (300.306) to the maximum extent appropriate to the needs of that child. ((300.553) Nonacademic settings)

#### Check the level of need as indicated:

Directions:

If two or three boxes are checked in the Row 1, LOW.
If two or three boxes are checked in the Row 2, MODERATE.
If two or three boxes are checked in the Row 3, HIGH.

If one box is checked in each row, check either MODERATE or HIGH, depending on the needs of the student.

#### LEVEL OF NEED

☐ LOW    ☐ MODERATE    ☒ HIGH

172

# KIPP DC:

District of Columbia Public Schools, Washington, DC

## MDT Meeting Notes: Eligibility

Student: ~~J████ H████~~     Grade: 5 → 6     Date: 8/9/06



| Participant | Participant Signature | Discipline |
|---|---|---|

The team introduced themselves.

Special education staff verified that the parent/guardian had received a copy of the procedural safeguards and verified that a receipt signed by the student's parent/guardian within the past year is included in the file.

Special education staff stated the purpose of an eligibility meeting:
    To review the reports on recent evaluations (Speech language, OT),
    To discuss the student's progress at school,
    To determine whether the student is eligible for Speech and language and/or Occupational therapy evaluations, and
    To address any recommendations in the evaluation reports.

    In addition, the team will develop an
    Individualized Education Plan (IEP) to appropriately address the student's needs.

Special education staff explained that to qualify for special education services, the student must demonstrate a disability, (such as a learning disability, an emotional disturbance, mental retardation, or a medical condition). In addition, the disability must impact the child's academic performance to the point that the student cannot handle grade-level work or is not passing classes.

**KIPP DC:KEY Academy**
Knowledge Empowers You.

770 M Street, SE, Second Floor
Washington, DC 20003
www.keyacademy.org

(202) 543-6595 ext. 105
(202) 543-6594 (fax)
www.kippdc.org

JH10
173

# KIPP DC:

### District of Columbia Public Schools, Washington, DC

## Meeting Notes: MDT

Student: J█████ H████████    Grade: 5    Date: 8/9/06

Ms. Ross explained that at the 12/8/06 meeting the team determined that J█████ was eligible for special education services with emotional disturbance. At that time the clinician, Ms. Mckinny was unable to determine if his behavior problems stemmed from Anxiety or ADHD. The team then requested a neuropsychological because based on discrepancies from the previous psycho-educational evaluation (T. Erby, 2/2004 using outdated cognitive measure-WISC-3) along with the need to further clarify J█████ cognitive deficits in the areas of working memory, auditory memory, visual memory, along with executive functioning (planning and organizing), inattention and verbal comprehension, a comprehensive neuropsychological assessment was requested. At the 3/28/06 meeting the team determined that J█████ also was eligible for special education services as OHI due to his ADHD. At that time the MDT team also requested a SPL and an OT evaluation to determine if J█████ had any deficits in those areas. The MDT team also determined that KIPP DC: AIM Academy was not an appropriate placement for him, but was unable to reach a conclusion about his current IEP. J█████ continued to attend AIM Academy instead of being placed at another school. At that time, the MDT determined that he needed a full time therapeutic setting, not a resource room.

The Due Process complaint was received by KIPP DC: AIM Academy on 7/26/06.

Dr. De Jesus, Clinical Psychologist:
Dr. De Jesus reviewed the neuropsychological evaluation. Verbal Memory: 89. Most of his scores are in the average range, but the sequential recall is in the low average. On the subtests, he had a wide range of scores. Most are in the average range. Paired Recall is in the above average. Digits Forward, Memory for Stories, Visual Sequential Memory all in the below average range.

Speech/Language Pathologist, DCPS:
J█████ was given three tests in his evaluation. The evaluator stated that J████████ language skills might be stronger than the evaluation reveals, considering that he was unfocused during the test. J█████ vocabulary scores of 97 (Peabody Picture Vocabulary Form IIIB) and 86 (Expressive One word Picture Vocabulary Test) show an improvement from the last evaluation in 2004, .
His scores for following directions were significantly low, but this score may be affected by his attention issues. Recalling Sentences subtest: 6. His other subtests on the CELF were in the average range. J█████ Core Language Score: 79, Receptive Language: 81 (following directions score brought this down), Expressive Language: 85, Language Memory: 74. These scores do reflect an improvement from 2004. The pathologist recommends consultation with the classroom teacher to address his needs because of his inattentiveness. She recommended some strategies to be used in the classroom – having J█████ repeat directions back to the teacher, fewer problems on tests, limited stimuli in the classroom. The advocate expressed that she felt J█████ needed direct services. The speech pathologist explained that she believes his language skills do not need direct remediation in pull out services, considering that he shows mastery of language dynamics. Ms. Ross expressed her concern that on the Stanford 10, J█████ score on the Vocabulary and the Reading Comprehension were not commensurate. Vocabulary was on the second grade level, while reading comprehension scored on the 7.7 level. (Total reading: 5.2) She suggested adding vocabulary goals to address this discrepancy.

Regular education teacher, Caroline John:
Ms. John explained that the AIM Academy team has tried shorter tests, shorter activities, chunking, positive incentives (on the minute), and he continues to have struggles with following directions and being successful in class. She is concerned because he is repeating the 5th grade with the same expectations and procedures and, even though he had a full year of practice with these procedures, he is still the last student to perform standard, rote procedures.

# KIPP DC:

District of Columbia Public Schools, Washington, DC

## Meeting Notes: MDT

Student:                                   Grade:                    Date:

Ms. Millis recommended in class support from a speech/language pathologist. Ms. Pittman, clinical social worker, has provided in class support and she is not concerned with J▇▇▇ being singled out. The team decided that in class support would be provided for a 6 month period, subject to review at the end of the 6 month period. The services will consist of a weekly block of 30 minutes in class but with the flexibility to pull him out. The majority of the therapeutic intervention should be done in class. The speech pathologist reviewed the IEP goals

Dr DeJesus followed up on a recommendation in the neuropsych for J▇▇▇ to be evaluated by a psychiatrist or a pediatrician in regards to his inattention. Ms Hamilton had taken J▇▇▇ to a pediatrician before the neuropsych evaluation had been completed to get a referral to a psychiatrist. Ms Hamilton said that she took J▇▇▇ to the psychiatrist twice but she did not feel that there was a clear understanding of the purpose of the appointments. She said the doctor suggested medicine but she never gave Ms. Hamilton a report. Ms. Millis stated that she would follow up on the documentation of these visits. If the documentation is inadequate, the advocate and the parent are requesting that DCPS perform a psychiatric evaluation to address J▇▇▇ inattentiveness.

Ms Abercrombie, Occupational Therapist:
Ms Abercrombie reviewed the report from May 2006. See report. The report recommends 45-60 minutes of individual and small group instruction. Ms Abercrombie recommends 60 minutes weekly, that can be done partially in the classroom if the therapist sees fit. The team agrees to these services on his IEP.
Ms Abercrombie reviewed the IEP goals. Ms Millis asked if any evaluations had been performed regarding J▇▇▇ sensory integration. After listening to the teachers' input, Ms Abercrombie added a goal regarding his sensory integration.

Ms Suben, Ms John, regular education teachers:
Ms. Suben presented the math goals, and Ms John presented the reading and writing goals.

Michelle Pittman, Clinical Social Worker:
Ms. Pittman presented the counseling goals and recommended that J▇▇▇ counseling hours be increased to 2 hours weekly. These hours would not consist of consult services, but rather in class support and individual or small group therapy, as determined by the therapist. Ms Pittman also explained the potential effects of medication for ADHD and the process to take in order to find medication for a student. Ms. Millis said that medication could be helpful in addressing needs.

The team reviewed the hours on the IEP. 2.5 hours of related services. At the last IEP the team agreed that J▇▇▇ needs a full time therapeutic setting. J▇▇▇ IEP will reflect 28.5 hours of specialized instruction, for a total of 32 hours on his IEP. The team agreed upon these hours.

The team moved on to the placement meeting.

175

District of Columbia Public Schools, Washington, DC

## MDT Meeting Notes: Eligibility/IEP/Placement

Student: ~~J████ H████████~~     Grade: 5→6     Date: 8/9/06

| Participant | Participant Signature | Discipline |
|---|---|---|
| Nancy Opalack | *[signature]* | Consultant |
| Kristy Ochs | *[signature]* | Special ed. teacher |
| YANA HAMILTON | *[signature]* | Parent |
| Susan Mills | *[signature]* | SP.Ed. Advocate |
| Dana A. Ross | OR | Director of sped, Design |
| Michelle Pittman, Licsw | Michelle Pittman, Licsw | social worker |
| Mary Ellen G. de Jesus PhD | *[signature]* PhD | psychologist |
| Evan Murray | *[signature]* | DCPS Placement Specialist/Coord. |
| Donna | *[signature]* | Speech Pathologist |
| Devara Abercrombé | Devara Abercrombie | Occupational Therapist |
| Lisa Suben | *[signature]* | mathematics teacher |
| Caroline John | *[signature]* | reading/writing teacher |

176

# KIPP DC:

District of Columbia Public Schools, Washington, DC

**Meeting Notes: MDT**

Student: ▓▓▓▓▓▓▓▓▓    Grade: 5 (going into 6th)    Date: 8/9/06

Placement portion of meeting —
all evals - OT/spl were discussed. IEP was
completed - 32 hours of services.

Rock Creek Academy has accepted ▓▓▓ -
advocate can provide acceptance letter — or
confirmation of acceptance. Rock Creek is a
full time therapeutic setting. Rock Creek
has identified a teacher, and ▓▓▓ will
be placed in a 4-5/1 setting. Parent + advocate
have visited the school in April - parent
likes the placement & thinks it is appropriate.

DCPS is referring ▓▓▓ to the Taft
Center. Taft Center serves multiply-disabled —
8:00 - 2:30 - time of day. 95 total students — 9/1 —
15 certified teachers. Behavior management program.
Therapeutic services are outsourced. Serves students
from 4th to 8th grade. Taft has not reviewed
▓▓▓▓ info at this point; nor has Taft accepted
▓▓▓▓ at this point. File will be delivered today.
▓▓▓▓ parent has the option to visit the program. —
DCPS will issue a NOP within five days of this
meeting date. No nurse or psychiatric consult available.

177

# KIPP DC:

District of Columbia Public Schools, Washington, DC

## Meeting Notes: MDT

Student: J___ H___          Grade: 5 - using 6th grader          Date: 8/9/06

Rock Creek academy representative -
   A variety of Oysb. lity categories - 260 students
   50 students in his program (J___) - certified -
                                                          15 teachers
      Ready specialst
      nurse
      clinical curricly
      psychiatric consulat
      crisis intervention
      behavior specialist - on a level and pt
            system - parent is involved
Advocate will visit program - DcPS requested neither visit
                              Taft before NOP is issued.
Special Education teacher at kipp - in regards
   to ratio - needs a very small setting - worked in 4/1 with
                                                  difficulty.
DcPS believes medication therapy may help J___
   handle a slightly larger student/teacher
   ratio.

KIPP Lic Clinical S.W states placement should
   include psychiatrist on staff & full time
   nurse available.

178

J████ Hamilton MDT 8/9/06
DCFS rep arrived at 10:30 for 10:00 meeting
Cognitive Scores team current neuropsychological
eval reviewed to establish low average/
average cognitive abilities.
OT/Lang will be direct service 1 x 30 wk.
the majority of therapy will be expanded
in the classroom setting. J████ but got no
Mom went to a psychiatrist but J████ but got no
report/documentation and was unable to
understand the outcome. Advocate will attempt
to obtain information but if unable to obtain needed
documents or if they are inadequate, Parent/
Advocate are requesting that DCFS do the
psychiatric that Neuropsychological recommended
OT recommended 1 x 45-60 min wk.
There may be a Sensory integration issue that
needs to be addressed once the therapist
begins services.
DCFS was not prepared with Placement
options due to the DCFS rep feeding the
DPS at the Placement portion of the MDT
He made a call to DCFS at the meeting
and came up with the Placement at Loft Center
Loft has not been provided his file no
one has reviewed his information
Parent/Advocate are requesting Rock Creek
Academy where Joshua has already
been accepted and details of programming
have already been discussed at length
at the IPH.

179

Maria Cohn, Ph.D.
& Associates

Maria Cohn, Ph.D.
Director of Clinical Services

Katie Hannessy, Psy.D

Nicole Sampson, Ph.D.

Julie Kovac, Ph.D.

Keisha Mack, Ph.D.

Nancy Heiser, Ph.D.

Mercedes Ebanks, Ph.D.

Jennifer Cameron, Ph.D.

William Ling, Ph.D.

Maia McKinney, Ph.D.

Shelley McLaughlin, M.Ed.

Patricia Smith, M.A., CCC-SLP

Toupazer Jordan, M.A., CCC-SLP

Kathy Stoltzfus, M.S., OTR/L

## FUNCTIONAL BEHAVIORAL ASSESSMENT
## AND BEHAVIORAL INTERVENTION PLAN

Name:                Jordan Hamilton
Date of Birth:       _____, 1995
Age:                 10 years, 5 months
School:              KIPP-DC Public Charter School
Grade:               5
Date of FBA:         September 30, 2005
Evaluator:           Mercedes Ebanks, PhD

### REASON FOR REFERRAL
Jordan was referred for a behavioral evaluation at the request of Tyrka & Houck, the attorneys/educational advocates who are working to gain special education services for Jordan. Concerns were reported in the areas of attention and concentration, as well as difficulty completing assignments.

### SOURCES OF INFORMATION
Behavior Assessment System for Children (BASC)
        - Self-Report and Teacher Report
Classroom Observation
Interview with Student
Interview with Ms. Suben, Teacher
Interview with Ms. Oaks, Special Education Teacher
Interview with Ms. Ross, Counselor

### BACKGROUND INFORMATION
According to reports, Jordan previously attended Birney Elementary School. Reports indicated a history of being off task, incomplete assignments, and poor academic progress. By current school staff reports, Jordan is frequently off task and requires constant redirection. He requires one-to-one attention to complete assignments. He was described to be disorganized and forgetful. His attention span is short and his short-term memory is poor; the word "daydreaming" was used to describe his behavior. Jordan does not exhibit overt disruptive behavior, however, his lack of focus requires constant attention from the teacher. He also has difficulty expressing his feelings and thoughts.

Maria Cohn, Ph.D & Associates

Hamilton Court

1200 31 Street, NW

Second Floor

Washington, D.C. 20007

phone: 202.333.6251

fax: 202.333.6255

www.mariacohnassociates.com

**JH11**

22

J▮▮▮▮ has been attending KIPP-DC Aim Public Charter School since September 2005. He is currently enrolled in Ms. Barr's classroom. Ms. Suben, his math teacher, described him to be a "good kid" and not a behavior problem, however, his lack of attention is concerning. He is not oppositional or argumentative, but his low motivation and slow approach is interfering with his productivity and progress. He does not complete assignments. Ms. Oaks, the special education teacher, indicated that J▮▮▮▮ is often lethargic and distracted. He was not described to be fidgety. His assignments are currently modified and shortened, however, J▮▮▮▮ continues to have difficulty completing them within a timely fashion. He does not return homework because he forgets his folder at home. J▮▮▮▮ indicated that he misplaces it.

In terms of peer relationships, J▮▮▮▮ does not often initiate communication with other students. He indicated that he has friends but some students tease him. J▮▮▮▮ indicated he likes to complete puzzles and play with action figures.

The current disciplinary methods utilized at school have not been effective to date. J▮▮▮▮ is unable to attend special activities because of not completing his homework. He does not get upset about his consequences and generally accepts them. He is interested in school and has good attendance but his motivation for learning is generally low. Ms. Oaks indicated that J▮▮▮▮'s mother has been contacted about their concerns, however, the communication has been inconsistent. J▮▮▮▮ often fails to return his daily point sheets and homework notes which are to be signed by his parent.

## BEHAVIORAL ASSESSMENT/OBSERVATION

A behavioral assessment was conducted to determine which, if any, environmental factors are influencing J▮▮▮▮ maladaptive behaviors. The evaluator used the Behavior Assessment System for Children Student Observation System Checklist (BASC-SOS) to measure the frequency student behavior. J▮▮▮▮ was one of thirty students that were instructed by Ms. Suben, the math teacher. J▮▮▮▮ was observed in one period. Demands were placed on him to complete class assignments specifically a teacher directed assignment. Ms. Suben instructed the classroom using a transparency machine and solved problems on the screen. Students volunteered to answer questions. J▮▮▮▮ sat in the front row of the class directly near the teacher and the projector. He did not volunteer and sat quietly at his desk. He often scanned the room or looked down at his book. He did not appear to be attending to the assignment. Ms. Suben attempted to redirect him by calling his name and tapping on his desk. J▮▮▮▮ regained attention for short periods and began to participate in a class activity in which the students were singing and calling out answers as a group.

181

23

| Behavior | One hour observation | |
| --- | --- | --- |
| | Frequency of behavior | Minutes |
| On task | | 30 |
| Disruptions | 0 | |
| Aggression | 0 | |
| Talking | 0 | |
| Inappropriate language | 0 | |
| Out of area | 0 | |
| Redirection from staff | 7 | |

J_____ was cooperative and polite when the evaluator conducted the interview, however, he made little eye contact.  He indicated that he likes school but admitted to not paying attention in class.  He shared that he is often day dreaming about places he has gone or would like to go.  He does his homework with his mother's assistance but forgets his folder and does not return the work to school.

J_____ completed the BASC, a self-report behavioral inventory.  He read the questions and responded "true or false" if it described him.  In the Emotional Symptom Index, J_____ T score of 52 was in the Average range.  He scored in the Average range across all areas on the BASC.  However, there are some areas such as Sense of Inadequacy and Anxiety in which he responded to having some discomfort.  He endorsed items such as "I cannot control my thoughts" and "I can't stop myself from making mistakes."  In the domain of Interpersonal relations, he scored in the At-Risk range.  He has difficulty developing social skills.  He reported that "nobody ever listens to me" and "nobody likes me."  Ms. Suben completed the BASC-Teacher Report.  She scored J_____ in the Clinically Significant range across the Adaptive Skills Composite.  There were concerns in the areas of Adaptability, Social Skills, Leadership, and Study Skills.  There were also concerns in the area of Depression, Atypicality, Learning Problems, and Withdrawal.  She scored him in the At- Risk range in the area of Attention Problems, which is consistent with concerns from administrators and teaching staff.

The results of the behavioral assessment conclude that J_____ has difficulty focusing his attention on a task for extended periods of time.  J_____ has poor coping skills and has difficulty expressing his thoughts and feelings.  He requires close supervision to complete assignments because he has difficulty completing work independently.  To his credit, J_____ can display appropriate behavior in the classroom setting.  Effective techniques to address problem behavior should include tangible reinforcers and verbal praise.  In addition to the current behavior program, school officials should consider the following recommendations when working with J_____ to encourage positive behavior that will support his learning and social-emotional development.

8/4.P    848p 1SG 10E:01    SEP-08-2004 04:51 From:

24

### Interventions

1.  Design an individual contract with J████ to focus on one target behavior, such as completion of assignments or staying on task for a specified period of time. Allow him to earn points everyday towards a reinforcer and bonus activities towards the end of the week.
2.  Allow him opportunities to write down his dreams in a journal or give him time to work on puzzles.
3.  Motivation and encouragement is essential, therefore, the consequences should be limited in the beginning. The goal should be set low and gradually increase as he becomes accustomed to the program.
4.  Assign a bright color homework folder. Give him a check sheet of everything he will need for the day to take home or bring to school.
5.  Daily individual morning meeting to discuss the plan for the day and to identify his feeling in the morning to determine if something is bothering him prior to entering the school grounds.
6.  Counseling services to help him identify his feelings and express his thoughts. He should develop appropriate coping skills as well as positive self-talk techniques. Encourage him to make daily positive self-statements. Allow him to develop a list of positive statements that he can rehearse.
7.  Give him frequent breaks to encourage short periods of concentration and focus. Allow him to walk in the hall or stretch.
8.  Divide assignments in portions and give him a timer to monitor the amount of time spent within the time limit (10 minutes).
9.  He would benefit from small group assignments to allow him to feel confident to volunteer and be recognized.
10. Give him the opportunity to earn time with a peer to at the end of the day to develop social skills.
11. Communication log between home and school with brief notes about the school day.

### Responses

1.  Teacher will monitor his behavior in ten-minute increments.
2.  Continue daily communication between the parent and the teacher to encourage carry over between home and school.
3.  Frequent acknowledgement of appropriate behaviors with praise and written acknowledgement. J████ should participate in a mentoring program.
4.  Recognition of completing independent assignments and participating in group activities.

25

## Recommendations

1.  J███████ individual behavioral treatment program be implemented in all settings; a similar reinforcer program would be helpful in the home setting. Communication between the home and school is important.
2.  J███████ completed assignments and ability to stay on task should be acknowledged and given praise for maintaining a positive attitude.
3.  Staff should initially make the requirement minimal and then gradually increase expectations as he reaches success and gains interest in the reinforcer and the consequences are an effective deterrent.
4.  Continue to closely monitor his self-concept and behavior.

It was a pleasure working with J██████ and school officials. If you have any questions regarding this assessment and recommendations, please feel free to contact Dr. Ebanks or Dr. Cohn at (202) 333-6251.


*Mercedes Ebanks, PhD*
Mercedes Ebanks, Ph.D.
Evaluator


*Maria Cohn*
Maria Cohn, Ph.D.
Licensed Psychologist
Supervisor
Director of Clinical Services

26

# APPENDIX

### Behavior Assessment System for Children- Teacher Rating Scale
(T-score of 60-69 At Risk, 70+ Clinically Significant)

| Clinical Scales | T-Score | % |
|---|---|---|
| Hyperactivity | 42 | 26 |
| Aggression | 41 | 15 |
| Conduct Problems | 47 | 54 |
| Anxiety | 45 | 37 |
| Depression | 56 | 80 |
| Somatization | 42 | 18 |
| Attention Problems | 60 | 83 |
| Learning Problems | 59 | 81 |
| Atypicality | 53 | 77 |
| Withdrawal | 51 | 82 |

| Composite | | |
|---|---|---|
| Externalizing Problems | 43 | 26 |
| Internalizing Problems | 47 | 48 |
| School Problems | 60 | 82 |
| Behavioral Symptoms Index | 49 | 58 |
| Adaptive Skills | 25 | 1 |

(T-score of 31-40 At Risk, <30 Clinically Significant)

| Adaptive Scales | | |
|---|---|---|
| Adaptability | 30 | 3 |
| Social Skills | 25 | 1 |
| Leadership | 28 | 1 |
| Study Skills | 29 | 1 |

### Behavior Assessment System for Children- Self-Report Rating Scale
(T-score of 60-69 At Risk, 70+ Clinically Significant)

| Clinical Scales | Score | % |
|---|---|---|
| Attitude To School | 42 | 28 |
| Attitude To Teachers | 44 | 37 |
| Atypicality | 48 | 51 |
| Locus of Control | 43 | 31 |
| Social Stress | 42 | 25 |
| Anxiety | 53 | 60 |
| Depression | 48 | 56 |
| Sense of Inadequacy | 55 | 74 |

*Composite*

| | | |
|---|---|---|
| School Maladjustment | 42 | 25 |
| Clinical Maladjustment | 46 | 39 |
| Personal Adjustment | 45 | 26 |
| Emotional Symptoms Index | 52 | 64 |

(T-score of 31-40 At Risk, <30 Clinically Significant)

*Adaptive Scales*

| | | |
|---|---|---|
| Relations With Parents | 51 | 38 |
| Interpersonal Relations | 31 | 7 |
| Self-Esteem | 57 | 73 |
| Self-Reliance | 47 | 31 |

# HP LaserJet *3330*



Attorney at Law
202-265-4264
Nov-18-2005   11:41

| Fax Activity Log |
|---|

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|---|---|---|---|---|---|---|---|
| 318 | 11/16/2005 | 12:30:55 | Send | 2022546177 | 4:27 | 3 | OK |
| 319 | 11/16/2005 | 12:35:28 | Send | 2023320039 | 3:23 | 5 | OK |
| 320 | 11/16/2005 | 14:36:06 | Send | | 0:00 | 0 | No Answer |
| 321 | 11/16/2005 | 14:46:06 | Receive | 2024425556 | 0:52 | 5 | OK |
| 322 | 11/16/2005 | 14:53:44 | Send | 2024425524 | 3:56 | 15 | OK |
| 323 | 11/16/2005 | 15:06:35 | Receive | | 0:29 | 3 | OK |
| 324 | 11/16/2005 | 15:07:23 | Receive | | 0:29 | 3 | OK |
| 325 | 11/16/2005 | 15:23:10 | Send | 3015705715 | 0:00 | 0 | No Answer |
| 326 | 11/16/2005 | 15:31:50 | Send | 2023320039 | 3:00 | 6 | OK |
| 327 | 11/16/2005 | 15:42:05 | Send | 3014705701 | 3:49 | 9 | OK |
| 328 | 11/16/2005 | 16:11:56 | Send | 2024425524 | 2:48 | 9 | OK |
| 329 | 11/16/2005 | 16:58:39 | Monitor Dial | | 0:00 | 0 | Stop |
| 330 | 11/16/2005 | 17:00:30 | Send | 2024425524 | 3:25 | 11 | OK |
| 331 | 11/16/2005 | 17:26:52 | Send | 3019514248 | 1:24 | 4 | OK |
| 332 | 11/16/2005 | 18:15:58 | Receive | 3019514248 | 0:32 | 1 | OK |
| 333 | 11/17/2005 | 12:02:35 | Send | 3018600253 | 8:41 | 16 | OK |
| 334 | 11/17/2005 | 13:43:23 | Send | 2024425524 | 1:16 | 2 | OK |
| 335 | 11/17/2005 | 14:04:49 | Receive | 2024425556 | 0:20 | 1 | OK |
| 336 | 11/17/2005 | 14:06:25 | Receive | 2024425556 | 0:22 | 1 | OK |
| 337 | 11/17/2005 | 14:08:27 | Receive | 2024425556 | 0:21 | 1 | OK |
| 338 | 11/17/2005 | 14:20:15 | Receive | | 3:31 | 3 | OK |
| 339 | 11/17/2005 | 14:30:01 | Send | 2023326255 | 0:00 | 0 | Busy |
| 340 | 11/17/2005 | 14:30:51 | Receive | 2024425556 | 0:21 | 1 | OK |
| 341 | 11/17/2005 | 14:31:27 | Send | 2023326255 | 0:00 | 0 | Busy |
| 342 | 11/17/2005 | 14:33:22 | Send | 2023326255 | 1:25 | 3 | OK |
| 343 | 11/17/2005 | 14:36:56 | Send | 2023326255 | 0:00 | 0 | Busy |
| 344 | 11/17/2005 | 14:42:25 | Send | 2023326255 | 0:00 | 0 | Busy |
| 345 | 11/17/2005 | 14:44:13 | Receive | 10050 | 9:27 | 8 | OK |
| 346 | 11/17/2005 | 14:53:46 | Send | 2023326255 | 0:00 | 0 | Busy |
| 347 | 11/17/2005 | 14:56:27 | Receive | 2024425556 | 0:36 | 1 | OK |
| 348 | 11/17/2005 | 14:59:12 | Send | 2023326255 | 0:00 | 0 | Busy |
| 349 | 11/17/2005 | 15:11:26 | Receive | 2023333452 | 3:09 | 6 | OK |
| 350 | 11/17/2005 | 17:03:47 | Receive | 202 237 7369 | 0:25 | 2 | OK |
| 351 | 11/17/2005 | 17:10:44 | Monitor Dial | | 0:00 | 0 | Stop |
| 352 | 11/18/2005 | 10:12:40 | Send | 2024425524 | 1:36 | 6 | OK |
| 353 | 11/18/2005 | 10:38:32 | Send | | 0:00 | 0 | No Answer |
| 354 | 11/18/2005 | 10:48:22 | Send | 2024425556 | 1:35 | 4 | OK |
| 355 | 11/18/2005 | 11:07:52 | Send | | 0:00 | 0 | No Answer |
| 356 | 11/18/2005 | 11:14:42 | Send | 3015859621 | 3:45 | 4 | OK |
| 357 | 11/18/2005 | 11:38:14 | Send | 2024425524 | 2:28 | 8 | OK |

FAxed  FBA  to  OMC  for  J  H

Maria Cohn, Ph.D.
& Associates

Maria Cohn, Ph.D.
*Director of Clinical Services*

Katie Hennessy, PsyD.

Nicole Sampson, Ph.D.

Julia Kovac, Ph.D.

Keisha Mack, Ph.D.

Nancy Heiser, Ph.D.

Mercedes Ebanks, Ph.D.

Jennifer Cameron, Ph.D.

William Ling, Ph.D.

Maia McKinney, Ph.D.

Shelley McLaughlin, M.Ed.

Patricia Smith, M.A., CCC-SLP

Toupazer Jordan, M.A., CCC-SLP

Kathy Stoltzfus, M.S., OTR/L

# CLINICAL EVALUATION

*The information contained in this report is confidential and may not be released without further signed, informed consent.*

| | |
|---|---|
| Name: | J██████ H██████ |
| Date of Birth: | █████1995 |
| Age: | 10 years, 5 months |
| School: | KIPP DC Academy, AIM Campus |
| Grade: | 5 |
| Date of Evaluation: | 10/20/05 |
| Date of Report: | 11/7/05 |
| Evaluator: | Maia McKinney, Ph.D. |

## REASON FOR REFERRAL

J██████ H██████n was referred for a clinical evaluation by Tyrka & Houck, Esq., on behalf of J██████ The current evaluation was requested to determine if social-emotional issues are affecting J██████ academic performance. In particular, J██████ is performing below grade level on all academic subjects; frequently cries; is inattentive and easily frustrated; spaces out; has poor short-term memory; and does not follow through with his school work.

## TESTS ADMINISTERED

Clinical Interview with Student
Consultation with:  Principal, Ms. Johnson
                    Special Education Director, Ms. Ross
                    Teachers, Ms. Barr and Ms. Oakes
Children's Depression Inventory (CDI)– Short Version
Children's Sentence Completion Technique
Conners' Parent Rating Scale– Revised (S)
Conners' Teacher Rating Scale– Revised (S)
Conners' Teacher Rating Scale– Revised (L)
Interview with Parent
Multidimensional Anxiety Scale for Children– 10 Item (MASC-10)
Review of Records
Roberts Apperception Test for Children

Maria Cohn, Ph.D. & Associates

Hamilton Court

1230 31 Street, NW

Second Floor

Washington, D.C. 20007

phone: 2023336251

fax: 2023336255

www.mariacohnassociates.com

**JH12**

## BACKGROUND INFORMATION

J████ is a ten-year-old, African-American male who lives with his mother, Yana Hamilton, and eleven-year-old brother in Washington, D.C. J█████ father has had minimal contact with him. J█████ last met his father in February, 2004. His father has 2 daughters, of which J█████ has met briefly. J█████ and his family all speak English. Despite several attempts to obtain a more extensive social-developmental background, a limited amount of information was obtained from J█████ mother due to conflicting schedules between her and this examiner.

J█████ began attending KIPP AIM Academy PCS this year, after transferring from Birney Elementary. In April 2004, the MDT of Birney Elementary identified several accommodations for J█████, including frequent breaks, extended time, small group settings, and repeated directions. At Birney, J█████ functioned "below grade level" in all academic areas. In addition, concerns were noted in his ability to: 1) follow school rules; 2) respect the rights and property of others; 3) listen while others speak; 4) make an effort; and 5) practice self-control. J█████ mother also voiced concern regarding his tendency to drift off and his lack of effort to participate in class. Despite these behavior concerns, the MDT found that J█████ was able to be educated in a regular setting.

Ms. Hamilton reported that J█████ was better able to maintain his attention and control his level of frustration at home. She reported that he was able to make friends and demonstrated several interests. For instance, Ms. Hamilton stated that J█████ plays basketball and baseball. She reported that J█████ interacted well with his brother and generally followed his mother's directions.

## PREVIOUS TESTING

Between January 2004 and September 2005, J█████ was evaluated to help determine if he was in need of special education services. A speech-language evaluation was completed by Nicole Pitre in January 2004. A psychoeducational evaluation was conducted in February 2004 by Teresa Erby, School Psychologist for District of Columbia Public Schools. The psychoeducational assessment evaluated J█████ intellectual and educational functioning. Measures included the WISC-III, the Woodcock Johnson III, and the Beery-Buktenica Development Test of Visual-Motor Integration -4th Edition (VMI). Dr. Mercedes Ebanks conducted a Functional Behavioral Assessment and developed a Behavioral Intervention Plan in September 2005.

A speech-language evaluation assessed J█████ communication skills. J█████ skills were found to range from Average to Below Average compared to same-age peers. J█████ was evaluated by the Test of Language Development Intermediate 3rd Edition (TOLD –I: 3); the Goldman Fristoe 2nd Test of Articulation (GFTA); the Comprehensive Receptive and Expressive Vocabulary Test 2 (CREVT-2); the Oral Perpheral Examination; and by behavioral observations. Both the TOLD-I: 3 and the CREVT-2 found that J█████ expressive and receptive language skills were Below Average (i.e., receptive vocabulary skills on the CREVT-2, SS= 77) and expressive vocabulary SS = 81). However, the GFTA found that J█████ articulation skills were within the Average range (SS = 106).

The psychoeducational evaluation found J█████ overall cognitive ability to be in the Borderline range of intellectual functioning (Full Scale IQ= 70) as measured on the

H████, J████ Pg. 3

WISC-III. Specifically, his verbal reasoning skills were in the Borderline range of functioning (Verbal IQ= 76); and his nonverbal reasoning skills were in the Intellectually Deficient range of functioning (Performance IQ= 68). J████ educational functioning was evaluated by the Woodcock Johnson III, Tests of Achievement. J████ overall educational functioning ranged from Low Average to Average compared to his age group. Specifically, J████ ability to read words with increasing difficulty was scored in the Average range (SS= 101; GE = 3.7); however, his comprehension skills were in the Low Average range (SS= 89; Grade Equivalent [GE] = 2.3). J████ math computation skills were scored in the Average range (SS = 92; GE = 2.6); however, his ability to listen and decide what computations would be needed were scored in the Low Average range (SS= 85; GE= 1.8). J████ performance on writing tasks was within the Average range (SS= 100; GE= 3.2). The VMI evaluated J████ perceptual and motor functioning and found his skills to be in the Below Average range (SS= 80).

The Functional Behavioral Assessment (FBA) was conducted with the Behavior Assessment System for Children Student Observation System Checklist (BASC-SOS). J████ behavior was found to be problematic in the classroom setting. Dr. Ebanks found that J████ had difficulty focusing his attention on specific tasks, had poor coping skills, and demonstrated difficulty expressing his thoughts and feelings.

## BEHAVIORAL OBSERVATIONS

J████ was evaluated at school in one session. During testing, J████ was quiet, spoke in a low, tentative tone but was also cooperative and completed the tasks requested of him. He made good eye contact; he answered questions asked by the evaluator but did not volunteer extra information. In this one-on-one setting, he did not appear to have difficulties with attention or short-term memory, as noted in the referral. His activity level, impulse control, and frustration tolerance were age-appropriate. However, it was difficult to discern if the extended time J████ spent answering the evaluator's questions were due to him being reflective or because he demonstrated a lapse in focused attention. Interestingly, J████ stated to the evaluator that he urinated in his pants every day, including the day the evaluator was scheduled to test him. However, after inquiring with his teachers and his mother, all parties (besides J████) denied this occurrence prior to or after this single occurrence. Despite these incidents, J████ was able to produce effort and attend to tasks during testing. Therefore, the following report is considered a valid reflection of his current socio-emotional functioning.

## TEST RESULTS (See Appendix for test scores)

Information regarding J████ socio-emotional functioning was obtained by self-report, clinical observation, as well as projective and objective test measures. J████ School Principal (Ms. Johnson) Special Education Director (Ms. Ross); and teachers (Ms. Barr and Ms. Oakes) were also consulted. Lastly, this evaluator interviewed Ms. Hamilton, J████ mother, to gain information regarding her views of J████ mood and behavior. His mother completed the Conners' Parent Rating Scale – Revised (CRS-R), an objective measure of attention and behavior. Clinical data was obtained over the course of a month because of pending evaluations and after school personnel voiced concerns regarding J████ escalated behavior problems since the initial testing date. Therefore, two objective measures, the Conners' Teacher Rating Scale – Revised Short (S) and Long (L),

SEP-15-2004 22:26 From:          To:202 565 4264          P.4/10

were completed by the same teacher to capture his behavioral patterns and current level of distress.

J██████ responses to the objective and projective measures suggest that he has elevated levels of anxiety and attention difficulties. On the objective measure - the Multidimensional Anxiety Scale for Children (MASC- 10)- J██████ overall score was in the "Very Much Above Average" range. Further, J██████ responses to the projective measures reflected some anxiety from being apart from the safety of his family and the distress caused by classmates when he is at school (e.g., "When I get scared I sleep with my mom"; "I wish I could do anything to forget the time that I go to school"). On the Roberts Apperception Test for Children, a projective story telling task, J██████ created stories that were a concrete report of what the pictures depicted. He had difficulty using his imagination to create more in-depth stories and was not able to describe the complexities of the interactions shown on the cards. On one card, J██████ story depicted "three boys dancing" when it is common for test-takers to create a story that includes a possible conflict between the three male characters. His response may be a demonstration of his decreased ability to attend to details that give clues to the intricacies of social interactions. This difficulty may partly explain the concerns voiced by his teachers regarding J██████ poor peer interactions and consequently high levels of frustration when he misinterprets his social environment.

During the clinical interview, J██████ described his transfer to his new school as a welcomed move. He reported that he was beat up at school by the other students, but he now has several new friends at KIPP Academy. J██████ also reported that he urinated in his pants every day at school and at home because he could not hold his bladder before reaching the bathroom. J██████ statements were curious because his teachers reported that he did not have friends at school. They also reported that he often misread social interactions and became increasingly agitated when interacting with peers and adults. J██████ teachers and mother also reported that J██████ did not urinate in his pants, other than the one reported incident at school, and there was no evidence of an ongoing urination problem found in his clothing. These incidents suggest a frequent pattern of misinterpretation of J██████ environment.

Separate interviews were conducted with J██████ school principal (Ms. Johnson), Special Education Director (Ms. Ross), and teachers (Ms. Barr and Ms. Oakes). All staff reflected concerns with J██████: 1) inability to focus his attention; 2) lapse in short-term memory; 3) tendency to "drift off"; 4) hyperactive behavior; 5) poor peer interactions, and 6) poor level of frustration tolerance. These teachers also stated that J██████ received some in-classroom support for his behavior. However, they reported that these interventions were unsuccessful and his problematic behaviors were escalating. In fact, they reported a marked change in his behavior over time as compared to the beginning of the school year.

J██████ teacher, Ms. Barr, completed two objective measures of attention and behavior control, the Conners' Teacher Rating Scale=Revised (both short and long version) at the beginning of the year and one month later. According to Ms. Barr's responses, J██████ overall behavior has deteriorated significantly over the past month. Overall, Ms. Barr rated J██████ behavior on the Conners' Teacher Rating Scale (L) as "Markedly Atypical". Specifically, Ms. Barr reported that J██████ behavior -- as scored on the Oppositional, Cognitive Problems/Inattention, Anxious-Shy, Social Problems, ADHD Index, Restless/

H██████, J█████ Pg. 5

Impulsive, Emotional Lability, Global Index, and DSM-IV Inattentive Index - were all in the "Markedly Atypical" range. Further, Ms. Barr's responses on the Hyperactivity scale scored J█████ behavior in the "Moderately Atypical" range. In fact, Ms. Barr stated that J█████ did not attend to his tasks enough to endorse the Perfectionism scale. On the Perfectionism scale, J█████ behavior was rated below average compared to other males in his age group, which is "Slightly Atypical".

Ms. Hamilton completed an objective measure of attention and behavior control, the Conners' Parent Rating Scale– Revised (CRS–R). Based on the mother's responses to this measure, J█████ overall score was reported in the significantly elevated range. Ms. Hamilton's responses on the Cognitive Problems/Inattention and Hyperactivity scales were in the "Mildly Atypical" range; while her responses on the ADHD Index scored J█████ in the "Markedly Atypical" range. Specifically, Ms. Hamilton remarked that J█████ is "disorganized at school and at home"; "only attends to something he is very interested in"; "does not follow through on instructions and fails to finish his homework"; and "needs close supervision to complete his assignments."

Despite his elevated anxiety and attention problems, J█████ responses on the Child Depression Index (CDI) did not endorse depressive symptoms. In fact, J█████ overall score on the CDI was in the "Below Average" range.

## SUMMARY

J█████ is a ten-year-old African American male who was referred for a clinical evaluation to determine if social-emotional issues are interfering with his learning and school performance. J█████ currently receives educational support, yet the attempts made at his current placement have been largely unsuccessful. Overall, the results of testing indicate that J█████ is experiencing internal distress, specifically high levels of anxiety, as well as behavioral difficulties which include inattention and hyperactivity. In the past six months, J█████ has experienced multiple life stressors, including a recent transfer to KIPP Academy after a distressing experience at his previous school. J█████ anxiety is evident in his fear of separation from his parents, worry, inattention, and restlessness. Given that the anxiety is related to his school transition, he meets criteria for a DSM-IV diagnosis of Adjustment Disorder, With Anxiety. Further, J█████ poor verbal skills make it difficult for him to articulate his thoughts and feelings, resulting in an escalated level of frustration which is reported by his teachers. It is important to note that anxiety in children often manifests in symptoms that resemble Attention-Deficit/Hyperactivity Disorder (ADHD). Although a diagnosis of ADHD cannot be ruled out definitively based upon the current testing (neuropsychological testing is needed to clarify this issue), it appears that J█████ difficulties are more emotionally based rather than due to a core deficit in attention. If so, one can expect that his attention and behavior will improve as his anxiety decreases. With effective strategies in place, improved peer interactions is also likely as J█████ will be better able to attend to social cues and respond accordingly. Given that J█████ emotional distress is interfering with his academic progress, the MDT should discuss the disability classification of Emotional Disturbance for which special education services are needed.

H▬▬▬ J▬▬ Pg. 6

## DIAGNOSTIC IMPRESSIONS

Axis I: 309.24  Adjustment Disorder, With Anxiety

       314.01  Rule Out Attention-Deficit/Hyperactivity Disorder, Combined Type

## RECOMMENDATIONS

1. If problems with attention persist following appropriate intervention to address anxiety, the MDT should consider a neuropsychological evaluation. Testing should include parent and teacher rating scales, a classroom observation, and administration of a computerized performance test, such as the IVA. Neuropsychological testing could also evaluate J▬▬▬ memory to determine if a true deficit exists or if his difficulties are due to inattention and/or anxiety.

2. The MDT should discuss the need for an occupational therapy evaluation based upon his low score on the VMI in the psychoeducational evaluation dated 2/04.

3. A behavioral program should be developed to increase on-task behavior in the classroom.  (Refer to the FBA dated 10/13/05)

4. Participation in individual therapy who is experienced in treating children with anxiety.  A cognitive behavioral approach would be most effective in addressing this issue.  Therapy is recommended one time per week (45-60 minutes).

5. Participation in a social skills group one time per week (60 minute session).

6. J▬▬▬ mother should discuss these findings with J▬▬▬ pediatrician to determine if a psychiatric referral is needed.  The psychiatrist could further evaluate the presence of ADHD and make recommendations for medication if indicated. J▬▬▬ mother should also discuss his teachers' concerns about memory.

7. It is recommended that J▬▬▬ mother discuss these findings with a urologist to determine if J▬▬▬ is experiencing a urinary problem.

8. J▬▬▬ mother should consider meeting with a behavioral specialist or local support group to gain a better understanding of ADHD, and if necessary, learn alternative ways to help J▬▬▬ learn how to manage his behavior and frustration level, as well as learn how to focus and maintain his attention.

9. J▬▬▬ social-emotional functioning should be re-evaluated in one year, or sooner if problems arise, to determine if he is making progress and if the classification of Emotional Disturbance continues to be appropriate.

## TEACHER RECOMMENDATIONS

1. It is recommended that an identified teacher(s) check-in with J▬▬▬ on a regularly scheduled basis to: a) assess his current level of frustration tolerance; b) give him an outlet to express his distress; and c) if appropriate, help him learn and practice coping skills to better manage his frustration level.

H████, J████ Pg. 7

2.  J████ teachers, in collaboration with the school psychologist and/or therapist, should help J████ identify adaptive coping skills that he can practice to help him reengage in classroom activities.

3.  J████ teachers, in collaboration with the school psychologist and/or therapist, should help J████ identify social cues and learn adaptive social skills that he can practice to help him interact with his peers in a more positive manner.

4.  It is recommended that J████ teachers give verbal and concrete praise for J████ attempts to focus and engage in classroom activities, and when he practices adaptive coping strategies when frustrated.

It was a pleasure working with J████, his mother and teachers. If you have questions regarding this report, please contact Dr. McKinney or Dr. Cohn at (202) 333-6251.


*Maia McKinney, Ph.D.*
Maia McKinney, Ph.D.
Evaluator

*Maria Cohn, Ph.D.*
Maria Cohn, Ph.D.
Licensed Psychologist
Supervisor
Director of Clinical Services

H████, J████ Pg. 8

APPENDIX

(Scores are based on national Norms)

## Multidimensional Anxiety Scale for Children – 10 Items (MASC – 10)

| | T Score | Interpretive Guideline |
|---|---|---|
| | 73 | Very Much Above Average |

## Children's Depression Inventory (CDI)

| Scale | T Score | Interpretive Guideline |
|---|---|---|
| Negative Mood | 40 | Below Average |
| Interpersonal Problems | 43 | Below Average |
| Ineffectiveness | 43 | Below Average |
| Anhedonia | 43 | Below Average |
| Negative Self-Esteem | 40 | Below Average |

## Conners' Parent Rating Scale – Revised (S)

| Scale | T Score | Interpretive Guideline |
|---|---|---|
| Oppositional | 45 | Average |
| Cognitive Problems / Inattention | 61 | Mildly Atypical |
| Hyperactivity | 62 | Mildly Atypical |
| ADHD Index | 78 | Markedly Atypical |

## Conners' Teacher Rating Scale – Revised (S)
Completed 9/14/05 by Ms. Barr

| Scale | T Score | Interpretive Guideline |
|---|---|---|
| Oppositional | 45 | Average |
| Cognitive Problems/ Inattention | 61 | Mildly Atypical |
| Hyperactivity | 51 | Average |
| ADHD Index | 55 | Average |

## Conners' Teacher Rating Scale – Revised (L)
Completed 10/20/05 by Ms. Barr

| Scale | T Score | Interpretive Guideline |
|---|---|---|
| Oppositional | 85 | Markedly Atypical |
| Cognitive Problems / Inattention | 74 | Markedly Atypical |
| Hyperactivity | 66 | Moderately Atypical |
| Anxious-Shy | 87 | Markedly Atypical |
| Perfectionism | 43 | Slightly Atypical |
| Social Problems | 90 | Markedly Atypical |
| ADHD Index | 78 | Markedly Atypical |

H▆▆▆▆, J▆▆▆▆ Pg. 9

| Restless/Impulsive | 83 | Markedly Atypical |
|---|---|---|
| Emotional Lability | 90 | Markedly Atypical |
| Global Index | 90 | Markedly Atypical |
| DSM-IV Inattentive | 75 | Markedly Atypical |
| DSM-IV Hyperactive/ Impulsive | 66 | Moderately Atypical |
| DSM-IV Total | 73 | Markedly Atypical |

# CLINICAL EVALUATION

*The information contained in this report is confidential and may
not be released without further signed, informed consent.*

| | |
|---|---|
| Name: | J█████ H███████ |
| Date of Birth: | ███/1995 |
| Age: | 10 years, 5 months |
| School: | KIPP DC Academy, AIM Campus |
| Grade: | 5 |
| Date of Evaluation: | 10/20/05 |
| Date of Report: | 11/7/05 |
| Evaluator: | Maia McKinney, Ph.D. |

## REASON FOR REFERRAL

J█████ H███████ was referred for a clinical evaluation by Tyrka &
Houck, Esq., on behalf of J█████. The current evaluation was
requested to determine if social-emotional issues are affecting
J█████ academic performance. In particular, J█████ is performing
below grade level on all academic subjects; frequently cries; is
inattentive and easily frustrated; spaces out; has poor short-term
memory; and does not follow through with his school work.

## TESTS ADMINISTERED

Clinical Interview with Student
Consultation with:   Principal, Ms. Johnson
                     Special Education Director, Ms. Ross
                     Teachers, Ms. Barr and Ms. Oakes
Children's Depression Inventory (CDI)– Short Version
Children's Sentence Completion Technique
Conners' Parent Rating Scale– Revised (S)
Conners' Teacher Rating Scale– Revised (S)
Conners' Teacher Rating Scale– Revised (L)
Interview with Parent
Multidimensional Anxiety Scale for Children– 10 Item (MASC-10)
Review of Records
Roberts Apperception Test for Children

# HP LaserJet *3330*



Attorney at Law
202-265-4264
Nov-16-2005    17:04

---

## Fax Activity Log

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 291 | 11/15/2005 | 14:31:16 | Send | 2023326255 | 0:00 | 0 | Busy |
| 292 | 11/15/2005 | 14:31:43 | Send | 2023326255 | 0:00 | 0 | Busy |
| 293 | 11/15/2005 | 14:32:11 | Send | 2023326255 | 0:00 | 0 | Busy |
| 294 | 11/15/2005 | 14:36:42 | Send | 2023326255 | 0:00 | 0 | Busy |
| 295 | 11/15/2005 | 14:37:11 | Send | 2023326255 | 0:00 | 0 | Busy |
| 296 | 11/15/2005 | 14:37:41 | Send | 2023326255 | 0:00 | 0 | Busy |
| 297 | 11/15/2005 | 14:38:33 | Send | 2023336255 | 4:25 | 18 | OK |
| 298 | 11/15/2005 | 14:43:04 | Send | 2023326255 | 0:00 | 0 | Busy |
| 299 | 11/15/2005 | 14:43:53 | Send | 2023326255 | 0:00 | 0 | No Answer |
| 300 | 11/15/2005 | 15:07:07 | Receive | 202 237 7369 | 0:28 | 3 | OK |
| 301 | 11/15/2005 | 16:24:07 | Send | 2029665838 | 0:08 | 0 | Stop |
| 302 | 11/15/2005 | 16:24:53 | Send | 2029665838 | 3:05 | 4 | OK |
| 303 | 11/15/2005 | 16:50:23 | Send | 2027248746 | 1:51 | 4 | OK |
| 304 | 11/15/2005 | 17:28:58 | Receive | 2024425556 | 0:38 | 3 | OK |
| 305 | 11/15/2005 | 17:31:18 | Receive | 2024425556 | 0:38 | 3 | OK |
| 306 | 11/15/2005 | 17:42:33 | Receive | 2024425098 | 0:33 | 4 | OK |
| 307 | 11/15/2005 | 17:46:39 | Receive | 2024425098 | 0:31 | 4 | OK |
| 308 | 11/15/2005 | 18:05:50 | Receive | | 0:28 | 3 | OK |
| 309 | 11/15/2005 | 21:53:34 | Receive | | 0:38 | 0 | No Fax Detected |
| 310 | 11/16/2005 | 10:46:56 | Receive | | 0:20 | 1 | OK |
| 311 | 11/16/2005 | 10:48:22 | Receive | | 1:48 | 10 | OK |
| 312 | 11/16/2005 | 11:17:40 | Receive | 7035197221 | 4:13 | 13 | OK |
| 313 | 11/16/2005 | 11:31:21 | Receive | 2023333452 | 0:54 | 2 | OK |
| 314 | 11/16/2005 | 11:33:18 | Receive | 301 865 0143 | 4:00 | 9 | OK |
| 315 | 11/16/2005 | 12:19:45 | Send | 2022546177 | 10:11 | 7 | OK |
| 316 | 11/16/2005 | 12:30:04 | Receive | 3019514248 | 0:33 | 1 | OK |
| 317 | 11/16/2005 | 12:30:42 | Send | 2023320039 | 0:03 | 0 | Stop |
| 318 | 11/16/2005 | 12:30:55 | Send | 2022546177 | 4:27 | 3 | OK |
| 319 | 11/16/2005 | 12:35:28 | Send | 2023320039 | 3:23 | 5 | OK |
| 320 | 11/16/2005 | 14:36:06 | Send | | 0:00 | 0 | No Answer |
| 321 | 11/16/2005 | 14:46:06 | Receive | 2024425556 | 0:52 | 5 | OK |
| 322 | 11/16/2005 | 14:53:44 | Send | 2024425524 | 3:56 | 15 | OK |
| 323 | 11/16/2005 | 15:06:35 | Receive | | 0:29 | 3 | OK |
| 324 | 11/16/2005 | 15:07:23 | Receive | | 0:29 | 3 | OK |
| 325 | 11/16/2005 | 15:23:10 | Send | 3015705715 | 0:00 | 0 | No Answer |
| 326 | 11/16/2005 | 15:31:50 | Send | 2023320039 | 3:00 | 6 | OK |
| 327 | 11/16/2005 | 15:42:05 | Send | 3014705701 | 3:49 | 9 | OK |
| 328 | 11/16/2005 | 16:11:56 | Send | 2024425524 | 2:48 | 9 | OK |
| 329 | 11/16/2005 | 16:58:39 | Monitor Dial | | 0:00 | 0 | Stop |
| 330 | 11/16/2005 | 17:00:30 | Send | 2024425524 | 3:25 | 11 | OK |

FAxed Clinical Eval to OMC for
J████ H████████

198



## HP LaserJet *3330*

Attorney at Law
202-265-4264
Nov-18-2005    11:49

---

### Fax Activity Log

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 319 | 11/16/2005 | 12:35:28 | Send | 2023320039 | 3:23 | 5 | OK |
| 320 | 11/16/2005 | 14:36:06 | Send | | 0:00 | 0 | No Answer |
| 321 | 11/16/2005 | 14:46:06 | Receive | 2024425556 | 0:52 | 5 | OK |
| 322 | 11/16/2005 | 14:53:44 | Send | 2024425524 | 3:56 | 15 | OK |
| 323 | 11/16/2005 | 15:06:35 | Receive | | 0:29 | 3 | OK |
| 324 | 11/16/2005 | 15:07:23 | Receive | | 0:29 | 3 | OK |
| 325 | 11/16/2005 | 15:23:10 | Send | 3015705715 | 0:00 | 0 | No Answer |
| 326 | 11/16/2005 | 15:31:50 | Send | 2023320039 | 3:00 | 6 | OK |
| 327 | 11/16/2005 | 15:42:05 | Send | 3014705701 | 3:49 | 9 | OK |
| 328 | 11/16/2005 | 16:11:56 | Send | 2024425524 | 2:48 | 9 | OK |
| 329 | 11/16/2005 | 16:58:39 | Monitor Dial | | 0:00 | 0 | Stop |
| 330 | 11/16/2005 | 17:00:30 | Send | 2024425524 | 3:25 | 11 | OK |
| 331 | 11/16/2005 | 17:26:52 | Send | 3019514248 | 1:24 | 4 | OK |
| 332 | 11/16/2005 | 18:15:58 | Receive | 3019514248 | 0:32 | 1 | OK |
| 333 | 11/17/2005 | 12:02:35 | Send | 3018600253 | 8:41 | 16 | OK |
| 334 | 11/17/2005 | 13:43:23 | Send | 2024425524 | 1:16 | 2 | OK |
| 335 | 11/17/2005 | 14:04:49 | Receive | 2024425556 | 0:20 | 1 | OK |
| 336 | 11/17/2005 | 14:06:25 | Receive | 2024425556 | 0:22 | 1 | OK |
| 337 | 11/17/2005 | 14:08:27 | Receive | 2024425556 | 0:21 | 1 | OK |
| 338 | 11/17/2005 | 14:20:15 | Receive | | 3:31 | 3 | OK |
| 339 | 11/17/2005 | 14:30:01 | Send | 2023326255 | 0:00 | 0 | Busy |
| 340 | 11/17/2005 | 14:30:51 | Receive | 2024425556 | 0:21 | 1 | OK |
| 341 | 11/17/2005 | 14:31:27 | Send | 2023326255 | 0:00 | 0 | Busy |
| 342 | 11/17/2005 | 14:33:22 | Send | 2023336255 | 1:25 | 3 | OK |
| 343 | 11/17/2005 | 14:36:56 | Send | 2023326255 | 0:00 | 0 | Busy |
| 344 | 11/17/2005 | 14:42:25 | Send | 2023326255 | 0:00 | 0 | Busy |
| 345 | 11/17/2005 | 14:44:13 | Receive | 10050 | 9:27 | 8 | OK |
| 346 | 11/17/2005 | 14:53:46 | Send | 2023326255 | 0:00 | 0 | Busy |
| 347 | 11/17/2005 | 14:56:27 | Receive | 2024425556 | 0:36 | 1 | OK |
| 348 | 11/17/2005 | 14:59:12 | Send | 2023326255 | 0:00 | 0 | Busy |
| 349 | 11/17/2005 | 15:11:26 | Receive | 2023333452 | 3:09 | 6 | OK |
| 350 | 11/17/2005 | 17:03:47 | Receive | 202 237 7369 | 0:25 | 2 | OK |
| 351 | 11/17/2005 | 17:10:44 | Monitor Dial | | 0:00 | 0 | Stop |
| 352 | 11/18/2005 | 10:12:40 | Send | 2024425524 | 1:36 | 6 | OK |
| 353 | 11/18/2005 | 10:38:32 | Send | | 0:00 | 0 | No Answer |
| 354 | 11/18/2005 | 10:48:22 | Send | 2024425556 | 1:35 | 4 | OK |
| 355 | 11/18/2005 | 11:07:52 | Send | | 0:00 | 0 | No Answer |
| 356 | 11/18/2005 | 11:14:42 | Send | 3015859621 | 3:45 | 4 | OK |
| 357 | 11/18/2005 | 11:38:14 | Send | 2024425524 | 2:28 | 8 | OK |
| 358 | 11/18/2005 | 11:42:59 | Send | 2025436594 | 6:03 | 18 | OK |

Faxed Clinical Eval and FBA to Dana Roth as
— Kipp DC for J█████ H█████████

199

FEB-14-2006  17:56       AIM                                              P.003
P.002                    296



Mental Health Resources Plus, LLC

## CONFIDENTIAL NEUROPSYCHOLOGICAL EVALUATION

*Name:*              J██████ H██████
*Date of Evaluation:*  01/25/06
*Date of Birth:*      ███/95
*Age at Evaluation:*   10 years, 9 months
*School:*             KIPP AIM DC Academy
*Evaluator:*          Kellie M. McCants, Ph.D.

### REASON FOR REFERRAL

J██████ H██████ is a 10-year-old African-American male student attending Knowledge Is Power Program (KIPP) AIM Academy Public Charter School. He was referred for a neuropsychological evaluation to assist in determining his need for special education services and his appropriate educational placement.

### SOURCES OF INFORMATION

Records Review
Behavioral Observations
Parent Interview
Interview with Special Education Coordinator
Interview with Reading Teacher
Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI)
Delis-Kaplan Executive Function System (D-KEFS) – selected subtests
Test of Memory and Learning (TOMAL)

### BACKGROUND INFORMATION

Background information for this evaluation was obtained from a review of previous records and interviews with KIPP AIM's Special Education Coordinator, Ms. Ross, J██████ reading teacher, Ms. Barr, and his mother, Ms. Yana Hamilton.

*Parent Interview:* This examiner interviewed J██████ mother, Ms. Hamilton, by phone as a part of the current evaluation. Ms. Hamilton acknowledged that J████ experiences attentional and behavioral difficulties. She is concerned that his history of recurrent behavior problems may have caused him to be unfairly blamed for things he does not do. She acknowledged that J████ also has a history of anxiety-related difficulties.

Ms. Hamilton also cited concerns about J██████ academic difficulties. She stated that he has failed many of his subjects this academic year. She is concerned that he will not be able to do enough to pass his classes this year.

Ms. Hamilton indicated that she recently initiated counseling for J████. She had completed one session and was awaiting the second at the time of the interview.

*Teacher Interview:* This examiner also interviewed J██████ reading teacher, Ms. Barr, as a part of the evaluation. Ms. Barr reported that J████ began the academic year reading at the second

**JH13**

**200**

P.003    96%    P.004

J█████ H██████    Neuropsychological Evaluation    2

grade level and has made about 6 months' progress while his classmates have made considerably more progress. She stated that J█████ and his classmates receive approximately 1.5 hours of reading services per day plus "pull-out" specialized instruction services during the day. Ms. Barr reported that J█████ is a pleasant child who demonstrates marked attentional difficulties. She indicated that his attention problems persist even when he works one-on-one with a teacher. Ms. Barr cited concerns about J█████ tendency to become distracted and about is proclivity toward misinterpreting social cues. Ms. Barr noted that J█████ seemed frustrated and angry prior to the Christmas Break but seems to have calmed down. She suggested that he is now more of a "class clown."

Ms. Barr stated that J█████ seems to have developed a "complex" about being academically behind. She indicated that on the day of the evaluation, he took notes and worked well with a partner but indicated that his classroom performance is very inconsistent. Ms. Barr characterized J█████ academic skills and behavior in the bottom third of his class. In addition, she suggested that J█████ difficulties may stem from the fact that he is forced to focus and attend for approximately 9 hours during the school day as opposed to 7-1/2 hours in a traditional school setting.

*Special Education Coordinator Interview*: This examiner also interviewed Ms. Ross, KIPP's Special Education Coordinator, as a part of the evaluation. Ms. Ross cited concerns about J█████ behavior, indicating that he experiences difficulty following directions and remaining in the classroom. Ms. Ross reported that she believes that J█████ overstimulated and experiences difficulty making transitions between classes. She suggested that he may need a small classroom setting and more one-on-one attention. Ms. Ross also suggested that medication may be helpful in managing J█████ attention and making him more available during instructional time. Ms. Ross reported that the school has tried token economies, concrete rewards, and an individual behavior plan.

According to his most recent IEP dated 12/8/05, J█████ is classified as an *emotionally disturbed* student and receives 15 hours of specialized instruction (5 of which are provided in an inclusion setting), 1.5 hours of psychosocial counseling, and 0.5 hours of counseling consultation. J█████ has an intervention behavior plan targeting his inattention and reaction to constructive criticism, impulse control problems, poor motivation, and coping skills.

A clinical evaluation was completed by Maia McKinney, Ph.D. in October 2005. On the Multidimensional Anxiety Scale for Children, Tenth Edition (MASC-10), J█████ was "very much above average" demonstrating anxiety about being away from his family and indicated that he wants to forget about going to school. On the Roberts Apperception Test for Children, J█████ responses indicated that his thought processes can be very concrete and that he is unable to describe complex social relationships. Dr. McKinney also stated that J█████ demonstrates a tendency to misread social cues. Ms. Barr's responses on the Conners' Teacher Rating Scale indicated clinically significant oppositionality, cognitive problems/inattention, anxiety/shyness, and social problems. J█████ mother's responses on the Conners' Parent Rating Scale indicated a significantly elevated ADHD Index which places J█████ at-risk for a diagnosis of Attention-Deficit/Hyperactivity Disorder. J█████ responses on the Children's

J███ H██████,                   Neuropsychological Evaluation                         3

Depression Inventory (CDI) were not suggestive of significant mood-related difficulties.  As a result of her evaluation, Dr. McKinney diagnosed Adjustment Disorder with Anxiety (309.24) with a rule-out of Attention-Deficit/Hyperactivity Disorder (314.01).  She recommended a behavior plan, individual therapy, social skills group, and a psychiatric consultation.

A psychoeducational evaluation was completed in February 2004 by Teresa Erby, DCPS School Psychologist. J████ earned a Full Scale IQ score of 70 on the Wechsler Intelligence Scale for Children, Third Edition (WISC-III).  His Verbal IQ score was 76, and his Performance IQ was 68.  It is this examiner's opinion that J██████ current cognitive functioning was likely underestimated in Ms. Erby's evaluation. Ms. Erby also administered the Woodcock-Johnson III Tests of Achievement as a part of her evaluation. She reported that J██████ earned average scores on the Letter-Word Identification (SS: 101), Calculations (SS: 92), and Writing Samples (SS: 100) subtests.  J██████ Passage Comprehension (SS:  89) and Applied Problems (SS:  85) subtest scores were in the low average range.  Ms. Erby reported that J█████ did not meet criteria for classification as a learning disabled student but recommended a vision exam, extended time for testing, positive reinforcement for making appropriate choices, and a homework log.

A speech/language evaluation was completed in January 2004 by Nicole Pitre, M.S., CCC-SLP. Ms. Pitre indicated that J█████ demonstrated well-developed articulation skills (Goldman-Fristoe Test of Articulation, Second Edition, SS:  106).  On the Comprehensive Receptive and Expressive Vocabulary Test, Second Edition (CREVT-2), J██████ earned a Receptive Language score of 77 and an Expressive Language score of 81, both of which are below average. On the Test of Language Development (TOLD-I-3),  J█████ earned subtest scores that were significantly below average. These score are indicative of delays in language development.

It is notable that J█████ has a history of wetting accidents.  He must be coaxed to into eating at times and demonstrates poor peer relationships.

### BEHAVIORAL OBSERVATIONS

J█████ accompanied his reading teacher to the testing room without hesitation.  He greeted this evaluator appropriately upon entering the room.  J█████ was initially somewhat shy and reticent but quickly warmed up to this examiner.  He was appropriately sized for his chronological age and presented with euthymic mood and appropriately reactive affect.  J██████ receptive and expressive language skills were age appropriate, as was his articulation.  His speech was logical and goal-directed.  His social interactions were appropriate.  J█████ was oriented to person, place, and time.

It is notable that J█████ demonstrated occasional bouts of inattention.  He was, however, easily redirected verbally.

Working Hypothesis:    The basis of J██████ learning and behavioral difficulties can be explained by underlying deficient neuropsychological processes.

202

FEB-14-2006  11:11        AIM        95%                    P.006
              P.006                              FEB-13-2006 18:03

J̶██████ H̶██████          Neuropsychological Evaluation                              4

## TEST RESULTS AND INTERPRETATION
**General Neuropsychological Functioning**
Test of Memory and Learning (TOMAL)
Average Score = 100; Standard Deviation = 15

| Scale | Score | Percentile |
|-------|-------|------------|
| Verbal Memory | 89 | 23rd |
| Nonverbal Memory | 97 | 42nd |
| Composite Memory Index | 93 | 32nd |
| Delayed Recall Index | 95 | 37th |

*Supplementary Index Scores*

| | | |
|-------|-------|------------|
| Attention/Concentration Index | 82 | 12th |
| Sequential Recall Index | 75 | 5th |
| Free Recall Index | 105 | 63rd |
| Associative Recall Index | 94 | 35th |
| Learning Index | 105 | 63rd |

**TOMAL Subtest Scores – Average Score = 10; Standard Deviation = 3**

| Verbal Subtests | | Nonverbal Subtests | |
|-----------------|---|---------------------|---|
| Memory for Stories | 5 | Facial Memory | 11 |
| Word Selective Reminding | 9 | Visual Selective Reminding | 10 |
| Object Recall | 11 | Abstract Visual Memory | 13 |
| Digits Forward | 4 | Visual Sequential Memory | 6 |
| Paired Recall | 13 | Memory for Location | 8 |
| Letters Forward* | 7 | Manual Imitation* | 8 |
| Digits Backward* | 8 | | |
| Letters Backward* | 10 | | |

(* - Subtest not used in the computation of the domain composite score.)

| Delayed Recall Subtests | |
|-------------------------|---|
| Memory for Stories | 7 |
| Facial Memory | 9 |
| Word Selective Reminding | 9 |
| Visual Selective Reminding | 12 |

The Test of Memory and Learning (TOMAL) is a norm-referenced, individually administered test of childhood used to assist with educational programming, clinical evaluation, and treatment of neurologically based memory impairments.

*Verbal Subtest Interpretation*

J̶█████ performance on the TOMAL verbal subtests was highly variable, indicating strengths and weaknesses in his verbal learning and memory. He was deficient in his retrieval of stories, their principal characters and the characters' actions (Memory for Stories, SS: 5). This result

J_____ _____                    Neuropsychological Evaluation                    5

indicates that he demonstrates deficits in his storage and retrieval of verbally presented information.  It is notable that J_____ storage and retrieval were evaluated under ideal conditions, i.e., in a quiet room with minimal distracters and in a 1-on-1 setting.  J_____ ability to store and recall lists of words was average (Word Selective Reminding, SS: 9).  On the word pairs task (Paired Recall, SS: 13), J_____ demonstrated advanced development of his ability to recall the word pairs on all 4 trials.  His performance on this subtest is suggestive of well-organized associative networks.

J_____ was average in his visual recognition with verbal recall (Object Recall, SS: 11).  His performance on this subtest was consistent with his performance on many of the TOMAL verbal subtests.  J_____ performance on the Object Recall (SS: 11) subtest was consistent with his performance on the Word Selective Reminding (SS: 9) subtest.  This result indicates that pairing of supportive visual information with verbal material does not facilitate J_____ well-developed recall skills.

J_____ auditory sequencing, as measured by the Digits Forward subtest (SS: 4), was deficient.  When presented with an auditory sequencing task requiring him to reverse number sequences, his performance was average (Digits Backward, SS: 8).  J_____ ability to complete auditory sequencing of letters without reversal was low average (Letters Forward, SS: 7).  His performance on the Letters Backward subtest (SS: 10) was average and higher than his Letters Forward subtest score.  J_____ performance on the Letters Forward/Backward and Digits Forward/Backward subtests is indicative of deficient attention but well-developed cognitive control.

## Nonverbal Subtest Interpretation

J_____ nonverbal memory was consistent with his verbal memory, as measured by the TOMAL.  His score on the Visual Selective Reminding subtest was average (SS: 10), indicating age appropriate development of his visual memory.  J_____ performance on the Visual Sequential Memory (VSM) subtest was low average (SS: 6), indicating some deficits in sequential processing and visual processing.  On the Manual Imitation subtest (SS: 8), his score was average.  This subtest measured his ability to reproduce a set of ordered hand movements in the same sequence as presented by this examiner and indicated that J_____ demonstrates well-developed sequential processing skills.

J_____ performance on the Facial Memory subtest (SS: 11) was average.  This result is an indication of appropriately developed concentration on this task requiring his to identify faces previously seen.  This result is suggestive of age appropriate recognition memory skills.  His Memory for Location subtest score was average as well (SS: 8), indicating well-developed spatial memory.  J_____ did not demonstrate difficulty completing the Abstract Visual Memory subtest (SS: 13), earning a score in the above average range.  This result indicates advanced development of his attention, visual processing, and deficits in his ability to match a retained abstract figure with its counterpart in an array of similar figures.

204

J▬▬ H▬▬          Neuropsychological Evaluation                    6

## Composite Index Score Interpretation

The 8-point difference between J▬▬ TOMAL Verbal and Nonverbal Memory Index scores indicates that he learns and recalls verbal and nonverbal, visual-motor information similarly. The index scores were in the low average to average range, indicating age appropriate verbal and nonverbal learning and memory. J▬▬ Delayed Recognition Index was consistent with his Composite Memory Index. This result counterindicates the presence of a diffuse neurological condition that interferes with learning and retention.

## Supplementary Index Score Interpretation

The pattern of J▬▬ TOMAL Supplementary Index scores suggests that he exhibits below average attention and concentration. This result indicates that he demonstrates some difficulty focusing and sustaining attention and in effectively employing his working memory (Attention/Concentration Index: 82, 12th percentile for his age).

J▬▬ sequential recall was in the deficient range. His Sequential Recall Index score (SS: 75, 5th percentile for his age) was indicative of deficient storage and retrieval of information requiring preservation of sequence. His free recall memory, however, was average. J▬▬ Free Recall Index (SS: 105, 63rd percentile for his age) was indicative of a well-developed ability to recall information that is not provided with a contextual framework or with multimodal supports.

J▬▬ Associative Recall Index was average (SS: 94, 35th percentile for his age), indicating that his recall skills are facilitated when associations are explicit in the information provided. His Learning Index score of 105 (63rd percentile for his age) was average.

## Learning Curve Analysis

| | Obtained | Norm |
|---|---|---|
| *Word Selective Reminding* | 5 6 9 10 10 10 11 11 | 6 8 9 9 10 11 11 11 |

J▬▬ demonstrated initial difficulty with this task, but his performance gradually improved across trials. He gradually reached age-based expectations on the 7th trial of 8.

| | Obtained | Norm |
|---|---|---|
| *Visual Selective Reminding* | 5 6 5 6 7 7 8 8 | 5 5 6 6 6 6 7 7 |

J▬▬ performance on this subtest was initially inconsistent. His performance gradually improved, however, reaching mastery and exceeding age-based expectations.

| | Obtained | Norm |
|---|---|---|
| *Object Recall* | 10 8 12 12 12 | 7 10 11 12 12 |

J▬▬ performance on this task was initially inconsistent. His performance quickly improved on the 3rd trial, reaching age-based expectations.

*Jossss Hssssss*                    Neuropsychological Evaluation                    7

|  | Obtained | Norm |
|---|---|---|
| *Paired Recall* | 5 7 8 | 3 6 7 7 |

In recalling 8 pairs of items, Jssss consistently outperformed the norm group. He reached mastery on the 3rd of 4 trials.

### Delis-Kaplan Executive Function System (D-KEFS)

The Delis-Kaplan Executive Function System (D-KEFS) allows assessment of higher-level cognitive functions in children and adults, based on the performance of a national norm group consistent with the United States' population. The nine tests of the D-KEFS permit selection from a diverse set of cognitive tests that tap important fundamental and higher-level processes. (Only selected subtests were administered to Jssss.) This allows isolation and measurement of fundamental cognitive skills and multiple higher-level executive functions that contribute to successful performance on a particular task.

D-KEFS raw scores are converted to scaled scores with a mean of 10 and a standard deviation of 3; scores are graded by age.

The D-KEFS subtests measuring visual-motor processing, cognitive flexibility, verbal fluency, and higher-order concept formation skills were selected.

### Verbal Fluency Test (7 – 15 Below Average to Significantly Above Average)

This D-KEFS test evaluates the examinee's ability to generate word fluently in an effortful format (Letter Fluency), from overlearned concepts (Category Fluency), and while simultaneously shifting between overlearned concepts (Category Switching). This provides a measure of the extent to which the examinee can generate lexical items while simultaneously observing several rules or restrictions. It assesses mediation, simultaneous processing, and systematic retrieval.

| *Measure* | *Standard Score* |
|---|---|
| Letter Fluency | 12 |
| Category Fluency | 7 |
| Category Switching Total Correct Responses | 12 |
| Category Switching Total Switching Accuracy | 9 |
| | |
| Letter Fluency vs. Category Fluency Contrast | 15 |
| Category Switching vs. Category Fluency Contrast | 15 |

Jssss demonstrated an age-appropriate ability to generate words in an effortful format. He was below average in his ability to generate words from overlearned concepts. Jssss was also average in his ability to switch categories accurately and to generate responses in alternating categories simultaneously. It is notable that Jssss verbal fluency differed significantly by domain, i.e., his ability to generate words in an effortful format (Letter Fluency) was significantly more developed than his ability to generate words from overlearned concepts

P.009

FEB-13-2006  10:04

P.010

Joshua Hamilton                    Neuropsychological Evaluation                    8

(Category Fluency).  Paradoxically, Joshua's ability to generate words in categories was enhanced when he was forced to generate words in 2 categories simultaneously.

### Developmental Test of Visual-Motor Integration (VMI)

The Developmental Test of Visual-Motor Integration (VMI) is an individually administered, norm-referenced evaluation of visual-perceptual integration. This test requires the child to copy geometric figures of increasing complexity. Joshua's performance on the VMI earned a standard score of 84 (14th percentile for his age; age equivalent: 7 years, 6 months). This result suggests that he demonstrates some deficits in visual-motor functioning and that his visual-motor integration is mildly delayed compared to that of his same-aged peers.

### SUMMARY

Joshua Hamilton is a 10 year-old African-American male student attending KIPP DC AIM Academy.  He was referred for the current evaluation to assist in determining his appropriate educational placement and need for special education services.  The results of the current evaluation indicate that Joshua demonstrated low average verbal learning and memory and average nonverbal learning and memory skills.  There was no significant discrepancy between Joshua's TOMAL Composite and Delayed Recognition Index scores, indicating that his immediate and delayed memory skills are similarly developed.  He demonstrated deficits in attention/concentration and sequential recall but well-developed free recall and learning skills.

Joshua's performance on the Delis-Kaplan Executive Function System (D-KEFS) was suggestive of well-developed verbal fluency and cognitive flexibility.  His VMI score on the current evaluation was indicative of deficits in visual-spatial integration.  The pattern of his performance on the neuropsychological battery of subtests suggests that Joshua's deficits in learning are not attributable to neurological impairment.

### DIAGNOSTIC IMPRESSIONS

| | |
|---|---|
| Axis I: | 314.01 Attention-Deficit/Hyperactivity Disorder, Combined Type |
| | 309.24 Adjustment Disorder with Anxiety (by history) |
| Axis II: | V 62.89 Borderline Intellectual Functioning |
| Axis III: | None reported |
| Axis IV: | Difficulty meeting classroom academic demands |
| | Difficulty meeting classroom behavioral demands. |
| Axis V: | GAF = 60 |

### RECOMMENDATIONS

1.  Joshua will benefit from continued speech/language services and continued psychosocial counseling.

2.  Joshua will benefit from placement in a structured educational placement which will provide him with opportunities for one-on-one and small group instruction.  He will likely function best in an environment with incentive/reward systems and immediate consequences for behavioral acting out.

207

J█████ H███████                    Neuropsychological Evaluation                                    9

3.      J█████ may also benefit from an evaluation by his pediatrician or a psychiatrist to
        assist in determining whether a trial of stimulant medication may be helpful in
        managing his inattention and hyperactivity.

Accommodations for his attention deficits should include but not be limited to:

4.      Assignments in reading and writing should be broken into smaller units. J█████
        should be allowed, for example, to do 5 problems or sentences at a time. This way,
        he can feel success, or receive immediate feedback if he is doing the assignment
        incorrectly and turn them into more manageable tasks.

5.      J█████ teachers should correct his work as soon as possible to allow for immediate
        gratification and feedback.

6.      J█████ desk should be kept free of all unnecessary materials.

7.      J█████ should be seated close to the teacher at first for more immediate feedback.

8.      J█████ mother will benefit from information available from Children and Adults
        with Attention Deficit Disorder (ChADD). Ms. Hamilton can obtain such
        information from www.chadd.org.

It was a pleasure to evaluate J█████. If we can provide additional information, or you would like
to further discuss the evaluation results, please do not hesitate to contact us at (301) 749-2003.

208

Kellie M. McCants, Ph.D.
Examiner

Joan E. Gildemeister, Ph.D
Supervisor
Clinical Psychologist



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

Office of Special Education
825 North Capitol Street, N.E., 6ᵗʰ Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

# KIPP DC AIM ACADEMY
## *SPEECH AND LANGUAGE REPORT*

**NAME:**        J████ H████████        **DOB:** ████/1996
**EXAMINER:**  Lesa Gibson, MS, CCC/SLP        **DOE:** 05/12/2006
                       Speech/Language Pathologist        **DOR:** 05/17/2006
**STUDENT ID#** 9055583

### HISTORY

J████ H████████ is an 11.0 year old, African American male, who attends Kipp DC Aim Academy. He was initially evaluated by Nichole Pitre, MS, CCC-SLP, on 1/26/2004, while attending Birney Elementary School. J████ was administered the *Test of Language Development Intermediate 3rd Edition* to assess his overall language skills. He received a spoken language standard score of 63, an expressive language standard score of 64 and a receptive language standard score of 68. Ms. Pitre administered the *Comprehensive Receptive and Expressive Vocabulary Test -2* to evaluate J████ receptive and expressive vocabulary skills. He received standard scores of 77 and 81, respectively. J██████ language and vocabulary scores fell in the below average range. *The Goldman Fristoe Test of Articulation-2* evaluated J████ speech skills. He received a standard score of 106, indicating normal development.

### TEST BATTERY

Peabody Picture Vocabulary Test-Form IIIB
Expressive One Word Picture Vocabulary Test
Clinical Evaluation of Language Fundamental-4
Informal observations

### INFORMAL OBSERVATION

J████ was friendly and cooperative during testing. He worked hard but was easily distracted by noises that occurred outside of the evaluation room. J████ appeared to loose focus while testing, intermittently. He vacillated from quick, correct responses to slow incorrect responses. The evaluation was discontinued when J████ lost focus for an extended period of time. Upon the continuation of the evaluation, the following week, J████ was focused and performed very well. On both assessment occasions, J████ was suffering with allergy flare ups. His eyes were red and runny and congestion was audible. It is the opinion of this evaluator that J████ language skills are better than this assessment reveals. It was difficult for him to maintain focus.

**JH14**

210

, J███████ continued                                        page 2

## VOCABULARY
The *Peabody Picture Vocabulary Test-Form IIIB* assessed J█████ receptive vocabulary skills. He received a standard score of 97, indicating normal development.

The *Expressive One word Picture Vocabulary Test* evaluated J█████ expressive vocabulary skills. He received a standard score of 86, indicating below average development.

## LANGUAGE
The *Clinical Evaluation of Language Fundamentals-4* was administered to evaluate the basic foundations of content and form that characterizes mature language use: semantics, morphology, syntax and retrieval of spoken language. J█████ received the following standard scores:

| SUBTEST | STANDARD SCORES |
|---|---|
| Concepts and Following Directions (C&FD) | 3 |
| Recalling Sentences (RS) | 6 |
| Formulated Sentences (FS) | 8 |
| Word Classes-Receptive (WC-R) | 10 |
| Word Classes-Expressive (WC-E) | 8 |
| Word Classes-Total (WC-T) | 9 |

| COMPOSITE SCORES | |
|---|---|
| Core Language Score (C&FD+RS+WC-T) | 79 |
| Receptive Language Score (C&FD+WC-R) | 81 |
| Expressive Language Score (RS+FS+WC-E) | 85 |
| Language Memory (C&FD+RS+FS) | 74 |

The Core language score is a measure of general language ability that qualifies overall language performance. J█████ received a standard score of 79, indicating a mild language delay. The receptive language score is a measure of listening and auditory comprehension. He received a standard score of 81, indicating a mild delay. The expressive language score is an overall measure of his expressive language skills. He received a standard score of 85, indicating a mild delay. Language memory is a measure of J█████ ability to apply working memory to linguistic content and structure. He received a standard score of 74, indicating a moderate delay.

Expressively, J█████ effectively formulates complex sentences containing nouns, verbs adjectives and conjunctions and explains words relationships. For example, *pillow* and *blanket* are related because they both go on the bed. J█████ weakness is auditory recall. He omits and replaces words that are relevant to a verbal message. Receptively, J█████ follows complex 1-, 2-, and 3-step directions that contain inclusion/exclusion, location

211

, J█████, continued                                       page 3

and conditional words.  He has difficulties carrying out commands that contain sequential (1st, 2nd, 3rd, last) and temporal words (before, after, then).  J█████ makes word associations.  He successfully identifies related words when presented in groups.

**FLUENCY and VOICE**
Fluency and voice were informally evaluated through conversational speech.  J█████ spoke at a normal rate.  His vocal quality was slightly hyponasal.  He was congested due to allergy flare ups.

**HEARING**
J█████ should have an audiological evaluation if he has not had his hearing assessed in the past 12 months.

**RECOMMENDATIONS**
J█████ is an 11.0 year old African American male who was cooperative during testing.  He often became distracted when outside noises were heard.  The test was administered over 2 days because of his inability to maintain focus.  J█████ articulation, fluency and receptive vocabulary skills are within the normal limits.  He has a mild language delay and his expressive vocabulary skills are below average.  J█████ vocal quality is hyponasal.  He was suffering from allergy flare ups during testing.  A determination to received speech and language services should be made at the MDT meeting after all pertinent information has been presented.

_____
Lesa Gibson, MS, CCC-SLP
Speech/Language Pathologist

District of Columbia Public Schools
Division of Special Education
Local Education Agency
Occupational/Physical Therapy Programs
(202) 576-5422

## Occupational Therapy Assessment

**Name:** J█████ H████        **Evaluation Date:** 05/16/06
**Birthdate:** ███/94          **School:** Kipp DC: AIM Academy
**Age:** 11 year 6 month       **Therapist:** Zulay Torres OTR/L

**Referred for Assessment by:** District of Columbia Public Schools.
**Reason for referral:** J████ was referred due to concerns with his visual motor integration skills.

**TEST PROCEDURES:**
*Formal Assessment tools used:*
**Assessment Procedures:**
o  Clinical Observations focusing on muscle strength, tone, reflexes, posture, balance, motor planning, visual perception, gross and fine motor skills, and sensory processing.
o  Review of Related Reports
o  Full Range Test of Visual Motor Integration (FRTVMI):

| Raw Score | Percentile Rank | Standard Score | Descriptive Rating | |
|-----------|-----------------|----------------|--------------------|--|
| 10        | 3               | 73             | Poor               | |

o  Draw-A-Person:        11 year 9 month

o  Motor Free Visual Perception Test (MVPT-R):

| Raw Score | Perceptual Quotient | Perceptual Age | Chronological Age |
|-----------|---------------------|----------------|-------------------|
| 27        | 60                  | 6 year 8 month | 11 year 6 month   |

o  Bruninks-Oseretsky Test of Motor Proficiency (BOT-2):

| Area | Scale Score | Standard Score | Percentile Rank | Descriptive Category |
|------|-------------|----------------|-----------------|----------------------|
| Fine Manual control | 16 | 34 | 6 | Below average |
| Manual Coordination | 25 | 41 | 18 | Average |

**OBSERVATIONS:**
- **Behavior during Testing:** J█████ was a pleasant child who was able to complete most tasks given to him. He enjoyed physical gross motor activities more so than fine motor activities. He seemed to rush during testing and required verbal prompting to take his take to complete given tasks. When asked which was his favorite subject is school he stated that it was reading and manifested that his least favorite was math. He expressed that he gets frustrated because he can not perform as well as his classmates.

**JH15**
213

- **Postural Adjustments**: J█████ has been observed to sit upright on desk to perform table top activities. He would eventually slump on desk. However, after verbal prompting he was able to make appropriate postural adjustment to sit up on his chair.

- **Gross Motor**: J█████ was observed to be able to complete walking, crawling, standing, running, and rolling at age appropriate skill level. His 'timing' is delayed for any most of the gross motor activities; especially when it requires the alternate use of both sides of his body, scissor jumping, alternate hopping, forward jumping jack, or touch nose with index finger alternatively (with eyes close) . His gross motor skills are within the average level for his academic environment. He could partially perform or imitate push-ups, curl ups, airplane position or any other activity against gravity that required strength and endurance.

- **Fine Motor**: J█████ demonstrated below average in hand manipulation skills and hand strength needed for fine motor skills. He was able to pick objects up using a fine pincer grasp, wind a toy, shuffle cards, place pegs on board, make a tower with 10 blocks and string small pellets on a lace all within low average time. He shows poor control of the refined movements. During paper pencil activities J█████ used his whole arm rather than the refined wrist movement. He has good muscle and arch development. However, his fingers coordination is awkward.

- **Visual-Motor / Perception Skills:** Test scores reveal impaired visual motor, perception and integration ability, which interferes with his fine motor skills such as written work and artwork. In the Visual perception tests he scored below average range with a perceptual quotient of 60 and an age equivalent of 6 year 8 month. His FRTVMI test (drawing in structured form, rather then free style) his performance was considered in the low average range as well. The printed writing sample was well formed with proper pressure. On the Draw a Person Test, he scored 11 years 9 months which indicates an average performance in this area. J█████ has difficulties to properly identify shapes details, direction, missing lines, visual memory and form constancy. He also demonstrates difficulties to properly process information and to mechanically reproduce it on paper.

- **Written Skills:** J█████ completed written tasks, i.e. a draw a person and FRTVMI forms. His letters were properly formed and space but with poor alienation. He often mixes upper and lower case letters within a paragraph. He used a "thumb wrap" with index and a middle finger included and eventually switches to a tri-pod prehension to stabilizing his pencil for precision movements. He has poor skills for direction, orientation and placement of letters on lined paper.

## Summary:

J█████ does not appear to have sensory integration deficits. He has functional gross motor skills and functional hand skills for fine motor activities. J█████ demonstrates several areas of deficit that make him a good candidate for direct Occupational Therapy services. He has difficulty with spatial organization, bilateral motor coordination, and trunk strength for mobility, visual perception and visual motor integration difficulties. These difficulties are negatively impacting on his functional performance within the classroom in order to successfully complete written work and to solve math problems. J█████ is not properly processing Visual Stimuli (perceptually or motorically) required for previously mention subjects. Intervention should focus on strategies to improve difficulties in Visual Perceptual, Visual Motor and Visual Integration skills areas.

214

**RECOMMENDATIONS:**

Direct therapy – Individual or Small Group
**Frequency:** 45-60 minutes weekly        **Duration:** Annual IEP


Respectfully submitted for IEP Team review,


Zulay Torres, OTR/L, SIPT              May 16, 2006
**Occupational Therapist**                **Date**

215

# KIPP DC:
# AIM Academy

421 Alabama Ave. SE
Washington, DC 20032

Tel: 202-373-0505
Fax: 202-373-0508

TO:      Peggy Peagler
         DCPS Placement Specialist

FROM:    Dana Ross
         KIPP DC, Director of Special Education

RE:      J████ H█████

DATE:    4/6/06

KIPP D.C.: AIM Academy (KIPP DC) is a District of Columbia Public School (DCPS) for special education reasons. Therefore, as per DCPS instructions, on March 28, 2006, I forwarded you a request for a revaluation referral for Occupational Therapy and Speech Therapy evaluation.

J████ is currently struggling in school this year as well as with certain aspects of his home life. Report card grades from this year and previous years show that J████ is making little academic progress. Both J████s mother and KIPP DC personnel believe that he should be evaluated to determine his current needs and possible eligibility for special education services.

J████ is in serious need of assistance right now and KIPP DC would like to see him provided with whatever services necessary to help him succeed. Once the evaluations are completed, KIPP DC: AIM Academy will reconvene to determine eligibility appropriate IEP hours and appropriate school program.

Please let us know if there is any other information needed in order to expedite the reevaluation process for J████. KIPP DC is willing to help in any way possible. Please feel free to contact Dana Ross at 202-315-6923 if you have any questions or need any further information. Thank you for this assistance in this matter.

CC: Khala Johnson, principal
    Sharon Millis
    Student folder



**JH16**

www.aimacademydc.org

216

# KIPP DC:
# AIM Academy

421 Alabama Ave. SE          Tel: 202-373-0505
Washington, DC 20032         Fax: 202-373-0508

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| **TO:** Sharon Millis | **FROM:** Dana Ross |
| **COMPANY:** | **DATE:** 4/7/06 |
| **FAX NUMBER:** 301-870-5715 | **TOTAL NO. OF PAGES INCLUDING COVER:** 2 |
| **PHONE NUMBER:** | **SENDER'S REFERENCE NUMBER:** |
| **RE:** | **YOUR REFERENCE NUMBER:** |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

**NOTES/COMMENTS:**

Please call me if you have any questions.

Monday, Friday @ KIPP DC: Key Academy 543-6595 ext 105
Tuesday, Wed, Thursday @ KIPP DC: AIM Academy 373-0505

Cell phone # 202-315-6923

217



Challenging Minds. Building Character.

Rock Creek Academy, Inc.
4401 Connecticut Ave., NW
Washington, DC 20008
202.378.1400

April 27, 2006

Doug Tyrka
1726 Connecticut Ave., N.W.
Suite 400
Washington, DC 20009

Re: J█████ H█████████
DOB: ████/95

Dear Mr. Tyrka,

Thank you for referring J████ to Rock Creek Academy. We have reviewed this information and feel that Rock Creek Academy can provide the required and appropriate services for J█████. We will contact Ms. Yana Hamilton to schedule a follow up interview and tour of our facility. Currently we have limited space available. We can enroll J█████ upon receipt of funding, pending space availability. Funding may be secured through parent payment, a DCPS Notice of Placement, or the results of a due process hearing or court order.

A copy of this referral packet has been forwarded to the office of Ruth Blake, Executive Director of the Non-Public Unit at DCPS.

If you have any questions or concerns regarding this referral, please contact me at the above listed number. Thank you for considering Rock Creek Academy as a possible placement for your client.

Sincerely,

Keren Plowden

Keren Plowden, MA
Executive Director of Student Services

Cc:    Ruth Blake, Director, Non Public, Charter, Interagency Program

**JH17**



## Student Transfer Form

I am withdrawing my child from KIPP DC: AIM Academy.  I understand that this means that my child will lose his/her spot in the school and KIPP DC: AIM Academy will fill my child's spot with a student off of the waiting list.

My child will no longer be attending the KIPP DC: AIM Academy.  I will be in contact with KIPP DC: AIM Academy to let them know where to send my child's records.

Student ID Number 905583

Student Name J̶o̶s̶h̶u̶a̶ H̶a̶m̶i̶l̶t̶o̶n̶

Grade: <u>5th</u>          Date of Birth: ▮▮▮95          Sex: M

Address: 1347 Stevens Road SE, Washington, DC 20032

Parent or Guardian <u>Ms. Hamilton</u>

Phone Number 202- 582-6332

Reason for check-out/withdrawal: <u>referred/transfer to DCPS for a full-time Placement</u>

Date of withdrawal: <u>July 28, 2006</u>

Principal _____

~~Staff Member~~ *Ms. Johnson*    principal

*DR*    staff member

**JH18**
219

**TYRKA & HOUCK, LLP**
1726 Connecticut Ave., NW, Suite 400
Washington, DC 20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

**August 25, 2006**

Dana Ross
Special Education Coordinator
KIPP DC/AIM Academy
421 Alabama Avenue, S.E.
Washington, DC 20032

RE:    J█████ H████████ (D.O.B. ████/94)

Ms. Ross:

We represent Yana Hamilton, the parent of J█████ H████████

Ms. Hamilton has reported that she has completed all necessary paperwork regarding J████████ registration, and that she will be enrolling him at Kipp for the first day of school. If this is not the case, please contact me immediately.

I am also writing to inform you that a due process complaint was recently filed by Ms. Hamilton challenging DCPS' proposed placement at the Taft Center. As a consequence, J████████ current educational placement at Kipp cannot be changed during the pendency of these proceedings without Ms. Hamilton's consent. 20 U.S.C. § 1415(j).

We will keep you informed of any significant changes in the status of this case, and we greatly appreciate your efforts to ensure that J█████ receives a free appropriate public education.

Sincerely,

Keith J. Coyle, Associate
PA Bar No. 201128
Tyrka & Houck, LLP
Attorneys for the Petitioner
1726 Connecticut Avenue N.W., Suite 400
Washington, D.C. 20009
p. (202) 265-4260
f. (202) 265-4264

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME  : 08/25/2006 09:51
                              NAME  : TYRKA HOUCK LLP
                              FAX   : 2022654264
                              TEL   :
                              SER.# : 000A6J693992
```

```
            08/25  09:50
            2023730508
            00:00:33
            02
            OK
            STANDARD
            ECM
```

## TYRKA & HOUCK, LLP

1726 Connecticut Ave., NW, Suite 400
Washington, DC  20009
(202) 265-4260 (ph)
(202) 265-4264 (fax)

### CONFIDENTIALITY NOTICE

This facsimile contains confidential information belonging to Tyrka & Houck or their client(s) that is intended solely for the recipient named below. If you are not the intended recipient named below or the agent or employee thereof, this transmission was sent to you in error, and your review, use, reproduction, publication, or distribution of this transmission or the contents thereof is strictly prohibited. Tyrka & Houck expressly preserves and asserts all privileges applicable to this transmission. If you have received this transmission in error, please read no further than this Confidentiality Notice and call the telephone number above to arrange for the return of this transmission at the cost of Tyrka & Houck. Thank you.

Recipient:          KIPP DC/AIM Academy

Fax number:         202-373-0508

From:               Keith Coyle

Regarding:          J████ H████

Number of pages:    2 (including cover sheet)

Notes:

221

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
OFFICE OF ACADEMIC SERVICES

**RESOLUTION MEETING CONFIRMATION**
**(RMC)**

_ PUBLIC          ___DPCS CHARTER          _ LEA CHARTER          _ NONPUBLIC          _ PRIVATE/RELIGIOUS

J█████ H█████
Student

█████████, 1994
DOB

**Kipp DC**
School

**Courtesy Copy**
**Dear Ms. Yana Hamilton:**
Parent/Guardian

Pursuant to the Individuals With Disabilities Education Improvement Act of 2004 § 615 (f)(1)(B), this is a confirmation of your meeting to discuss your pending due process complaint and the facts that support it. The goal of the resolution meeting is to discuss the complaint and provide an opportunity for DCPS to resolve it. The IDEA 2004 provides that prior to an impartial due process hearing a resolution meeting must be held within 15 (fifteen) days of your filing your complaint. The resolution meeting must include the local education agency, DCPS and the parent of the child.

Therefore, your participation is required by IDEA 2004 and essential in an attempt to resolve your concerns. The District of Columbia Public Schools hopes that you will make every effort to attend this meeting. As previously stated, the resolution meeting is required prior to a due process hearing. Please be advised that failure to attend this meeting may result in a waiver of your right to due process hearing.

**The date, time and place of the meeting are printed below.**

**September 5, 2006**
Date

**12:00 pm**
Time

**DCPS – Union Square**
**825 North Capitol Street., N.E. Sixth Floor**
**Washington, D.C. 20002**
**(202) 442-5509 or 442-4800**

Gina Scales-Johnson
**August 28, 2006**
Sent By

RMC Letter of Confirmation to the Parent
6-14-05



## TYRKA &
### ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**September 22, 2006**

Hearing Officer David R. Smith, Esq.
825 North Capitol Street, N.E.
Washington, DC 20002
By Fax: 202-442-5556

    **RE:**    J████H██████ (D.O.B. ███/94)
          **8/29/06 Stay-Put Motion**
          **9/14/06 Expedited Hearing Motion**

Dear Hearing Officer Smith:

We filed a due process complaint on behalf of this student on August 23, 2006. Since that time, the Petitioner has filed two motions, a stay-put motion on August 29th and an expedited hearing motion on September 14th. DCPS has never filed an opposition to either of these motions, but no ruling has been issued on either.

As the motions make clear, the student is not presently in any school. His parent and grandparent are understandably anxious and upset. My office receives literally at least one call from them per day; unfortunately, they are at least somewhat inclined to blame my office for the situation.

We would greatly appreciate it were you to issue a ruling on the outstanding motions or otherwise to apprise us of the status of decision making.

Thank you for your time and attention.

                       Sincerely,

                       Douglas Tyrka

cc:    DCPS OGC
       Principal, KIPP DC: AIM Academy

**JH21**
223

```
TRANSMISSION VERIFICATION REPORT

                              TIME  : 09/22/2006 14:10
                              NAME  : TYRKA & ASSOCIATES
                              FAX   : 2022654264
                              TEL   : 2022654260
                              SER.# : 000A6J693992


DATE,TIME            09/22  14:09
FAX NO./NAME         SHO
DURATION            00:00:33
PAGE(S)             02
RESULT              OK
MODE                STANDARD
                    ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**  Hearing Officer Smith, OGC & Principal, Kipp
              DC: AIM Academy

**Fax Number:**  202-442-5556, 202-442-5097/98, 202-373-0508

**From:**  Douglas Tyrka

**Regarding:**  J█████ H███████ (D.O.B. ████89)

**# of pages:**  2

**Notes:**  Re: Stay put and expedited hearing motions

224

```
                    ┌─────────────────────────────────────┐
                    │  TRANSMISSION VERIFICATION REPORT    │
                    └─────────────────────────────────────┘
                                        TIME  : 09/22/2006 14:11
                                        NAME  : TYRKA & ASSOCIATES
                                        FAX   : 2022654264
                                        TEL   : 2022654260
                                        SER.# : 000A6J693992
```

| | |
|---|---|
| DATE,TIME | 09/22  14:11 |
| FAX NO./NAME | OGC1 |
| DURATION | 00:00:33 |
| PAGE(S) | 02 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# TYRKA & ASSOCIATES, LLC

1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

**Recipient:**     Hearing Officer Smith, OGC & Principal, Kipp
                   DC: AIM Academy

**Fax Number:**    202-442-5556, 202-442-5097/98, 202-373-0508

**From:**          Douglas Tyrka

**Regarding:**     J████ H██████ (D.O.B.███/89)

**# of pages:**    2

**Notes:**         Re: Stay put and expedited hearing motions

225

TRANSMISSION VERIFICATION REPORT

```
TIME  : 09/22/2006 14:13
NAME  : TYRKA & ASSOCIATES
FAX   : 2022654264
TEL   : 2022654260
SER.# : 000A6J693992
```

```
DATE,TIME          09/22  14:12
FAX NO./NAME        2023730508
DURATION           00:00:35
PAGE(S)            02
RESULT             OK
MODE               STANDARD
                   ECM
```

# TYRKA &
## ASSOCIATES, LLC
1726 Connecticut Ave., NW ♦ Suite 400 ♦ Washington DC 20009 ♦ Phone: (202)265-4260 ♦ Fax: (202)265-4264

| | |
|---|---|
| *Recipient:* | Hearing Officer Smith, OGC & Principal, Kipp DC: AIM Academy |
| *Fax Number:* | 202-442-5556, 202-442-5097/98, 202-373-0508 |
| *From:* | Douglas Tyrka |
| *Regarding:* | J███ H██████ (D.O.B. ███89) |
| *# of pages:* | 2 |
| *Notes:* | Re: Stay put and expedited hearing motions |

226

GOVERNMENT OF THE DISTRICT OF COLUMBIA

DEPARTMENT OF PUBLIC SCHOOLS

OFFICE OF STUDENT HEARINGS


--------------------------x
IN THE MATTER OF:
                              :
J██████ H█████████            :
--------------------------x


Washington, D.C.

Thursday, October 19, 2006



        The above-entitled matter came on
for hearing, pursuant to notice.


BEFORE:

    HERBERT ST. CLAIR, Hearing Officer


APPEARANCES:

    On Behalf of the Student/Parent:

        DOUGLAS TYRKA, ESQ.

    On Behalf of the D.C. Public Schools:

        SOR GUPTA, ESQ.

    This transcript was produced from

**NEAL R. GROSS**

COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

227

an audio CD provided by D.C. Public Schools.

I N D E X

OPENING STATEMENTS:

Douglas Tyrka ............................. 6

CLOSING STATEMENTS:

Douglas Tyrka ...........................131
Saurabh Gupta ...........................134

W I T N E S E S

| Complainant | | Direct | Cross |
| Redirect | | | |
| | | | |
| Keren Plowden | 26 | 35 | 37 |

Government

| Gregory Matthews | | 49 | 59 | 73 |
| Evan Murray | 93 | 105 | 114 | |
| Deborah Lyons | | 118 | | |

**NEAL R. GROSS**

COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2                    HEARING OFFICER ST. CLAIR:   Good

 3         afternoon.

 4                    This   is   a   continuation   of   a

 5         hearing   for   J████   T██   H███████   that

 6         originally convened on October 12th.   And at

 7         the request of the Attorney Advisor and over

 8         the objection of counsel for the parents, the

 9         Hearing Officer continued it to hearing now

10         to give the Attorney Advisor some time to

11         prepare.

12                    Okay.   Now, as I recall, I placed

13         the disclosure into the record at the last

14         hearing.   And we are at the point now where I

15         think we're prepared to move forward.   And as

16         I recall, the issue is -- why don't I let you

17         state the issue, Mr. -- I thinking it's the

18         appropriateness of placement?

19                    MR. TYRKA:   Well, failure to make

20         a placement and accordingly a violation of
```

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433            WASHINGTON, D.C.  20005-3701            (202) 234-4433

229

1    his rights in --

2              HEARING OFFICER ST. CLAIR:    All

3    right.

4              MR. TYRKA:    Mr. Gupta just handed

5    some new disclosures.

6              HEARING OFFICER ST. CLAIR:    Do you

7    have these?

8              MR. TYRKA:    Yes.

9              HEARING OFFICER ST. CLAIR:    Okay.

10    Thank you.

11              Oh, these are not in the -- oh,

12    that's correct.    All right.    I'm going to

13    place the DCPS closures into the record.

14    They're dated October 16th.    It says amended

15    disclosure statement.    There's one in here,

16    Mr. Gupta?

17              MR. GUPTA:    Well, no.    They're

18    amended for the purpose of Mr. Tyrka's

19    advice.

20              HEARING OFFICER ST. CLAIR:

21    October 6th.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

230

1          MR. GUPTA:    Well, even amended

2    further than that.    I had sent him one

3    earlier that same day.

4          HEARING    OFFICER    ST.    CLAIR:

5    October 6th?

6          MR. GUPTA:    There's one that was

7    made on October 6th and then one on October

8    16th.

9          HEARING OFFICER ST. CLAIR:    I got

10   the -- this is the one you're talking about

11   right here?

12         MR. GUPTA:    Yes.    That's the

13   October 16th one.    And the reason that says

14   amended is because earlier that day I sent

15   him a disclosure and then I had to add one

16   more witness to it and so on the same day I

17   amended it.

18         HEARING OFFICER ST. CLAIR:    All

19   right.  But I have all of the disclosures?

20         MR. GUPTA:    Now you have

21   everything.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

231

1    HEARING OFFICER ST. CLAIR:    All

2  right.    All right.    Okay.    Good.    Good.

3  Okay.

4         Now, that should bring us to the

5  point where I'm going to let you make your

6  opening statement, Mr. Tyrka, and call your

7  first witness.

8         MR. TYRKA:    Well, first we have an

9  outstanding procedural motion that I believe

10 the Hearing Officer has denied by silence.

11        HEARING OFFICER ST. CLAIR:    Yes.

12        MR. TYRKA:    Which was a motion for

13 default on the basis of DCPS's failure to

14 serve a response in this case.

15        If my understanding is correct,

16 that has been denied?

17        HEARING OFFICER ST. CLAIR:    Yes.

18        MR. TYRKA:    Accordingly since we

19 do not have a response and since the

20 resolution was completely silent as to

21 Petitioner's claims, I would like to go

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

232

1    through the statements in the Complaint and

2    identify where there is any disagreement

3    because I actually believe there is agreement

4    on a large majority of the facts, certainly

5    the procedural ones.

6               HEARING OFFICER ST. CLAIR:    Okay.

7    Go ahead.

8               MR. TYRKA:    First off, there was

9    an HOD on July 10th, '06, as our Disclosure

10   Number 3?

11              HEARING OFFICER ST. CLAIR:    Okay.

12              MR. TYRKA:    That ordered DCPS to

13   convene a meeting, review the IET and to

14   determine the placement specifically a full-

15   time    and/or    therapeutic    placement.

16   Specifically mentions that in the HOD.

17              Just by way of background on this

18   HOD, this was from this Hearing Officer.    In

19   this case, the parent was actually seeking

20   placement at that time in July.    As the HOD

21   makes clear, the only reason it was not

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

233

1  granted was because there was no ESY on the

2  IEP and so it was not found to be a current

3  violation  if  there  was  no  full  time

4  placement.

5              Instead,  the  Hearing  Officer

6  ordered specifically that at the meeting a

7  full time placement be identified for the

8  child.

9              That meeting did occur on August

10  9, 2006.  We don't have an issue with timing.

11  However,  at  that  meeting,  DCPS  did  not

12  arrive with any placement in mind at all.

13  Instead, they called someone at 8:25 and came

14  back with a proposal of Taft (phonetic sp.).

15  However,  as  our  Complaint  states,  they

16  admitted that Taft had never seen J██████

17  file, had not sent to J█████ for admission

18  and they gave minimal details regarding Taft.

19  They say very little about it.

20              Regardless, they did not, in fact,

21  place J█████ at Taft at that meeting as the

1    HOD required full time placement.

2              HEARING OFFICER ST. CLAIR:    Is

3    there anything he's saying so far that you

4    contradict, Mr. Gupta?

5              MR. GUPTA:    I contradict the fact

6    -- as you know.    Thus far, no.    That's fine.

7     He's haven't gotten to the part where it

8    contradicts.

9              HEARING OFFICER ST. CLAIR:    Okay.

10    Good.

11              MR. TYRKA:    Okay.    So, I think we

12    may want to stop there.    We think that on

13    that base, DCPS has failed to make a

14    placement and accordingly I'd like to move on

15    to Rock Creek.    There are other issues --

16    there's more to be discussed, but I think

17    that brings us through to the Petitioner's

18    proposed placement.

19              MR. GUPTA:    That's the part where

20    I dispute.

21              DCPS disputes the fact that we

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

235

1    didn't make a placement.    We offered a

2    placement.  We gave sufficient information on

3    the placement.    The parents at the meeting

4    disagreed about the placement and we were

5    going to come back and issue -- and issue the

6    actual prior notice for that placement.

7            It's evidence in -- find it in

8    DCPS's -- DCPS -- I believe that is -- DCPS

9    1, the very second to last page.  Third to

10   the last page before you get to DCPS 2.

11           MR. TYRKA:  Is this Number 1 --

12           HEARING OFFICER ST. CLAIR:    Yes.

13   Is there where it says Placement Portion of

14   Meeting?

15           MR. GUPTA:  Yes, sir.

16           HEARING OFFICER ST. CLAIR:    All

17   right.  Where?  Where?

18           MR. GUPTA:    Towards the bottom.

19   Maybe the last paragraph.  It says DCPS is

20   referring J█████ to the Taft Center.  The

21   Taft Center services multiple --

1          HEARING OFFICER ST. CLAIR:    So,

2    this again -- wait a minute.

3          MR. GUPTA:    Did you find the

4    place, sir?

5          HEARING OFFICER ST. CLAIR: Let me

6    read this.

7          MR. GUPTA: Okay. Go ahead.

8          HEARING OFFICER ST. CLAIR:    DCPS

9    is referring J█████ to the Taft Center.   The

10   Taft  Center  services  multiply  disabled

11   8:00/2:30 time -- I guess that's the school

12   day.

13         MR. GUPTA: Yes.

14         HEARING  OFFICER  ST.  CLAIR:    95

15   total students, 9 to 1 ratio, 15 certified

16   teachers,  behavior  management  program,

17   therapeutic service, outsource -- excuse me.

18    Serves students from fourth to eight grade.

19    Taft has not reviewed J██████ info at this

20   point nor has Taft accepted J█████ at this

21   point.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

237

1          File  will  be  delivered  today.

2    Parent  has  the  option  to  visit  the  program.

3    DCPS  will  issue  an  NOP  within  five  days  of

4    this  meeting  that  no  nurse  or  psychiatric

5    consult  available.   Now,  what  is  --?

6          MR. GUPTA:   The  rest  of  it  is  not

7    what  I  referred  to.   Just  that  section  you

8    read.

9          HEARING  OFFICER  ST. CLAIR:   Yes.

10          MR.  GUPTA:      So,   there's   no

11    evidence  that  the  mother  --  apparently,  they

12    didn't   agree   with   us.     And   there's   no

13    evidence  of  the  mother  ever  visiting  Taft,

14    ever  even  contacting  DCPS  officially  to  tell

15    us  that  they  disagreed  with  the  program.   So,

16    on   our   own,   DCPS   also   sent   J██████

17    information  to  --  what's  the  lady's  name?   At

18    the  Moten  Center.   Dr.  Deborah  Mosley.   She

19    has  his  information  too.

20          And  then,  furthermore,  after  that

21    they  issued  --  attempted  to  issue  a  Stay  Put

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

238

1    for Kipp (phonetic sp.).

2            HEARING OFFICER ST. CLAIR:  They?

3            MR.  GUPTA:    The   Petitioners,

4    sorry.

5            HEARING OFFICER ST. CLAIR:  Okay.

6            MR.  GUPTA:    The   Petitioner's

7    issued  a  Stay  Put  for  Kipp  and  DCPS  was

8    assuming  the  Stay  Put  passed  because  we

9    didn't  hear  anything  and  then  only  to  find

10   out  at  or  last  week  that  the  mother  kept  the

11   student  out  of  school  until  September  22nd.

12   So,  DCPS  asserts  that  if  there  has  been

13   education  harm  thus  far,  it's  on  the  mother.

14    She  kept  him  out  of  school  purposely.   And

15   on  top  of  that,  the  mother  purposely  informed

16   Burnie  not  to  --  inform  Kipp  not  to  transfer

17   the  special  ed  file.   So,  Burnie  for  the

18   three  weeks  didn't  know  he  was  a  special  ed

19   student  until  they  found  out  on  their  own  and

20   then  the  mother  requested  several  times  not

21   to  put  him  into  the  special  ed  program

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

239

1  because she felt that way he could get into

2  private placement faster.

3        HEARING OFFICER ST. CLAIR:  Is a

4  notice of placement in the record, Mr. --

5        MR. GUPTA:    The notice    of

6  placement has been lost apparently.  Mr. Evan

7  Murray has said that he issued it and

8  delivered it to the Moten Center but we can't

9  seem to find it in the record.

10       HEARING OFFICER ST. CLAIR:    He

11 delivered it to the Moten Center?

12       MR. GUPTA:  That's what he says.

13 But he can't seem to find it in his files.

14 So, we're not, I guess, at this point --

15       HEARING OFFICER ST. CLAIR:    To

16 whom else did he deliver it?

17       MR. GUPTA:  What?  He said he had

18 when he delivered the file to Dr. Mosley at

19 the Moten Center but we can't seem to place

20 it.  That's what I'm saying.

21       HEARING OFFICER ST. CLAIR:    But

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

240

1    whom is the notice of placement required to

2    be delivered by law?

3            MR. GUPTA:  Oh, he said he sent it

4    by mail to the parents as well and I'm

5    assuming the attorney.

6            HEARING OFFICER ST. CLAIR:    Is

7    there a copy of it?

8            MR. GUPTA:    That's what I'm

9    saying.  We don't have a document in the

10   record.  That's why at this point, I mean, on

11   our end, we don't have -- it's been misplaced

12   someplace.

13           But my point being, even outside

14   of --

15           HEARING OFFICER ST. CLAIR:    Mr.

16   Tyrka, you're taking a position it was never

17   issued.  Right?

18           MR. TYRKA:  No.

19           HEARING OFFICER ST. CLAIR:    Did

20   you get it?

21           MR. TYRKA:  What we got -- we got

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433         WASHINGTON, D.C.  20005-3701         (202) 234-4433

241

1    two different documents on the same day.

2             HEARING OFFICER ST. CLAIR:    Where

3    are they?

4        MR. TYRKA:    They're not in the

5    record.   We got two documents.   One is a

6    prior notice to Pat.   The other is a prior

7    notice to Burnie, which was never discussed.

8     Neither document has any explanation of the

9    reasons for the placement.    It says only

10   child can't stay in regular ed or something

11   like that.  But as I said --

12            HEARING OFFICER ST. CLAIR:    You

13   did get a notice of placement to them though?

14       MR. TYRKA:    We got them both on

15   the same day.  Sometime after the Complaint,

16   by the way.

17            HEARING OFFICER ST. CLAIR:    The

18   meeting took place when?

19       MR. TYRKA:  August 9th.

20            HEARING OFFICER ST. CLAIR:    And

21   you filed the Complaint?

1          MR. TYRKA:  August 23rd.

2          HEARING OFFICER ST. CLAIR:     And

3    you got the notice of placement when?

4          MR. TYRKA:   I can't tell you

5    exactly.  I do believe it was --

6          MR. GUPTA:  And we're alleging,

7    how can you disagree with the placement if

8    you haven't even visited there.    The Taft

9    Center has no record of the mother coming

10   there.   And, two, she purposely kept the

11   student out of school for almost all of

12   September -- for the entire first month of

13   school.

14         MR. TYRKA:   I'm not sure where

15   that comes from.    There was no valid

16   placement.    And also I hadn't heard any

17   mention of this other subject that was talked

18   about, her interaction with Burnie never

19   heard before and certainly there wasn't any

20   response.

21         But I do want to point out

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

243

1   something in the T Notes relevant to this

2   issue of the visit. We had in the middle of

3   the last page of those notes, the next page

4   following what we were reading before. You

5   have that first handwritten page. The next

6   page -- advocate will visit program. DCPS

7   requested neither visit Taft before NOP is

8   issued.

9            HEARING OFFICER ST. CLAIR:  What

10  about that, Mr. Gupta?

11           MR. GUPTA:  I don't know. I'm not

12  sure about that. But it was also -- she

13  could have visited the Motel Center too,

14  which is another education placement that was

15  discussed.

16           HEARING OFFICER ST. CLAIR:  Where

17  does it say Motel was discussed?

18           MR. GUPTA:   I'm not sure if it

19  says it in the notes, sir.

20           HEARING OFFICER ST. CLAIR:   Mr.

21  Gupta, I want you to be careful not to

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

244

1    mention things that you haven't read in the

2    notes.  Because I'm going to ask you to point

3    it out.  So, that was --

4         MR. GUPTA:  Regardless, the HOD

5    directed DCPS to determine a placement at

6    this meeting.  And, again, the HOD unusually

7    was very specific about what type of

8    placement.  It said a full-time third grade

9    placement.

10        DCPS arrived at the meeting

11   completely unprepared to do so.  Stepped out

12   of the meeting to make this phone call and

13   then came back with the Taft proposal that

14   had obviously not been considered by anybody.

15    Then provided -- the information that they

16   provided about Taft is right here.  There's

17   nothing about what class he would be in.

18        HEARING OFFICER ST. CLAIR:  All

19   right.  I'll tell you what I'm going to do.

20        This basically is to me, this is -

21   - you are prepared to move forward on the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

245

1      inappropriateness of the Taft Center, sir?

2              MR. TYRKA:    Inappropriateness  of

3      Taft?

4              HEARING OFFICER ST. CLAIR:  Yes.

5              MR. TYRKA:  Oh, no.

6              Our violation is that they did not

7      make the placement to Taft.  I'm sorry.  I

8      can move briefly.  I don't have witnesses.

9      It's from the documents.

10             HEARING OFFICER ST. CLAIR:  Okay.

11             MR.  TYRKA:    The  documents  are

12     actually very strong.

13             HEARING  OFFICER  ST.  CLAIR:    All

14     right.  Fine.

15             MR.  TYRKA:    Okay.    Looking  at

16     these same notes.

17             HEARING OFFICER ST. CLAIR:  Yes.

18             MR.  TYRKA:    This  is  the  MP  Team.

19     This is the placement meeting.

20             HEARING OFFICER ST. CLAIR:  Okay.

21             MR.  TYRKA:    We  have  again  that

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

246

1    same handwritten page.  The second to last --

2    excuse me.  Third to last -- scratch that.

3              The    first    handwritten    page    of

4    those   notes.   We   have   --   back   where   the

5    Hearing   Officer   was   reading   before,   95   total

6    students, nine to one ratio.

7              HEARING OFFICER ST. CLAIR:  Okay.

8              MR.   TYRKA:    Fifteen   certified

9    teacher.    Their   therapeutic   services   are

10   outsourced.   Okay.   Those   are   two   important

11   points.

12             Another  important  point  is  at  the

13   bottom.   No   nurse   or   psychiatric   consult

14   available.

15             We  now  have  on  the  next  page  the

16   team's opinion on what J▆▆▆ needs.  Special

17   education   teacher,   I'm   quoting.   "In   regards

18   to ratio, needs a very small setting."  Can't

19   see it so well.  Four to one we can see.  I

20   can't see the rest of the words.

21             HEARING   OFFICER   ST.   CLAIR:    He

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

247

1  says,  included  in  four  to  one  with

2  difficulty,  included  in  four  to  one  with

3  difficulty.

4          MR. TYRKA:  Something in four to

5  one with difficulty.  I'm not sure that's

6  included to my eye, but in the --

7          HEARING OFFICER ST. CLAIR:  Worked

8  -- worked in four to one.

9          MR. TYRKA:  Worked in four to one.

10          HEARING OFFICER ST. CLAIR:  With

11  difficulty.

12          MR. TYRKA:  We then have clinical

13  social  workers.  That  placement  should

14  include  psychiatrist  and  full  time  nurse

15  available.  The  Taft  did  not  have  those

16  things as noted.

17          HEARING OFFICER ST. CLAIR:  DCPS

18  believes  medication  therapy  may  help  J████

19  handle  a  slightly  larger  student/teacher

20  ratio.  Kipp  licensed  clinical  social  worker

21  states  placement  should  include  psychiatrist

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

248

1  on staff and full-time nurse available.

2          MR. GUPTA:  Can I respond?

3          HEARING OFFICER ST. CLAIR:  Yes.

4          MR. GUPTA:  I witness from Taft

5  will testify first of all that there's a

6  mistake here because there's 70 students

7  because, I believe, J█████ will be entering

8  in the lower grade level.  I think sixth

9  grade and that ratio is actually eight to

10  one.

11          Second of all, there is a nurse on

12  staff and they can provide psychiatric

13  consult through way of social workers.

14          MR. TYRKA:  Well, that just brings

15  us back to this whole issue of a wholly

16  inadequate, prior notice procedure.   A

17  meeting participation that was virtually nil.

18   If the notes are wrong, well, then the

19  school doesn't present it properly.  But DCPS

20  can't come in here and have their MDT meeting

21  here as they all too often try to do.

1          The due process requirements of

2    the IDA require that the parent have full

3    participation at the meeting, have a prior

4    notice giving specific information.  There's

5    lot of Federal case law about that.

6          Have preparations to a response

7    and a resolution meeting for this hearing all

8    before we get --

9          HEARING OFFICER ST. CLAIR:  I want

10   to impress upon you, Mr. Gupta, the

11   importance of placing a notice of placement

12   on the table.

13          MR. GUPTA:  I understand that and

14   I searched very hard for it.

15          HEARING OFFICER ST. CLAIR:  This

16   idea that the guy lost it.  Is that what he

17   said?

18          MR. GUPTA:  He's not saying he

19   lost it.  He can't find it now.  But he -- if

20   there evidence that he issued it, since Mr.

21   Tyrka's office didn't receive one.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

250

1    HEARING OFFICER ST. CLAIR:    And

2    what am I supposed to do with that?  Now, how

3    am I supposed to judge that sufficiency of

4    the notice of placement?

5    MR. GUPTA:  I don't know, sir.  I

6    don't know, sir.

7    HEARING OFFICER ST. CLAIR:    I'm

8    going to let you have your record.  You don't

9    have a witness, right?

10    MR. TYRKA:  Other than Rock Creek,

11    no.

12    HEARING OFFICER ST. CLAIR:  Okay.

13    Do you want to put your witness

14    on?  I will let you put Rock Creek on.  Is

15    there any order in which you want to do this?

16    I'm going to let Mr. Gupta put his witness

17    on.

18    No.  I'm going to let you finish

19    up here.  Put your witness on.  And then I'll

20    let Mr. Gupta put on his case.

21    MR. TYRKA:  I call Karen Plowden

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

251

1    (phonetic sp.).

2           Hi, Ms. Brown. This is Doug Tyrka.

3    We're on the record in the J████ H██████

4    hearing.

5           Sure.  Literally, two, or do you

6    need more?

7           The Hearing Officer, can we call

8    him back at 1:30?  Okay, yes, sir.  Sure.  No

9    problem.

10          HEARING OFFICER ST. CLAIR:  Recess

11   five minutes?

12          MR. TYRKA:  Yes.  Thank you.

13          (Whereupon, a short recess.)

14          MR. TYRKA:  We are now on the

15   record.  There is a Hearing Officer and

16   Saurabh Gupta is the DCPS counsel.

17          Did I get that right, Mr. Gupta?

18          MR. GUPTA:  Yes.

19          HEARING OFFICER ST. CLAIR:  Ms.

20   Keren Plowden?

21          MS. PLOWDEN:  Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

252

1          HEARING OFFICER ST. CLAIR:  This

2    is Herbert St. Clair.  How are you?

3          MS. PLOWDEN:  I'm good.  How are

4    you?

5          HEARING OFFICER ST. CLAIR:  As I

6    recall, you are the Executive Director of

7    Student Services at Rock Creek Academy.

8          MS. PLOWDEN:  That is correct.

9          HEARING OFFICER ST. CLAIR:  All

10   right.  Ms. Plowden, do you solemnly affirm

11   that the testimony you are about to give

12   during the course of this proceeding will be

13   the truth, the whole truth and nothing but

14   the truth?

15         MS. PLOWDEN:  Yes.  I do.

16         HEARING OFFICER ST. CLAIR:  Please

17   begin, Mr. Tyrka.

18         DIRECT EXAMINATION

19         MR. TYRKA:  Hi, Ms. Plowden.

20         Is it part of your duties at Rock

21   Creek Academy to participate in -- excuse me,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

253

1    admission decisions?

2              MS.    PLOWDEN:        Admissions

3    decisions.  Yes.

4              MR. TYRKA:  And is it part of your

5    responsibilities  to  be  familiar  with  Rock

6    Creek's programs and services?

7              MS. PLOWDEN:  Yes.  It is.

8              MR. TYRKA:  Are you familiar with

9    the student, J███ H██████?

10             MS. PLOWDEN:  Yes.  I am.

11             MR.  TYRKA:   And has Rock Creek

12   agreed to accept J█████ pending funding?

13             MS. PLOWDEN:  Yes.  We did.  We

14   issued a letter in April of 2006.

15             MR.  TYRKA:   Okay.  And have you

16   reviewed J██████ IEP from August '06?

17             MS.  PLOWDEN:   I  have.    I've

18   reviewed additional records as well.  And we

19   conducted a tour in May of 2006.

20             MR. TYRKA:  And could you tell us

21   what those other records were?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433       WASHINGTON, D.C.  20005-3701       (202) 234-4433

254

1          MS. PLOWDEN:   There were several I
2    reviewed.     And  they  are  a  psychological
3    evaluation,  a function behavioral assessment,
4    there's  a  clinical  evaluation,  there  were
5    also  previous  IP's  from  December  of  '05,
6    meeting notes from March, I believe, of this
7    year.   An OT evaluation, speech and language
8    report from Kipp Academy.
9          MR. TYRKA:   Okay.
10          MS.  PLOWDEN:    I  believe  that's
11    everything.
12          MR.  TYRKA:    And  do  you  have  a
13    class identified for J_____?
14          MS. PLOWDEN:  Yes.  We do.
15          MR. TYRKA:   Could you tell us who
16    teaches that class?
17          MS. PLOWDEN:   Her name is Barbara
18    Johnson.
19          MR.  TYRKA:     And  what  are  her
20    qualifications?
21          MS. PLOWDEN:   Ms. Johnson actually

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

255

1    holds   a   degree   in   education.   She   is

2    finishing   her   master's   degree   in   special

3    education this May.  She has applied for --

4    the    provision    standard.      I   mean,    a

5    provisional license with D.C. and has applied

6    for standard licensure in special ed.  She's

7    just awaiting the paper work at this point.

8              MR.  TYRKA:    Okay.   And how many

9    students are in the class there?

10             MS. PLOWDEN:   There are currently

11   four.

12             MR. TYRKA:  And are there other ED

13   students in the class?

14             MS. PLOWDEN: Yes.  There are.

15             MR.  TYRKA:    Any  who  are  OHI

16   students in the class?

17             MS.  PLOWDEN:   Yes.   There  are

18   students with multiple disabilities and OHI

19   is one of the disabilities.  Or actually, at

20   least two students.

21             MR.   TYRKA:    Is   the   age   range

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

256

1    comparable to J██████ age?

2          MS. PLOWDEN:    Same exact year of

3    birth.

4          MR. TYRKA:    Okay.

5          MS. PLOWDEN:    So, they're within

6    months of each other.

7          MR. TYRKA:    And you said you

8    reviewed the IEP.    Can Ms. Johnson provide

9    the -- meet the goals and objectives --

10   educational goals and objectives on the IEP?

11         MS. PLOWDEN: Yes.    She would meet

12   the specialized instruction services.

13         MR. TYRKA:    And do you have staff

14   there to provide counseling at the Rock

15   Creek?

16         MS.    PLOWDEN:    We    can    provide

17   counseling services, speech services and the

18   occupational therapy as identified on his

19   IEP.

20         MR. TYRKA:    Okay.    And is that

21   with licensed providers?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

257

1           MS. PLOWDEN:  Yes.

2           MR. TYRKA:   Do you have a full-

3   time nurse there on staff?

4           MS. PLOWDEN:  Yes.  We do.

5           MR. TYRKA:    Does  the  nurse

6   participate --

7           HEARING OFFICER ST. CLAIR:  What

8   type of nurse?

9           MR. TYRKA:  What type of nurse?

10          MS. PLOWDEN:  She has a RN.  She's

11  a full nurse and she's a Registered Nurse.

12          MR. TYRKA:  Are there students at

13  Rock   Creek   currently   on   psychotropic

14  medication?

15          MS.  PLOWDEN:    Yes.   There  are

16  several.

17          MR.   TYRKA:    Excuse  me   if

18  psychotropic  isn't  quite  correct.   But

19  medication regarding their behavior?

20          MS. PLOWDEN:  Yes.

21          MR. TYRKA:   And does the nurse

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

258

1    assist in medications to those students?

2              MS. PLOWDEN:  Yes.  She does.

3              MR.  TYRKA:    And  is  the  nurse

4    capable    of    consulting    with    outside

5    psychiatrists where necessary?

6              MS. PLOWDEN:  Yes.  She is.

7              MR.  TYRKA:    Based  on  your

8    understanding of your review of the record

9    and your understanding of J██████ needs and

10   the programs available there at Rock Creek,

11   do you know of any reason why Rock Creek

12   couldn't provide J█████ with an educational

13   benefit?

14             MS. PLOWDEN:  Not -- not that I

15   can think of.

16             MR.  TYRKA:   And  does  Rock  Creek

17   ever -- excuse me.   Does DCPS ever place

18   students at Rock Creek outside of the hearing

19   process?

20             MS. PLOWDEN:  Yes.  They do.

21             MR.  TYRKA:     Have  they  placed

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

259

1    students similar to J████ at Rock Creek?

2              MS. PLOWDEN:  Yes.  They have.

3              MR. GUPTA:  Objection.  Relevance.

4              HEARING    OFFICER    ST.    CLAIR:

5    Overruled.  I mean, if we were in a court,

6    the rules of evidence don't apply here.  If

7    we were in a court of law, Mr. Gupta, I would

8    have sustained your objection, but we're not.

9              Go ahead, Mr. Tyrka.

10              MR. TYRKA:  I'm sorry, what was

11    your answer, Ms. Plowden?

12              MS. PLOWDEN:  My answer was yes.

13              MR. TYRKA:  Okay.  And how have

14    those students performed on record?  Has Rock

15    Creek had success with those students?

16              MR. GUPTA:  Again, I'm going to

17    object to that question.  That has nothing to

18    do with J████ Hamilton here.  And she can't

19    make   the   assessment   in   comparing   those

20    students   to   J██████   possible   future

21    excelling at Rock Creek or not excelling at

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C.  20005-3701      (202) 234-4433

260

1  Rock Creek.   It has nothing to do with

2  placement at Rock Creek for J██████.

3         HEARING OFFICER ST. CLAIR:  I mean

4  we're talking about kids who are administered

5  medication.

6         You said that psychotropic drugs

7  was not the appropriate description?

8         MR. TYRKA:  No.  I allowed for the

9  possibility that it wasn't because I myself

10  was not sure if I was correct.

11         HEARING OFFICER ST. CLAIR:  Okay.

12   But he does take medication?

13         MR.  TYRKA:   At  the  moment,  I

14  believe,  he  does  not,  but  there  is  the

15  possibility  he  will  be  taking  it  in  the

16  future.

17         HEARING OFFICER ST. CLAIR:  Okay.

18   Okay.  Go ahead.

19         You are capable of administering

20  medication, Ms --

21         MS. PLOWDEN:  Yes.  We are.  Our

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

261

1    nurse   is   a   full-time   nurse   and   she's

2    qualified.

3              HEARING   OFFICER   ST.   CLAIR:      A

4    Registered Nurse?

5              MS.   PLOWDEN:      Yes.      She's   a

6    Registered Nurse.

7              MR.   GUPTA:      That   wasn't   the

8    question I was objecting to.

9              HEARING   OFFICER   ST.   CLAIR:      I

10   know.   But I was curious about it.

11             MR. GUPTA:  Okay.

12             HEARING   OFFICER   ST.   CLAIR:

13   Because   I'm   concerned   about   what   the

14   capabilities   are   of   the   school   to   administer

15   medication  because  it  says  in  the  notes  that

16   DCPS   --   medication   management   would   improve

17   the  child's  performance.   But  don't  volunteer

18   anything about what the mother said.

19             Is   that   what   you   were   getting

20   ready  to  say?   Yes.   Don't  do  that.   I  mean

21   the   evidential   face   there.      I'm   going   to

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

262

1    overrule your objection.

2            Go ahead, Mr. Tyrka.

3            MR. TYRKA:    Okay.    It    was

4    overruled.

5            The question, Ms. Plowden, was

6    whether those children we were talking about,

7    the ones similar to J██████, placed by DCPS,

8    have they had success there at Rock Creek?

9            MS. PLOWDEN:    We've had children,

10   yes, that were placed with them that have

11   been    successful.    It's    on    an    individual

12   basis, so there are students that aren't

13   always successful or need a more restrictive

14   environment that has been referred by D.C.

15   Public    Schools    as    well    as    other    referral

16   sources.

17            But    for    the    most    part,    we    do

18   believe we've been able to provide education

19   benefit for those students.

20            MR. TYRKA:    Okay.    I    have    no

21   further questions.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

263

1          HEARING OFFICER ST. CLAIR:   Mr.

2  Gupta.

3               CROSS EXAMINATION

4          MR. GUPTA:   Ms. Plowden, you're

5  aware that he has two hours a week of

6  counseling.  Correct?

7          MS. PLOWDEN:  Yes.  I am.

8          MR. GUPTA:  How would you deliver

9  that counselor?

10          MS. PLOWDEN:  Well, it's based on

11  if there's specifications in the IEP so it

12  can be delivered individually or in groups.

13  It can be broken up into both so the child

14  can receive individual and group.  And then

15  it's based on the student's response to those

16  different types.

17          So, if for example, it's specified

18  that they receive individual therapy but

19  they're not responding, then the therapist or

20  provider can make a recommendation to change

21  the type of -- the delivery of the service.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

264

1    HEARING OFFICER ST. CLAIR:  What's

2    the latest IEP you reviewed, Ms. Plowden?

3    This is Herbert St. Clair.

4    MS. PLOWDEN:  The one from August

5    9th, 2006.

6    HEARING OFFICER ST. CLAIR:  Okay.

7    Excuse me.

8    REDIRECT EXAMINATION

9    MR. TYRKA:  Do you have a behavior

10   management program?

11   MS. PLOWDEN:  Yes.  We do.  It's a

12   system-wide behavior management program.

13   It's a level system and a point sheet.  Uses

14   positive reinforcement throughout the school

15   day and it monitors student's behaviors.

16   It's also a communication tool with the

17   parents so it goes on daily to provide both a

18   visual and tracking system of the student

19   behavior as they progress each day.

20   And there are incentives built

21   into the level system so students can

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

265

1   respond.   They're   rewarded   for   positive

2   behaviors   within   the   school   setting   and

3   there's activities and events and things for

4   them to participate in as they are more and

5   more successful.

6          We     also     staff     a     crisis

7   intervention   team.   We   have   behavior

8   specialists on staff to respond to any crisis

9   situation that may arise or any students that

10  are disruptive to the learning environment.

11         MR.  TYRKA:   Okay.   That's all I

12  have for you.   Thank you.

13         MS. PLOWDEN:   Okay.

14         HEARING  OFFICER  ST.  CLAIR:   Ms.

15  Plowden?

16         MS. PLOWDEN:   Yes.

17         HEARING OFFICER ST. CLAIR:   Let me

18  ask you this.

19         When   you   issue   a   letter   of

20  acceptance --

21         MS. PLOWDEN:   Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

266

1          HEARING OFFICER ST. CLAIR:  -- how

2    long do you consider that -- when does that

3    letter expire?  Or does it expire?

4          MS. PLOWDEN:  Well, what typically

5    happens is it can expire.  But we remain in

6    contact with the referral source to find out

7    what the status of the case is or if they

8    want to continue to maintain us to be active.

9

10         When we issue the letter, we do a

11   follow up interview and tour with the

12   parents, to meet the child and insure that it

13   is -- it is an appropriate placement.  And

14   then as long as there are spaces available,

15   the letter and the case remains active until

16   we receive notice that they are no longer --

17         HEARING OFFICER ST. CLAIR:  So,

18   you're saying that a letter can remain active

19   for years?

20         MS. PLOWDEN:  No, no, no, no.  In

21   that case, no.  We would close that out.  But

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

267

1    it may be active for, in certain cases, three

2    months, six months, until the issue regarding

3    the child is resolved.    In some case, you

4    know, there are open --

5         HEARING OFFICER ST. CLAIR:    You

6    don't have any problems issuing a letter of

7    acceptance in one school year and applying it

8    to another school year?

9         MS. PLOWDEN:    Correct.    We could

10   reissue another one.    What we do is just

11   remain, you know, in constant communication

12   with the person who sent the referral to make

13   sure that they're still seeking the

14   placement, that a space is still, you know,

15   needed for the child.    So, unless, you know,

16   something has changed dramatically from the

17   referral time.    You know if there's new

18   information for us to consider.

19        HEARING OFFICER ST. CLAIR:    Have

20   you made sure that nothing has changed since

21   April with --

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

268

1          MS. PLOWDEN:    No.    Things have

2    changed.    WE received an updated evaluation

3    and the IEP and reviewed that information as

4    well.

5          HEARING OFFICER ST. CLAIR:    And

6    nothing has changed?

7          MS. PLOWDEN:    What do you mean and

8    nothing has changed?    In terms of our

9    acceptance status?

10          HEARING OFFICER ST. CLAIR:    Yes.

11    As of April 2006?

12          MS. PLOWDEN:    Correct.    We still

13    feel that in light of the new information --

14    we still feel that we can provide education

15    benefit for him and there is still a space

16    available.

17          HEARING OFFICER ST. CLAIR:    All

18    right.

19          MS. PLOWDEN:    And we've reviewed

20    the additional records as well.    But I didn't

21    send out a follow up letter.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

269

1          HEARING OFFICER ST. CLAIR:    You

2      did?

3          MS. PLOWDEN:  I did not.  No.

4          HEARING OFFICER ST. CLAIR:  Okay.

5          Mr. Tyrka.

6          MR. TYRKA:  Yes.  Relative to that

7      question, Ms. Plowden, have you accepted

8      students without issuing an acceptance

9      letter?  Have you ever done that?

10         MS. PLOWDEN:       In    D.C. case

11     referral, yes.   There's not an acceptance

12     letter that's the same.  There's a form that

13     D.C. CAS (phonetic sp.) sends us so it's a

14     bit different than the letter but,

15     particularly, no there is the correspondence.

16     A written correspondence from Rock Creek

17     Academy.

18         HEARING OFFICER ST. CLAIR:  Is the

19     letter of acceptance in here?  Yes.  Yes.

20         MS. PLOWDEN:   Yes.   It's April

21     27th, 2006.

1          MR. TYRKA:    Let me ask it this

2     way, I guess.

3          Does the letter of acceptance -- I

4     mean, it's kind of a metaphysical question is

5     you'll excuse it.

6          Is the letter of acceptance; is

7     that the acceptance or does that just confirm

8     the acceptance?

9          MS. PLOWDEN:    It just confirms the

10    acceptance.    We have open enrollment, open

11    admissions.    The students are enrolling at

12    all different times through the year provided

13    that space is available and we receive

14    frequent referrals.    So, we review the

15    information.  We meet with the client.  If we

16    receive updated information that's added to

17    the referral status.

18          But, you know, if there's a change

19    in the status, should we not have space,

20    should it no longer seem appropriate, we

21    would send a follow-up letter to that as

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

271

1    well.

2            MR. TYRKA:  And has it happened in

3    the past?

4            MS. PLOWDEN:  Yes.  It definitely

5    has.

6            MR. TYRKA:  No further questions.

7            HEARING    OFFICER    ST.    CLAIR:

8    Recross, Mr. Gupta?

9            MR. GUPTA:  No, sir.

10           HEARING  OFFICER  ST.  CLAIR:    Ms.

11   Plowden, this is Herbert St. Clair.    Thank

12   you very much.

13           MS.  PLOWDEN:     You're   welcome.

14   Have a great day.

15           (Witness excused.)

16           HEARING  OFFICER  ST.  CLAIR:    All

17   right.

18           Next witness, sir?

19           MR. TYRKA:  No further witnesses.

20           HEARING  OFFICER  ST.  CLAIR:    You

21   want  to  make  an  opening  statement  or  just

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

272

1  call your witness, whatever?

2         MR. GUPTA:   Yes.   I'll make an

3  opening.  Well, I've already said my opening.

4         HEARING OFFICER ST. CLAIR:    I

5  think I understand what this is.

6         This is Mr. Labone.

7         MR. GUPTA:  This is actually -- he

8  started vacation today.  This is going to be

9  his designee which is the Principal at Taft.

10        HEARING OFFICER ST. CLAIR:  Okay.

11        MR. TYRKA:  Well, okay.  I have an

12  objection to this on a few bases.

13        One, we have no prior notice

14  meeting the requirements of 1415 in the

15  record.  I have acknowledged to the Hearing

16  Officer that we received a prior notice along

17  with -- a different prior notice.  However,

18  my proffer is that it did not come close to

19  meeting the requirements of 14 -- offered no

20  explanation of the reasons for a placement at

21  Taft.  Offered no explanation of alternatives

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

273

1  considered and why they were rejected.

2  Offered no explanation of any evaluation

3  considered, etcetera.    That is the only

4  proffer here on the record as to --

5           HEARING OFFICER ST. CLAIR:  Taft?

6           MR. TYRKA:    As to any prior

7  notice.

8           HEARING OFFICER ST. CLAIR:  Yes.

9           MR. TYRKA:  Regarding Taft.

10           For that reason and because the

11  information in the meeting notes and the

12  resolution meeting notes clearly also do not

13  meet the criteria for a placement, full

14  placement discussion.

15           I think it's prejudicial to now

16  here Mr. Workman's testimony.    I also add

17  that there has been no -- again, no response

18  in this case that provides any information

19  whatsoever.  So, I think to take -- whoever

20  the principal is, to take his testimony

21  regarding Taft is really unfair to the parent

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

274

1    because the parent has not been getting

2    information on any meetings or prior filings

3    necessary to prepare this case.

4              HEARING OFFICER ST. CLAIR:   I'll

5    let Mr. Gupta have his record.

6              MR. GUPTA:   Good afternoon.   My

7    name is Saurabh Gupta.   I'm an attorney with

8    D.C. Public Schools.   I'm in a due-process

9    hearing where Mr. Matthews' testimony has

10   been requested.

11             Can you please reach him for me?

12   We need him on the phone?

13             Hi.   I was just wanting Mr.

14   Matthews.   I don't think he's at his desk.

15   Could you actually page him or physically get

16   him because we are in a hearing?   Okay.

17             HEARING OFFICER ST. CLAIR:   Do you

18   want 10 minutes?

19             MR. GUPTA:   Yes.   She's going to

20   try paging him.

21             HEARING OFFICER ST. CLAIR:   I'll

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

275

1    let you ask for it.

2              If he's not on the phone in 30

3    seconds, I'm going to give you 10 minutes.

4              All right.  I'll be back before 10

5    minutes, how's that?

6              MR. GUPTA:  Okay.

7              (Whereupon,     off     the     record

8    briefly.)

9              HEARING  OFFICER  ST.  CLAIR:    Mr.

10   Matthews?

11             MR. MATTHEWS:  Hi.

12             HEARING  OFFICER  ST.  CLAIR:    This

13   is Herbert St. Clair.  And your last name is

14   M-A-T-T-H-E-W-S?

15             MR. MATTHEWS:  That is correct.

16             HEARING  OFFICER  ST.  CLAIR:    And

17   your first name is?  Help me with your first

18   name.

19             MR.   MATTHEWS:      G-R-E-G-O-R-Y.

20   Gregory.

21             HEARING OFFICER ST. CLAIR:  Oh, I

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

276

1    can spell that, sir.  I should have said just

2    tell me what it is.

3             MR. MATTHEWS:  Okay.  All right.

4    It's Gregory.

5             HEARING OFFICER ST. CLAIR:    All

6    right.   You're the Principal at the Taft

7    Center?

8             MR. MATTHEWS:  Yes.  I am.

9             HEARING OFFICER ST. CLAIR:    All

10   right.   Did Mr. Gupta tell you who was here

11   besides myself and himself?

12            MR. MATTHEWS:  Yes.  He did.

13            HEARING OFFICER ST. CLAIR:    Mr.

14   Tyrka?

15            MR. MATTHEWS:  Yes.

16            HEARING OFFICER ST. CLAIR:    All

17   right.   Mr. Matthews, do you solemnly affirm

18   that the testimony you are about to give is

19   going to be the truth, the whole truth and

20   nothing but the truth?

21            MR. MATTHEWS:  Yes.  I do.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

277

1        HEARING OFFICER ST. CLAIR:  Please

2  begin, Mr. Gupta.

3              DIRECT EXAMINATION

4        MR. GUPTA:  Mr. Matthews, what's

5  your position over at the Taft Center?

6        MR. MATTHEWS:  Principal.

7        MR. GUPTA:  Okay.  And did Mr.

8  Workman have a conversation about testifying

9  today?

10        MR. MATTHEWS:  Yes.  He did.

11        MR. GUPTA:  And he asked you to

12  testify because why?

13        MR. MATTHEWS:  He's off today and

14  tomorrow.

15        MR. GUPTA:  Okay.

16        MR. MATTHEWS:  And he wanted me to

17  discuss the program and to see if J▓▓▓▓

18  H▓▓▓▓▓ that we could meet his needs.

19        MR. GUPTA: ˙ Okay.  And how long

20  have you been the principal there?

21        MR. MATTHEWS:  Two years.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

278

1        MR. GUPTA:  Two years.

2        So, can you describe -- well, let

3    me ask you some specific questions about the

4    Taft Center.

5        MR. MATTHEWS:  Okay.

6        MR. GUPTA:  Are you familiar with

7    how old J██████ is and what grade he's going

8    to be entering?

9        MR. MATTHEWS:    Yes.    J██████

10    appears to be now 11 years old and he will be

11    going into the sixth grade?

12        MR. GUPTA:  Okay.  So, in the

13    sixth grade class at Taft, how many students

14    do you think will be in there?

15        MR. MATTHEWS:  Our student/teacher

16    ratio is 10 to 2 maximum.  Ten students to

17    two adults.  One teacher and one aide.  Our

18    sixth grade classes are currently averaging

19    about five kids per class.

20        MR. GUPTA:   Five kids per class

21    for sixth grade?

1           MR. MATTHEWS:  Yes.

2           MR. GUPTA:   And would that still

3    include two adults, one teacher and one aide?

4           MR. MATTHEWS:   Yes.   They still

5    have the two adults in the room because that

6    number fluctuates throughout the year.

7           MR. GUPTA:   Okay.   So, in your

8    sixth grade class, just to be clear, you'll

9    have five kids which as of right now does not

10   include J██████.

11          MR. MATTHEWS:  Right.

12          MR. GUPTA:   One teacher and one

13   aide?

14          MR. MATTHEWS:  That is right.

15          MR. GUPTA:   And so if J█████ were

16   to enter, it would be six kids --

17          MR. MATTHEWS:  Yes.

18          MR. GUPTA:  -- and two adults?

19          MR. MATTHEWS:  Yes.

20          MR. GUPTA:   And is there room for

21   J█████ in that class?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

280

1                MR. MATTHEWS:  Yes.  There is.

2                MR. GUPTA:  Okay.  Now, are your

3    teachers certified?

4                MR. MATTHEWS:  Yes.  They are.

5                MR. GUPTA:  Okay.  Do you have a

6    nurse on staff?

7                MR. MATTHEWS:  Yes.  We do.

8                MR. GUPTA:  Is the nurse licensed?

9                HEARING OFFICER ST. CLAIR:  What

10   kind of nurse?

11               MR. MATTHEWS:  Yes.  She is.

12               MR. GUPTA:  What kind of nurse?  I

13   believe the Hearing Officer wants to know if

14   she has an RN.

15               MR. MATTHEWS:   I'm going to say

16   she's -- I don't know if she's an RN.  She's

17   a school-certified nurse to work in a school.

18               HEARING OFFICER ST. CLAIR:  Can

19   she administer drugs?

20               MR. MATTHEWS:  She can administer

21   drugs.  Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C.  20005-3701      (202) 234-4433

281

1          MR. GUPTA:    Okay.    Do you have

2  social workers on staff?

3          MR. MATTHEWS:    Yes.    We do.

4          MR. GUPTA:    Are you aware that

5  J██████    IEP calls for two hours of

6  psychological counseling from social workers?

7          MR. MATTHEWS:    Yes.    I am.

8          MR. GUPTA:    And do you feel Taft

9  can deliver that?

10          MR. MATTHEWS:    Yes.    We can.

11          MR. GUPTA:    Do you have -- do you

12  have any kind of behavior management plan or

13  intervention plan?

14          MR. MATTHEWS:    Yes.    We have two

15  behavioral managers that work here.    And we

16  have a time-out center where our kids can go

17  and de-escalate and work their way back into

18  the classroom.    And we have a point system

19  that our children get points throughout the

20  day.    We use that to monitor behavior and it

21  goes home to their parents.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

282

1          MR. GUPTA:   And what do you do in

2     case say, sorry for a better word.   But like

3     a kid one day, you know, freaks out, bounces

4     off the wall and needs some kind of crisis

5     intervention?   Do you have anything in place

6     for that?

7          MR. MATTHEWS:   Yes.   We do.   Well,

8     we will call our behavior managers.   All of

9     our staff teachers and aides and behavioral

10    managers are trained in how to restrain a

11    child to keep him from hurting himself and

12    someone else.

13         And then we would get that child

14    to a safe place, in all likelihood, either in

15    the social worker's office.   We have a school

16    psychologist here as well.   And we would use

17    our behavioral process for him.

18         MR. GUPTA:   Okay.   And the

19    children in the class, are they similar age

20    to J██████?

21         MR. MATTHEWS:   Yes.   They are.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

283

1    We're age appropriate.

2         MR. GUPTA:  Okay.

3         MR. MATTHEWS:   There are only 11

4    and 12 year old kids in his class.

5         MR. GUPTA:   Only 11 and 12 year

6    olds.  Okay.

7         What    about    with    their

8    classifications.  Are they similar to his?

9         MR. MATTHEWS:  Yes.  They are.

10        MR. GUPTA:  Okay.  And do you know

11   if the mother -- J█████ mother has ever

12   visited your school?

13        MR. MATTHEWS:  I don't know that.

14    She's not spoken with me.

15        MR. GUPTA:  Okay.

16        MR. MATTHEWS:   I don't know if

17   she's seen Mr. Workman or not.

18        HEARING OFFICER ST. CLAIR:   I'm

19   sorry.  What did he say?

20        MR. GUPTA:   She has never spoken

21   with him.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

284

1          HEARING OFFICER ST. CLAIR:  Okay.

2          MR. TYRKA:   I didn't hear what he

3     said about Mr. Workman.

4          HEARING OFFICER ST. CLAIR:    He

5     said he didn't know if she had spoken with

6     Mr. Workman.

7          MR. TYRKA:   Okay.

8          MR. GUPTA:   Correct.

9          HEARING OFFICER ST. CLAIR:    Is

10    that right, Mr. Matthews?

11         MR. MATTHEWS:   Right.   She may

12    have spoken with Mr. Workman, but I can't

13    verify that.

14         HEARING OFFICER ST. CLAIR:   All

15    right.   Thank you.

16         MR.  GUPTA:    How  many  total

17    students are in the Center?

18         MR. MATTHEWS:  Right now, 72.

19         MR. GUPTA:  72 total students?

20         MR. MATTHEWS:  Yes.

21         MR. GUPTA:    And how many total

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

285

1    teachers -- certified special ed teachers do

2    you have?

3            MR. MATTHEWS:  16.

4            MR. GUPTA:  Bear with me for one

5    moment.  I'm taking notes as you talk.

6            MR. MATTHEWS:  Okay.

7            MR. GUPTA:  and how many total

8    social workers do you have on staff?

9            MR. MATTHEWS:  Three.

10           MR. GUPTA:  And --

11           MR.    MATTHEWS:       And    one

12   psychologist.

13           MR.  GUPTA:   And  you  have  one

14   psychologist on staff?

15           MR. MATTHEWS:  Yes.

16           MR. GUPTA:  How many nurses?

17           MR. MATTHEWS:  One.

18           HEARING    OFFICER   ST.    CLAIR:

19   Clinical psychologist?

20           MR.  GUPTA:    Is  it  a  clinical

21   psychologist?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

286

1          MR. MATTHEWS:  Yes.

2          HEARING OFFICER ST. CLAIR:  That's

3    Ph.D.  Right?

4          MR. MATTHEWS:  Yes.

5          MR. GUPTA:    After reviewing his

6    IEP, do you see any reason you could not

7    provide what his IEP calls for?

8          MR. MATTHEWS:  No.  I don't see

9    anything that would prohibit us.  His IEP is

10   one  of  the  better  written  IEPs  and  his

11   academic  performance  levels  are  at  the  top

12   end.

13         MR. GUPTA:  Okay.  So, would you

14   be  able  to  provide  the  one  hour  of

15   occupational therapy?

16         MR. MATTHEWS:  Yes.  We do have an

17   occupational  therapist,  but  she's  itinerant.

18    She comes depending on the caseload.

19         MR. GUPTA:  Okay.  But you could

20   make arrangements for her to come for J█████?

21         MR. MATTHEWS:  Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

287

1          MR. GUPTA:    And  what  about  the

2    half hour a week of speech therapy?

3          MR. MATTHEWS:    We  have  a  speech

4    therapist that is itinerant as well and she's

5    here based on what her caseload is.   So, we

6    would schedule him as well.

7          MR. GUPTA: Okay.  At this time, I

8    have no more questions.   But I believe the

9    Hearing Officer will either ask questions or

10   turn it over to Mr. Tyrka.

11         MR. MATTHEWS:  Okay.

12              CROSS EXAMINATION

13         MR. TYRKA:   Okay.   Mr. Matthews,

14   can you hear me okay?

15         MR. MATTHEWS:  Yes.   I can.

16         MR. TYRKA:   This is Doug Tyrka.

17   We've spoken before I know.

18         MR. MATTHEWS:  Yes.

19         MR. TYRKA:  When did you first get

20   J██████ records?

21         MR. MATTHEWS:    When Mr. Workman

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

288

1  got them.   I reviewed his folder for the

2  first time this morning.

3          MR. TYRKA:  This morning?

4          MR. MATTHEWS:  Yes.

5          MR. TYRKA:  About what time?

6          MR. MATTHEWS:   I get here at 6:00

7  in the morning and Mr. Workman called me last

8  night and it was sitting in the center of my

9  desk when I got here this morning.

10          MR. TYRKA:   Right.  And when did

11  you review them?

12          MR. MATTHEWS:  This morning.

13          MR. TYRKA:   And what time this

14  morning, sir?

15          MR. MATTHEWS:  It's about 6:00.

16          MR. TYRKA:  So, you reviewed them

17  first thing in the morning?

18          MR. MATTHEWS:  Yes.   First thing

19  this morning.  Yes.

20          MR. TYRKA:   Okay.  And for how

21  long was that that you reviewed them?

1          MR. MATTHEWS:  It took me about 40

2     minutes to go through.  It really didn't take

3     me that long because I'm familiar with all

4     the jargon.  But I looked for the indicators

5     and looked for the levels of service that

6     needed to provide him and I want to say,

7     maybe about 20/25 minutes.

8          MR. TYRKA:  So, what do you have

9     there in the records?

10          MR. MATTHEWS:  I have his IEP in

11     front of me.

12          MR. TYRKA:  Is that it?

13          MR. MATTHEWS:  And I have his

14     academic levels.  I have that he needs speech

15     and occupational therapy.  I have that he is

16     to receive social work services and that his

17     IEP is to be reviewed quarterly.

18          MR. TYRKA:  Right.  But everything

19     you just told me comes from the IEP.

20     Correct?

21          MR. MATTHEWS:  That is correct.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

290

1          MR. TYRKA:  So, the one document

2     you have is the IEP?

3          MR. MATTHEWS:  Yes.  And I have

4     the meeting notes. The MDT meeting notes and

5     the signature sheets and his IEP.

6          MR. TYRKA:  All from that say day,

7     August 9th?

8          MR. MATTHEWS:  Yes.

9          MR. TYRKA:  Okay.  So, you don't

10    have any evaluations?

11         MR. MATTHEWS:  No.

12         MR. TYRKA:  And you don't have any

13    old IEPs?

14         MR. MATTHEWS:  No.

15         MR. TYRKA:  Older than the August

16    9th, 2006, one?

17         MR. MATTHEWS:  No.  I don't.

18         MR. TYRKA:  Okay.

19         HEARING OFFICER ST. CLAIR:  How

20    did he get them?

21         MR. TYRKA:  The records?  I

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

291

1    believe he said -- you said Mr. Workman left

2    you the records?

3           MR. MATTHEWS:  The document I have

4    in front of me appears to have been faxed to

5    us.  Because it has the fax jargon across the

6    top of the page.

7           MR. TYRKA:  Oh, I see.  When was

8    it faxed to you?

9           MR. MATTHEWS:  October the 16th,

10   it looks like.

11          MR. TYRKA:  Okay.  And as far as

12   you know, Taft didn't have any knowledge of

13   the child before then?

14          MR. MATTHEWS:  No.  We didn't.

15          MR. TYRKA:  I'm assuming --

16          HEARING OFFICER ST. CLAIR:  Just a

17   minute.

18          Can you tell me who the document

19   is from, Mr. Matthews?

20          MR. MATTHEWS:   It says it's from

21   the Office of General Counsel.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

292

1          HEARING OFFICER ST. CLAIR:    And

2    the date on it is October 16th.

3          MR. MATTHEWS:    Yes.    That would

4    have been this Monday.

5          HEARING OFFICER ST. CLAIR:    And as

6    far as you know, that's when you got the

7    document?

8          MR. MATTHEWS:    That's as far as

9    when it came to the school.    There's some

10   other fax jargon in there from October the

11   6th, two weeks ago, from Tyrka and -- Tyrka

12   and Associates.

13         HEARING OFFICER ST. CLAIR:    Just

14   for the record, Mr. Matthews, it's pronounced

15   Tyrka.    It's Douglas Tyrka.

16         MR. MATTHEWS:    Tyrka.    Okay.

17         HEARING OFFICER ST. CLAIR:    Tyrka

18   like tears.

19         MR. MATTHEWS:    All right.

20         HEARING OFFICER ST. CLAIR:    Go

21   ahead, Mr. Tyrka.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

293

1              MR. TYRKA:    I have a running

2    forgiveness on that point, by the way, Mr.

3    Workman.  I do believe the Hearing Officer is

4    particular defensive of people's names.

5              HEARING    OFFICER    ST.    CLAIR:

6    Matthews.  Mr. Matthews.

7              MR. TYRKA:    Oh, excuse me, Mr.

8    Matthews.

9              MR. MATTHEWS:  Yes.

10             MR. TYRKA:    I called you Mr.

11   Workman.

12             So, I'm sorry.  Just to get that

13   straight.  So, you've got an October 6 fax

14   line that appears to be coming from Tyrka and

15   Associates?

16             MR. MATTHEWS:  The October 6th is

17   from Tyrka and Associates.  Yes.

18             MR. TYRKA:    And October 16th is

19   the one from OGC to you?

20             MR. MATTHEWS:  That is correct.

21             MR. TYRKA:    Okay.  Now, there's no

1    class identified yet for J██████.  Correct?

2              MR. MATTHEWS:  Not yet.  No.

3              MR. TYRKA:    And, in fact, you

4    haven't accepted J█████ yet.  Correct?

5              MR. MATTHEWS:  Correct.  And we

6    don't know if he's accepted us.

7              MR. TYRKA:  Right.  And you don't

8    know  if  it's  appropriate  for  him  yet?

9    Correct?

10             MR.  MATTHEWS:    Well,  we're

11   appropriate for him.  Based on what this IEP

12   says, we're appropriate for him.  But I'm

13   sure  the  final  decision  rests  with  his

14   parents.

15             MR. TYRKA:  Well, let me ask you

16   about that.

17             When  you  determine  a  --  you

18   participate  in  placement  decisions  for  a

19   child?

20             MR. MATTHEWS:  Yes.  I do.

21             MR. TYRKA:  And that's not an MDT

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

295

1    meeting.  Correct?

2            MR. MATTHEWS:  That is correct.

3            MR. TYRKA:  At that meeting there

4    are the people we all know who are supposed

5    to be there.  Teachers, regular education,

6    special education --

7            MR. MATTHEWS:  Right.

8            MR. TYRKA:    -- psychologists,

9    speech and language provider, occupational

10   therapist?

11           MR. MATTHEWS:  That is correct.

12           MR. TYRKA:  Okay.  And you haven't

13   had such a meeting regarding J█████ and

14   regarding Taft.  Correct?

15           MR. MATTHEWS:  No.  Not yet.  No.

16           MR. TYRKA:  Okay.

17           MR. MATTHEWS:  We haven't had that

18   meeting yet, but we will once we know that

19   he's going to be coming here.

20           MR. TYRKA:  So, you're saying that

21   your procedure is to decide if the child is

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

296

1    coming there and then have the meeting?

2         MR. MATTHEWS:  Yes.  Well, what we

3    do is look at the record, see if we can meet

4    the child's needs.  We meet as Mr. Workman

5    and myself and all of the other parties

6    involved, say okay.  We can meet this child's

7    need.  And then Mr. Workman accepts the child

8    on behalf of the school and gets them

9    enrolled and get them started.

10        We work on his transportation and

11   we get them started.

12        MR. TYRKA:  Okay.  Now, is it

13   possible there's something in evaluations

14   that would indicate to you that a child --

15   that the school is not appropriate for a

16   child?

17        MR. MATTHEWS:  We would see that

18   in the documentation that we have.  But I

19   haven't seen anything like that in J██████

20   file.

21        MR. TYRKA:  I'm asking you if it's

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

297

1  possible that there would be something like

2  that in the evaluations?

3          MR. MATTHEWS:  When we meet?

4          MR. TYRKA:  No, no, sir.  I'm

5  asking.  .

6          MR.  MATTHEWS:    Could  there  be

7  something  in  the  evaluations  that  we  don't

8  have yet?

9          MR.  TYRKA:    That  would  indicate

10 that  J██████  is  not  acceptable  for  Taft?

11 Excuse  me.  Taft  is  not  appropriate  for

12 J██████?

13         MR. MATTHEWS:  Well, I don't know

14 if I can speak to that because I haven't seen

15 that documentation that indicates that.

16         MR.  TYRKA:    I'm  asking  if  it's

17 possible?

18         MR.  MATTHEWS:    I  would  imagine

19 anything is possible.

20         MR.  TYRKA:   Okay.   I  mean,  have

21 you  in  the  past  considered  things  other  than

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

298

1  an  IEP  in  making  a  decision  that  Taft  is

2  appropriate for a child?

3          MR. MATTHEWS:  Yes.  We have.

4          MR. TYRKA:  In fact, you prefer to

5  do it that way.  Correct?

6          MR.  MATTHEWS:   Well,  I  would

7  prefer  to  have  the  IEP  data  and  as  much

8  assessment data as possible on the child.  As

9  much  psychosocial  assessment  data  to  decide

10  if we can meet his needs.  Yes.

11          MR. TYRKA:  Okay.  And you say you

12  have  no  class  identified  so  you  don't  have

13  his teacher identified.  Correct?

14          MR. MATTHEWS:  Not yet.  No.

15          MR. TYRKA:  Okay.  And you can't

16  tell me exactly the disabilities of the other

17  children in class.  Correct?

18          MR.  MATTHEWS:   Not  in  the  class

19  until I know what class he's going to be in.

20   That's correct.

21          MR. TYRKA:  And likewise for --

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

299

1          MR. MATTHEWS:  We would match him

2     up   with   what   his   levels   are   with   the

3     appropriate climate.

4          MR. TYRKA:  Okay.  But likewise,

5     you can't tell me what the academic levels of

6     the other children in his class would be, can

7     you?

8          MR. MATTHEWS:  The class we're

9     going  to  put  him  in  the  levels  will  be

10    consistent.  That I can tell you.

11         MR. TYRKA:  Well, you don't know

12    what  class  you're  going  to  put  him  in.

13    Right?

14         MR. MATTHEWS:  That is correct.

15         MR. TYRKA:  Okay.  And you said

16    his  levels  were  at  the  high  end.   Is  that

17    correct?

18         MR. MATTHEWS:  Yes.

19         MR. TYRKA:  What do you mean by

20    that?   They're  higher  than  most  kids  in

21    school?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

300

1          MR. MATTHEWS:    For  special  ed

2     students, he's performing just a second --

3     he's  performing  at  the  4.8  level,  fourth

4     grade,    eighth    month    level    in    math

5     calculations.   Broad math concepts, the third

6     grade, five month level and his broad reading

7     concepts are second grade, nine month and his

8     basic  reading  concepts  are  at  fourth  grade,

9     eighth month.   His written expression is at

10     third grade, second month.

11          MR. TYRKA:  Okay.  And what you're

12     saying is that that's higher than most of the

13     children in the sixth grade?

14          MR.  MATTHEWS:    It's  higher  than

15     many kids come with.  Yes.

16          MR. TYRKA:  Well --

17          MR. MATTHEWS:   He's only a couple

18     of grade levels behind.  He's in the sixth

19     grade.  He's performing in many instances at

20     the  high  third  grade,  up  to  upper  fourth

21     grade level.  So, he's only a year and a half

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

301

1    or so behind.

2          MR. TYRKA:  Right.  Well, what I'm

3    asking you is.  That's higher than most of

4    the children there at Taft in the sixth

5    grade.  Correct?

6          MR. MATTHEWS:    No.    It's  not

7    higher than most of the children in the sixth

8    grade.  No.  It's compatible with many of the

9    children in our sixth grade.  We have a class

10   that performs at the high end and we have a

11   sixth grade class that performs at the lower

12   end.    And he would be with the kids that

13   perform at the higher end.

14         MR. TYRKA:  What is the breakdown,

15   can you tell me?

16         MR.   MATTHEWS:      What's    the

17   breakdown?  We have at the higher end right

18   now; we have five kids in that class.  At the

19   lower end, we have seven kids in that class.

20         MR. TYRKA:  I'm sorry.  I'm asking

21   more specifically.  Can you tell me what the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

302

1    performance levels --?

2             MR. MATTHEWS:    Oh, it could be

3    anywhere.   It's a broad range from pre-primer

4    to about second grade.

5             MR. TYRKA:    What is from pre-

6    primer to second grade?

7             MR. MATTHEWS:    Their performance

8    levels in math and reading.

9             MR. TYRKA:    Performance levels of

10   whom?

11            MR. MATTHEWS:    Of those students

12   at the lower end.

13            MR. TYRKA:    At the lower end.

14   Okay.   How about at the higher end?

15            MR. MATTHEWS:    The higher end

16   would be mid-second grade to as high as fifth

17   or sixth grade.   Some of our kids are on

18   level but they're still emotionally

19   disturbed.

20            MR. TYRKA:   Okay.

21            MR. MATTHEWS:   So, they have to be

**NEAL R. GROSS**

COURT REPORTERS AND TRANSCRIBERS

1323 RHODE ISLAND AVE., N.W.

WASHINGTON, D.C. 20005-3701

(202) 234-4433                    (202) 234-4433

303

1   here.

2           MR. TYRKA:   Okay.   So, the high

3   grade goes from mid-second grade to as high

4   as sixth grade?

5           MR. MATTHEWS:   Yes.

6           MR. TYRKA:   I don't have any

7   further questions.

8           MR. GUPTA:   I have one redirect?

9               REDIRECT EXAMINATION

10          MR. GUPTA:   Mr. Matthews, I just

11  have one quick follow-up question for you.

12          MR. MATTHEWS:   Okay.

13          MR. GUPTA:   In your admissions

14  procedure,   does   one   document   or   one

15  assessment carry more weight than another

16  one?

17          MR. MATTHEWS:   No.   No.   They

18  don't.   No.   It doesn't.   We just -- we use

19  it as a point of reference.   We compare it,

20  but in assessing that data, one assessment

21  doesn't have any more weight than another.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

304

1      MR. GUPTA:  So, if for one student

2  you may have five relevant documents whereas

3  another  student  you  may  only  have  two

4  relevant  documents.   But both are still good

5  enough to assess --

6           MR TYRKA:  Objection.  Leading.

7           MR. GUPTA:  -- them?

8           MR. TYRKA:  Objection.  Leading.

9           MR. MATTHEWS:  That is correct.

10          HEARING  OFFICER  ST. CLAIR:   I'm

11  going to overrule.   I'll let Mr. Gupta have

12  his record.

13          MR. GUPTA:  And in this case then,

14  even  though  you've  got,  you  said,  a  very

15  thorough  and  very,  I  believe  you  said,

16  accurate  IEP,  would  say  --  let's  be

17  hypothetical  for  a  second.   Say J███████

18  family  agrees  and  they  do  end  up  coming  to

19  Taft and you hold your MDT meeting.

20          At  that  point,  would  that  be  an

21  appropriate  place  to  review  all  the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

305

1    evaluations?

2              MR. MATTHEWS:  Yes.  It would.

3              MR. TYRKA:   Objection.   I don't

4    understand what he means by an appropriate

5    place to do the evaluations.

6              HEARING OFFICER ST. CLAIR:    I'm

7    sorry.

8              Ask the question again, Mr. Gupta.

9              MR. GUPTA:  All right.  Okay.

10             Would you need to -- would you

11   need to review the evaluations that were

12   spoken of before you let him into the school,

13   or is it okay to do it after he starts --?

14             MR. TYRKA:  I would -- objection.

15             MR. MATTHEWS:   What we have is a

16   structural level of the school first.

17             HEARING OFFICER ST. CLAIR:   Hold

18   on, Mr. Matthews.

19             MR. MATTHEWS:  Once we know what

20   his academic performance levels are.

21             HEARING OFFICER ST. CLAIR:    Mr.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

306

1    Matthews.

2              MR.  MATTHEWS:    And  what  his

3    service provider needs are being social work,

4    clinical    psychologist,    speech    and

5    occupational.  Once we know what those things

6    are  and  we  have  all  of  those  things,  we'll

7    admit  him  based  on  what  that  documentation

8    says.

9              HEARING  OFFICER  ST.  CLAIR:    Hold

10   on.  Mr. Matthews.

11             MR.  MATTHEWS:    We    use    the

12   assessments  to  pretty  much  to  see  what  our

13   baseline  is  going  to  be  and  to  measure  when

14   he makes progress.

15             HEARING  OFFICER  ST.  CLAIR:    Hold

16   on, Mr. Matthews.   There was an objection on

17   the floor about 30 seconds ago.

18             MR. MATTHEWS:  Okay.  I'm sorry.

19             HEARING  OFFICER  ST.  CLAIR:    Yes.

20   Just hold on.  I know this --

21             MR.  MATTHEWS:    They're  starting

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

307

1    dismissal, so my bells are ringing, my kids

2    are moving.

3            HEARING OFFICER ST. CLAIR:    All

4    right.  I understand.  Please bear with us.

5            MR. MATTHEWS:  Okay.

6            What was your objection?

7            MR. TYRKA:  Well, the question was

8    about whether it would be -- I don't know if

9    the word is appropriate or whether that would

10   be an okay time to that -- whether that

11   procedure would be okay.  Was it present as a

12   matter of law?  As a matter of DCPS policy?

13   As a matter of what he would like to do?

14   Because, obviously, if he's asking a legal

15   question, I'm going to object to that.

16           HEARING OFFICER ST. CLAIR:  Yes.

17           You're asking a policy decision?

18           MR. GUPTA:    I'm asking -- yes.

19   I'm asking is it --?

20           HEARING OFFICER ST. CLAIR:  Yes.

21           Mr. Matthews?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

308

1          MR. MATTHEWS:  Yes.

2          HEARING OFFICER ST. CLAIR:    I'm

3     going to let Mr. Gupta ask this again and

4     this is a matter of policy.

5          MR. MATTHEWS:  Okay.

6          HEARING OFFICER ST. CLAIR:    Go

7     ahead, Mr. Gupta.

8          MR. GUPTA:   So, as a matter of

9     policy, sir, is it appropriate or even okay

10    to allow a student to enter Taft just based

11    on an IEP and then review the evaluations

12    after his matriculation there?

13         MR. MATTHEWS:  No.  We would have

14    to have his entire file.

15         MR. GUPTA:   Okay.  And so to get

16    his entire file, we would need to issue a

17    notice of placement there and then with that

18    the files would come?

19         MR. MATTHEWS:  That is right.

20         MR. GUPTA:   And then what is the

21    next step?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

309

1          MR. MATTHEWS:  We would review the

2     file.  We would have a meeting.  Determine

3     where the appropriate placement.  We will

4     contact the parent, bring them in.  Register

5     the child.  Meet with the parents, address

6     any concerns that they have and then we would

7     set his transportation and let her know when

8     he can start reporting to school.

9          HEARING OFFICER ST. CLAIR:    In

10    other words let me see if I understand, Mr.

11    Matthews.

12          You say you do this after you

13    receive the notice of placement?

14          MR. MATTHEWS:  Yes.  We can't work

15    -- we can't arrange transportation and put

16    him in a class and all that if we don't know

17    if he's going to be here.

18          HEARING OFFICER ST. CLAIR:  Well,

19    wait.  Let me see if I understand what you're

20    saying.

21          Is it possible for the child, for

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

310

1    DCPS to issue a notice of placement for a

2    child at the Taft Center and then for you to

3    decide it's not appropriate?

4              MR. MATTHEWS:    Well, I've never

5    overruled my support services in that manner.

6    I mean you know if the professionals feel we

7    are a good placement for him, then we'll look

8    for the consistency in that process and bring

9    the child here.

10             HEARING OFFICER ST. CLAIR:    All

11   right.    But I want to make sure I understand

12   what you're saying the policy is.

13             The policy is for you not to have

14   any documents for a notice of placement to be

15   issued and then for you to get the IEP and

16   the other documents later.    Is that correct?

17             MR. MATTHEWS:    That's correct.

18             HEARING OFFICER ST. CLAIR:    Let me

19   ask you this?

20             Do you know when the notice of

21   placement was issued?    Or do you know if a

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

311

1  notice of placement has been issued for

2  J████ at the Taft Center?

3       MR. MATTHEWS:  I can't answer.  I

4  don't know that.  Mr. Workman, my special ed

5  coordinator has been --

6       HEARING OFFICER ST. CLAIR:  Okay.

7  All right.

8       MR. MATTHEWS:    -- obviously

9  dealing with this.

10      HEARING OFFICER ST. CLAIR:  But

11  the only thing you have is the IEP?

12      MR. MATTHEWS:  That is correct.

13      HEARING OFFICER ST. CLAIR:  And

14  from the tax information on the IEP it was

15  sent to the Taft Center on October 16th,

16  2006.

17      MR. MATTHEWS:  That's correct.

18      HEARING OFFICER ST. CLAIR:  From

19  the Office of the General Counsel, DCPS?

20      MR. MATTHEWS:  That is correct.

21      MR. GUPTA:    I have no further

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

312

1     questions.

2              HEARING OFFICER ST. CLAIR:    I'm

3     going to let Mr. Matthews --

4              Mr. Matthews?

5              MR. MATTHEWS:  Yes.

6              HEARING OFFICER ST. CLAIR:    Thank

7     you very much, sir.

8              MR. MATTHEWS:  Okay.  Great.    I

9     hope I helped some.

10             MR. GUPTA:  Thank you.

11             MR. MATTHEWS:  Okay.

12             (Witness excused.)

13             HEARING OFFICER ST. CLAIR:    Next

14    witness, Mr. Gupta.

15             MR. GUPTA:  Let's see if I can get

16    him on the phone.

17             HEARING OFFICER ST. CLAIR:    Get

18    whom on the phone?

19             MR. GUPTA:  Mr. Evan Murray.

20             HEARING OFFICER ST. CLAIR:    Oh.

21    Is he on here?

1        MR. GUPTA:  Yes.

2        HEARING OFFICER ST. CLAIR:  Oh,

3  yes.  There it is.

4        MR. GUPTA:  Number 7.

5        MR. TYRKA:  Do we have a proffer

6  as to what the testimony is going to be

7  about?

8        HEARING OFFICER ST. CLAIR:  No.

9  I'm just waiting here.  Go ahead.

10       MR. GUPTA:  These ones do long

11  distance.  Right?

12       MR. TYRKA:  No.

13       HEARING OFFICER ST. CLAIR:  No.

14       MR. GUPTA:  Well, it's 443.  I

15  don't -- that's his cell phone number.  Let

16  me try that.

17       I figure it's like Baltimore or

18  something.  I don't know.

19       HEARING OFFICER ST. CLAIR:  I know

20  you can't call Baltimore.

21       MR. GUPTA:  Should I call the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C. 20005-3701
(202) 234-4433        (202) 234-4433

314

1    Student Hearing Office?

2              MR. TYRKA:  Yes.  Call the Student

3    Hearing Office.

4              UNIDENTIFIED    PERSON:        Good

5    afternoon, Student Hearing Office.

6              MR. GUPTA:  Hi.  This is Saurabh

7    Gupta.  I'm in a hearing with Mr. St. Clair

8    and Mr. Tyrka.

9              I have a long distance cell phone

10   number that needs to be dialed and routed

11   back into this room.

12             UNIDENTIFIED    PERSON:        Are  you

13   here?

14             MR. GUPTA:  Yes.

15             HEARING  OFFICER  ST.  CLAIR:  He's

16   in Room 42.  We're in Room 42.

17             UNIDENTIFIED PERSON:  Okay.  And

18   what is it that you need again?

19             MR.  GUPTA:   Need the cell phone

20   for a witness I'm trying to call, I guess is

21   long distance.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C. 20005-3701
(202) 234-4433                    (202) 234-4433

315

1    UNIDENTIFIED PERSON:  Oh, okay.

2  What's the number?  Do you want me call him?

3  I mean, do you want me to call him and --

4    MR. GUPTA:  And then transfer him

5  into this room?

6    UNIDENTIFIED PERSON:  Yes.

7    MR. GUPTA:  Okay.

8    UNIDENTIFIED PERSON:  Okay.

9  What's the --

10    MR. GUPTA:  The number we're

11  calling is 443 --

12    UNIDENTIFIED PERSON:  Wait.  Let

13  me get a pen.

14    MR. GUPTA:  Oh, sorry.

15    UNIDENTIFIED PERSON:  Okay.  The

16  number I'm dialing?

17    MR. GUPTA:  Yes.

18    UNIDENTIFIED PERSON:  Okay.  Is

19  what?

20    MR. GUPTA:  443-413 --

21    UNIDENTIFIED PERSON:  413 --

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

316

1           MR. GUPTA:  6273.

2           UNIDENTIFIED PERSON:  Is this long

3    distance?

4           MR. GUPTA:  I think so.

5           UNIDENTIFIED PERSON:  Okay.  So,

6    you said the number is 443-613 --

7           MR. GUPTA:  6273.

8           UNIDENTIFIED PERSON:  6273.  And

9    you're in Room?

10          HEARING OFFICER ST. CLAIR:  42.

11          UNIDENTIFIED PERSON:  42?

12          HEARING OFFICER ST. CLAIR:  Yes.

13          UNIDENTIFIED PERSON:  Okay.

14          MR. GUPTA:  Yes.  It's 25664.

15          UNIDENTIFIED PERSON:  Okay.

16          MR. GUPTA:  All right.  Thank you.

17          HEARING   OFFICER   ST.   CLAIR:

18   Another brief break.

19          (Whereupon,   off   the   record

20   briefly.)

21          HEARING OFFICER ST. CLAIR:  Thank

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

317

1    you, Mr. Gupta.  We're back on the record

2    now.

3            Who are you going to call as a

4    witness after Mr. Evans, Mr. Gupta?

5            MR. GUPTA:  I'm going to call

6    Deborah Lyons.  She is the Special Education

7    Coordinator at Burnie Elementary School.

8            HEARING OFFICER ST. CLAIR:  And

9    what is Ms. Lyons going to testify to?

10           MR. GUPTA:  Ms. Lyons is going to

11   testify to the mother's obstruction and in

12   allowing J█████ to enter the special

13   education program at Burnie.  And the purpose

14   of that is to show that any education harm

15   that's occurred in the 06/07 school year is

16   self-inflicted and not at the cause of DCPS -

17   - not as a result of DCPS's inaction or

18   action.

19           HEARING OFFICER ST. CLAIR:  Mr.

20   Tyrka.

21           MR. TYRKA:  DCPS had an obligation

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

318

1    to provide J█████ with a full-time

2    therapeutic environment placement for the HOD

3    of July 10th. Either they did or they

4    didn't. If they did, they win the case

5    outright. If they did not, then anything

6    else is irrelevant.

7    I mean, if the mother had the

8    money to send J████ to the greatest private

9    special education school ever, if the mother

10    decided to thrown J████ out on the street.

11    All that is totally irrelevant to DCPS's

12    obligation.

13    If DCPS didn't make a placement,

14    the reason J█████ is not in a placement is

15    because they didn't make it. Burnie is not -

16    - there is no representation that Burnie was

17    ever officer, discussed, proposed, you know,

18    for a second. So, whatever has happened at

19    Burnie is totally irrelevant.

20    MR. GUPTA: That also doesn't go

21    to the fact why the mother kept the student

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

319

1    out of school for a month.  The mother knew -

2    - she could of at least visited Taft.  That

3    requires no money on her part.  Taft is a

4    public school.  She could have visited Taft

5    and in the meantime while allegedly DCPS did

6    not make the placement, the mother could have

7    visited Taft, placed the child there and then

8    allowed the due process time line to work

9    through and get placed at a private school if

10   so be it.

11            The point here is that the mother

12   didn't do that and it was, we feel, an

13   obstructionist gesture to show education harm

14   and to show negligence on DCPS's part to --

15            HEARING OFFICER ST. CLAIR:    You

16   mean here part?

17            MR. GUPTA:    No.   The mother was

18   going this to embolden her case to show

19   negligence on DCPS's part because --

20            HEARING OFFICER ST. CLAIR:    What

21   was the negligence on DCPS's part?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

320

1         MR. GUPTA:   That she had -- that

2  she was so desperate that she had to throw

3  the student at Burnie and no special

4  education --

5         HEARING OFFICER ST. CLAIR:   You

6  mean to create the image of negligence on the

7  part of DCPS?

8         MR. GUPTA:   Exactly.

9         HEARING OFFICER ST. CLAIR:   Okay.

10  I understand.

11        MR. GUPTA:   And the reason -- the

12  reason I think arguing education harm is very

13  important here is because even if the

14  impartial hearing officer finds that DCPS

15  failed in its obligation issue of prior

16  notice, then our counter argument is -- well,

17  where's the education harm?   And the

18  education harm here is self-inflicted.

19        HEARING OFFICER ST. CLAIR:   I see.

20  Excuse me just a minute.   I understand your

21  part.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

321

1          MR. TYRKA:  Here's another one.

2          We    have    disclosed    several

3    documents which were discussed last time and

4    it's disturbing that I'm still hearing this

5    consternation of the parent given the fact

6    that starting in late August, six days after

7    we filed this complaint, as a matter of fact.

8     I'm sorry.

9          When  we  --  when  we  filed  the

10   complaint, we tried to get a stay put from

11   Kipp which was the then current educational

12   placement.   Kipp which is a charter school

13   refused to allow admission.   We then made a

14   motion  as  per  the  SOPs  on  August  29th

15   requesting that Mr. Smith enforce the Stay

16   Put.

17          I don't know why.   He failed to

18   issue anything on it.   I saw him in the

19   halls.  I asked him about it.  We then filed

20   a  motion  for  an  expedited  hearing  on

21   September 14th.   I then sent another letter

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

322

1    to him on -- saying please give me a ruling

2    on this.  And that's our number 21.

3              MR. GUPTA:  Hello.

4              MR. TYRKA:    And the parent has

5    been making every effort to make sure Joshua

6    is in a placement.

7              MR.  GUPTA:    Hello.    Hi,  Mr.

8    Murray.  This is Saurabh Gupta.  And we're in

9    the hearing now.  Mr. St. Clair is going to

10   swear you in.

11             HEARING  OFFICER  ST.  CLAIR:    Get

12   some volume on that because I can barely hear

13   him.

14             Mr. Murray?

15             MR. MURRAY:  Yes, sir.

16             HEARING  OFFICER  ST.  CLAIR:    Can

17   you speak up, sir?

18             MR.  MURRAY:    That's  as  loud  as  I

19   can.

20             HEARING  OFFICER  ST.  CLAIR:    Okay.

21    That's good.  We can barely hear you.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

323

1          MR. MURRAY:    Okay.    I hear you

2    well.

3          HEARING OFFICER ST. CLAIR:  Okay.

4          Mr. Murray, in addition to myself

5    and Mr. Gupta --

6          MR. MURRAY:  Yes, sir.

7          HEARING OFFICER ST. CLAIR:    -- in

8    the hearing is Mr. Douglas Tyrka.  Mr. Tyrka

9    is counsel for the parent.

10          MR. MURRAY:  Yes, sir.

11          HEARING OFFICER ST. CLAIR:    All

12    right.

13          Mr. Murray, do you solemnly affirm

14    that the testimony you are about to give

15    during the course of this proceeding will be

16    the truth, the whole truth and nothing but

17    the truth?

18          MR. MURRAY:  Yes, sir.

19          HEARING OFFICER ST. CLAIR:  Please

20    begin, Mr. Gupta.

21          DIRECT EXAMINATION

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

324

1          MR. GUPTA:   Mr. Evan, could you

2     please state your -- well, we already have

3     your name.   Could you please state your

4     position within DCPS for the record?

5          MR. MURRAY:   I'm a Placement

6     Specialist Monitor.

7          MR. GUPTA:   And what does that

8     involve?

9          MR. MURRAY:        It involves

10    monitoring the school, supporting the school

11    that we are the LEA, holding building

12    placement for students for schools that we're

13    the LEA and the SEAs.   Doing referrals,

14    evaluations, like in --

15          HEARING OFFICER ST. CLAIR:   I

16    understand.

17          Next question, Mr. Gupta.

18          MR. GUPTA:   Okay.   Mr. Murray,

19    just to expedite things, I'm going to move

20    along here.

21          You are familiar with J█████

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

325

1    H██████?

2             MR. MURRAY:  Yes.  I am.

3             MR. GUPTA:  Right?  Okay.

4             And you were in attendance of a

5    MDT meeting at the beginning of August this

6    year?

7             MR. MURRAY:  Yes.  August 9th, I

8    think was the meeting.

9             MR. GUPTA:  August 9th.  And at

10    that meeting, the Taft Center was discussed.

11     Correct?

12             MR. MURRAY:  Yes.  It was.

13             MR. GUPTA:  And at that meeting

14    did you offer the placement of Taft or were

15    you just discussing the placement of Taft?

16             MR. MURRAY:  Discuss the placement

17     of Taft.

18             MR. GUPTA:  Okay.  And what was

19    the parent or the advocate's reaction to

20    Taft?  Did they --

21             MR. MURRAY:  Well, the advocate

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

326

1    who said that she had worked for DCPS for

2    years and stated that was not the appropriate

3    placement.   She was very concerned that we

4    would offer Taft and she had given me incite

5    on what could and could not be done at that

6    school.

7           MR.  GUPTA:   Did  she  give  you

8    specifics why it was inappropriate?

9           MR. MURRAY:  She thought that they

10   didn't have the appropriate personnel to meet

11   J██████ needs.

12          MR.  GUPTA:   Okay.   Do  you  have

13   knowledge on appropriate personnel of Taft?

14          MR.  MURRAY:   I  don't  have  the

15   information in front of me, but -- let me see

16   if I can --

17           I  don't  have  the  information  in

18   front of me.  So, I don't want to --

19          MR.  GUPTA:   No.   That's  okay.   We

20   can get that from other witnesses.

21          MR. MURRAY:  It wasn't progress --

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

327

1            HEARING OFFICER ST. CLAIR:    Mr.

2    Murray, if you're meeting in person?

3            MR. GUPTA:  I'll ask.

4            Mr. Murray, were you at that

5    meeting in person?

6            MR. MURRAY:  Yes.  I was.

7            MR. GUPTA:  Okay.  Mr. Murray, I'm

8    going to move on just to generally move this

9    meeting along.

10           HEARING OFFICER ST. CLAIR:    I

11   don't see him on the note.

12           MR. MURRAY:  I am on the note.

13   There was two sets of notes that was written.

14    The first group of notes that was written

15   and then there was the second.   One was a

16   draft.  Actually, I can't find the draft, but

17   the meeting ended abruptly and the advocate

18   was a little disappointed too because the

19   school felt like we were going longer than we

20   needed because, I guess, the advocate had so

21   many different questions.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

328

1            So, I signed, I guess, the draft,

2    if you will.

3            MR. GUPTA:  Okay.

4            HEARING OFFICER ST. CLAIR:    Draft

5    notes?  I got it now.  I got it now.

6            MR. GUPTA:   Yes.   We found your

7    signature actually.

8            Mr. Murray, in the notes they say

9    that prior notice will be issued within five

10   days because DCPS at that point wasn't really

11   prepared to issue it then.

12           Was that due to the --

13           MR. TYRKA:  Objection.  Leading.

14           MR. GUPTA:  -- objections?

15           MR. TYRKA:  Objection.  Leading.

16           HEARING OFFICER ST. CLAIR:  Yes.

17           MR. MURRAY:  Due to the what?

18           HEARING OFFICER ST. CLAIR:    No.

19   Just ask him about the notice of placement.

20   When did you issue it period?

21           MR.   GUPTA:      And   there   is

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

329

1  discussion within the notes that placement

2  was going to be issued within five days.  Did

3  that occur?

4        MR. TYRKA:  Objection.

5        MR. MURRAY:  It was mailed out.

6        MR. TYRKA:  I know the Hearing

7  Officer's ruling, but my objection that any

8  testimony regarding the document -- put out

9  the running objection.

10        HEARING OFFICER ST. CLAIR:  Sure.

11   Right.

12        MR. GUPTA:  Was a prior notice

13  ever issued to the Taft Center, do you

14  recall?

15        MR. MURRAY:  Yes.  I had given it.

16   I had put it in a packet.

17        MR. GUPTA:  Okay.  And was that

18  mailed to -- was that mailed or faxed to the

19  attorney?

20        HEARING OFFICER ST. CLAIR:  Just a

21  minute.  Just a minute.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

330

1          When you say put --

2          MR. MURRAY:    I mailed it to the

3    attorney via D.C. mail and I had given the

4    packet to the school.

5          Hello?

6          MR. GUPTA:  Yes.

7          HEARING OFFICER ST. CLAIR:    Ask

8    him about where his copy is.

9          MR. GUPTA:  Are you able to locate

10   your copy?

11          MR. MURRAY:    I do not have a copy

12   of it.

13          MR. GUPTA:  And have you searched

14   your office for it?

15          MR. MURRAY:  I did, but however --

16   yes.  I have searched and I have not found it

17   but yes I have.  I have searched and I do not

18   have a copy to answer your question.

19          MR. GUPTA:  Okay.  The one other

20   question I have then is in general.  How does

21   a prior notice of placement process work on

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

331

1    your end when a student is going from say --

2    this is a special case.

3                HEARING OFFICER ST. CLAIR:  Just a

4    minute.

5                MR. MURRAY:  Well --

6                HEARING OFFICER ST. CLAIR:    Mr.

7    Murray.   Mr. Murray.   This is Herbert St.

8    Clair.

9                MR. MURRAY:  Yes, sir.

10                HEARING OFFICER ST. CLAIR:  On the

11    meeting on August the 9th --

12                MR. MURRAY:  Yes, sir.

13                HEARING OFFICER ST. CLAIR:  -- you

14    said you were going to issue a notice of

15    placement.   And then you did issue a notice

16    of placement and you said you put it in with

17    the packet.  Is that what you said?

18                MR. MURRAY:  At the minute that I

19    will issue those -- what I do traditionally

20    to   answer   your   question   is.    Because   I

21    couldn't give it to the lawyer then, I mailed

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

332

1    it and then when the packet goes to the

2    school I put it in the packet with the school

3    as well.  That's how I usually do it when I'm

4    giving a packet to the school I give them all

5    the notes.

6              HEARING OFFICER ST. CLAIR:   So,

7    let me see if I understand.  What you did was

8    you issued the notice of placement --

9              MR. MURRAY:  Did not issue at that

10   meeting.  I did not.  At that meeting I did

11   not issue the placement.

12             HEARING OFFICER ST. CLAIR:   I

13   understand.  I understand.

14             You -- what you did was you

15   returned to your office --

16             MR. MURRAY:  And I put a prior

17   notice together with the packet, brought it

18   upstairs to our -- I guess, our mail

19   department. They sent it out and then I put

20   the packet together and sent it to the

21   school.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

333

1          HEARING OFFICER ST. CLAIR:    All

2    right.  When did you send the packet?  You

3    sent the first packet to the attorney?

4          MR. MURRAY:  Yes.  I don't know

5    the date to be honest, sir.

6          HEARING OFFICER ST. CLAIR:    I

7    understand.

8          MR. MURRAY:  But it was during

9    that time.

10         HEARING OFFICER ST. CLAIR:    I

11   understand.  But you sent the first packet to

12   the attorney and then you sent a packet to

13   the school?

14         MR. MURRAY:  Yes, sir.

15         HEARING OFFICER ST. CLAIR:    All

16   right.  Okay.

17         Go ahead, Mr. Gupta.

18         MR. GUPTA:  Actually, you just

19   kind of answered my last question I was in

20   the middle of which is the prior notice

21   procedure.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                         (202) 234-4433

334

1          MR.  MURRAY:    The  procedure  is

2     different.   In the majority of cases, I would

3     issue prior notice at that meeting.

4          HEARING  OFFICER  ST.  CLAIR:    Mr.

5     Murray.   Mr.  Murray.    Wait  for  the  next

6     question.   No question is pending.   No answer

7     is pending.   Wait for a question.

8          MR.  GUPTA:       Normally,  when

9     placement  is  at  issue  at  an  MDT  meeting,  what

10    is the procedure?

11         MR. TYRKA:  Objection, relevancy.

12         HEARING  OFFICER  ST.  CLAIR:    No.

13    I'm  going  to  let  him  go  through  the  normal

14    procedure.

15         MR.  MURRAY:   Mr. St. Clair, can I

16    answer that question?

17         HEARING  OFFICER  ST.  CLAIR:    Yes,

18    sir.

19         MR.  MURRAY:   Okay.

20         Traditionally  what  I  do  is  at  the

21    meeting  I  will  give  at  the  conclusion  of  the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

335

1    meeting after we do the closing of the

2    placement meeting; I will issue prior notice

3    to the family.  You got to make a copy also

4    for the attorney for their record.  And then

5    I'll put a packet together and give it to the

6    school.  So, anything that has transpired in

7    that meeting I'll give all the notes and if

8    there's a new IEP with the prior notice, I'll

9    give it to the school as well.

10          MR. GUPTA:  So, before the meeting

11   do you have to research the new institution

12   that you're going to send the student to?

13          MR. MURRAY:  I do that way before

14   the meeting.

15          MR. GUPTA:  Okay.

16          MR. MURRAY:  Before the meeting

17   99.9 percent of the time, before the meeting

18   I would have researched that information.

19          MR. GUPTA:  And in this case it

20   appears that wasn't the process.

21          MR. MURRAY:  No.  It was not.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

336

1          MR. GUPTA:  Why is that?

2          MR. MURRAY:  When I got -- I did

3    not get the HOD.  I had just -- I started May

4    31st and I guess this case had been going on.

5    So, I had not had the HOD.  So, at the

6    meeting I was prepared to place the kid at

7    one place and then it was brought to my

8    attention that the kid needed a therapeutic

9    setting.  So, then I had to, you know, excuse

10   myself from the meeting and then I had to

11   locate the appropriate setting for J████.

12         MR. GUPTA:  Okay.  Thank you, sir.

13    I don't have any further questions.  But I

14   think you're going to get cross examined.

15         HEARING OFFICER ST. CLAIR:   Mr.

16   Tyrka.

17         MR. TYRKA:  Yes, please.

18             CROSS EXAMINATION

19         MR. TYRKA:     Mr  Murray,  can

20   you hear me okay?

21         MR. MURRAY:  Yes.  I can.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

337

1    MR. TYRKA:  This is Doug Tyrka.  I

2 believe we've met in person before.

3    You said that you did not research

4 the placement before this meeting. Correct?

5    MR. MURRAY:  I did not -- to

6 answer the question.  No.

7    MR. TYRKA:  Okay.

8    MR. MURRAY:  And only because our

9 resource placement was not therapeutic

10 placement.  Therapeutic center.  No.  I did

11 not.

12    MR. TYRKA:  Okay.  Instead you

13 came with some other placement in mind.

14 Correct?

15    MR. MURRAY:  Yes.

16    MR. TYRKA:  What was that?

17    MR. MURRAY:  I don't have it.  I

18 don't know offhand right now to be honest,

19 sir.

20    MR. TYRKA:  Okay.  So, what did

21 you do to determine that other placement?

**NEAL R. GROSS**

COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433  WASHINGTON, D.C. 20005-3701  (202) 234-4433

338

1          MR. MURRAY: Well, from there I

2     had to --

3          MR. TYRKA: No, not Taft. The

4     first one.

5          MR. MURRAY: From there I had to

6     research my schools that have therapeutic

7     placement.

8          MR. TYRKA: No, no, no. Mr.

9     Murray, I'm asking not about Taft. The first

10    one? What procedure did you follow to

11    determine the first placement you were going

12    to offer J██████?

13         MR. MURRAY: Excuse me. We

14    usually do look at the IEP and then we

15    consult with other folk and then from there

16    we were able to determine what the

17    appropriate setting for the student is.

18         MR. TYRKA: Who are these other

19    folk?

20         MR. MURRAY: At that particular

21    meeting, you mean in general? It's usually

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

339

1    myself, Dr. Peidler (phonetic sp.), you know.

2     And say, for example, if it's a ED student

3    that needs an ED setting, I'll speak with the

4    ED director.

5             If it's a student that SLI, I'll

6    speak    with    the    directors    from    those

7    environments.

8             MR. TYRKA:   Let me see if this is

9    accurate.

10            You have an IEP, say as you did in

11   this case for J█████ that says EDOHI.   Right?

12    And  you  take  that  IEP  and  you  and  Dr.

13   Peidler  then  talk  to  the  ED  Specialist  and

14   the ED Specialist --

15            MR. MURRAY:   It is not always Dr.

16   Peidler.    I  can  make  that  judgment  myself

17   according  what  programs  we  have.    But  if  I

18   need   support,   then   I'll   --   if   I   have

19   questions, I'll ask the expert.

20            MR. TYRKA:   Okay.   And the factors

21   in  that  decision  are  what?    Who  has  space

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

340

1    available?  Correct?

2            MR. MURRAY:  Yes.

3            MR. TYRKA:  That's a factor?

4            MR. MURRAY:  You have to call the

5    school   to   make   --   what   I   normally

6    traditionally do is take the packet over to

7    the school to see if (1) they can meet the

8    student's needs.  Because I might be able to

9    identify an environment, but they might not

10   have  the  space.  Or,  excuse,  identify  a

11   setting and they might not have the space.

12           MR.  TYRKA:  Okay.  Now,  I'm  a

13   little  confused  though  because  you  said

14   usually you take the prior notice which you

15   issue at the meeting and you put that in the

16   packet to bring to the school.  Correct?

17           MR. MURRAY:  Actually, that comes

18   at  the  end  of  the  meeting.  I  can't  issue

19   prior notice before I have the meeting.  But

20   I would do that at the end of the meeting.

21           MR.  TYRKA:  I  understand.  I

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

341

1  understand.

2          MR. MURRAY:   Let me just comment

3  very quick.

4          Say you give me -- Tyrka comes to

5  me, his packet comes to me.  And I look at

6  what his disability classification or

7  categories are.  Then I will identify a

8  school.  I take the packet to the school

9  first to see if they can -- because they

10 might not be able to meet the need.  Then

11 from there if they feel that they can and I

12 have some other places, then I'll come back

13 to the meeting when we have a placement

14 meeting and then that's when I issue

15 placement.  I try not to issue placement at

16 the school does not have any information on

17 the student.  I don't think that would be

18 wise.

19         MR. TYRKA:   Do you work with Taft

20 much?

21         MR. MURRAY:   Far as -- in what?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

342

1    Mr. Workman and as far as -- what do you

2    mean, sir?

3               MR. TYRKA:   Do you often place

4    children at Taft?

5               MR. MURRAY:   He would have been --

6    my job I think I told you.   To answer your

7    question, I have worked with Taft, not much.

8    I just started May 31st.   So, I didn't start

9    placement until like July.   That would have

10   been August.   I didn't have a lot of

11   placements at that time.

12              MR. TYRKA:   You have any reason --

13   can you explain why Mr. Matthews would have

14   told us earlier today that what usually

15   happened is they get the prior notice and

16   then they decide whether the school is

17   appropriate for the child?

18              MR. MURRAY:   I can't -- I can't

19   speak to that.   I can't.   Mr. Matthews that's

20   the principal.   I can't speak to that.

21              MR. TYRKA:   You're not sure why he

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

343

1    said that?

2         MR. MURRAY:    But traditionally

3    what I do is I like to go to the spec ed

4    coordinator and the coordinators they will,

5    you know, usually the person that will be

6    able to tell you, you know, if they can meet

7    the needs of the student at that school.

8         MR. TYRKA:  Okay.

9         MR. MURRAY:    But I can't answer

10   your question, sir.

11        MR. TYRKA:   But in this case, you

12   showed at the August 9th meeting you have one

13   placement in mind.   You don't remember what

14   it was, but you find out there that the HOD

15   requires a full-time therapeutic setting.

16   Correct?

17        MR. MURRAY:  Yes.

18        MR. TYRKA:   Okay.  And what do you

19   do then?  You make a phone call.  Right?

20        MR. MURRAY:     Yes.    And who was

21   that?

1            MR.    MURRAY:        Mr.    Matthews,

2    actually.

3            MR.  TYRKA:   So, Taft was the first

4    place you called?

5            MR.  MURRAY:   Taft was the place I

6    called.  Yes.

7            MR.   TYRKA:   And  you  asked  Mr.

8    Matthews if he had a space?

9            MR.  MURRAY:   Please?

10           MR.  TYRKA:   You asked Mr. Matthews

11   if he had a space.   Correct?

12           MR.  MURRAY:   Yes.   I talked about

13   the situation.   Yes.

14           MR.  TYRKA:   And he said he had a

15   space?

16           MR.   MURRAY:   He  said  --  he  said

17   that they could take the student.   Yes.

18           MR.  TYRKA:   And on that basis you

19   --

20           MR.  MURRAY:   And then also just to

21   make  sure  that  we  would  be  --  because  they

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

345

1    still had to get the packet knowing that I

2    had not issued placement.  So, if they

3    couldn't meet the needs of the student, then

4    I also contacted Dr. Moses from the Moten

5    Center as well.

6              MR. TYRKA:  But you didn't talk

7    about Moten at the meeting.

8              MR. MURRAY:  You didn't ask the

9    question, so I'm telling you about the phone

10   call.  I'm telling you about what happened.

11             MR. TYRKA:  I know.  And I'm

12   asking about the phone call to Taft.

13             MR. MURRAY:  Okay.  Okay.  I guess

14   I'm confused.

15             MR. TYRKA:  Mr. Workman told you

16   there was space available at Taft.  Right?

17             MR. MURRAY:  Matthews said that.

18             MR. TYRKA:  Mr. Matthews.  Okay.

19   Mr. Matthews told you there was space

20   available?

21             MR. MURRAY:  For J██████.  Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

346

1          MR. TYRKA:   And on that basis you

2    went back and you said discussed Taft at the

3    meeting.  Correct?

4          MR. MURRAY:  Yes.  Yes.

5          MR. TYRKA:   Because you said you

6    didn't offer Taft at the meeting.  Correct?

7          MR. MURRAY:   That's right.   Yes.

8    Yes, sir.

9          MR. TYRKA:  You did not propose it

10   as a placement?

11         MR. MURRAY:  Excuse?

12         MR. TYRKA:   You did not offer it

13   as a placement?

14         MR. MURRAY:   Not at that meeting.

15    No, sir.

16         MR. TYRKA:    I have no further

17   questions.

18         HEARING    OFFICER    ST.    CLAIR:

19   Redirect, Mr. Gupta.

20         MR. GUPTA:   Yes.   I have one

21   redirect.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

347

1                REDIRECT EXAMINATION

2          MR. GUPTA:  You said you contacted

3    Moten Center?

4          MR. MURRAY:  Yes.    After  the

5    meeting.

6          MR. GUPTA:  Could you tell us why?

7          MR. MURRAY:  Well, because (1) at

8    the meeting the only research I had was Taft.

9     So, I came back and make sure.  I wanted to

10   find, you know, the most appropriate setting

11   for J█████.    And  then  I  would  research

12   others.  And I researched Moten.  And when I

13   went to -- I took the packet over to Moten,

14   and  the  coordinator  was  kind  of  concerned

15   because they had so many -- 32 hours on his

16   IEP.  And she wanted to, if he was going to

17   come, she wanted to have the hours reduced.

18          So, I went back because I wanted

19   to find other -- you know, if -- as of when

20   I'm issuing prior notice, you know, I want to

21   have more than -- for me, I like to have more

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

348

1   than, you know, one option.

2            MR. GUPTA:  Okay.

3            MR.  MURRAY:    It  might  not  be

4   appropriate for everyone.   It might not have

5   like, you know, the best environment or best

6   setting.

7            MR. GUPTA:  All right.   Thank you

8   so much for your time, Mr. Murray.

9            (Witness excused.)

10           (Whereupon,   off   the   record

11  briefly.)

12           HEARING OFFICER ST. CLAIR:   We're

13  back on the record now.   This is Ms. Lyons?

14           MR. GUPTA:  This is -- yes.

15           HEARING  OFFICER  ST.  CLAIR:    Ms.

16  Lyons?

17           MS. LYONS:  Yes.   Good afternoon.

18           HEARING  OFFICER  ST.  CLAIR:    Hi.

19  This is Herbert St. Clair.   I'm spelling your

20  name --

21           MS. LYONS:  Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

349

1    HEARING OFFICER ST. CLAIR:  L-Y-O-

2    N-S?

3           MS. LYONS:  I'm here.

4           HEARING OFFICER ST. CLAIR:  Did I

5    spell your name correctly?

6           Hello, Ms. Lyons?

7           MS. LYONS:  Yes.  Good afternoon.

8           HEARING OFFICER ST. CLAIR:  Yes.

9    Ms. Lyons, can you hear me?

10          MS. LYONS:  I can hear you loud

11    and clear.

12          HEARING OFFICER ST. CLAIR:  All

13    right.  I'm spelling your last name L-Y-O-N-

14    S?

15          MS. LYONS:  That's correct.

16          HEARING OFFICER ST. CLAIR:  What

17    is your first name?

18          MS. LYONS: Deborah, D-E-B-O-R-A-H.

19          HEARING OFFICER ST. CLAIR:  All

20    right.

21          Ms. Lyons, do you solemnly affirm

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

350

1    that the testimony you're about to give, it

2    will be the truth the whole truth and nothing

3    but the truth?

4            MS. LYONS:  I solemnly swear.

5            HEARING  OFFICER  ST.  CLAIR:    All

6    right.

7            Begin, Mr. Gupta.

8                DIRECT EXAMINATION

9            MR. GUPTA:  Ms. Lyons, can you say

10   your position at Burnie?

11           MS. LYONS:  Presently I'm here at

12   Burnie    working    a    Central    Education

13   Coordinator.

14           MR. GUPTA:  Are you familiar with

15   the student named J█████ H█████████?

16           MS. LYONS:  I am.

17           MR.  GUPTA:   When did you first

18   become familiar -- know that name?

19           MS. LYONS:  He was -- let me see.

20           He  was  enrolled  here  at  Burnie

21   last year and I was familiar with him at that

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

351

1    time.    Also  I  had  been  contacted  by  a

2    representative  associated  with  Kipp  Academy

3    in  regards  to  J██████.   So,  I  heard  about  him

4    again  when  they  contacted  me.

5              And  then  I  saw  him  again.    His

6    first  day  of  school  here  at  Burnie,  22

7    September  2006.

8              MR.  GUPTA:    And  when  did  Kipp

9    contact  you  about  him?

10              MS.  LYONS:   Kipp  Academy  contacted

11    me,  I  want  to  say  in  January  --  wait  a

12    minute.    I  want  to  say  it's  between  January

13    and  maybe  March  2006.

14              MR.  GUPTA:   Okay.    When  was  the

15    first  day  of  school  at  Kipp?

16              MS.  LYONS:    The  first  day  of

17    school  --

18              MR.  GUPTA:   For  the  '06/'07  school

19    year?

20              MS.  LYONS:   Was  28  August  2006.

21              MR.  GUPTA:   August  28th,  2006?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

352

1         MS. LYONS:  Yes.

2         MR. GUPTA:  And when did you say

3 J▮▮▮▮ H▮▮▮▮▮ was enrolled?

4         MS. LYONS:  J▮▮▮▮ H▮▮▮▮▮ was

5 enrolled on 22 September 2006.

6         MR. GUPTA:  Okay.  And when J▮▮▮▮

7 H▮▮▮▮ was enrolled, was he enrolled as a

8 general ed or a special ed student?

9         MS. LYONS:  J▮▮▮▮ H▮▮▮▮▮ was

10 enrolled as a general education student.

11         MR. GUPTA:  But he's clearly

12 special ed.  Right?

13         MS. LYONS:  Yes.  He is.

14         MR. GUPTA:  Why was he enrolled as

15 a general ed student?

16         MS. LYONS:  Initially I was told

17 by the sixth grade general ed teacher that

18 the parent had brought J▮▮▮▮ H▮▮▮▮▮ to his

19 classroom to meet -- well, not to meet him

20 because she already knew the sixth grade

21 teacher.  But to share her information with

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

353

1  him regarding J██████ --

2          MR. TYRKA:  I'll object.  Hearsay

3  now.

4          MS. LYONS:    -- if you will,

5  interim placement at Burnie.

6          HEARING OFFICER ST. CLAIR:  Listen

7  to hearsay.

8          Just a minute, Ms. Lyons.  Just a

9  minute, Ms. Lyons.

10          You can make your objection.

11          MR. TYRKA:  My objection is to

12  hearsay and I understand the Hearing Officer

13  has -- that the rules are looser.  However,

14  this is hearsay from a DCPS witness who could

15  have easily been called instead.  We could

16  have had the teacher here testifying instead

17  of --

18          MR. GUPTA:    It's not hearsay

19  because --

20          HEARING OFFICER ST. CLAIR:  Just a

21  minute.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

354

1          It clearly is, but I can listen to

2    hearsay.    I'm going to overrule your

3    objection.

4          Your objection is preserved, sir.

5          Answer the question, Ms. Lyons.

6          MS. LYONS:   Okay.   So, you say go

7    forward?

8          HEARING OFFICER ST. CLAIR:   Yes.

9          MS. LYONS:   And the teacher came

10   to me because he was concerned and he wanted

11   to alert me about the fact that the student

12   was here.   Mom says that he was a special

13   education student.   She was waiting for her

14   attorney to find him a private placement.   It

15   hadn't happened yet, but for right now, she

16   wanted him to be at Burnie.   And she didn't

17   want anyone to know that he was a special ed

18   student.

19         MR. GUPTA:   Did you have a

20   conversation with the mom about what the

21   teacher told you?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

355

1          MS. LYONS:    Say it again, Mr.

2    Gupta.

3          MR. GUPTA:    Did you ever have a

4    conversation with the mother about this new

5    information you learned from the sixth grade

6    teacher?

7          MS. LYONS:    After I spoke to the

8    teacher, I went on to do something else but

9    shortly thereafter I ran into the mother and

10   I told her.   I said, "I really need to talk

11   with you before you leave the building in

12   regards to J██████".   And that was the same

13   day maybe an hour later.   And at that I told

14   her, but before I talk with you I would like

15   the general end teacher, Mr. Burton (phonetic

16   sp.), to be present.

17          So, he was in a meeting.   I went

18   to the door and I told him the parent was

19   standing outside the door and I needed for

20   him to just reiterate what he had said to me

21   earlier in front of the parent, which he did,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433            WASHINGTON, D.C.  20005-3701            (202) 234-4433

356

1   because he felt that I needed to know that

2   the student was here and in need of services

3   because how else would the student get what

4   he needed unless I knew about it or knew

5   about the student's needs.

6          MR. GUPTA:    And what was the

7   mother's response to what you told her?

8          MS. LYONS:  She was upset with the

9   teacher because she felt that she told him

10   that information in confidence.  She did not

11   expect him and this is what she said to tell

12   me.

13          HEARING OFFICER ST. CLAIR:    Well,

14   just a minute.  Ms. Lyons.

15          MS. LYONS:  And when she said tell

16   me --

17          HEARING OFFICER ST. CLAIR:    Ms.

18   Lyons.  Just minute.  Ms. Lyons.  Ms. Lyons.

19   This is Herbert St. Clair.  I want you to

20   tell me what -- when you said to the teacher

21   please tell me what you said to me in the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433     WASHINGTON, D.C.  20005-3701     (202) 234-4433

357

1    presence of Ms. Hamilton.  Ms. Lyons?

2              MS. LYONS:  Yes.

3              HEARING OFFICER ST. CLAIR:  I want

4    you to tell --

5              MS. LYONS:  Mr. St. Clair, you're

6    saying to me that I should say what I said to

7    the mom?

8              HEARING OFFICER ST. CLAIR:  No.  I

9    want you -- the teacher told you something

10   about a private placement.  Right?

11             MS. LYONS:  Yes.  He did.

12             HEARING OFFICER ST. CLAIR:  And

13   then you arranged for the three of you to

14   meet?

15             MS. LYONS:  Yes.

16             HEARING OFFICER ST. CLAIR:  and

17   then you asked the teacher to say to Ms.

18   Hamilton what the teacher had said to you

19   about the private placement?

20             MS. LYONS:  I said to Mr. Burton,

21   could you please repeat in front of the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

358

1    mother what --

2            HEARING OFFICER ST. CLAIR:  Yes.

3            MS. LYONS:  -- you told me how --

4    about J████ H███████.

5            HEARING OFFICER ST. CLAIR:  Ms.

6    Lyons.  Ms. Lyons.

7            MS.  LYONS:    That's   how   the

8    conversation started.

9            HEARING  OFFICER  ST.  CLAIR:   Ms.

10   Lyons.  I just want you to tell me what the

11   teacher said.

12           MS.  LYONS:   The  teacher  --  Mr.

13   Burton  then  said  to  mom,  you  told  me  that

14   J████  H███████  is  a  special  education

15   student  and  that  he's  only  here  for  stay  put

16   until  your  attorneys  can  find  a  private

17   school  for  him.

18           She  said  to  him  --  at  that  point,

19   she cut him off and said, but I just told you

20   that.   I  didn't  expect  you  to  tell  her.

21   You're  going  to  mess  up  things  for  me.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

359

1    That's what mom said.

2          And then I said, "We can hold a

3    placement meeting".   We can discuss his

4    educational needs and place him here at

5    Burnie for however long you want us to.   But

6    she said that she didn't want to do that.

7          HEARING OFFICER ST. CLAIR:   Next

8    question, Mr. Gupta.

9          MR. GUPTA:   Actually -- so then

10   did you ever get the file -- his special

11   education file?

12          MS.  LYONS:       I   requested   his

13   special   education   file   after   getting

14   permission from mom to do so from Kipp

15   Academy.

16          When  I  contacted  Kipp  Academy,

17   initially they said that they would bring a

18   copy  of  his  confidential  record  to  the

19   school.  When I did not hear back from them

20   on the day that they were supposed to deliver

21   the packet, I contacted them and said, "Are

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

360

1    you coming".

2             At that time, I spoke to Ms.

3    Oakes, who was a special education

4    coordinator or special ed teacher. I'm not

5    really sure of her title. She told me mom

6    said not to release the file to me. But I

7    should talk to -- this is Ms. Oakes telling

8    me that I should talk to the Office of

9    Special Ed and because they have a file. And

10   I said I'll do that because I'm planning to

11   meet with her.

12            So, I did contact, first of all,

13   ODC and then after doing that I contacted Dr.

14   Pegler with non-public day. And I told her

15   what I needed and she faxed the entire packet

16   to me.

17            MR. GUPTA: And then at that point

18   you enrolled him into the special education

19   program once you got the packet?

20            MS. LYONS: No. I called mom and

21   told her that I really need to meet with her.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

361

1    I had the information and I don't -- no.

2    Let me go back.

3         I sent mom a letter and I asked

4    her to come in to meet with the team so that

5    we can go over his special education program

6    with her.

7         MR. TYRKA:    I'll object.    I'll

8    object.  I'll object to the testimony about a

9    letter that's not in evidence.

10        MR. GUPTA:    Nobody is going

11   towards the content of the letter.    We're

12   just -- she's --

13        HEARING OFFICER ST. CLAIR:    Well,

14   I think pretty much you've exhausted this.

15        Basically what Ms. Hamilton did

16   was try to enroll her son in Burnie.    She

17   probably was forced to do that because the

18   request with stay put at Kipp was never

19   issued.

20        Mr. Tyrka filed a stay put order.

21   That was never issued.    Right, Mr. Tyrka?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

362

1          MR. TYRKA:  Correct.  I also filed

2    for an expedited hearing request.

3          HEARING OFFICER ST. CLAIR:  Yes.

4    I know that.  Okay.

5          I think I understand what you

6    wanted me to -- I understand.  What you

7    wanted me to do is to hear what Ms. Hamilton

8    told the teacher.  Right?

9          MR. GUPTA:  Yes.

10          HEARING OFFICER ST. CLAIR:  I

11    heard that.

12          Anything else?

13          MR. GUPTA:  That's all the

14    questions I have.

15          HEARING OFFICER ST. CLAIR:  Cross

16    examination?

17          MR. TYRKA:  I have no questions.

18          HEARING OFFICER ST. CLAIR:  Ms.

19    Lyons?

20          MS. LYONS:  Yes.  This is Herbert

21    St. Clair, the Hearing Officer.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

363

1          MS. LYONS:  Yes, Mr. St. Clair.

2          HEARING OFFICER ST. CLAIR:    Thank

3    you very much.  Thank you very much.

4          MS. LYONS:  You're welcome.

5          HEARING OFFICER ST. CLAIR:    All

6    right.

7          MS. LYONS:  Everyone have a good

8    afternoon.

9          HEARING OFFICER ST. CLAIR:    Thank

10   you, thank you.

11         MS. LYONS:  You're welcome.

12         HEARING OFFICER ST. CLAIR:    Bye,

13   bye.

14         (Witness excused.)

15         HEARING OFFICER ST. CLAIR:    All

16   right.  I don't think we need to -- do we

17   need to argue?  Yes.  I might as well have a

18   complete record.

19         Mr. Tyrka, you got the first and

20   last word.

21         MR. TYRKA:   I think Mr. Matthews

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

364

1    and   Mr.   Murray   were   very   candid   and

2    everything  they  had  to  say  hurt  the  DCPS'

3    case.

4              Mr. Matthews stated that he hadn't

5    gotten  the  records  at  all  and  that  the  school

6    had   not   gotten   the   records   until   October

7    16th.    He   was   also   exceptionally   candid

8    talking  about  the  way  the  school  usually  goes

9    about  placements.    And  that  is  the  way  DCPS

10   usually  goes  about  placement  with  the  school

11   which  is  to  first  place  a  child  and  then

12   consult  the  school  and  see  whether  the  child

13   would  be  a  good  fit.

14             He  acknowledged  that  in  this  case

15   and  he  could  not  say  and  the  school  could  not

16   say  whether  J████  would  be  a  good  fit  until

17   he   saw   the   evaluations,   which   he   had   not

18   seen.    He   acknowledged   that   the   evaluation,

19   that  information  which  would  establish  that

20   the  school  would  not  be  appropriate.

21             He  acknowledged  no  class  had  been

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

365

1    identified. Therefore, he could not tell us

2    the disabilities of the children in the

3    class, could not tell us the teacher

4    qualifications in that class. He can't tell

5    us the academic levels of the children in

6    that class. And, finally, that no final

7    decision had been made by Taft on whether to

8    accept J███ or whether the school would be

9    appropriate for J████.

10          That all being said, there is no

11    placement, has never been a placement to Taft

12    for all those reasons, in addition to all the

13    ones we've already covered.

14          As far as Mr. Murray goes, he

15    explicitly said that he did not offer Taft at

16    the meeting that it was just discussed. What

17    was discussed, we heard contrary information

18    from Mr. Matthews. But certainly what was

19    presented at the meeting was wholly

20    inadequate for anybody to find it's an

21    appropriate placement and, in fact, as

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433         WASHINGTON, D.C. 20005-3701         (202) 234-4433

366

1   deemed, did not find it an appropriate

2   placement. Specific concerns were raised and

3   there was no reason to think that those

4   concerns are not accurate. That all

5   being the case, a placement meeting was not

6   conducted at which any placement was offered

7   so as to establish that as an appropriate

8   placement. Furthermore, there was no

9   placement available at that time.

10  Furthermore, there's been no complying prior

11  notice issued for any placement.

12  And, finally, we know right now

13  that there is no placement available for him

14  that meets his requirements.

15  For those reasons, we're asking

16  for a placement at Rock Creek and I think Ms.

17  Plowden's testimony speaks for itself. When

18  you're asking as laid out in our complaint

19  for meetings to follow shortly thereafter to

20  determine the best for education, both the

21  recent violations and for the outstanding

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433         WASHINGTON, D.C. 20005-3701         (202) 234-4433

367

1    ones ordered in the prior (indiscernible).

2             HEARING OFFICER ST. CLAIR:    Mr.

3    Gupta.

4             MR. GUPTA:    Contrary to what the

5    parents' counsel believes to say and believes

6    to expand the fact with what Mr. Matthews did

7    testify to is (1) the student/teacher ratio,

8    the one-on-one relationships he's going to

9    have.    It's going to be better than Rock

10   Creek.    It's going to be with him.    It's

11   going to be six kids to one teacher and one

12   aid which brings it to three kids to one

13   adult, which is better than Rock Creek.

14             Secondly, at the meeting -- at the

15   eight/nine MDT Meeting the information given

16   by Taft was the exact same information that

17   was given by Rock Creek, which is a nurse,

18   which is a therapeutic center, which is

19   psychological        services        available,

20   student/teacher ration.    It's the exact same

21   information that was exchanged.    And based on

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

368

1    that information the parent rejects Taft.

2    That's fine.  But that's not to say that

3    wasn't a proper meeting.  It was, the parents

4    didn't like it and then prior notice as Mr.

5    Tyrka admitted earlier, they did receive a

6    prior notice in the mail and there was a

7    prior notice issued.

8        Secondly, even if for some reason

9    Taft is not appropriate, DCPS has done its

10   homework and has looked into Moten Center.

11   That has not been seriously discussed about

12   because that wasn't in the MDT meeting.

13   That's the only reason that the Moten Center

14   wasn't discussed here today.

15       Third, if the issue as to Burnie.

16   Even if there was a stay-put was in limbo as

17   is claimed here and it probably was since

18   there hasn't been an HOD issued on it yet,

19   why wait one month to put your kid in school?

20   And then why wait one month when you do put

21   your kid in school, why put him in a non-

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

369

1    therapeutic setting when you know, whether

2    you agree with her or not, due to maybe the

3    student ratio or what not, why not at least

4    go check out Taft.

5              Any educational harm that was done

6    here was perpetrated and was self-inflicted

7    by the petitioners on themselves.  They

8    mislead Burnie because they were told that if

9    they -- if you say it's general ed then he'll

10   get a private placement faster, which is

11   untrue obviously.

12             So, even if --

13             MR. TYRKA:  I'm going to object to

14   the statements about what I said which was

15   never presented into evidence.

16             HEARING OFFICER ST. CLAIR:  Well--

17             MR. GUPTA:  When I said "they" I

18   meant parents.

19             HEARING OFFICER ST. CLAIR:  Yes.

20             MR. GUPTA:  I'll clarify.

21             Parents mislead Burnie and because

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

370

1    they were under the belief that they would

2    get placement.

3                And, finally, I'd like to

4    reiterate that even if the Hearing Officer

5    finds that the placement or the meeting

6    invalid, the education harm here is not --

7    there is no education harm because DCPS

8    didn't create it.    It was created by the

9    parents.

10                Thank you.

11                HEARING OFFICER ST. CLAIR:    Mr.

12    Tyrka, do you want a last word?

13                MR. TYRKA:    There was no evidence

14    put on that Burnie had anything available

15    even if -- or that would need J██████ needs.

16

17                HEARING OFFICER ST. CLAIR:

18    Gentlemen.    Thank you.

19                Give the Hearing Officer three

20    weeks.    I'm going to try to get it out as

21    quickly as I can.    I know Ms. Hamilton is

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

371

1    anxious for it.

2              All right.    Thank you, again,

3    gentlemen.

4              The record is closed.

5              (Whereupon, the above matter was

6    concluded.)

7

8

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                    (202) 234-4433

372